**Shannon D. Wilson**

| | |
|---|---|
| **From:** | Chelsea E. Thompson |
| **Sent:** | Tuesday, May 11, 2021 1:21 PM |
| **To:** | Vincent J. Mersich; Bren J. Pomponio |
| **Cc:** | tfc@walslaw.com; aubreyleighsparks@gmail.com; Alex.Risovich@risovichlaw.com; Maureen Davidson-Welling; John Stember; Michael S. Garrison; Kevin L. Carr |
| **Subject:** | RE: Keith Reed et al. v. Alecto Healthcare Services LLC et al.; Civil Action No. 5:19-cv-263 (Rule 37(a)(1) communication) |

Thank you Vincent, we will review with our client and get back to you, mindful of the deadline.

**Chelsea E. Thompson**
Spilman Thomas & Battle, PLLC
Senior Attorney
O 304.357.4475
M 304.992.1730
CThompson@Spilmanlaw.com

---

**From:** Vincent J. Mersich <vmersich@stembercohn.com>
**Sent:** Tuesday, May 11, 2021 12:26 PM
**To:** Bren J. Pomponio <bren@msjlaw.org>; Chelsea E. Thompson <CThompson@Spilmanlaw.com>
**Cc:** tfc@walslaw.com; aubreyleighsparks@gmail.com; Alex.Risovich@risovichlaw.com; Maureen Davidson-Welling <mdavidsonwelling@stembercohn.com>; John Stember <jstember@stembercohn.com>; Michael S. Garrison <MGarrison@spilmanlaw.com>; Kevin L. Carr <KCarr@spilmanlaw.com>
**Subject:** RE: Keith Reed et al. v. Alecto Healthcare Services LLC et al.; Civil Action No. 5:19-cv-263 (Rule 37(a)(1) communication)

Counsel:

I am writing to confer regarding several other issues with Defendants' discovery responses and production, in addition to the issues raised below.

***Supplemental Email Production***.
In your letter of April 9, 2021, you told us that Defendants would be supplementing their email production with responsive emails from the period of January 1, 2019 to August 6, 2019. However, it has been over a month and we have not yet received this promised supplemental email production. Defendants must complete this supplemental production immediately. Further delay will make it impossible for the parties to complete discovery in the current timeframe, which has already been extended several times.

***JBDev Documents***.
Based on discussions with you, it has been our understanding that OVMC relied on a third-party timekeeping vendor, JBDev, for documents reflecting hours worked by OVMC employees. In your April 22, 2020 letter, you stated that AHS Wheeling is "evaluating whether JBDev, the third party timekeeping vendor, will provide or secure its access to other potentially responsive documentation that may be in JBDev's possession, custody, or control."

However, as you know, we served a subpoena on JBDev. In response, JBDev advised that "JBDev does not keep back ups of client data. All of the data is stored at the client's site on servers."

1

EXHIBIT B

Please supplement your production and produce any documents, not already produced, that reflect class members' schedules and hours worked, or that are otherwise responsive to Plaintiffs' requests. Please also address whether AHS or AHS Wheeling took any steps to preserve this data, whether such efforts were successful, and if not, please explain why not.

***AHS's Responses to RFPs.***
In supplemental responses to Plaintiffs' **First** RFPs, Defendant AHS has repeatedly asserted that "AHS has no responsive documents." AHS has made this response, even when the request covered agreements between AHS and AHSW (or between AHS and third parties). Please explain what steps AHS took, including which custodians' records it searched, to locate responsive documents in its possession, custody or control.

In Plaintiffs' **Second** RFP No. 2, Plaintiffs requested All AHS board of directors and/or board committee meeting minutes, materials, attachments, resolutions, correspondence, and actions by consent concerning OVMC and/or AHSW from years 2017 through 2019." In response, Defendant AHS stated that "its Board of Directors has no meeting minutes or resolutions." Further, AHS directed Plaintiffs to DEFENDANTS_16572-16573 "for a Written Consent dated February 1, 2019, which has redacted the names of AHS' owners and is produced subject to the Protective Order entered in this case."

First, DEFENDANTS_16572-16573 must be produced with the full, unredacted list of AHS's owners. The ownership interests of AHS are directly relevant to the issue of whether AHS is an "employer" for purposes of the WARN Act. *See* 20 C.F.R. § 639.3(a)(2). There is no basis for redacting this relevant information. Please produce the unredacted version of this document immediately.

Second, the same document states that it "is to be filed in the minute book of the Company." This contradicts Defendants' assertion that AHS has no meeting minutes. Please confirm that you will supplement Defendant AHS's production to include all responsive meeting minutes.

