**Shannon D. Wilson**

| | |
|---|---|
| **From:** | Chelsea E. Thompson |
| **Sent:** | Monday, May 17, 2021 5:58 PM |
| **To:** | Kevin L. Carr; vmersich@stembercohn.com; mdavidsonwelling@stembercohn.com; jstember@stembercohn.com |
| **Cc:** | Bren J. Pomponio; Aubrey Sparks; tfc@walslaw.com; Alex.Risovich@risovichlaw.com; Michael S. Garrison |
| **Subject:** | RE: 2021-05-12 Letter to Counsel Deficiency Response (3) [STB-WORKSITE.FID919706] |
| **Attachments:** | 2021-05-12 Letter to Counsel Deficiency Response (3).DOCX |

Counsel,

Attached is a letter responding to alleged discovery deficiencies. I wanted to make sure everyone received it. We have a call scheduled for 4 pm tomorrow.

Best,
Chelsea

**Chelsea E. Thompson**
Spilman Thomas & Battle, PLLC
Senior Attorney
O 304.357.4475
M 304.992.1730
CThompson@Spilmanlaw.com

**From:** Kevin L. Carr <KCarr@spilmanlaw.com>
**Sent:** Monday, May 17, 2021 5:52 PM
**To:** vmersich@stembercohn.com; mdavidsonwelling@stembercohn.com; jstember@stembercohn.com
**Cc:** Chelsea E. Thompson <CThompson@Spilmanlaw.com>
**Subject:** 2021-05-12 Letter to Counsel Deficiency Response (3)

Please see attached response.

Sincerely,

Kevin


**Kevin L. Carr**
Co-chair, Labor and Employment Group
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (ZIP 25301)
Post Office Box 273
Charleston, WV 25321-0273
O 304.340.3877
M 304.389.8026
F 304.340.3801
kcarr@spilmanlaw.com
View My Bio
**COVID-19 Task Force**

1

EXHIBIT C



CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

EXHIBIT C

Kevin L. Carr
304.340.3877
kcarr@spilmanlaw.com

May 17, 2021

*Via Email to:*
*vmersich@stembercohn.com*
*mdavidsonwelling@stembercohn.com*
*jstember@stembercohn.com*

Vincent J. Mersich
Maureen Davidson-Welling
John Stember
Stember Cohn & Davidson-Welling, LLC
The Hartley Rose Building
425 First Ave., 7th Floor
Pittsburgh, PA 15219

   Re: *Keith Reed et al v. Alecto Healthcare Services LLC et al*
      <u>Civil Action No. 5:19-CV-00263-JPB (N.D. W. Va.)</u>

Dear Counsel,

  We are writing in response to your deficiency e-mails dated May 11, 2021. We have reviewed your alleged deficiencies in detail with our client. As you know, the parties have been able to resolve several discovery disputes without the need for Court intervention, and we aim to continue doing so. With that in mind, Alecto Healthcare Services Wheeling LLC ("AHSW") and Alecto Healthcare Services LLC ("AHS") (collectively, the "Defendants"), in good faith, address each of the issues raised in your My 11, 2021 e-mails:

  <u>Electronically Stored Information</u> - As we stated in our April 9, 2021 letter, production of the e-mails dated January 1, 2019 through August 6, 2019 that are responsive to "Plaintiff's Requests for Production of Documents" would take some time, given the volume. For reference, AHSW determined that there were 3,358,032 documents (not pages) for 1,782 custodians at OVMC, and provided those documents to counsel on April 16, 2021. We have been diligently processing the e-mails, applying time-saving computer predictive technology, and otherwise working to review and produce the e-mails. Even after narrowing for the time period at issue and performing broad keyword searches based upon "Plaintiff's Requests for Production of Documents," over half a million potentially responsive documents remain. We continue to review these documents for responsiveness, privilege, and confidential personal information to provide a

EXHIBIT C

Reed/Deficiency Response
May 17, 2021
Page 2

production that adheres to the requirements in the Federal Rules of Civil Procedure, adequately protects against inadvertent disclosure of privileged material, and does not constitute a "data dump" of unresponsive materials. We can and will provide counsel with additional updates on this process, and are mindful of the deadlines in the Order Granting Joint Motion to Amend Scheduling Order. [CM/ECF Doc. No. 56].

J.B.Dev. - AHSW has secured J.B. Dev timecards and will produce them this week subject to the protective order entered in this case. The timecards are on an excel spreadsheet, and contain clock in and out information for OVMC employees for 2019. Note that different date ranges are on different tabs at the bottom of the page. With this production, AHSW will have produced all of the records it has related to time worked, schedules, and compensation (Bates Nos. 91-2018, 14759-15075 & 14759-14786). Additional information about the payroll registers was provided in our prior letter dated April 9, 2021 under the heading "Interrogatory No. 4." If there are additional questions about these documents, we are happy to provide further clarification. AHS did not employ any individual at OVMC and therefore has no production.

