IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

FILED

JUN 28 2021

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

| | |
|---|---|
| KEITH REED, LISA DOLENCE, ELIZABETH SCHENKEL, EMILY WINES, MARK GARAN, CHRISTINA LUCAS, and AUGUST ULLUM, II, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALECTO HEALTHCARE SERVICES, LLC, ALECTO HEALTHCARE SERVICES WHEELING, LLC, doing business as Ohio Valley Medical Group, doing business as OVMC Physicians,<br><br>Defendants. | CIVIL ACTION NO.: 5:19CV263<br>(BAILEY) |

## ORDER GRANTING PLAINTIFFS' MOTION [63] TO COMPEL

Currently pending before the Court is Plaintiffs' Motion [63] to Compel Production of Documents, filed on May 21, 2021. This Motion is before the undersigned on referral from the District Court. ECF No. 64. Upon completion of briefing, an Oral Argument/Evidentiary Hearing was held on June 16, 2021. Following the same, and after considering the arguments of the parties, the applicable law, and the Court file, the undersigned is prepared to issue a decision.

## I.
## FACTUAL/PROCEDURAL HISTORY

This case arises out of the closure of Ohio Valley Medical Center ("OVMC") in Wheeling, West Virginia. Plaintiffs bring this action pursuant to the WARN Act (29 U.S.C. § 2101, et seq.), alleging violations thereof. Specifically, Plaintiffs contend that Defendants, Alecto Healthcare Services, LLC ("AHS") and Alecto Healthcare Services Wheeling, LLC ("AHSW") (hereinafter

collectively "Defendants") violated the notice provisions of the same. In so doing, Plaintiffs allege that AHSW and AHS operated as an integrated enterprise. ECF No. 37 at p. 2. Plaintiffs further aver that whether Defendants (AHS and AHSW) comprise a "single employer" or a "single enterprise" under applicable legal authority is an issue in this matter. ECF No. 37 at p. 5. Defendants deny Plaintiffs' allegations and maintain that it complied with all applicable laws in the closing of OVMC. ECF No. 39.

AHS is a Delaware Limited Liability Company based in Irvine, California. ECF No. 39. AHSW is a Delaware Limited Liability Company. ECF No. 39. Plaintiffs aver that AHSW has principal offices in Wheeling, WV and was formed in connection with AHS's acquisition of certain assets of Ohio Valley Health Services and Education Corporation ("OVHSE"). ECF No. 37.

OVHSE previously owned and operated Ohio Valley Medical Center ("OVMC") in Wheeling, WV. ECF No. 39. Subsequently, AHSW became the parent corporation of OVMC and continued operating the same. ECF No. 39 and 66. AHS is 80% owner of Alecto Healthcare Services Ohio Valley ("AHSOV"); MPT of Wheeling – Alecto Hospital LLC is 20% owner of AHSOV.[1] ECF No. 66 at p. 4. AHSOV is the sole member of AHSW, which is the parent company of the hospital formerly known as OVMC. ECF No. 66 at p. 4.

On or about March 8, 2021, Plaintiffs served their Second Requests for Production of Documents upon Defendants. ECF No. 42. Defendants served responses on or about April 14, 2021. ECF No. 57. At issue in this matter is Request for Production #2 and the documents provided in response thereto by Defendants, specifically a Written Consent document which entails Bates Nos. 16572-16573. The Written Consent contains the names of the owners of

---

[1] Neither AHSOV nor MPT of Wheeling – Alecto Hospital LLC are parties to this litigation.

2

AHS, but those names have been redacted.[2] Plaintiffs are seeking production of those names. Defendants object. This is the sole issue raised by the currently pending Motion to Compel.

## II.
## ARGUMENTS OF THE PARTIES

### A. Plaintiffs' Arguments

Plaintiffs argue that the names of the owners of AHS are necessary to determine whether commonality of ownership exists between AHS and AHSW. Plaintiffs further argue that the identities of the owners of AHS are relevant to the issue of whether these owners directed the closing of OVMC. Finally, Plaintiffs maintain that, despite Defendants' arguments to the contrary, disclosure of the names of the AHS owners will not violate privacy interests inasmuch as a Protective Order is in place regarding discovery.

### B. Defendants' Arguments

Defendants object to providing the names of the owners of AHS. First, Defendants argue that Plaintiff have enough information upon which to determine whether commonality of ownership exists between AHS and AHSW, and that there is no commonality of ownership. Defendants next argue that, even if the names of the AHS owners were disclosed, this information would not assist Plaintiffs in determining whether commonality of ownership exists between AHS and AHSW because there is no information to which they could compare the names of the owners to determine this factor - AHSOV and AHSW have LLCs for members rather than individuals. For these reasons, Defendants argue that Plaintiffs' Motion should be denied.

---

[2] Though this document was referenced and discussed during the hearing, it was not otherwise made a part of the record by either party. Inasmuch as the document is at issue and was referenced during the hearing, the Court obtained a copy of the Written Consent document after the hearing and for purposes of this Order. The Written Consent document is appended hereto as Exhibit "A."

