## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| KEITH REED, LISA DOLENCE, ELIZABETH SCHENKEL, EMILY WINES, MARK GARAN, CHRISTINA LUCAS, and AUGUST ULLUM, individually and on behalf of others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>ALECTO HEALTHCARE SERVICES LLC, and ALECTO HEALTHCARE SERVICES WHEELING, LLC d/b/a OHIO VALLEY MEDICAL GROUP and d/b/a OVMC PHYSICIANS,<br><br>               Defendants. | Case No. 5:19-cv-00263-JPB<br><br>Judge John Preston Bailey<br><br>CLASS ACTION |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF CLASS CERTIFICATION

Timothy F. Cogan, Esq. (WVSB # 764)
**Cassidy, Cogan, Shapell & Voegelin, LC**
The First State Capitol Building
1413 Eoff Street
Wheeling, WV 26003
T.: (304) 232-8100

F. Alex Risovich, Esq. (WVSB # 10866)
**Risovich Law Offices, PLLC**
3023 Pennsylvania Avenue
Weirton, WV 26062
T.: (304)723-2588

Bren Pomponio, Esq. (WVSB # 7774)
Laura Davidson, Esq. (WVSB # 13832)
**Mountain State Justice, Inc.**
1217 Quarrier Street
Charleston, WV 25301
T.: (304) 344-3144

Maureen Davidson-Welling, Esq. (*pro hac vice*)
John Stember, Esq. (*pro hac vice*)
**Stember Cohn & Davidson-Welling, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445

Dated:  April 7, 2022

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

I. INTRODUCTION ...................................................................................1

II. STATEMENT OF FACTS .....................................................................2

    A. The Alecto Entities ....................................................................2

    B. Alecto Purchases OVMC .........................................................2

    C. Defendants' Joint Operation of OVMC ................................... 3

    D. AHS Decides to Divest Its Out-of-State Operations................3

    E. Defendants Announce OVMC Closure, But Give Inadequate Notice to Employees .............................................................................4

    F. Defendants Scheme to Evade WARN Act Liability.................6

    G. Class Representatives ...............................................................7

III. CLASS DEFINITION ...........................................................................7

IV. TRIAL PLAN .......................................................................................7

    A. Defendants Are "Employers" Covered by the WARN Act ................................... 8

    B. OVMC Shutdown was a Plant Closing that Triggered Class Entitlement to Notice .......................................................................................9

    C. Plaintiffs and the Class Did Not Receive Statutorily-Sufficient Notice ...............10

    D. Damages Can Be Proved on a Class-wide Basis from Defendants' Records........11

V. ARGUMENT .......................................................................................12

    A. Legal Standards.......................................................................12

    B. The Proposed Class is Ascertainable .....................................13

    C. The Proposed Class is Sufficiently-Numerous ......................14

    D. Rule 23(a)(2)'s Commonality Requirement is Satisfied........14

E.   Rule 23(a)(3)'s Typicality Requirement is Satisfied ..............................................16

F.   Proposed Representatives and Counsel are Adequate to Represent the Class ...................................................................................................................17

G.   Common Questions Predominate and Class Treatment is Superior to Other Methods of Adjudication ....................................................................................18

   1.   Predominance ..........................................................................................18

   2.   Superiority ...............................................................................................19

VI.   CONCLUSION ...................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 18, 19

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ........................................ 13

*Ballard v. Blue Shield of Southern West Virginia*, 543 F.2d 1980 (4th Cir. 1976) ..................... 14

*Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156 (S.D.W. Va. 1996) ........................................ 16, 17

*Brady v. Thurston Motor Lines*, 726 F.2d 136 (4th Cir. 1984) .................................................... 14

*Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009) ............................................................ 12, 13

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir.1993) ...................................... 14

*Childress v. Darby Lumber, Inc.*, 357 F.3d 1000 (9th Cir. 2004) ................................................. 8

*Christman v. American Cyanamid Co.*, 92 F.R.D. 441 (N.D.W. Va. 1981) ........................... 14, 15

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ....................................................... 12

*Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274 (S.D.W. Va. 2015) ................................... 18

*Gray v. Walt Disney Co.*, 915 F. Supp. 2d 725 (D. Md. 2013) .................................................... 10

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ............................................................................. 12

*Gunnells v. Healthplan Servs.*, 348 F.3d 417 (4th Cir. 2003) ......................................... 12, 18, 19

*Hosey v. Armour & Co.*, 743 F.2d 199 (4th Cir. 1984) ............................................................... 15

*Int'l Woodworkers of America, AFL-CIO v. Chesapeake Bay Plywood Corp.*, 659 F.2d
    1259 (4th Cir. 1981) ............................................................................................................. 16

*Kennedy v. Sullivan*, 138 F.R.D. 484 (N.D.W. Va. 1991) .......................................................... 16

*Local 2-1971 of PACE Intl Union v. Cooper*, 364 F. Supp. 2d 546 (W.D.N.C. 2005) ................. 8

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3rd Cir. 2001) ............................................... 9

*Pennington v. Fluor Corp.*, 320 F. Supp. 3d 762 (D.S.C. 2018) ................................................... 8