***Requests for Admission, and Interrogatory Responses.***
Defendants' must also supplement their responses to Plaintiffs' Requests for Admission ("RFA"), and Plaintiff's corresponding Second Interrogatories.

For example, RFA 4 asked Defendant to admit that admit that "over 700 AHSW employees lost their employment as a result of the closure of OVMC." This is a simple admission request, and is based on the specific representations that OVMC made, in writing, about the closure of OVMC. *See, e.g.,* ECF No. 14, at ¶15 (admitting the closure of OVMC "would affect 736 positions");

Instead of admitting this fact, Defendant AHSW responded that "lost their employment" is vague and ambiguous, excluded "discharge for cause, voluntary departure, voluntary resignation to start a new job, and/or retirement," and denied RFA 4. In its corresponding interrogatory response, Defendant stated that it "is unsure what methods of separation of employment would constitute "loss of employment" and directed us to Defendants_14758 and Defendants_16730-61.

Neither response is sufficient. As for RFA No. 4, Defendant cannot unilaterally exclude categories of employees from the definition of employment loss—e.g., "voluntary departure" or "voluntary resignation to start a new job"—without further information. At a minimum, Defendants must specify the factual circumstances that Defendants believe would justify their exclusion, including the date when such "voluntary" departure or resignation was communicated to AHSW.

EXHIBIT B

However, nothing in the documents Defendants reference (in corresponding Second Interrogatory No. 1) provides any clarification. The spreadsheet at Defendants_14758, for example, merely includes AHSW's coding for employees' status.[1] But this coding does not actually explain the employees' coded status. So, for example, numerous employees are identified by the status "ST-LOW," but AHSW does not explain what "ST-LOW" means, nor does it provide any information as to *why* an employee's status is coded as "ST-LOW." Likewise, many employees are coded as "ST-NEWJOB" even though the same employees had already been told their job was being eliminated with the closure of OVMC, and their hours already reduced to zero.

Further, RFA Nos. 11-17 ask AHSW to admit that it terminated each of the named plaintiffs within 30 days of September 4, 2019. ANSW denied RFA Nos. 11-17. To explain, AHSW stated only that "it did not terminate the employment of employees at OVMC due to closure of OVMC until October 7, 2019" and that "[t]he employee list at Bates No. 14758 shows [their] termination date as October 7, 2019."

However, OVMC cannot just unilaterally declare that a later date is the effective date of termination, when the employee has already had their hours reduced to zero. There is no evidence *whatsoever* that the named plaintiffs were still working for OVMC as of October 7, 2019. Indeed, five of them (Reed, Dolence, Schenkel, Wins and Garan) had already initiated this lawsuit, alleging their termination, by September 9, 2019.

Additionally, AHSW denied RFA Nos. 6-7, which asked AHSW to admit that it "ordered the discontinuance of acute and medical services at Ohio Valley Medical Center as of 11:50 p.m. on September 4, 2019." These denials and explanations are not made in good faith. In its Answer, AHSW already admitted that "acute and medical services were discontinued at [OVMC] as of 11:50 p.m. on September 4, 2019." (ECF No. 14, ¶17.) Nevertheless, AHSW explained that it "did not fully admit because this request incorrectly stated that certain services … were "discontinued" when they were actually "suspended."" Further, AHSW claimed that the requests "incorrectly listed what services had been suspended, the time at which that suspension went into effect." Again, AHSW has already admitted these facts in its Answer. AHSW should therefore amend its discovery responses consistent with these judicial admissions.

As noted below, our deadline to compel further responses may be as soon as May 14, so we ask that you address these issues as soon as possible.

-Vince

_____
Vincent J. Mersich, Esquire
Stember Cohn & Davidson-Welling, LLC
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.:  (412) 338-1445
F.:  (412) 338-1446
www.stembercohn.com

**CONFIDENTIALITY WARNING**:  This email may contain privileged or confidential information and is for the sole use of the intended recipient(s).  Any unauthorized use or disclosure of this communication is prohibited.  If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Bren J. Pomponio <bren@msjlaw.org>
**Sent:** Tuesday, May 11, 2021 8:31 AM
**To:** Chelsea E. Thompson <CThompson@Spilmanlaw.com>
**Cc:** tfc@walslaw.com; aubreyleighsparks@gmail.com; Alex.Risovich@risovichlaw.com; Vincent J. Mersich <vmersich@stembercohn.com>; Maureen Davidson-Welling <mdavidsonwelling@stembercohn.com>; John Stember <jstember@stembercohn.com>; Michael S. Garrison <MGarrison@spilmanlaw.com>; Kevin L. Carr <KCarr@spilmanlaw.com>
**Subject:** Keith Reed et al. v. Alecto Healthcare Services LLC et al.; Civil Action No. 5:19-cv-263 (Rule 37(a)(1) communication)