AHS Document Production - Upon reviewing our First Supplement to "Plaintiff's First Set of Discovery Requests," we assume this question is based upon responses to Request No. 18. The fact that the Asset Purchase Agreement was produced by AHSW and not AHS was merely an oversight in drafting, which Defendants' counsel apologizes for. The belief and intention was for both AHSW and AHS to produce the Asset Purchase Agreement. That is why, for example, the response to Request No. 8 in "Plaintiffs' Second Set of Request for Production of Documents" stated "**the Defendants produce the asset purchase agreement** at Bates Nos. 2022-2130, which is produced subject to the Protective Order entered in the case." AHS will supplement its response to Request No. 18 "Plaintiff's First Set of Discovery Requests" to reflect this production.

Overall, the responsive document of the Asset Protection Agreement was timely produced upon entry of the protective order. In response to all production requests, AHS has either provided detailed objections or produced all responsive documents in their possession, custody, and control. It has also worked out several discovery disputes amicably between the parties, including some listed in this letter. If counsel has concerns regarding any specific production request responses, AHS invites counsel to let it know, so the parties may discuss and resolve such concerns.

Ownership of AHS - AHS and AHSW understand that part of the Department of Labor's factors for determining single employer status is whether the two entities share "common ownership." AHS states, however, that sufficient information has already been produced to confirm that AHS and AHSW do not have "common ownership." Per the Corporate Disclosure [CM/ECF Doc. 20], AHS disclosed that it is a Delaware limited liability company with seven

EXHIBIT C

Reed/Deficiency Response
May 17, 2021
Page 3

members, all of whom are individuals domiciled in either California or Texas. In the same document, AHSW disclosed that it is a Delaware limited liability company whose sole member is Alecto Healthcare Services Ohio Valley LLC ("AHSOV"). The membership of AHSOV has also been established through discovery and subpoena responses to be AHS and MPT of Wheeling-Alecto Hospital, LLC. In addition, AHSW and AHSOV have produced their operating agreements (Bates Nos. 16449-16526 & 2212-2226), certificates of formation (Bates Nos. 2184-2188 & 16764-16768), and written consents (Bates Nos. 16527-16532, 16542-16571) that confirm their membership. Taken together, this is sufficient information to determine that the owners are uncommon—the individuals who are members of AHS (regardless of their names) are not AHSOV, the limited liability company that is the sole member of AHSW.

Minute Book. AHS and AHSW have confirmed that there is no "minute book." Because they are limited liability companies, both AHS and AHSW act through the written consents of their members. See, for example, the Operating Agreement of AHSW at Article VIII (Bates Nos. 2212-2226). There consequently are no meetings or minutes of meetings. All written consents for AHSW have been produced in response to "Plaintiffs' Second Set of Requests for Production of Documents" (Bates Nos. 16530-16532, 16546-16549 & 16561-16571). AHS produced the written consent responsive to "Plaintiffs' Second Set of Requests for Production of Documents," particularly Request Nos. 1 and 2 (Bates Nos. 16572-16573). AHSOV has also produced all written consents in response to "Plaintiffs' Second Set of Requests for Production of Documents" (Bates Nos. 16527-16529, 16542-16545 & 16550-16560). AHS will confirm that all responsive written consents have been produced. Subject to that confirmation, all responsive written consents for AHSW, AHSOV, and AHS have been produced.

Financial Documents for AHS: Subject to the protective order entered in this case, and subject to and without waiving the objections it has previously stated, AHS agrees to provide consolidated balance sheet and consolidated income statement for years 2017-2019.

Request for Admission No. 4. AHSW stands by its response, but will provide clarifying detail. This Request stated "Admit that over 700 AHSW employees lost their employment as a result of the closure of OVMC." The term "employment loss" is defined in 20 CFR § 639.3(f). If and/or when AHSW's employees suffered employment loss is a critical issue in this case and is not a "simple" request for admission. Based on the employee records, particularly Bates No. 14758, and this WARN definition of "employment loss," AHSW could not, and did not, fully admit Request No. 4 because it is ASHW's position that:

EXHIBIT C

- employees who were discharged for cause, voluntarily departed employment, or retired prior to October 7, 2019 did not suffer employment loss as that term is defined under the WARN Act;
- AHSW did not terminate employees due to closure of OVMC before October 7, 2019 and, up until that time, employees were paid for PTO or hours worked and provided the usual employer-sponsored benefits, as evidence by Bates No. 14758; and
- no employee faced a reduction in hours of more than 50% during each month of any 6-month period preceding October 7, 2019.