3

## III.
## APPLICABLE LAW

Plaintiffs seek an Order compelling additional and more specific answers to requests for production of documents. As a result, the following rules are implicated by Plaintiffs' Motion:

Fed. R. Civ. P. 26, which provides in relevant part as follows: "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Importantly, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Fed. R. Civ. P. 34, which governs requests for production and responses thereto, and provides in relevant part as follows: "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Further, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."

Additionally, Motions to Compel responses to interrogatories and requests for production are governed by Fed. R. Civ. P. 37(a)(2)(B), which provides in relevant part that, if a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request." The party opposing the motion to compel bears the burden of proving why the motion should not be granted. *Rogers v. Tri-State Materials Corp.*, 51 F.R.D. 234, 247 (N.D.W.Va. 1970). Pursuant to LR Civ P 37.02(b) a motion to compel or other motion in aid of discovery is deemed

waived if it is not filed within thirty (30) days after the discovery response or disclosure requirement sought was due.

# IV.
# DISCUSSION

## A. Preliminary Matters

Before addressing the substantive arguments raised by the parties, some preliminary matters need to be addressed. First, although Defendants have not directly advocated the following as a substantive reason for denying the instant Motion to Compel, this issue has been noted and it is worth discussing here – which is that the Request for Production at issue, i.e. RPD #2, does not specifically request the names of the owners of AHS. Notably, Plaintiffs' RPD #2 does not seek the names of "principles of AHS and documents containing the minutes of AHS meetings in which the decision to close OVMC was discussed," as Plaintiffs assert in their brief (ECF No. 63 at p. 2). Rather, the discovery request is as follows: "[a]ll AHS board of directors and/or board committee meeting minutes, materials, attachments, resolutions, correspondence, and actions by consent concerning OVMC and/or AHSW from years 2017 through 2019." ECF No. 63-1 at p. 2. Defendants' responded to this request by stating that they had no responsive documents and that AHS operated by Written Consent rather than through meetings of and decisions by directors. Seemingly as an example, Defendants produced the Written Consent at Bates Nos. 16572-16573 in response to this Request for Production. Defendants now appear to argue, at least in passing, that this document is not relevant to this litigation but was simply offered to reinforce the answer to Plaintiffs' RPD #2. This argument is not persuasive, however. By producing the same,

Defendants have implicitly acknowledged that the subject document and the information contained therein are relevant to the RPD at issue, and by implication, to the case as a whole.[3]

In this same vein, and to the extent Defendants raised this argument during the hearing, the undersigned is unwilling to deny Plaintiffs' Motion to Compel on the technical basis that the RPD at issue did not specifically seek the names of the owners of AHS in the first instance. Again, Defendants' production of the Written Consent (Bates Nos. 16572-16573) and the redaction of the names of the owners in said document led to this reasonably foreseeable discovery dispute. Therefore, to deny Plaintiffs' Motion on the ground that this document and this information was not specifically sought by the original Request for Production would elevate form over substance and therefore be unjust in this instance. Accordingly, and to the extent that such an argument is being or has been advanced, the undersigned is not persuaded by the same.

Finally, the undersigned notes that Plaintiffs are seeking the names of the owners of AHS to the extent that they discussed the closure of OVMC, or were present for or participated in a meeting wherein the closure of OVMC was discussed. Though much has been said during these proceedings regarding these owners, this categorization of them has not been disputed. The undersigned would further note that the argument or inference that the owners of AHS did or could have discussed the closing of OVMC is not unreasonable given AHS's high percentage of ownership (80%) in AHSOV, which is the parent company of AHSW (OVMC). Indeed, given this percentage of ownership of AHSOV, and given that AHSW (OVMC) was owned 100% by AHSOV, it seems likely that the closure of OVMC would have impacted AHS and the owners thereof in a not insubstantial way. The Court will therefore consider Plaintiffs' request insofar as

---

[3] As will be discussed below, the Court's relevancy determination goes beyond the Defendants' implicit acknowledgement of relevance.

their assertion that these owners are persons who did or could have discussed the closure of OVMC prior to the same.

### B. Substantive Arguments

In their Complaint[4], Plaintiffs have asserted that AHS and AHSW constitute a single employer and/or operated as a single enterprise for purposes of the WARN Act. "Affiliated corporate liability under the WARN Act is ultimately an inquiry into whether the two nominally separate entities operated at arm's length....To that end, the Department of Labor has specifically mandated consideration of: (1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) the dependency of operations." *Pearson, et al. v. Component Technology Corp.*, 247 F.3d 471, 495-96 (3rd Cir. 2001) (internal citations omitted). *See also* 20 C.F.R. § 639.3(a)(2). Therefore, to prove that Defendants operated as a single employer and/or enterprise for purposes of the WARN Act, Plaintiffs must produce or provide evidence which demonstrates the aforementioned factors.

#### 1. Common ownership

Plaintiffs first argue that the names of the owners of AHS are relevant to the issue of common ownership. Defendants argue that they are not. For the reasons that follow, the undersigned would agree with Defendants on this issue.