*Ray v. Mechel Bluestone, Inc.*, 2016 U.S. Dist. LEXIS 26314 (S.D.WV. Mar. 2, 2016) .............. 9

*Romeo v. Antero Res. Corp.*, 2020 WL 1430468 (N.D.W. Va. Mar. 3, 2020) ............................ 19

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp.2d 665 (D. Md. 2013) ...................................... 18

*Smith v. N. Virginia Orthodontics Ctr., LLC.*, No. 1:18-CV-1244, 2019 WL 3225686
    (E.D. Va. July 16, 2019) ...................................................................................................... 11

*Soutter v. Equifax Info. Servs.*, 307 F.R.D. 183 (E.D. Va. 2015) ............................................... 14

*Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) ......................................... 12

*Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136 (S.D.N.Y. 2004) ................................. 9

*Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011) ............................................................. 13, 14, 15

*Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164 (4th Cir. 2010)....................................17

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532(6th Cir. 2012) ...............................19

**Statutes**

29 U.S.C. § 2101 ...............................................................................................................1

29 U.S.C. § 2101(6) .........................................................................................................10

29 U.S.C. § 2101(a)(1) .......................................................................................................8

29 U.S.C. § 2101(a)(2) ................................................................................................9, 15

29 U.S.C. § 2102 ................................................................................................................7

29 U.S.C. § 2102(a)(1) .......................................................................................................9

29 U.S.C. § 2104(a)(1) .....................................................................................................12

**Other Authorities**

1 Herbert B. Newberg, Newberg on Class Actions § 3.13 (3d ed.1992)........................16

*1 Newberg on Class Actions* § 3:11 (5th ed.) ..............................................................14

**Rules**

Fed. R. Civ. P. 23 .........................................................................................................1, 13

Fed. R. Civ. P. 23(a) ...................................................................................................12, 15

Fed. R. Civ. P. 23(a)(1) ...................................................................................................14

Fed. R. Civ. P. 23(b) ...................................................................................................12, 19

Fed. R. Civ. P. 23(b)(3)................................................................................13, 18, 19, 20

Fed. R. Civ. P. 23(b)(3)(A)-(D) ......................................................................................19

Fed. R. Civ. P. 23(g) ........................................................................................................18

Fed. R. Civ. P. 23(g)(4)....................................................................................................17

**Regulations**

20 C.F.R. § 639.2 ........................................................................................................10, 11

20 C.F.R. § 639.3(a)(2) ......................................................................................................9

20 C.F.R. § 639.3(b) ..........................................................................................................9

20 C.F.R. § 639.7(a) .........................................................................................................10

20 C.F.R. § 639.7(d) .........................................................................................................11

20 C.F.R. § 639.8 ..............................................................................................................10

# I. INTRODUCTION[1]

Plaintiffs Keith Reed, Lisa Dolence, Elizabeth Schenkel, Emily Wines, Mark Garan and August Ullum (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Motion for Class Certification. This case arises from the 2019 decision of Defendants Alecto Healthcare Services, LLC ("AHS") and Alecto Healthcare Services Wheeling, LLC ("AHSW") (collectively, "Defendants") to close the Ohio Valley Medical Center ("OVMC") without providing Plaintiffs and hundreds of other affected employees with the 60-days advance notice required by the Worker Retraining and Notification Act of 1988 (the "WARN Act"), 29 U.S.C. § 2101, *et seq*. Instead of providing 60-days' notice, or 60-days' full pay and benefits in lieu of notice, Defendants ordered plant closure and cut employees' hours and pay, and tried to circumvent the WARN Act by keeping employees formally on its books until a date that they arbitrarily (and wrongly) decided was the end of the 60-day WARN Act notice period.

Plaintiffs move for certification of their WARN Act claims on behalf of a class of affected employees pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. Certification is appropriate given that the putative class satisfies the elements of Rule 23 and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs therefore respectfully request this Court certify the class as defined herein.

---

[1] Plaintiffs Reed, Dolence, Schenkel, Garan, and Wines filed this case, while Plaintiffs Ullum and Lucas commenced a separate suit against Defendants. Later, their claims were consolidated by this Court by filing an Amended Complaint adding Ullum and Lucas to this action. Plaintiff Lucas was voluntarily dismissed [ECF Doc. # 107] and is no longer a proposed class representative.

## II. STATEMENT OF FACTS[2]

### A.   The Alecto Entities

AHS is a privately-held Delaware Limited Liability Company headquartered in Irvine, California that owns and manages acute care hospitals and related businesses. AC ¶ 3; AA ¶ 3; PX 2 at 35971. AHS is 80% owner of Alecto Healthcare Services Ohio Valley, LLC ("AHSOV"), PX 3 at 3, which, in turn, owns and is the sole member of AHSW and Alecto Healthcare Services Martins Ferry, LLC ("AHSMF").[3] *Id.*; PX 4 at 2091. At relevant times, AHSW and AHSMF held the assets of OVMC and its sister hospital, East Ohio Regional Hospital ("EORH"), respectively.[4] *See* PX 4; PX 5 at 16435.

### B.   Alecto Purchases OVMC

For more than a century, OVMC operated as an acute-care hospital in Wheeling, West Virginia, providing medical services to the Ohio Valley, including an emergency department, medical/surgical services, and inpatient psychiatric services for children and adults.  *See* PX 5 at 16435. In 2017, AHS and its subsidiaries purchased OVMC and EORH from the Ohio Valley Health Services & Educ. Co. ("OVHS&E") in a sale leaseback transaction that resulted in the transfer of the OVMC and EORH hospital assets to AHSW and AHSMF, respectively. PX4; PX5 at 16436.  AHS financed acquisition by simultaneously selling OVMC and EORH's real property

---

[2] Citations to "AC ¶ ___" and "AA ¶ ___" are to Plaintiff's' Amended Complaint, [ECF Doc. # 37], and Defendants' Amended Answer [ECF Doc. # 39], respectively. Citations to "PX __ at ___" refer to the exhibits and their bates-stamps numbers, respectively, in the accompanying Appendix to Plaintiffs' Motion for Class Certification.

[3] AHSOV was grossly undercapitalized, *see* PX 6 at 16501, and had no separate existence from AHS anywhere except on paper. AHSOV had no employees of its own or any Board of Directors; its only three officers were AHS' officers; and its decisions were made by consent of its general member—AHS). *See.* PX 3 at 1.

[4] In 2020, EORH was sold to a new owner. PX 7.

(and 20% of AHSOV) to a real estate investment trust, MPT Corporation, and leasing back the real estate from MPT through a long-term lease. *See* PX 5 at 16436; PX 8 at 1-2. This structure allowed AHS to buy the hospitals without investing its own money but encumbered the already struggling hospitals with additional debt and expensive long-term leases.

**C.**  **Defendants' Joint Operation of OVMC**

Following the sale, AHS and AHSW jointly operated OVMC. AHSW was nominal operator of OVMC, PX 6 at 16454; as General Manager of AHSOV, id. at 16459, AHS controlled AHSOV's subsidiaries, including AHSW.  See PX 6 at 16468 (stating rights of control). *See also* PX 9 at 2219 (describing in AHSW bylaws the rights of control of the general manager).

AHS controlled all AHSW funds, PX 10, and had management rights over OVMC under a Management Services Agreement ("MSA") whereby AHSW, ASHMF, and AHSOV engaged AHS to manage each of them. PX 11 at 2190 (reflecting AHS' total control and the lack of separate decision-makers for AHS-subsidiaries). AHS VP Michael Sarrao signed the MSA on behalf of AHS *and* each AHS-subsidiary. *Id.* at 2203.

**D.**  **AHS Decides to Divest Its Out-of-State Operations**

In 2018, certain AHS' hospitals, including OVMC and EORH, struggled. *See* PX 12 at 33053. In March 2019, AHS decided to divest specified operations, including OVMC and EORH, which were cross-collateralized with certain other of AHS' more lucrative businesses. PX 12 at 33042; PX 52. OVMC and EORH had significant operating losses in 2018, PX 12 at 33053, and AHS decided on a plan that contemplated keeping these two hospitals open for six months while it tried to sell them.[5] *Id.* at 33045.

---

[5] AHS was interested only in selling OVMC or shutting it down; AHS was unwilling to spend further capital to operate or improve OVMC—as evidenced by Defendants' decision to forego and not use funds available under the lease agreement with MPT.  *See* PX 17 at 35154.

When AHS could not sell OVMC and EORH, it began planning to close these hospitals. By July 2, 2019, AHS executives had prepared draft WARN notices to regulators and employees on OVMC's closure. PX 13. On July 15, 2019, AHS executives met with West Virginia Secretary of Health and Human Resources, Bill Crouch, to alert him to the "extreme distress OVMC and EORH were under" and prepare state officials for the "very real possibility" that the hospitals would close in the coming weeks. PX 5 at 16436. In late July, AHS senior leadership proposed closing one or both hospitals. They held discussions with MPT and their bankers (CNHF) to get approvals needed to shut down without defaulting under AHS' various lease and credit agreements. PX 14 at 31918; PX 15; PX 19.

**E.    Defendants Announce OVMC Closure, but Give Inadequate Notice to Employees**

After MPT and the bankers signed off, on August 7, 2019, Defendants issued a press release announcing the closure of OVMC and EORH and a Q&A on the closure. PX 16-17, 20. The press release stated, in part,

> WHEELING. WV -August 7, 2019 Ohio Valley Medical Center in Wheeling, West Virginia ("OVMC") and East Ohio Regional Hospital in Martins Ferry, Ohio ("EORH") today announced that after a thorough evaluation of all available options, losses of more than $37 Million over the past two years, and an exhaustive but unsuccessful search for a strategic partner or buyer, OVMC and EORH have decided to begin the process to close both OVMC and EORH. OVMC and EORH will immediately begin working with federal, state, and local agencies to develop a definitive time line for the closure of both facilities. The closure process for facilities like OVMC and EORH typically takes 60 to 90 days and OVMC and EORH will share a definitive timeline with all interested parties in the coming days.

PX 16.

The next day, AHS executives contacted West Virginia and Ohio officials to inform them of the impending hospital closures and timeline. *See* PX 21-22. AHS' timeline submitted to West

Virginia identified October 1, 2019 as OVMC's target closure date.[6] PX 21 at Defendants' 00008 (listing target date on 2nd line below title). Thereafter, AHS corporate counsel Mark Bradshaw sent letters to employees under the signature of AHSW CEO Dunmyer. *See* PX 17 at 32059; PX 23. However, the letters were sent by first class mail (and would not arrive immediately), did not include termination dates or otherwise comply with WARN Act regulatory requirements, and falsely represented that OVMC would close on October 7, 2019. PX 23.

Instead of waiting 60 days, Defendants began the closure process immediately. More particularly, OVMC stopped accepting new patients after August 21, PX 21 at 9; cut offered services (*e.g.*, MRIs by August 19), PX 24 at 17589; terminated medical office leases by August 30, PX 25 at 15138; reduced inventory and told patients in mid-August that OVMC could close ***anytime before*** October 7. PX 26 at 33025. As they cut services, Defendants reduced employee hours to save themselves money. *See, e.g.*, PX 27 at 2730 (discussing calling employees off).

On September 3, 2019, AHS VP and General Counsel Michael Sarrao conferred with MPT. *See* PX 29 at 32016. Defendants then publicly announced that they were closing OVMC the next day, stating,

> after a thorough evaluation of all available options, losses of more than $37 Million over the past two years, an exhaustive, but unsuccessful, search for a strategic partner or buyer, and a lack of interest from the State of West Virginia, the hospital will suspend Acute and Emergency Medical services at 11:59 p.m. on September 4, 2019.

---

[6] It does not appear that Defendants ever actually intended to keep OVMC open as long as October 1, 2019. The timeline AHS circulated internally on August 6, 2019—just two days before AHS sent the final version to regulators—identified September 8, 2019 as OVMC's target closure date. PX 28 at 31922 ("Target Closure 9/8/19"). AHS revised its timeline to October 1, 2019 before submitting it to West Virginia state officials, but then shut OVMC down in early September around the time originally planned.

PX 45 at 16762. This was a plant closure within the meaning of the WARN Act.  *See* 20 C.F.R.

§ 639.3 (defining "plant closing").

**F.**     **Defendants Scheme to Evade WARN Act Liability**

On September 3, 2019, AHSW CEO Daniel Dunmyer discussed the impending closure of

OVMC at a hospital managers' meeting.  *See* PX30 at p.5, telling them that:

> OVMC will stop taking patients through the ED and for acute
> services after Sep. 3rd 11:59 PM. All inpatients remaining on
> Sep. 6th will need to be transferred out, preferably to EO. Hillcrest
> patients will all need to be transferred out as well.
> …
>
> **Employees will not be laid off at this time, but most will have
> their hours reduced to zero.** Low-earnings slips can be obtained
> from HR. Employees cannot be laid off during warn notice period,
> which ends Oct. 7th.
>
> During this period PTO can be used. Lump sum payout of remaining
> PTO during this period still requires resignation.
>
> A small number of staff will remain on site for packing and storing.

PX 31 at REED1 (emphasis supplied).

Consistent with Dunmyer's admissions at the September 3, 2019 meeting, Defendants shut

down OVMC and quickly eliminated the positions of most of OVMC's workforce (though some

got to work a few days longer to help pack up).  However, OVMC listed employees on the books

(as if they were still working) unless they resigned. *See* PX 32 at 3371 (On 9/4/19, employees

discussing not begin given hours anymore). As AHS VP Sarrao confirmed in an email on October

1, 2019, for OVMC and EORH combined, most employees on the company roster were not

actually working.  PX 33 at 25373.  And more cuts in those actually working were to occur that

day. *Id.*  Thus, by October 1, 2019, less than seven percent (7%) of the nearly 1,100 workers

employed at OVMC/EORH in August 2019 were still getting any work at all.  *See* PX 22-23

6

(indicating that as of 8/8/19, there were 736 and 343 positions at OVMC and EORH, respectively, that would be lost due to closure, which was "substantially the entire workforce").

On October 7, 2019, Defendants updated its books to mark as terminated OVMC and EORH employees who they had effectively laid off earlier, but whose separations they had delayed recognizing in an effort to evade WARN Act obligations. *See* PX 34 (stating employees were terminated 8/7/19); PX 35 at 14758 (reflecting 819 terminations on 10/7/19); PX 36 at 16730-16747 (listing OVMC and EORH staff).

## G.   <u>Class Representatives</u>

Like all members of the class, Named Plaintiffs Reed, Dolence, Schenkel, Wines, Garan, and Ullum worked at OVMC; like other class members, they lost employment as a result of Defendants' closure of OVMC; and like those other class members, they received insufficient notice of Alecto's plant closure. *See* PX 37-42 (Plaintiffs' Declarations).

## III.  CLASS DEFINITION

Plaintiffs move to certify a class comprised of All employees employed at Ohio Valley Medical Center ("OVMC") who suffered an employment loss as a result of OVMC's plant closing in 2019, without receiving sixty [60] days advance notice as required by the Worker Adjustment and Retraining Notification Act ("WARN Act").

## IV.  TRIAL PLAN

Plaintiffs can establish a violation of the WARN Act, 29 U.S.C. § 2102, *et seq.* on behalf of themselves and the putative Class through Defendants' records, testimony, and other common evidence.

A.  **Defendants Are "Employers" Covered By the WARN Act**

Plaintiffs can establish that AHSW and AHS are "employers" covered by the WARN Act.
*See* 29 U.S.C. § 2101(A)(1)(a)–(b) (defining an employer as a business "that employs—(A) 100
or more employees, excluding part-time employees; or (B) 100 or more employees who in the
aggregate work at least 4,000 hours per week (exclusive of hours of overtime) …"). It is undisputed
that AHSW is an "employer" subject to the WARN Act. AA ¶ 38 ("Defendants admit…that
[AHSW] is an 'employer' of Plaintiffs as defined by 29 U.S.C. § 2101(a)(1)."); PX 43 (Defs'
Answers to Requests for Admissions Nos. 1–2).

Further, Plaintiffs can prove that Defendants together constitute a single employer subject
to the WARN Act, since common evidence shows that AHSW was controlled by, and <u>not</u>
independent from, AHS.  As WARN Act regulations recognize, in pertinent part:

> subsidiaries which are wholly or partially owned by a parent
> company are treated as separate employers or as a part of the parent
> or contracting company depending upon the degree of their
> independence from the parent. Some of the factors to be considered
> in making this determination are (i) common ownership,
> (ii) common directors and/or officers, (iii) de facto exercise of
> control, (iv) unity of personnel policies emanating from a common
> source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2). *See Pennington v. Fluor Corp.*, 320 F. Supp. 3d 762, 769-70 (D.S.C.
2018). The DOL "factors" "are guideposts only" and "[s]ingle employer status ultimately depends
on all the circumstances of the case and is characterized as an absence of an arm-length relationship
found among unintegrated companies." *Local 2-1971 of PACE Intl Union v. Cooper*, 364 F. Supp.
2d 546, 564-65 (W.D.N.C. 2005) (quoting *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1005-
06 (9th Cir. 2004)).

Here, each of the DOL factors supports a finding that AHS and AHSW were a single
employer. Common evidence outlined, *supra*, shows that AHS owned, managed, and heavily

8

controlled AHSW.[7]  Moreover, AHS developed the notices, timelines and policies, and made the decision to close OVMC without 60 days-notice that are at the center of this case. *See Ray v. Mechel Bluestone, Inc.*, 2016 U.S. Dist. WL 865322, at *4 (S.D.W.Va. Mar. 2, 2016) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 491 (3rd Cir. 2001)) (*de facto* control factor refers to "whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for this litigation."); *Pennington*, 320 F. Supp. 3d at 771 (citing *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 143 (S.D.N.Y. 2004)) ("[i]n the context of the WARN Act, the decision to effect a mass layoff is the single most important personnel policy."). Plaintiffs can prove from common evidence that AHS and AHSW acted as a single employer, and should be treated as such. 20 C.F.R. § 639.3(a)(2).

**B.**    **OVMC Shutdown was a Plant Closing that Triggered Class Entitlement to Notice**

Plaintiffs can prove that Defendants ordered a plant closure, triggering Class entitlement to 60 days advance written notice. *See* 29 U.S.C. § 2102(a)(1) (requiring employers to give sixty (60) days written notice of a mass layoff or plant closing to affected employees). The WARN Act defines "plant closing" as "…the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss…during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2). "An employment action that results in the effective cessation of production or the work performed by a unit, even if a few employees remain, is a shutdown." 20 C.F.R. § 639.3(b).

---

[7] AHS exercised a high degree of control over AHSW—so much so that AHSW CEO Dunmyer complained to AHS executives in August 2019 that he and AHSW CFO Coello were being excluded and not permitted to provide "input" into organizational decisions. PX 44 at 17440 ("Every day (MRI, drugs etc.) we are hearing of decisions being made without even being part of the discussion let alone being the ones to make the decision.").

Here, Defendants ordered a plant closing on September 4, 2019, when Defendants' shut down OVMC late on September 4, 2019, PX 45. The last patients were transferred out by September 6, 2019, PX 31. And Defendants cut employees' hours and pay, such that within 30 days, substantially OVMC's entire workforce was no longer working.[8] PX 33 at 25373. Nor does it matter that Defendants kept employees on the books, after it stopped paying them until the date it believed "the 60-day clock" had run. *See, e.g., Gray v. Walt Disney Co.*, 915 F. Supp. 2d 725, 732 (D. Md. 2013) ("employers are not permitted to actually close a plant yet technically prevent their employees from suffering an "employment loss" under the Act until the 60–day clock has run…"). "[O]nly *full* pay—pay that replaces a 60–day continuation of employment following a plant closing—suffices in lieu of notice." *Id.*

## C.    Plaintiffs and the Class Did Not Receive Statutorily-Sufficient Notice

Plaintiffs will be able to prove that the Class did not receive adequate or 60-days' notice. The WARN Act "requires employers who are planning a plant closing or a mass layoff to give affected employees at least 60 days' notice of such an employment action." 20 C.F.R. § 639.2. Delivery method must be "designed to ensure receipt of notice of least 60 days before separation." 20 C.F.R. § 639.8. The notice is to be in writing, "specific," and based on "the best information available…at the time notice is served." 20 C.F.R. § 639.7(a). Notice to affected employees must tell them: "whether the planned action is expected to be permanent or temporary;" the "expected date when the plant closing or mass layoff will commence;" the "expected date when the individual

---

[8] Defendants' payroll records reflect that a number of employees, including Plaintiff Mark Garan, accepted new positions after Defendants shut down OVMC. PX 35. However, leaving after a position is permanently eliminated and hours reduced is not a "voluntary" departure within the meaning of 29 U.S.C. § 2101(6). Even without counting this group, hundreds of "affected employees" from OVMC suffered an employment loss within a 30-day period, sufficient to satisfy statutory requirements for a "plant closure."

employee will be separated;" (3) "whether or not bumping rights exist;" and the name and phone number of a company official to contact for more information. 20 C.F.R. § 639.7(d).

Here, Defendants did not comply with legal requirements, and the notice given was defective and insufficient. Most fundamentally, Defendants' August 8, 2018 letters failed to give notice of the employment loss that actually occurred. PX 23. These letters do not specify a termination date or bumping rights and were not based on "best information available." Instead, they misrepresented that OVMC would close on or after October 7, 2019 though Defendants expected it to close sooner, and planned to cut hours sooner. The October 7, 2019 date in the letters was a sham and a record-keeping fiction, wholly unrelated to the dates on which the Class suffered employment loss. In truth, the notice given amounted to no notice at all.

The substantive defects in the August 8 letters justify the conclusion that the Class received no notice (and that damages are due for the full 60-days). However, even if the content of these letters met statutory requirements (and it did not), these letters were not sent timely, and did not provide affected employees with 60 days' notice as required by law. 20 C.F.R. § 639.2. Indeed, Defendants shut OVMC down on September 4, 2019—just 27 days after they mailed the letters.[9]

**D.** **Damages Can Be Proved on a Class-wide Basis from Defendants' Records**

Plaintiffs can prove Class damages based on Defendants' pay and timekeeping records. Pursuant to 29 U.S.C. § 2104(a), where an employer "orders a plant closing or mass layoff in violation of section 2102" it shall be liable to each aggrieved employee "who suffers an

---

[9] Even if the letters were mailed on August 8, 2019, they would not have been received that day. Applying the customary three-day mailbox rule (and as USPS does not deliver on Sundays), at best, employees received these letters on Monday, August 12, 2019. *See Smith v. N. Virginia Orthodontics Ctr., LLC.*, No. 1:18-CV-1244, 2019 WL 3225686, at *3 (E.D. Va. July 16, 2019) (noting the Fourth Circuit has held that "courts presume receipt [of a letter] three days after mailing.").

employment loss as a result" for "backpay for each day of violation" and benefits for "a maximum of sixty days." 29 U.S.C. § 2104(a)(1).

Here, Defendants produced timekeeping records reflecting the last date each affected employee actually worked, as well as hours worked, wage rate, and paid time off ("PTO") in summer and fall 2019. PX 1 (Decl. ¶ 57); PX 53. Defendants also produced documents for each affected employee indicating the average weekly hours, full/part time status, formal date of separation and reason for separation. PX 35-36. Thus, Class members' identities can be ascertained, and their damages calculated, from Defendants pay and timekeeping records.

## V. ARGUMENT

Liability for Class claims turns on Defendants' common course of conduct outlined above, and the proposed Class meets the requirements of both Rule 23(a) and Rule 23(b). Class treatment is well-warranted.

### A. <u>Legal Standards</u>

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). They promote judicial economy, *see Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), and "afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions," *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 424 (4th Cir. 2003). To support a motion for class certification, the proponent of class certification must satisfy all four of the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009); *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006).

Rule 23(a) requires a Plaintiff to demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The requirements of Rule 23(b) are met when,

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A court must "rigorously" examine whether plaintiffs meet Rule 23 requirements, *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015) (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350-51 (2011)). This may require probing behind the pleadings, but it is not a "license to engage in free-ranging merit inquiries…." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). Consideration of the merits should only be to the extent necessary to determine whether the Rule 23 prerequisites are satisfied. *Id.*

## B.      The Proposed Class is Ascertainable

Here, the proposed Class can be "readily identif[ied]" based on "objective criteria," *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019) (citation omitted)—namely, employee status (worked at OVMC), reason for separation, compensation (full/part-time), and dates of work at OVMC—all of which can be determined from available records. Defendants kept

records of who was employed at OVMC, whether they were full-time or part-time, the days they worked, and amounts paid. *See* PX 1 (Decl. ¶¶57-58); PX 53; PX 35-36. Defendants also sent the August 8 letters to affected employees. *See* PX 23. The Class is ascertainable.

## C.      The Proposed Class is Sufficiently-Numerous

Rule 23(a)(1) requires a class "so numerous that joinder of all members is impracticable." However, "[i]mpracticality of joinder is not determined by a numerical test alone." *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D.W. Va. 1981) (citing *Ballard v. Blue Shield of Southern West Virginia*, 543 F.2d 1080 (4th Cir. 1976)). If a proposed class exceeds 40, joinder is usually impracticable. *1 Newberg on Class Actions* § 3:11 (5th ed.).

Here, Defendants' records show that as of August 8, 2019, there were 736 employees whose positions would be lost due to OVMC's closure. *See* PX 23. Even if a few affected employees had non-qualifying separations, *see* PX 35, the Class still numbers in the hundreds, which is more than sufficient to satisfy numerosity. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir.1993) (affirming that "480 potential class members would easily satisfy the numerosity requirement"); *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (approving class up 74 persons).

## D.      Rule 23(a)(2)'s Commonality Requirement is Satisfied

Rule 23(a)(2) requires "questions of law or fact common to the class." "'Even a single [common] question' will do," *Dukes*, 564 U.S. at 359 (citation omitted), so long as it is able to generate common answers that drive resolution of issues central to each class member's case "in one stroke." *Id.* at 350. If "common evidence will generate a common answer to help resolve an element within the class' common claim," then *Dukes*' "one stroke" criteria is satisfied. *Souter v. Equifax Info. Servs.*, 307 F.R.D. 183, 200 (E.D. Va. 2015).

Here, Plaintiffs have identified numerous common questions of law and fact, whose resolution will advance the litigation for all class members, including:

      a.      Whether Defendants are an "employer" under the WARN Act;

      b.      Whether Defendants comprise a "single employer" or "single enterprise" under applicable legal authority;

      c.      Whether Defendants' discontinuation of OVMC operations was a "plant closing" under the WARN Act. 29 U.S.C. § 2101(a)(2); and

      d.      Whether Defendants' reduction of Class members' hours was a "termination" or other "employment loss" under the WARN Act.

AC ¶ 28 (a)–(d).

Each of these questions arises from Defendants' uniform treatment of the putative Class; all can be answered by common evidence and "in one stroke." *Dukes*, 564 U.S. at 350. Indeed, "[b]ecause WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation." *Cashman v. Dolce Int'l/Hartford*, 225 F.R.D. 73, 90 (D. Conn. 2004) (citing *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)).

Even if there were some minor factual variations among the putative Class Members, it would not render class certification inappropriate because the class claim arises out of a single plant closing. *See Christman*, 92 F.R.D. at 452 n.28 ("When the [class] claim arises out of the same legal or remedial theory, the presence of factual variation is normally not sufficient to preclude class action treatment."); *see also Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) ("Despite the presence of individual factual questions, the commonality criterion of Rule 23(a) is satisfied by the common questions of law presented."). Because the class claims arise from the same legal theories and triggering event under the WARN Act, the commonality requirement is satisfied.

E.   **Rule 23(a)(3)'s Typicality Requirement is Satisfied**

Rule 23(a)(3) requires that "claims…of the representative parties [be] typical of the claims…of the class." Claims need not be identical, but a class representative's interest in prosecuting his case must tend to advance the interests of absent class members. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 162 (S.D.W. Va. 1996) (quoting 1 Herbert B. Newberg, Newberg on Class Actions § 3.13 (3d ed.1992)). In other words, "precise, mirror-image identity" of injuries is not required. *Kennedy v. Sullivan*, 138 F.R.D. 484, 488 (N.D.W. Va. 1991) (quoting *Int'l Woodworkers of America, AFL-CIO v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981)).

The Named Plaintiffs' claims are typical as they arise from the same event, *i.e.*, closure of OVMC, and rely on the same legal theories as the claims of the proposed Class. Plaintiffs and the Class suffered the same injury (insufficient notice before plant closure), and have the same interest (*i.e.*, recovery of statutory damages for each day of violation). Moreover, Plaintiffs' proof of their own claims—*e.g.*, that Defendants are a single employer; that Defendants ordered a plant closing on September 4; that Defendants' purported notice was defective; and that Defendants' elimination of employee work hours and pay were effectively an "employment loss" even though these separations were not formally recognized on the company books until later—will advance Class claims. *See Deiter*, 436 F.3d at 466. The Named Plaintiffs' claims are therefore typical of the Class as a whole, and the typicality prerequisite is satisfied.

F.   **Proposed Representatives and Counsel are Adequate to Represent the Class**

Adequacy requires that the Court is satisfied that proposed class representatives and counsel will "fairly and adequately protect the interests of the class." Rule 23(a)(4), (g)(4). "[T]he two factors that are now predominantly recognized as the basic guidelines for the Rule 23(a)(4) prerequisite [as to representative plaintiffs] are: (1) absence of conflict and (2) assurance of vigorous prosecution." *Rhone-Poulenc*, 173 F.R.D. at 162 (quoting *Newberg & Conte*, supra, § 3.22). Regarding adequacy of class counsel, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id*.

Here, Plaintiffs have shown they will fairly and adequately represent the Class. Plaintiffs are interested in and have participated in these proceedings. [*See* ECF Doc. ## 108-113.] Plaintiffs recognize their obligations to pursue class interests, PX 37-42, and have no conflicts with the Class, *id.*, much less any "fundamental" conflicts of the type that would defeat adequacy under Rule 23(a)(4). *See Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("A conflict is not fundamental when…class members 'share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants].'") (citation omitted). Their interests are aligned, as the named Plaintiffs and other members of the putative Class have a common interest in seeing that the workforce recovers amounts due under the WARN Act.

Plaintiffs have retained counsel with significant experience in WARN Act cases and employee benefit class actions, with sufficient resources to represent the Class. *See* PX 46-51 (Pomponio/Stember/Cogan/Risovich/Davidson-Welling/Davidson   Declarations).   Plaintiffs' counsel have vigorously prosecuted the case to date, [*see* ECF Doc. ## 16, 42, 44-52, 63, 69, 71,

92-101, and 108-113], and will fairly and adequately represent the proposed Class. Accordingly, Rule 23(a)(4) and Rule 23(g)'s adequacy requirements are met.

**G.      Common Questions Predominate and Class Treatment is Superior to Other Methods of Adjudication**

The putative Class meets the requirements of Rule 23(b)(3), as "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**1.      Predominance**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It "focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp.2d 665, 677 (D. Md. 2013). Critically, "[c]ommon liability issues may still predominate even when individualized inquiry is required in other areas." *Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 296 (S.D.W. Va. 2015) (citing *Gunnells*, 348 F.3d at 429).

Here, common issues plainly predominate. The key factual and legal questions all turn on Defendants' uniform treatment of the Class, including the following: whether Defendants shut down OVMC on September 4, 2019; whether the September 4, 2019 shutdown was a "plant closing;" whether Defendants' August 8, 2019 letters were sufficient to start the 60-day notice period; whether Defendants' could prevent "employment loss" by keeping affected employees on the books even though they were no longer working or getting full pay and benefits. Predominance is satisfied, since resolution of the common questions will largely or completely dispose of the

action. *Romeo v. Antero Res. Corp.*, 2020 WL 1430468, at *9 (N.D.W. Va. Mar. 23, 2020)

(certifying under (b)(3) where resolution of common questions would largely dispose of action).

> **2.   Superiority**

Rule 23(b)(3) also requires that a proposed class action be superior to other methods of

adjudication so that it will "'achieve economies of time, effort, and expense, and

promote…uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results.'" *Amchem Prod.*, 521 U.S. at 615 (quotations

omitted). When determining if a class action is superior, courts consider four relevant guidelines:

> 1.   class member interest in individually controlling prosecution or
>      defense of separate actions;
>
> 2.   extent and nature of any litigation concerning the controversy
>      already begun by or against class members;
>
> 3.   desirability or undesirability of concentrating the litigation of the
>      claims in the particular forum; and
>
> 4.   likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Class-wide treatment is superior to other adjudication options. *See Young v. Nationwide*

*Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("[C]ases alleging a single course of wrongful

conduct are particularly well-suited to class certification."). Class members have little or no

interest in controlling prosecution of separate lawsuits, given that each class member has identical

claims arising from identical facts, and the individuals' damages are relatively modest (maximum

of 60-days' damages).   Certification will achieve "economies of time, effort, and expense,"

*Amchem*, 521 U.S. at 615, and avoid numerous individual trials "in which core issues …would be

relitigated, testimony by the same witnesses, duplicative discovery efforts, etc.," *Gunnels*,

348 F.3d at 428-29. This litigation has involved extensive discovery, including production and

review of nearly 40,000 pages of documents, and it would expend resources without any benefit for other actions to have to retread that ground. Finally, there are no foreseeable difficulties in managing this action, which encompasses a readily identifiable, 500-plus person class, and damages that are statutorily mandated and can be calculated based on Defendants' records. Therefore, this action can be certified for class treatment pursuant to Rule 23(b)(3).

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class as defined above, and appoint Plaintiffs' counsel as class counsel.

Respectfully submitted,

/s/ Bren J. Pomponio

| | |
|---|---|
| Timothy F. Cogan, Esq. (WVSB # 764) | Bren Pomponio, Esq. (WVSB # 7774) |
| tfc@walslaw.com | bren@msjlaw.org |
| **Cassidy, Cogan, Shapell & Voegelin, LC** | **Mountain State Justice, Inc.** |
| The First State Capitol Building | 1217 Quarrier Street |
| 1413 Eoff Street | Charleston, WV 25301 |
| Wheeling, WV 26003 | T.: (304) 344-3144 |
| T.: (304) 232-8100 | |
| | Maureen Davidson-Welling, Esq. (*pro hac vice*) |
| F. Alex Risovich, Esq. (WVSB # 10866) | mdw@stembercohn.com |
| alex.risovich@risovichlaw.com | John Stember, Esq. (*pro hac vice*) |
| **Risovich Law Offices, PLLC** | jstember@stembercohn.com |
| 3023 Pennsylvania Avenue | **Stember Cohn & Davidson-Welling, LLC** |
| Weirton, WV 26062 | The Hartley Rose Building |
| T.: (304)723-2588 | 425 First Avenue, 7th Floor |
| F.: (304)723-2504 | Pittsburgh, PA  15219 |
| | T.: (412) 338-1445 |
| Dated:  April 7, 2022 | *Attorneys for Plaintiffs* |