Counsel,

This serves as a good faith attempt to resolve certain objections Alecto Health Services, LLC ("AHS") has made in response to Plaintiffs' Second Set of Requests for Production of Documents.  Specifically, Defendants have objected to Request to Produce Number 5, which request and Defendants' Response are set forth below:

> *5.     Annual and quarterly/monthly financial statements (including income statements, cash flow statements, and bank and credit line statements) reflecting AHS' income, assets, liabilities, gross and net profits, and available credit, in years 2017 through present.*
>
> *RESPONSE:     AHSW has no responsive documents. AHS objects on multiple grounds. First, AHS objects to Production Request No. 5 because is overly broad. AHS has varied business interests that are incorporated into its financial statements. The request, however, purposefully seeks all types of financial statements, regardless of the source of the underlying information. The request lacks any reasonable parameters, like:*
>
> - *Geography (only the West Virginia hospital is at issue, and AHS has businesses in other states);*
> - *Applicable hospitals (only OVMC is at issue, and AHS has interests in other hospitals);*
> - *Subject matter (only the closure of OVMC is at issue, but there is no limit to information related to its operation or closure); or*
> - *Time (it seeks information from 6 months before AHSW even owned OVMC, through the 2 years ASHW operated OVMC, and then another 2.5 years after OVMC closed).*
>
> *As a result, the "income, assets, liabilities, gross and net profits, and available credit" information contained in responsive financial statements would be largely attributable to AHS' business interests wholly unrelated to OVMC. Overall, there is nothing tethering the request to the issues of this case, namely whether WARN notice was provided to employees for the closure of OVMC. Instead, the request appears to be an impermissible fishing expedition into the entirety of AHS' financial information, regardless of the source of those finances. For this reason, the request is facially overbroad.*
>
> *For similar reasons, AHS objects that Request No. 5 is irrelevant to the parties' claims and defenses. The Plaintiffs' claim arises from the closure of OVMC. AHS does not own OVMC. AHS did not employ any person at OVMC. AHS did not manage OVMC's day-to-day operations. Instead, OVMC has been owned by AHSW since June 1, 2017 (see asset purchase agreement at Bates Nos. 2022-2130 and associated recorded instruments at 16574-16729). AHSW, in turn, is wholly owned by Alecto Healthcare Services Ohio Valley LLC per its operating agreement (Bates Nos. 2212-2226). And AHSOV is partially owned by AHS per its operating agreement (Bates Nos. 16449-16526). There are consequently several intervening entities between OVMC and AHS. This is in addition to the physical distance between OVMC and AHSW here in West Virginia and AHS in California. Thus, there is significant distance (both structurally and geographically) between the businesses of*

EXHIBIT B

> OVMC and AHS. Because of this distance, OVMC could constitute, at most, a very small portion of AHS' overall business. Alecto's other, unrelated business enterprises (which differ in both geography and industry), combined with the fact that this production request is not limited to OVMC in any way, means that the vast majority—if not all—of the financial information sought herein is inapplicable to OVMC, AHSW, or this case. In fact, the financial information sought in this production request is largely reflective of AHS' other business interests. For this reason, the request extends well beyond the single WARN claim that is pled in this case and seeks information irrelevant to the parties' claims and defenses.
>
> Third, AHS objects to the extent Request No. 5 seeks trade secrets. By requesting information on AHS' banking, available credit, assets, liabilities, etc., Plaintiffs are expressly seeking propriety and trade-sensitive information. AHS is not a publically traded company, and guards such financial information from public disclosure. AHS may use such confidential financial information to make budgets, assess commercial opportunities, and make future business decisions. Therefore, AHS derives value from its competitors not having access to such financial information. Thus, AHS objects to the production of its most private financial information. See, e.g., Moore v. Ferguson, No. 2:15-CV-04531, 2015 WL 9587748, at *5 (S.D.W. Va. Dec. 30, 2015) (noting that "commercial financial information" is often found to be confidential commercial information entitled to protection under Rule 26(c)(1)(G)").
>
> Fourth, AHS objects to the extent Request No. 5 impermissibly intrudes on the privacy of third party non-litigants. As noted in its corporate disclosure [CM/ECF Doc No. 20], AHS is owned by several individuals who are residents of other states. None of these individuals have been named in this lawsuit. Releasing financial information for AHS, however, necessarily also reveals the financial information of these owners, who are third party non-litigants entitled to privacy. See, e.g., State ex rel. W. Virginia Fire & Cas. Co. v. Karl, 202 W. Va. 471, 476, 505 S.E.2d 210, 215 (1998) (Noting "we must be cognizant of the privacy rights of non-litigant third parties" in discovery).
>
> Fifth, AHS objects to Request No. 5 as it imposes an undue burden. Given the breadth of financial information sought, and that it spans several years, there could be a large volume of responsive documents. This is particularly true given there are no reasonable parameters. AHS has multiple businesses, and for each, there could be countless "financial statement" documents containing responsive information, ranging from routine bank statements to annual tax returns. As a result, Request No. 5 could capture a large amount of potentially responsive documents. Producing documents responsive to Request No. 5, as written, would require considerable time, man power, and expense, and may have adverse commercial consequences when AHS' sensitive financial materials are disclosed. Such burdens outweigh the little information in such a production that is actually related to OVMC (see the objections to breadth and irrelevancy above). For these reasons, Request No. 5 imposes an undue burden.
>
> Sixth, and finally, Alecto objects to the extent Request No. 5 seeks privileged information. Documents analyzing or estimating "financial statements" may be created by counsel in preparation for litigation, or constitute legal advice, and therefore may fall within the bounds of the attorney/client privilege or work product doctrine. No documents are currently being withheld on this basis, however.

Each of Defendants' objections are discussed in turn.  First, Plaintiffs' Request for Production of Documents Number 5 is not overbroad nor irrelevant to Plaintiffs' claims.  Plaintiffs allege AHS and Alecto Health Services Wheeling, LLC ("AHSW") are a single employer for the purposes of the WARN Act.   See 20 C.F.R. § 639.3(a)(2).  The *de facto* control factor refers to "whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for this litigation." *Ray v. Mechel Bluestone, Inc.*, No. 5:15-cv-03014, 2016 U.S. Dist. LEXIS 26314, at *12 (S.D.W. Va. Mar. 2, 2016) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495 (3rd Cir. 2001)). Similarly, "[i]n the context of the WARN Act, the decision to effect a mass layoff is the single most important personnel policy." *Pennington v. Fluor Corp.*, 320 F. Supp. 3d 762, 771 (D.S.C. 2018) (citing *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 143 (S.D.N.Y. 2004)).  Discovery confirmed that AHS and AHSW jointly directed the closure of OVMC without adequate notice, supporting Defendants' liability as a joint employer.

Given that AHS and AHSW are considered a single employer, AHS's financial information is clearly relevant, and Plaintiffs' request is not overbroad.  Plaintiffs' are entitled to the requested information without limiting the request to the Ohio Valley Medical Center because AHS's solvency and financial condition are relevant to whether AHS is able to avail itself of the unforeseeable business circumstances exception to WARN Act liability.  *See* 20 CFR § 639.9.

EXHIBIT B

Third, Defendants cannot avoid production of the information requested on the grounds that the information discloses confidential trade secrets. We have a protective order in this case, and the production would be subject to the protective order. Indeed the case Defendants' rely upon for its confidentiality objection provided that the financial information shall be produced subject to the protective order. *See Moore v. Ferguson*, No. 2:15-CV-04531, 2015 WL 9587748, at *7 (S.D.W. Va. Dec. 30, 2015) ("Plaintiffs will receive the discovery requested, albeit subject to a protective order . . . .").

Fourth, the production would not impermissibly intrude the privacy of third party, non-litigants. Again, the information would be subject to the protective order, which adequately protects the third parties' privacy interests. Moreover, the financial condition of AHS is relevant to this lawsuit, and the fact that AHS is owned by non-litigants does not render otherwise discoverable financial information confidential.

Fifth, Defendants have failed to meet their burden to demonstrate that the requested financial information is unduly burdensome. However, in a good faith attempt to resolve this objection, Plaintiffs are willing to discuss an appropriate limit on the request so that Defendants are not required to produce cumulative and unnecessary information. Plaintiffs are primarily interested in quarterly financial statements setting forth AHS's income, assets, profits and losses, and available credit for the specified time period. We would expect that these are regular quarterly reports that AHS would generate in the normal course of business.

Sixth, Defendants have not carried their burden to demonstrate that the requested information is protected by the attorney-client work product privilege. It is our understanding that none of the documents are being withheld on this basis in any event.

We are available for a phone call to discuss the objections to Plaintiffs' Request for Production of Documents Number 5. The deadline for Plaintiffs to move to compel the production is Friday, May 14, and so we would like to discuss the objections sometime over the next several days. Please let us know when you are available to discuss by phone.

Bren J. Pomponio
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304)344-5565
bren@msjlaw.org

---

[1] The other spreadsheet referenced Defendants_16730-61, does not even contain this minimal coding.

EXHIBIT B