Request for Admission Nos. 6-7. AHSW stands by its responses, which were in part based upon the press release dated September 3, 2019 at Bates No. 16762-16763 that announced and described the suspension of services. In light of Plaintiffs' concern, AHSW can move to amend "Defendants' Answer to First Amended Complaint" to more accurately reflect the suspension's date, time, and affected services.

Request for Admission Nos. 11-17: AHSW stands by its responses, but will provide clarifying detail. ASHW continued to employ the named defendants, excluding Mark Garan, through October 7, 2019. There is evidence of this, particularly the payroll registers and JBDev timecards which are forthcoming. For example:

- Plaintiff Lisa Dolence both worked regular hours (i.e. hours at which she earned her regular straight time rate of pay) and received PTO on payroll register dated October 5 and October 19 (Bates Nos. 1552 & 1785). She also had employer sponsored vision and dental coverage on both payroll registers. According to the timecards, Plaintiff Dolence clocked in and worked at OVMC throughout September and on October 1-3 and 7.
- Plaintiff Emily Wines worked regular hours and received PTO pay on payroll register dated October 5 (Bates No. 1486). She also had PTO pay on payroll register dated October 19 (Bates No. 1731) in addition to contributions to her 401K and employer sponsored vision and dental coverage. According to the timecards, Plaintiff Dolence clocked in and worked at OVMC throughout September.
- Plaintiff Keith Reed worked regular hours on the payroll register dated October 5 (Bates No. 1553) and received PTO pay on payroll register dated October 19 (Bates No. 1787) in addition to employer sponsored vision, dental, and life/accidental death insurance coverage. The timecards confirm he clocked in and worked in late September.
- Plaintiff Mark Garan, prior to his voluntary departure to start a new job, worked regular hours and receive PTO pay on payroll register dated September 7 and September 21 (Bates Nos. 834 & 1177). According to the timecards, Plaintiff Garan clocked in and worked at OVMC on September 13, 2019 and, as of that date, he voluntarily separated from employment to begin working at another job.

EXHIBIT C

Reed/Deficiency Response
May 17, 2021
Page 5

- Plaintiff Elizabeth Schenkel worked regular hours and received PTO pay on payroll registers dated September 21 and October 5, and had employer sponsored vision and dental coverage (Bates Nos. 1177 & 1485). According to the timecards, Plaintiff Schenkel clocked in and worked at OVMC in late September and used PTO on October 1-2.
- Plaintiff August Ullum received PTO pay on payroll registers dated October 5 and October 19 (Bates Nos. 1518 & 1731). According to the timecards, Plaintiff Ullum was using PTO time as of September 23, 2019.

Thus, the named Plaintiffs (excluding Plaintiff Garan) continued to enjoy employer-provided benefits, some work hours, and PTO pay through October 7, 2019. They were not required to return company-owned property, keys, or access badges until that date, and continued to have access to company-sponsored email. The evidence therefore demonstrates that the named Plaintiffs (excluding Plaintiff Garan) were employed by AHSW through October 7th. The fact that the number of regular hours were low due to patient census flexing, or that some named Plaintiffs filed a lawsuit, does not disprove that employment relationship.

Additionally, AHSW can explain the notations in Bates No. 14758:

- "ST-LOW" means that an involuntary termination occurred due to reduced staffing needs in light of low patient census.
- "ST-NEWJOB" means a voluntary separation from employment where employee informed ASHW such separation was due to the employee starting a new job.
- "ST-MOVED" means a voluntary separation from employment where employee informed ASHW such separation was due to the employee's change in residence.
- "ST-DISCH" means an involuntary termination for a reason other than reduced staffed needs in light of low patient census.
- "ST-QUIT" means a voluntary termination where employee provided no reason.

Thank you for your attention to this matter. I hope this information resolves the concerns raised in prior emails. I look forward to discussing these issues with you next week.

Very Truly Yours,

Kevin L. Carr

KLC/cet

EXHIBIT C

Reed/Deficiency Response
May 17, 2021
Page 6

cc: Timothy F. Cogan (via e-mail at tfc@walslaw.com)
Aubrey Sparks, Esq. (via e-mail at aubreyleighsparks@gmail.com)
Bren Pomponio, Esq. (via e-mail at bren@msjlaw.org)
F. Alex Risovich, Esq. (via e-mail at Alex.Risovich@risovichlaw.com)
Michael S. Garrison, Esq. (via e-mail at mgarrison@spilmanlaw.com)
Chelsea E. Thompson, Esq. (via e-mail at cthompson@spilmanlaw.com)

EXHIBIT C