"The common ownership factor 'inquires as to whether a parent or related entity directly owns a separate corporate entity." *Butler, et al. v. Fluor Corporation, et al.*, \_\_\_\_ F.Supp.3d \_\_\_\_, 2021 WL 51412 (D.S.C. Jan. 6, 2021) (quoting *Guippone v. BH S & B Holdings LLC,* No. 09-cv-

---

[4] When using the term "Complaint," the Court means Plaintiffs' Amended Complaint, filed at ECF No. 37. The Court will use the verbiage "Complaint," however, for ease of reference and to avoid confusion.

1029-CM, 2010 WL 2077189, at *4 (S.D.N.Y. May 18, 2010)). As Defendants point out, however, there is no direct relationship between AHS and AHSW. Rather, and as was stated above, AHS owns 80% of AHSOV. AHSOV is the entity that has a direct ownership interest in AHSW – not AHS. Though AHS's percentage of ownership interest in AHSOV is quite high (80%), the undersigned nevertheless recognizes the lack of evidence of <u>direct</u> ownership between AHS and AHSW.

The undersigned is further satisfied that nothing about the sought-after discovery, i.e. the names of the owners of AHS, would change or alter any conclusion regarding the apparent uncommon ownership between AHS and AHSW. The question of common ownership involves ownership between corporate entities, not between or among persons. Therefore, the ownership interests of a person or people is not relevant to this issue, and the Court would **FIND** that this discovery can be of no assistance to Plaintiffs vis-à-vis this factor.

Notwithstanding this finding, further analysis reveals that the names of the owners of AHS are relevant to other factors which may be used to determine whether AHS and AHSW are a "single employer" for purposes of the WARN Act.

2. **Common directors and/or officers**

"The common directors and/or officers factor…looks to whether the two nominally separate corporations: (1) actually have the same people occupying officer or director positions with both companies; (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company." *Butler*, 2021 WL 51412, at *7 (*citing Pearson*, 247 F.3d at 497) (internal quotations omitted)). The names of the owners of AHS are relevant to this factor because the names would enable Plaintiffs to determine whether these owners occupied the

same or similar positions with AHSW. If these owners occupied anything like a director or officer position or were in a position of management within AHSW, then this would tend to indicate that AHS and AHSW shared corporate directors and/or officers, which would in turn help Plaintiffs to prove their allegation that AHS and AHSW operated as a single employer and/or single enterprise for purposes of the WARN Act. There is no evidence or allegation that this discovery is privileged, so it cannot be withheld on this basis. To the extent Defendants contend this discovery would violate the privacy of the owners of AHS, the undersigned would note the existence of a Protective Order (ECF No. 27), which would protect this discovery from dissemination to the general public. The Court would therefore **FIND** that the names of the owners of AHS are relevant to the common director/officers factor, are not privileged, and therefore should be produced.

### 3. De facto exercise of control

In addition to the above, the Court would **FIND** that the names of the owners of AHS are relevant to the question of whether AHS exercised de facto control over AHSW. "[T]he 'de facto exercise of control' factor allows the factfinder to consider, as has been done in the 'integrated enterprise' context whether a parent corporation was the final decisionmaker for the challenged practice." *Pearson*, 247 F.3d at 496.[5]

Here, the challenged practice is the closure of OVMC. Disclosing the names of the owners of AHS would enable Plaintiffs to investigate whether these individuals had any part in the decision to close OVMC. Such a contention is not simply a remote possibility, but rather is a reasonable averment based upon the record of the case. The owners of AHS are owners of or have an ownership interest in all of the relevant companies to this litigation. That is (and at the risk of

---

[5] This analysis does not appear to be limited to direct parent corporations, but also appears to apply to grandparent corporations as well. *See generally Pearson*, 247 F.3d. at 488. Therefore, and to the extent Defendants argue that the existence of AHSOV precludes a finding of de facto control, the same is not persuasive.

being repetitive) several individual persons own AHS; AHS owns 80% of AHSOV; AHSOV in turn owns (owned) 100% of AHSW, or OVMC. Given the nature and structure of these ownership interests, the closure of OVMC would have likely impacted the individual owners of AHS. As a result, it is reasonable to conclude that such a move would have been discussed by and/or among the owners of AHS beforehand. Plaintiffs should therefore be permitted to investigate these discussions, if there were any, and to determine whether these owners directed the closure of OVMC. As was noted above, there is no evidence or argument that the names of the owners of AHS are privileged, so this discovery cannot be withheld on this basis. Further, a protective order is in place which would protect against the general dissemination of this information. The names of the owners of AHS should therefore be produced.

## V.
## CONCLUSION

Accordingly, and for all of the foregoing reasons, Plaintiffs' Motion [63] to Compel should be and is hereby **GRANTED**.

It is so **ORDERED**.

Any party may, within **FOURTEEN DAYS** of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such an Order.

The Court **DIRECTS** the Clerk of the Court to mail a copy of this Order to any *pro se* party by certified mail, return receipt requested, and~~to~~ counsel of record herein.

Dated: 6-28-21

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE