

August 8, 2019

Jolynn Marra                                          <u>Via Federal Express & E-Mail</u>
Director
Office of Health Facility Licensure & Certification
Department of Health & Human Resources
408 Leon Sullivan Way
Charleston, West Virginia 25301-1713

      Re:    Ohio Valley Medical Center

Dear Ms. Marra:

Thank you for taking the time to speak with Michael Garrison and I about Ohio Valley Medical Center ("OVMC").  As I discussed on our call, OVMC has made the difficult decision o commence the closure process as the ongoing losses at OVMC are not sustainable.  While OVMC remains hopeful that a buyer can be found for OVMC, we do believe it is necessary to start the closure process at this time.  As part of this process, OVMC is committed to working with you and your team at OHFLAC on a smooth transition in compliance with all applicable laws and regulations.  Towards this end, I have attached a <u>draft</u> timeline with respect to OVMC's operations over the next sixty (60) days and the wind down of operations.  We would welcome and appreciate any input you and your team may have with respect to the draft timeline and the closure process and the opportunity to speak with Mr. Wright and Ms. Beard about the overall process.  Sylvia Ventura, Alecto Healthcare's Vice-President of Clinical Affairs and Operations, and Lynette DeBertrand, OVMC's Chief Nursing Officer, will be working with me on the transition and closure process.

Thank you again for the taking the time to speak with us and we look forward to working with your team.  Please call me at (949) 398-8358 (Office) or (949) 689-2243 (Cell) with any questions.

Sincerely,

Michael J. Sarrao
Executive Vice-President

Enclosure

cc:    Sylvia Ventura, RN, MN, NE-BC (w/ enclosure)
       Lynette DeBertrand, MSN, RN-C OB/EFM, FACCE (w/ enclosure)
       Michael Garrison, Esq. (w/ enclosure)

**EXHIBIT 1**

DEFENDANTS_000007

**Closure Timeline for OVMC**

Medicare - Publish Notice 15 Days Before Closure; WV - Publish Notice 21 Days Before Closure
10/1/2019
All Dates Assume Physician Coverage and Staffing
**Ohio Valley Medical Center**

| | Action Item | Owner | Deadline |
|---|---|---|---|
| **1.0** | **Notification to Federal and State Agencies & Accreditation Bodies** | | |
| 1.1 | Center for Medicare and Medicaid Services (CMS) | Sarrao | 8/12/2019 |
| 1.1.1 | Publish Notice in Newspaper 15 Days Before Closure per 42 CFR 489.52(c) | | 8/12/2019 |
| 1.2 | Nuclear Regulatory Commission | | 8/12/2019 |
| 1.3 | Drug Enforcement Administration | | 8/12/2019 |
| 1.4 | FTC (Radio Channels) | | 8/12/2019 |
| 1.5 | WV Department of Health & Human Resources | | 8/12/2019 |
| 1.6 | Bureau for Behavioral Health & Health Facilities | | 8/12/2019 |
| 1.7 | Office for Emergency Medical Services | | 8/12/2019 |
| 1.8 | Health Care Authority | | 8/12/2019 |
| 1.9 | Office of Health Facility Licensure & Certification | | 8/12/2019 |
| 1.9.1 | Publish Notice in Newspaper 21 Days Before Closure per WV Code 16-5B-16 | | 8/12/2019 |
| 1.10 | Bureau for Medical Services (WV Medicaid) | | 8/12/2019 |
| 1.11 | Board of Medicine | | 8/12/2019 |
| 1.12 | Division of Labor/Workforce WV | | 8/12/2019 |
| 1.13 | City of Wheeling | | 8/12/2019 |
| 1.14 | Joint Commission | | 8/12/2019 |
| 1.15 | HFAP | | 8/12/2019 |
| 1.16 | College of American Pathologists | | 8/12/2019 |
| 1.17 | ACGME (Residency Program) | | 8/12/2019 |

Page 1 of 4

**EXHIBIT 1**

DEFENDANTS_000008

| | Action Item | Owner | Deadline |
|---|---|---|---|
| **2.0** | **Suspension/Closure of Outpatient Services** | | |
| 2.1 | **Stop Accepting New Patients for Outpatient Services** | | |
| 2.1.1 | Sleep Lab | | 8/21/2019 |
| 2.1.2 | Cardiac Testing | | 8/21/2019 |
| 2.1.3 | Physical Therapy | | 8/21/2019 |
| 2.1.4 | Occupational Therapy | | 8/21/2019 |
| 2.1.5 | Speech Therapy | | 8/21/2019 |
| 2.1.6 | Medical Oncology | | 8/21/2019 |
| 2.1.7 | Radiation Oncology | | 8/21/2019 |
| 2.1.8 | Laboratory Services | | 8/21/2019 |
| 2.1.9 | Radiology | | 8/21/2019 |
| 2.1.10 | Outpatient Behavioral Health | | 8/21/2019 |
| 2.2 | **Notice to Existing Patients Utilizing Outpatient Services Re: Suspension** | | |
| 2.2.1 | Sleep Lab | | 8/12/2019 |
| 2.2.2 | Cardiac Testing | | 8/12/2019 |
| 2.2.3 | Physical Therapy | | 8/12/2019 |
| 2.2.4 | Occupational Therapy | | 8/12/2019 |
| 2.2.5 | Speech Therapy | | 8/12/2019 |
| 2.2.6 | Medical Oncology | | 8/12/2019 |
| 2.2.7 | Radiation Oncology | | 8/12/2019 |
| 2.2.8 | Laboratory Services | | 8/12/2019 |
| 2.2.9 | Radiology | | 8/12/2019 |
| 2.2.10 | The Prescription Center (Outpatient Pharmacy) | | 8/12/2019 |
| 2.2.10 | Outpatient Behavioral Health | | 8/12/2019 |
| 2.3 | **Stop Providing Outpatient Services to Existing Patients/Suspend Services** | | |
| 2.3.1 | Sleep Lab | | 9/23/2019 |
| 2.3.2 | Cardiac Testing | | 9/23/2019 |
| 2.3.3 | Physical Therapy | | 9/23/2019 |
| 2.3.4 | Occupational Therapy | | 9/23/2019 |
| 2.3.5 | Speech Therapy | | 9/23/2019 |
| 2.3.6 | Medical Oncology | | 9/23/2019 |
| 2.3.7 | Radiation Oncology | | 9/23/2019 |
| 2.3.8 | Laboratory Services | | 9/23/2019 |
| 2.3.9 | Radiology | | 9/23/2019 |
| 2.3.10 | The Prescription Center (Outpatient Pharmacy) | | 9/23/2019 |
| 2.3.10 | Outpatient Behavioral Health | | 9/23/2019 |
| **3.0** | **Suspension/Closure of Surgical Services** | | |
| 3.1 | **Stop Accepting New Patients for Elective Surgeries** | | |
| 3.1.1 | Outpatient Surgery | | 9/16/2019 |
| 3.1.2 | Surgeries Requiring Inpatient Admission | | 9/23/2019 |

**EXHIBIT 1**

DEFENDANTS_000009

| | Action Item | Owner | Deadline |
|---|---|---|---|
| 3.2 | **Notify Existing Patients with Scheduled Surgeries** | | |
| 3.2.1 | Outpatient Surgery | | 8/12/2019 |
| 3.2.2 | Surgeries Requiring Inpatient Admission | | 8/12/2019 |
| 3.3 | **Stop Performing Elective Surgeries** | | |
| 3.3.1 | Outpatient Surgery | | 9/23/2019 |
| 3.3.2 | Surgeries Requiring Inpatient Admission | | 9/16/2019 |
| **4.0** | **Obstetrical Services** | | |
| 4.1 | Stop Scheduling Planned Deliveries | | 8/16/2019 |
| 4.2 | Notify Patients of No New Planned Deliveries | | 8/16/2019 |
| 4.3 | Notify EMS Re: No Obstetrical Coverage for Emergency Department | | 8/9/2019 |
| 4.4 | Stop Planned/Scheduled Deliveries | | 9/19/2019 |
| 4.5 | Stop Emergency Deliveries | | 9/23/2019 |
| 4.6 | Suspend All Obstetrical Services | | 9/23/2019 |
| **5.0** | **Inpatient Services (Excluding Behavioral Health)** | | |
| 5.1 | Notify Medical Staff of No Direct Admissions as of 9/16/19 | | 8/9/2019 |
| 5.2 | Stop Direct Admissions | | 9/16/2019 |
| 5.3 | Stop Admissions from Emergency Department (See Item 6.0 Below) | | 9/21/2019 |
| 5.4 | Transfer Remaining Inpatients (Excluding Behavioral Health) | | 9/27/2019 |
| 5.5 | Suspend All Inpatient Services (Excluding Behavioral Health) | | 9/27/2019 |

**EXHIBIT 1**

DEFENDANTS_000010

| | Action Item | Owner | Deadline |
|---|---|---|---|
| **6.0** | **Emergency Services** | | |
| 6.1 | Notify EMS of Planned Suspension of Services and Limitations | | 8/12/2019 |
| 6.2 | Notify Public of Planned Suspension of Services | | 8/12/2019 |
| 6.3 | Stop Accepting EMS Runs | | 9/16/2019 |
| 6.4 | Stop Accepting Walk-Ins | | 9/23/2019 |
| | Suspend Emergency Services | | 9/24/2019 |
| **7.0** | **Inpatient Behavioral Health Services** | Sarrao | |
| 7.1 | Notify Referral Sources of Planned Suspension of Services | | 8/12/2019 |
| 7.2 | Notify Existing Patients/Families of Planned Suspension of Services | | 8/12/2019 |
| 7.3 | Identify Alternative Facilities | | 8/12/2019 |
| 7.4 | Notify Public of Planned Suspension of Services | | 8/12/2019 |
| 7.5 | Stop Admitting New Patients - Adult Unit | | 9/16/2019 |
| 7.6 | Stop Admitting Existing Patients - Adult Unit | | 9/16/2019 |
| 7.7 | Stop Admitting New Patients - Adolescent Unit | | 9/16/2019 |
| 7.8 | Stop Admitting Existing Patients - Adolescent Unit | | 9/16/2019 |
| 7.9 | Transfer Remaing Patients | | 9/23/2019 |
| 7.10 | Suspend all Inpatient Behavioral Health Services | | 9/24/2019 |
| **8.0** | **Medical Records** | | |
| 8.1 | Secure Medical Records | | 8/12/2019 |
| 8.2 | Notice to Public Regarding Availability of Medical Records | | 8/15/2019 |
| 8.3 | Make Arrangements for Continued Storage of Medical Records | | 9/15/2019 |

**EXHIBIT 1**

DEFENDANTS_000011

**To:** Dianna Ciancone [dciancone@ovrh.org]
**From:** Amy Allen
**Sent:** Mon 8/26/2019 7:52:22 AM
**Subject:** Re: Huddle Highlights 8/23/19
**Received:** Mon 8/26/2019 7:52:22 AM

Thank you for this, you are amazing!!!
Amy


*Amy M. Allen*

*Purchasing/Materials Manager*
*Alecto Healthcare Services Wheeling LLC*
*2000 Eoff Street, Wheeling WV 26003*
*Phone: 304-234-8206*
*Fax: 304-234-1660*
*aallen@ovrh.org*

*~Individually we are one drop but together we are an ocean!  Ryunosuke Satoro*


On Fri, Aug 23, 2019 at 8:58 AM Dianna Ciancone <dciancone@ovrh.org> wrote:

- Transition our of Dietary kitchen went very well. D. Dunmyer offered thanks to Trina andall of the staff for their hard work to make this happen.
- The last 3 401K payments that were outstanding were made to Wells Fargo yesterday.
- Governor Justice, WVU President Gordon Ghee, and Congressman McKinley as well as some of their hospital presidents and co-horts met. You may have heard Bloom Daddy stating that the hospitals would not close. At this time no such announcement. Congressman McKinley let us know that the Governor is working on a plan to help us out. On Wednesday the Engineers walked through the hospitals and believe them to be in good sound shape. Governor is continuing to work on things and hopes that as soon as he can get a plan he would want to have a press conference. Yesterday we met with Congressman Johnson (OH) he was going to call Governor DeWine and 4 hospitals to ask for help.
- Please remember to call staff off if you don't need them (low census). We need to continue to do what we can to strengthen what we offer and continue to show people we are viable. However, we still must continue the closure process. Please continue to hang in there.
- OR 7
- EMSTAR saw 67 yesterday of those 11 admits and 12 by EMS
- TCU/5W 9
- Radiology inquired about when to stop scheduling patients. Was asked not to do anything at this time.
- Census is 45 of those only 11 are medical
- Pscyh 25 adults and 9 RCB
- Over 5 days corporate uncoded is $615,000 of that $195,000 is OV's. Have started to utilize Coders and Clinical Documentation Specialists to help with medical records requests as their work dwindles


--
Dianna Ciancone
Executive Assistant
Ohio Valley Medical Group
2000 Eoff St.
Wheeling, WV 26003
(304) 234-8466

**EXHIBIT 1** DEFENDANTS_002730

Confidentiality Notice: This message, including any attachments, is for the sole use of the individual or entity to which it is addressed. This message may contain confidential health and/or legally privileged information. If you are not the named recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance of the contents of this message is strictly prohibited. If you have received this message in error, please notify sender immediately and destroy all copies of the original message.

**To:** pamela brown[pbrown@ovrh.org]; jacqueline poff[jpoff@ovrh.org]; evelyn schultz[eschultz@ovrh.org]; dolly holt[dholt@ovrh.org]; kathy mortimer[kmortimer@ovrh.org]; carol crawford[ccrawford@ovrh.org]; patricia kurtzman[pkurtzman@ovrh.org]; carla harris[cjharris@ovrh.org]; David Harris[dsharris@ovrh.org]; Michael Sullesta[msullesta@ovrh.org]; Augustine Valentino[avalentino@ovrh.org]; Alexandra Jeffords[ajeffords@ovrh.org]; elizabeth schenkel[eschenkel@ovrh.org]; Carol Moscato[cmoscato@ovrh.org]; april azallion[aazallion@ovrh.org]; Emily Wines[ewines@ovrh.org]
**From:** cynthia bruno
**Sent:** Mon 9/9/2019 11:16:05 AM
**Subject:** help list
**Received:** Mon 9/9/2019 11:17:36 AM

We are compiling a Help List for other depts. that are still operating or need help with closure activities. For example, Med Records may need help answering phones or greeting people at their front desk . If you are interested if having your name placed on that list, email me along with your contact number . Thanks

--
Cynthia Bruno RNC
Nurse Manager TCU, ICU
Ohio Valley Medical Center
Wheeling, WV 26003
Office 304-234-8442
Pager 304-331-8617

Confidentiality Notice: This message, including any attachments, is for the sole use of the individual or entity to which it is addressed. This message may contain confidential health and/or legally privileged information. If you are not the named recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance of the contents of this message is strictly prohibited. If you have received this message in error, please notify sender immediately and destroy all copies of the original message.

**To:**   OV OPS[ovops@ovrh.org]; deborah kinney[dkinney@ovrh.org]; OV PACU[ovpacu@ovrh.org]; OV-PACU RN[ovpacurn@ovrh.org]
**From:**   terri sonnefeld
**Sent:**   Fri 9/6/2019 11:51:03 AM
**Subject:**   Re: "Help List"
**Received:**   Fri 9/6/2019 11:52:33 AM

For any staff who are losing hours prior to hospital closure or as volume at EO begins to drop, please let me know. We are compiling a list of staff who are willing to continue working as we prepare to close....assisting in closing other departments, medical records, etc. Also, please keep in mind that anyone with hospital benefits MUST work at least one day in September to remain eligible through the end of the month.

*Terri Sonnefeld, RN*
*Nurse Manager*
*Outpatient Services / PACU*

304-234-8983

Confidentiality Notice: This message, including any attachments, is for the sole use of the individual or entity to which it is addressed. This message may contain confidential health and/or legally privileged information. If you are not the named recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance of the contents of this message is strictly prohibited. If you have received this message in error, please notify sender immediately and destroy all copies of the original message.

**To:** ddunmyer@ovrh.org[ddunmyer@ovrh.org]
**From:** Mark Voellinger
**Sent:** Mon 9/16/2019 5:53:14 PM
**Subject:** Lease termination
**Received:** Mon 9/16/2019 5:53:26 PM

Mark T. Voellinger, M.D.
2115 Chapline St. St 101
Wheeling, WV 26003

September 16, 2019

Dan Dunmyer
Ohio Valley Medical Center CEO

Dear Dan,

With the closure of Ohio Valley Medical Center and, thus, my inability to maintain a gastroenterology practice at that location, I will be terminating my lease at OVMC's Valley Professional Complex effective October 1, 2019. I will vacate the office by close of business September 30, 2019. I will be sure to turn in all keys to your office.

I thank you and all current and past staff of OVMC for the opportunity to care for the hospital's patients the past five years.

Sincerely,

Mark T. Voellinger, M.D.

**EXHIBIT 1**

**To:** Dan Dunmyer[ddunmyer@ovrh.org]; msarrao@sarraolaw.com[msarrao@sarraolaw.com]; Lex Reddy, MBA, MHA, President & CEO[lexreddy@alectohealthcare.com]; jedgmon@ovrh.org[jedgmon@ovrh.org]; pkurtz@ovrh.org[pkurtz@ovrh.org]
**From:** Rick
**Sent:** Tue 9/3/2019 8:14:35 PM
**Subject:** Romano office building eviction
**Received:** Tue 9/3/2019 8:14:38 PM

Gentlemen

The landlord of the Romano building, Paul Romano , came in to my wife's office today suite 204 and announced that ALECTO had terminated the lease agreement with them as of August 30th. He said that they were evicted. He brought in potential tenants to look at the space while patients were being seen.

According to staff he sat at my wife's desk and made phone calls.

He called me and informed me that everyone should have been out of there last Friday

My wife has removed personal belongings from the space..

Staff was told by the office manager that "if the doors are not locked tomorrow the they can still see patients. "

This is entirely unacceptable on all levels.

These offices have been given no direction throughout this intent  of closure until last week when they were told not to schedule after September 20. . Patients have not been officially notified Physicians have not been informed  of a termination date or terms release from contract.

Gentleman this is entirely unacceptable, and unprofessional behavior putting patients , staff and physicians at risk.

Please give these physicians and staff some guidance and show them the courtesy and respect they deserve.

At a minimum I would not allow any staff to return to that office without confirmation by both parties that a lease agreement has been resolved..

And please take the necessary steps to notify patients of the intent to close the practices.

Dr Greco


Sent from my iPad
--
Confidentiality
Notice: This message, including any attachments, is for the
sole use of the
individual or entity to which it is addressed. This message
may contain
confidential health and/or legally privileged information. If
you are not the
named recipient, you are hereby notified that any
disclosure, copying,
distribution, or action taken in reliance of the
contents of this message is
strictly prohibited. If you have received this
message in error, please notify
sender immediately and destroy all copies
of the original message.

**EXHIBIT 1**

# AHS WHEELING

Confidential **EXHIBIT 1**                                                    DEFENDANTS_016142

### Certificate of Need Program



WEST VIRGINIA
HEALTHCARE
AUTHORITY

## Acquisition of Ohio Valley Medical Center

## By Alecto Healthcare Services Wheeling LLC

CON File Number: 17-10-11007-A

For further information, please contact:

Peggy M. Cella
Cella Consulting Group
8935 River Landing Way
Sandy Springs, GA 303050
pmcella@comcast.net
(678) 472-0559

AHSWheeling_000314

CONFIDENTIAL

Alecto Healthcare Services LLC
Con File 17-10-11007-A

# Table of Contents

| Section Name | Section |
|---|---|
| Identification of the Applicant | A |
| Authorization to Pursue Project | B |
| Description of the Project | C |
| Project Timetable | D |
| The Need and Accessibility of the Population to be Served | E |
| Policies for Patient Admission & Provision of Uncompensated Care | F |
| Analysis of Alternatives | G |
| Relationship to Existing Health Care System | H |
| Relationship to the Applicant's Long Range Plan | I |
| Relationship to the Health Systems Plan and State Health Plan | J |
| Analysis of Competitive Factors | K |
| Relationship to Licensure, Certification, Accreditation & Safety Standards | L |
| Availability of Needed Resources | M |
| Policies Regarding Staff Employment & Medical Staff Membership | N |
| Preliminary Financial Feasibility | O |
| Special Needs of Facilities Providing Services to out-of-State Populations | P |
| Community Support | Q |

AHSWheeling_000315

CONFIDENTIAL

DEFENDANTS_016175

Alecto Healthcare Services LLC
Con File 17-10-11007-A

# List of Exhibits

| Title | Section – Number |
|---|---|
| Overview of the Proposed Transaction | A-1 |
| Hospital License | A-2 |
| Certificates of Formation | A–3 |
| Resolutions in support of the Project | B-1 |
| Map of the Service Area | E-1 |
| Admissions & Continued Stay Policy | F-1 |
| Determination Review of Charity Care | F-2 |
| Patient Bill of Rights and Responsibilities | F-3 |
| Agreements with Educational Institutions | H-1 |
| Lab Agreements | H-2 |
| Transfer Agreement - Tender Loving Care Health Care Services | H-3 |
| Transfer Agreement – Bannum Place of Wheeling | H-4 |
| Hospital Transfer Agreement – Barnesville | H-5 |
| Trauma Transfer Agreement – Southeast | H-6 |
| Nursing Home/Hospital Transfer Agreement – Woodsfield Care | H-7 |
| Emergency Transfers to Wheeling Hospital | H-8 |
| Joint Commission Accreditation Certificate/Letter | K-1 |
| Orientation Policy | M-1 |
| Clinical Privileges | M-2 |
| Medical and Dental Staff Membership | M-3 |
| Appointment and Reappointment Procedures | M-4 |

AHSWheeling_000316

CONFIDENTIAL

Alecto Healthcare Services LLC
Con File 17-10-11007-A

## List of Exhibits (continued)

| Title | Section – Number |
| --- | --- |
| Attendance at Education Programs and Staff Meetings | M-5 |
| Mandatory In-service | M-6 |
| OVMC Audit (2014-2015) | N-1 |
| Alecto Healthcare Services Audit (2014-2015) | N-2 |
| Financial Projections and Accompanying Assumptions | N-3 |

AHSWheeling_000317

CONFIDENTIAL

Alecto Healthcare Services Wheeling LL
CON File 17-10-11007-A

Exhibit A - 1
Page 1

### Overview of Transaction

#### General

Alecto Healthcare Services Ohio Valley LLC, a Delaware limited liability company ("Alecto Ohio Valley"), Alecto Healthcare Services Wheeling LLC, a Delaware limited liability company ("Alecto Wheeling"), and Alecto Healthcare Services Martin's Ferry LLC, a Delaware limited liability company ("Alecto Martin's Ferry") have entered into an Asset Purchase Agreement with Ohio Valley Health Services and Education Corporation, a West Virginia nonprofit corporation ("OVHS&E"), Ohio Valley Medical Center, Incorporated, a West Virginia nonprofit corporation ("OVMC"), East Ohio Regional Hospital at Martin's Ferry, an Ohio nonprofit corporation ("EORH"), and River Health Enterprises, Inc., a West Virginia for profit corporation ("RHE"), which calls for Alecto Ohio Valley, Alecto Wheeling, and Alecto Martin's Ferry to acquire substantially all of the assets of OVHS&E, OVMC, EORH, and RHE including the following:

- Ohio Valley Medical Center located at 2000 Eoff Street, Wheeling, West Virginia 26003;
- East Ohio Regional Hospital located at 90 North 4th Street, Martin's Ferry, Ohio 43935;
- Valley Professional Building located at 2115 Chapline Street, Wheeling, West Virginia 26003;
- Physician practices operated by OVMC;
- Physician practices operated by EORH;
- EORH's 60% interest in Digestive Health Complex, Inc., an outpatient surgery center located in Ohio;
- EORH's 80% interest in Compassionate Care Center for Surgical Excellence, LLC, a surgery center located in Ohio; and
- OVMC's and EORH's 50% interest in DASCO – Ohio Valley Home Medical Equipment, LLC, a DME company operating in West Virginia.

OVHS&E, OVMC, EORH, and RHE are collectively referred to herein as "Sellers."

#### Structure

It is anticipated that:

(1) Alecto Wheeling will acquire (a) the assets related to OVMC, (b) OVMC's and EORH's interest in DASCO – Ohio Valley Home Medical Equipment, LLC; (c) the Valley Professional Building; and (d) other assets related to operations in West Virginia;

(2) Alecto Martin's Ferry will acquire (a) the assets related to EORH; (b) EORH's interest in Compassionate Care Center for Surgical Excellence, LLC; (c) EORH's interest in Digestive Health Complex, Inc.; and (d) other assets related to EORH; and

(3) Alecto Ohio Valley will form a medical group or groups to employ the physicians currently employed by OVMC and EORH.

AHSWheeling_000321

CONFIDENTIAL

Alecto Healthcare Services Wheeling LL
CON File 17-10-11007-A

Exhibit A - 1
Page 2

Alecto Ohio Valley, Alecto Wheeling, and Alecto Martin's Ferry expect to reach an agreement with affiliates of Medical Properties Trust, Inc. ("MPT") which calls for the project costs to be funded using a sale/leaseback transaction.  The sale/leaseback transaction will involve the following:

(1)     On the closing date, Sellers which will transfer all real property and improvements owned by Sellers (the "Real Property") to Alecto Wheeling and Alecto Martin's Ferry which will then transfer the Real Property to subsidiaries of MPT ("MPT Real Estate Owners") in exchange for the payment of $50,000,000, which will be used to fund the purchase price under the Asset Purchase Agreement between Sellers and Alecto;

(2)     Simultaneous with its acquisition of the Real Property, the MPT Real Estate Owners will lease such real estate to subsidiaries of MPT ("MPT Lessors") which will then sublease such real estate to Alecto Wheeling and Alecto Martin's Ferry under a 10 year true operating lease with three (3) five year options (the "MPT/Alecto Lease");

(3)     The MPT/Alecto lease arrangement will provide that the MPT Real Estate Owners will make available to MPT Lessors, who in turn will make available to Alecto Wheeling and Alecto Martin's Ferry, up to $10,000,000.00 for additional improvements and repairs to the Real Property.  The MPT Lessor shall additionally make a secured working capital loan (the "Working Capital Loan") to Alecto Wheeling and Alecto Martin's Ferry in an amount up to $10,000,000.00.

(4)     On or prior to the closing date, Alecto Ohio Valley may issue an equity interest membership interests of Alecto Ohio Valley to MPT Lessor such that MPT Lessor will have an ownership interest in Alecto Ohio Valley on and after the closing date;

(5)     As part of its equity ownership of Alecto Ohio Valley, MPT Lessors will have certain rights in the event of a major default[1] by Alecto Ohio Valley, Alecto Wheeling or Alecto Martin's Ferry including the right to (a) terminate any management agreement with Alecto Healthcare Services LLC ("Alecto"); (b) remove or replace Alecto as the general manager of Alecto Ohio Valley; (c) transfer, subject to all applicable laws and legal requirements, the licenses and permits issued to Alecto Wheeling and Alecto Martin's Ferry to operate the hospitals to another person; (d) market the hospitals for sale; (e) dissolve Alecto Ohio Valley; (f) admit new members to Alecto Ohio Valley; and (g) initiate a bankruptcy proceeding on behalf of Alecto Ohio Valley.  MPT acknowledges that the exercise of certain of these rights may require the filing of an application with the Health Care Authority and a decision of the Health Care Authority.

---

[1] A "Major Default" includes (a) the failure to pay those amounts due MPT in a timely manner; (b) Alecto, Alecto Ohio Valley, Alecto Wheeling, or Alecto Martin's Ferry admitting in writing its inability to pay its debts as they become due and/or the filing of a bankruptcy petition by or against any of these entities; (c) the licenses and permits to participate in the Medicare and Medicaid programs being terminated for fraud or violation of the terms of such programs; (d) a change of control with respect to Alecto, Alecto Ohio Valley, Alecto Wheeling or Alecto Martin's Ferry for which MPT has not consented; (e) abandonment of the hospitals or (e) certain other extraordinary and material defaults.

AHSWheeling_000322

CONFIDENTIAL

Alecto Healthcare Services Wheeling LL                    Exhibit A - 1
CON File 17-10-11007-A                                         Page 3

    (6)     After the closing date, Alecto Wheeling and Alecto Martin's Ferry will remain the licensed operators of the hospitals and lease the Real Property from MPT Lessor.

    (7)     MPT will not exercise any control over the day to day operations of the hospitals or the patient care provided at the hospitals.

AHSWheeling_000323

CONFIDENTIAL

**Skeen, Barbara**

| | |
|---|---|
| **From:** | Michael S. Garrison <MGarrison@spilmanlaw.com> |
| **Sent:** | Friday, August 18, 2017 2:41 PM |
| **To:** | Adkins, Timothy |
| **Cc:** | Fitzgerald, Harriett; Skeen, Barbara |
| **Subject:** | RE: Alecto acquisition of OVMC [STB-WORKSITE.FID753441] |

Tim,

Thanks for your email and my apologies for the delay.  Please consider this email a request to withdraw the original CON application by Alecto to purchase OVMC.  If you need any other information from me, please just let me know and I will take care of it.  Thank you.

Mike

**Michael S. Garrison**
304.291.7926 - office
304.276.9015 - mobile
mgarrison@spilmanlaw.com

**From:** Adkins, Timothy [mailto:tadkins@hcawv.org]
**Sent:** Wednesday, August 16, 2017 3:40 PM
**To:** Michael S. Garrison <MGarrison@spilmanlaw.com>
**Cc:** Fitzgerald, Harriett <HFitzgerald@hcawv.org>; Skeen, Barbara <bskeen@hcawv.org>
**Subject:** Alecto acquisition of OVMC

Good Afternoon Mr. Garrison:

Can you give me an update on the Alecto acquisition of OVMC?  We are trying to clean up any applications that were received during the former Board's tenure.  I know that Wheeling requested a hearing on the acquisition when Alecto submitted the application and then the new exemption for distressed hospitals was approved. I know that Cindy Dellinger wrote a letter to OHFLAC stating that OVMC  met the criteria for the exemption. We still have the project as being scheduled for the Administrative hearing.  If the acquisition is complete, would you mind sending an email or letter withdrawing the original application?

If you have any questions feel free contact me.

Thank you!

Tim Adkins

1

CONFIDENTIAL

AHSWheeling_000561

# AMENDED AND RESTATED

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## ALECTO HEALTHCARE SERVICES OHIO VALLEY LLC

4820-5232-1862 v4
1038442-430002

TABLE OF CONTENTS

Page

| | | | |
|---|---|---|---|
| 1. | | DEFINITIONS | 2 |
| 2. | | ORGANIZATIONAL MATTERS. | 14 |
| | 2.1 | Formation | 14 |
| | 2.2 | Name and Place of Business | 14 |
| | 2.3 | Purpose of the Company | 14 |
| | 2.4 | Certificate of Formation | 15 |
| | 2.5 | Other Certificates | 15 |
| | 2.6 | Agent for Service of Process | 15 |
| | 2.7 | Title to Property | 15 |
| | 2.8 | Single Purpose Entity | 15 |
| 3. | | MANAGEMENT AND OPERATION OF THE COMPANY. | 15 |
| | 3.1 | Manager | 15 |
| | 3.2 | Authority and Duties of General Manager | 16 |
| | 3.3 | Insurance | 16 |
| | 3.4 | Liability of Managers and Members | 16 |
| | 3.5 | No Limitations on Rights and Remedies of MPT | 18 |
| | 3.6 | Compensation and Reimbursement of the Managers | 18 |
| | 3.7 | Withdrawal of General Manager | 18 |
| | 3.8 | Removal of General Manager | 18 |
| | 3.9 | Replacement of General Manager | 19 |
| | 3.10 | The Budget | 19 |
| | 3.11 | Execution of Contracts | 19 |
| | 3.12 | Special Manager Exclusive Authority, Rights and Remedies | 19 |
| 4. | | MEMBERS. | 25 |
| | 4.1 | Schedule of Membership Interests | 25 |
| | 4.2 | Liability of Members | 25 |
| | 4.3 | Rights and Voting | 25 |
| | 4.4 | Meetings of Members | 26 |
| | 4.5 | Notice and Record Date of Meetings | 26 |
| | 4.6 | Action by Members Without a Meeting | 26 |
| | 4.7 | No Withdrawal | 26 |
| | 4.8 | Expulsion of General Manager as a Member | 27 |
| | 4.9 | Required Notice to Company | 27 |
| | 4.10 | Loans and other Business Dealings with the Company | 27 |
| | 4.11 | Major Decisions | 27 |
| | 4.12 | Indebtedness Instruments | 29 |
| 5. | | CONTRIBUTIONS AND DISTRIBUTIONS. | 29 |
| | 5.1 | Capital Accounts | 29 |
| | 5.2 | Capital Contributions | 29 |
| | 5.3 | Distributions | 29 |
| 6. | | ALLOCATIONS | 30 |
| | 6.1 | Allocation of Profits and Losses | 30 |
| | 6.2 | Section 704(c) Allocations | 30 |
| | 6.3 | Tax Matters | 31 |
| | 6.4 | Tax Matters Partner | 32 |
| | 6.5 | Membership Interest Issued in Exchange for the Performance of Services | 32 |

4820-5232-1862 v4
1038442-430002

| 6.6 | Safe Harbor Election | 32 |
|---|---|---|
| **7.** | **ACCOUNTING, BANKING, REPORTS.** | **32** |
| 7.1 | Accounting Method | 32 |
| 7.2 | Books and Records | 32 |
| 7.3 | Reports and Financial Statements | 33 |
| 7.4 | Banking | 33 |
| 7.5 | Indemnification | 33 |
| **8.** | **DISSOCIATION OF A MEMBER.** | **36** |
| 8.1 | Dissociation | 36 |
| 8.2 | Rights of Dissociating Member | 36 |
| **9.** | **AGREEMENTS WITH AFFILIATES.** | **37** |
| 9.1 | In General | 37 |
| 9.2 | Management Services Agreement | 37 |
| **10.** | **TRANSFER OF INTEREST.** | **37** |
| 10.1 | General Restrictions on Transfer and Requirements for Effectiveness of Permitted Transfers | 37 |
| 10.2 | Substituted Members | 38 |
| 10.3 | Admission of a Transferee as a Member | 38 |
| 10.4 | Additional Conditions to Transfer | 38 |
| 10.5 | Option to Purchase Membership Interests | 39 |
| 10.6 | Change in Law or Reduction in Ownership | 39 |
| 10.7 | Redemption of MPT's Membership Interest | 39 |
| 10.8 | Assignment of MPT Membership Interest | 40 |
| **11.** | **DISSOLUTION AND WINDING UP.** | **40** |
| 11.1 | Dissolution | 40 |
| 11.2 | Winding Up | 40 |
| **12.** | **INVESTMENT REPRESENTATIONS** | **41** |
| **13.** | **GOVERNING LAW; JURISDICTION AND VENUE.** | **42** |
| 13.1 | Governing Law | 42 |
| 13.2 | Jurisdiction and Venue | 42 |
| 13.3 | Waiver of Jury Trial | 43 |
| **14.** | **MISCELLANEOUS PROVISIONS.** | **43** |
| 14.1 | Default and Remedies | 43 |
| 14.2 | Successors | 43 |
| 14.3 | Notices | 43 |
| 14.4 | Covenant of Further Assurances | 44 |
| 14.5 | Unenforceability of Certain Provisions | 44 |
| 14.6 | Headings | 44 |
| 14.7 | Statutes | 44 |
| 14.8 | Attorneys' Fees | 44 |
| 14.9 | Cross-References | 44 |
| 14.10 | Interpretation | 44 |
| 14.11 | Amendments | 45 |
| 14.12 | Counterparts | 45 |
| 14.13 | No Waiver | 45 |
| 14.14 | Third Party Beneficiaries | 45 |

4820-5232-1862 v4
1038442-430002

TABLE OF CONTENTS

Page

14.15  Exhibits ...................................................................................................45
14.16  Entire Agreement ....................................................................................45
14.17  No Referral ..............................................................................................45

Exhibit A              Membership Interests
Schedule A             MPT Documents
Schedule 9.2           Management Services Agreement
Schedule 10.5          Determination of Purchase Price

Confidential EXHIBIT 1                                              DEFENDANTS_016452

**THE MEMBERSHIP INTERESTS REPRESENTED BY THIS INSTRUMENT HAVE BEEN ACQUIRED FOR INVESTMENT PURPOSES ONLY AND NOT WITH A VIEW TOWARDS RESALE AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF THE VARIOUS STATES ("STATE SECURITIES LAWS"). THEY HAVE BEEN ISSUED AND SOLD PURSUANT TO AN EXEMPTION FROM THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS AND MAY NOT, EXCEPT AS SPECIFICALLY PROVIDED HEREIN, BE SOLD, PLEDGED OR OTHERWISE TRANSFERRED BY THE HOLDERS THEREOF AT ANY TIME.**

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

### OF

## ALECTO HEALTHCARE SERVICES OHIO VALLEY LLC

This **AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT** (the "Agreement") of **ALECTO HEALTHCARE SERVICES OHIO VALLEY LLC**, a Delaware limited liability company (together with its successors and assigns, the "Company"), is executed as of May 31, 2017 (the "Effective Date") by and among the Company, **ALECTO HEALTHCARE SERVICES LLC,** a Delaware limited liability company ("Alecto"), and **MPT OF WHEELING-ALECTO HOSPITAL, LLC**, a Delaware limited liability company ("MPT").

### RECITALS

**WHEREAS**, the Company was organized by Alecto on or about January 13, 2017 pursuant to the Delaware Limited Liability Company Act, 6 Del. Code Section 18-101, *et. seq.* (as amended from time to time, the "Act") by the filing of that certain Certificate of Formation in the office of the Delaware Secretary of State (as amended, modified, restated and/or supplemented from time to time, the "Certificate");

**WHEREAS**, Alecto and the Company entered into that certain Operating Agreement, dated as of January 14, 2017 (as the same has been amended, modified, restated and/or supplemented from time to time, the "Original Agreement");

**WHEREAS**, the Company is the sole member of Alecto Healthcare Services Wheeling LLC, a Delaware limited liability company ("Wheeling") and the sole member of Alecto Healthcare Services Martin's Ferry LLC, a Delaware limited liability company ("Martins Ferry" together with Wheeling are collectively, the "Lessees");

**WHEREAS**, Martins Ferry is the operator of East Ohio Regional Hospital, a 140-bed registered general acute care hospital facility located at 90 North 4th Street in Martins Ferry, Ohio (the "Martins Ferry Facility")

4820-5232-1862 v4
1038442-430002

**WHEREAS**, Wheeling is the operator of Ohio Valley Medical Center, a 218-bed license general acute care hospital facility and adolescent behavioral center located at 200 Eoff Street in Wheeling, West Virginia (the "Wheeling Facility" which together with the Martins Ferry Facility are, collectively, the "Hospital Facilities");

**WHEREAS**, the Lessees, jointly and severally, will enter into that certain Master Lease Agreement, to be dated June 1, 2017, by and among MPT of Wheeling Alecto Hospital, LLC, a Delaware limited liability company ("MPT of Wheeling") and MPT of Martins Ferry-Alecto Hospital, LLC, a Delaware limited liability company ("MPT of Martins Ferry") and the Lessees (as the same may be amended, modified, restated, and/or supplemented from time to time, the "Lease"); and

**WHEREAS**, it is a condition precedent to the consummation of the transactions contemplated by the Lease that the parties hereto have entered into this Agreement in accordance with the Act in order to reflect and consent to the admission of MPT as a Member of the Company, to amend and restate the Original Agreement, to establish and regulate the affairs of the Company, the conduct of its business and the relations among the Company and the Members, and to impose certain restrictions with respect to the transfer of interests in the Company, all effective prior to the consummation of the transactions contemplated in the Lease.

**NOW THEREFORE**, incorporating the foregoing Recitals in to this Agreement and in consideration of the mutual agreements and covenants contained herein, the parties hereby amended and restate the Original Agreement, and agree as follows:

### AGREEMENT

1.     **DEFINITIONS**.  In addition to the terms defined in the Recitals and elsewhere in this Agreement, the following words, when capitalized, have the meanings set forth below, unless the context otherwise requires.

"Act" has the meaning ascribed in the Recitals.

"Adjusted Capital Account Deficit" means, with respect to any Member, the deficit balance, if any, in a Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)     increase such Capital Account by any amounts which such Person is obligated to restore to the Company pursuant to Section 1.704-1(b)(2)(ii)(c) of the Regulations or is deemed to be obligated to restore pursuant to the next to the last sentences of Section 1.704-2(g)(1) or Section 1.704-2(i)(5) of the Regulations; and

(b)     decrease such Capital Account by the amount of the items described in Sections 1.704-1 (b)(2)(ii)(d)(4), (5), and (6) of the Regulations.

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Regulations and must be interpreted consistently therewith.

2

4820-5232-1862 v4
1038442-430002

**2.4**     **Certificate of Formation**.  The Company was formed pursuant to the Act by the filing of the Certificate.  The Company shall prepare, execute and file such amendments thereto as are permitted or required under the terms of this Agreement from time to time, and shall cause a certified copy of the Certificate to be filed or recorded in any county or location in which such filing or recording is required by law or is deemed appropriate by the General Manager.

**2.5**     **Other Certificates**.  The Members shall execute and the General Manager shall file and cause to be published or recorded from time to time such other statements, certificates and other documents as may be required by law or as the General Manager deems appropriate in any state or county in which the Company conducts business.

**2.6**     **Agent for Service of Process**.  The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is National Corporate Research, Ltd., 850 New Burton Road, Suite 201, Dover, Delaware 19904, and who is also hereby designated as the agent of the Company upon whom process issued by authority of or under the law of any state in which the company has qualified to do business may be served. The General Manager may change the designation of the agent for service of process and make any necessary filing, with any applicable Secretaries of State of any state in which the Company has qualified to do business.

**2.7**     **Title to Property**.  Title to all property contributed to or otherwise acquired by the Company will be held in the name of the Company.

**2.8**     **Single Purpose Entity**.  Each of the Company's Subsidiaries shall operate as a Single Purpose Entity.  As used herein, the term "Single Purpose Entity" means an entity which (a) exists solely for the purpose of owning and/or leasing all or any portion of the Leased Property (as defined in the Lease) and conducting the operation of its Business thereon; (b) conducts business only in its own name; (c) does not engage in any business other than the ownership and/or leasing of all or any portion of the Leased Property and the operation of its Business thereon; (d) does not hold, directly or indirectly, any ownership interest (legal or equitable) in any entity or any real or personal property other than the interest in (i) the Leased Property and the other assets incident to the operation of its Business, (ii) in the case of Martins Ferry, Alecto East Ohio Physicians, Inc., an Ohio Corporation, and (iii) the other assets incident to the operation of its Business; (e) does not have any debt and does not guarantee or otherwise obligate itself with respect to the debts of any other Person other than (i) as contemplated by this Agreement or the Lease or arising in the ordinary course of its Business, (ii) obligations in respect of any receivables or working capital loan or financing provided such entity, or (iii) obligations approved by MPT; (f) has its own separate books, records, accounts, financial statements and tax returns; (g) holds itself out as being a company separate and apart from any other entity; and (h) maintains all entity formalities independent of any other entity.

## 3.     MANAGEMENT AND OPERATION OF THE COMPANY.

**3.1**     **Manager**.

    **(a)**     Except for (i) decisions and matters requiring the approval of the Members as expressly set forth in this Agreement, and (ii) those limited matters within the Special Manager's

15

4820-5232-1862.v4
1038442-430002

authority and control and that are specifically identified or described in a notice required pursuant to Section 3.12(a) (and as expressly limited by Section 3.12(c) hereof, the "Special Manager's Jurisdiction"), the Company shall be managed by the General Manager, who (subject to the foregoing exceptions) shall have the exclusive supervision, control and authority over the management of the Company (and, directly or indirectly, the Company's Subsidiaries).

**(b)**     The initial General Manager of the Company shall be Alecto, subject to removal and replacement as provided in this Agreement.   Should the provisions in this Agreement relating to the Special Manager become operative, then (a) MPT or another Person designated solely by MPT by written notice to the Members (in either case, the "Special Manager") shall have the exclusive authority with respect to those matters under the Special Manager's Jurisdiction (which may be limited by the Special Manager by notice as provided in Section 3.12(a) hereof and shall be subject to the limitations set forth in Section 3.12(c) hereof) unless otherwise provided by joint notice from such Special Manager and MPT (if not the same Person), and (b) the General Manager shall have all operational and management authority and duties set forth in this Agreement other than those matters under the Special Manager's Jurisdiction, which Special Manager's Jurisdiction shall not include supervision, control or authority relating to the day-to-day operations or management of the Company).

**3.2     Authority and Duties of General Manager.**

**(a)**     The General Manager shall carry out its obligations with respect to the management of the Company and the Company's Subsidiaries, in each case using its good faith efforts based on commercially reasonable practices in the industry for operations similarly situated as the General Manager, and in accordance with public laws, regulations and the annual Budget.  The General Manager shall notify the Members promptly of any service of process on it relating to any litigation or threatened litigation.   Notwithstanding any of the foregoing, it is acknowledged and agreed that the General Manager shall have the right to enter into the Management Services Agreement as described in Section 9.2 herein.

**(b)**     Subject to Section 3.5 hereof, the General Manager will be responsible for damages arising from a breach of its obligations under this Section 3 only to the extent such damages result from the General Manager's gross negligence, willful misconduct or an intentional breach of this Agreement by the General Manager, or from actions beyond the scope of such General Manager's authority hereunder.

**3.3     Insurance**.  The General Manager shall procure and maintain in effect, or cause to be procured and maintained in effect, at the expense of the Company, such insurance and in such amounts as the General Manager may from time to time deem prudent, in its reasonable discretion, for the protection of the Members and the assets of the Company, taking into account the nature of the Company and its business activity.

**3.4     Liability of Managers and Members**.

**(a)**     To the fullest extent permitted by law, the Company and the Members intend and agree that none of the General Manager, the Special Manager, a Member, or any of their respective members, managers, directors, officers, employees, shareholders, partners, agents or

16

4820-5232-1862 v4
1038442-430002

representatives shall be liable or responsible to the Company or the Members for any acts or failures to act, or any loss, liability, damage, settlement costs or other expense incurred by reason of acts or failures to act (in each case to the extent related to the business of the Company), of any such Person if (i) such Person in good faith (including with a good faith belief that their actions were authorized by the Company) believed that such Person's actions were authorized by or within the scope of such Person's duties with the Company and such Person acted in a manner reasonably believed to be in, or not opposed to, the best interests of the Company (except, with respect to the General Manager or Members, to the extent such loss, liability, damage, settlement cost or other expense resulted from such Person's gross negligence, willful misconduct, intentional breach of this Agreement or, in the case of the General Manager, actions beyond the scope of the General Manager's authority hereunder), or (ii) such Person's actions were in reasonable reliance upon the advice of legal counsel, and effected in a manner such Person reasonably believed to be in, or not opposed, to the best interests of the Company, and, with respect to any criminal action or proceeding, such Person had no reasonable cause to believe such Person's conduct was unlawful (provided, however, that with respect to any threatened actions that do not eventually become an actual action, suit or proceeding, the Company's indemnification shall include only the reasonable legal fees and costs incurred to respond to such threatened actions). The parties acknowledge that, notwithstanding the foregoing, MPT and the Special Manager shall be further exculpated from liability and indemnified as provided in Section 3.12 hereof. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Person (x) did not act in good faith and in a manner which such Person reasonably believed to be in or not opposed to the best interests of the Company, or (y) with respect to any criminal action or proceeding, had reasonable cause to believe that such Person's conduct was unlawful.

(b)      Subject to any contrary provisions in the Lease or any other MPT Document (including the non-competition and restrictive covenant provisions in Section 39.10 of the Lease, the future financing obligations set forth in Section 39.24 of the Lease, and the restrictions set forth in that certain Non-Competition Agreement executed by Alecto on or about the date hereof), it is understood that the General Manager and Members are and shall continue to be engaged in other healthcare activities, including activities which may compete with the Company, without any obligation to offer any interest in such activities to the Company or to any Member, except as expressly set forth herein. Neither the Company, the General Manager nor any Member will have any right by virtue of this Agreement to share or participate in such other healthcare activities. None of the decisions made, business opportunities or any other steps or activities taken by the General Manager, a Member or any of such parties' Affiliates with respect to such other projects shall be deemed a breach of any duty (including any Fiduciary Duty) owed to the Company, the Members or their respective Affiliates by such Person. The foregoing is in addition to the waivers, releases and other provisions respecting the Special Manager as set forth in Section 3.12 of this Agreement, and are in all respects further subject to Section 3.5 hereof, but shall not be deemed to amend, modify or supplement any separate business participation agreement (or other similar agreement regarding future projects) previously, concurrently or hereafter entered into by and among the Company, Alecto or its Affiliates, on the one hand, and MPT or its Affiliates, on the other hand.

17

Confidential EXHIBIT 1                                                                 DEFENDANTS_016469

**3.5    No Limitations on Rights and Remedies of MPT**.  Notwithstanding any provision in this Agreement to the contrary, in no event shall any provision or limitation in this Agreement be deemed or construed to restrict or limit (a) MPT's or its Affiliates' rights and remedies under the MPT Documents, including, without limitation, MPT's and its Affiliates' right to recover damages and expenses as provided in the MPT Documents, or (b) any provisions of this Agreement relating to any release, waiver or indemnification of MPT or the Special Manager.

**3.6    Compensation and Reimbursement of the Managers.**  Neither the General Manager nor Special Manager shall be entitled to any compensation, additional distributions, Profits, Losses or allocations under this Agreement by virtue of serving in such capacity or for performing its duties under this Agreement.  The Company shall reimburse the General Manager and the Special Manager for reasonable third party expenses paid by them in performing their management duties hereunder, if any; provided, that, subject to Section 3.5 hereof and, in the case of Alecto, subject to the terms of the Management Services Agreement, the Company shall not reimburse the General Manager or the Special Manager for any expenses related to employees, contractors or consultants of the General Manager or Special Manager, other than reasonable incidental out-of-pocket expenses, including travel expenses of any member, manager or employee of the General Manager or Special Manager, incurred in connection with the business of the Company.

**3.7    Withdrawal of General Manager**.  The General Manager may not voluntarily withdraw from the Company or take any step to dissolve itself or allow its dissolution, without the prior written consent of MPT.

**3.8    Removal of General Manager**.  Subject to Section 10.7, MPT may elect to remove the General Manager immediately by giving written notice to the General Manager and the Members, upon the occurrence of any of the following events or circumstances (each of which shall constitute a "Removal Event"):

(a)    (i) any act, inaction or circumstance which is materially detrimental to the Company or any of the Company's Subsidiaries, the Facility, or the Leased Property, and results from the General Manager's gross negligence, willful misconduct or intentional breach of this Agreement, or (ii) the General Manager taking any action beyond the scope of its authority under this Agreement which is materially detrimental to the Company or any of the Company's Subsidiaries, the Facility, or the Leased Property, and, in each case, the results of such action are not cured within thirty (30) days following MPT's written notice thereof to the General Manager;

(b)    any Legal Violation occurs with respect to the General Manager;

(c)    the liquidation or dissolution of the General Manager or the institution of proceedings by the General Manager to be adjudicated a voluntary bankrupt, or voluntary commencement of a case under the bankruptcy code, or the voluntary filing of a petition or consent seeking reorganization, readjustment, arrangement, composition or similar relief under the federal bankruptcy laws, or any other similar applicable federal or state law, or consenting to or failing reasonably to oppose any such proceeding, or consenting to the appointment of a receiver or liquidator or trustee or assignee in bankruptcy or insolvency of the General Manager or of a substantial part of the General Manager's property, or making of a general assignment for

18

the benefit of creditors, or admission in writing of the General Manager's inability to pay its debts generally as they become due, or an involuntary filing in bankruptcy against the General Manager if any such action is not dismissed by the court or applicable administrative authority within sixty (60) days after written notice thereof to the General Manager; or

   **(d)** the occurrence of a Major Default.

Any such removal of the General Manager pursuant hereto shall be subject to all applicable notice, review or approval requirements of any Governmental Entity, and until such time as all such applicable requirements have been met, the General Manager shall continue serving in such capacity, with General Manager's authority being subject to limitation in connection with the exercise of any rights or remedies under Section 3.12 of this Agreement.

**3.9** **Replacement of General Manager**.  In connection with a withdrawal by the General Manager that is consented to by MPT pursuant to Section 3.7, or the removal of the General Manager pursuant to Section 3.8, MPT shall have the right to appoint a successor General Manager (including a non-Member) to act as the replacement General Manager on terms MPT deems appropriate in its sole discretion, and shall provide notice of the same to the Members. The costs for the services of such replacement General Manager shall be an obligation of the Company.

**3.10** **The Budget**.  Within sixty (60) days after the Effective Date and on or prior to December 31 of each succeeding calendar year, the General Manager shall adopt an annual budget (the "Budget") for the Company and the Company's Subsidiaries, which sets forth in reasonable detail all anticipated income, operating expenses, reserves, capital and other costs and expenses of the Company and the Company's Subsidiaries.  All expenses of the Company will be allocated to the Company's Subsidiaries, as applicable, for their allocable portion of such expenses on a regular basis, such expenses to be paid by the Company's Subsidiaries, as applicable, in the ordinary course of business.  All such expenses shall be included in the Budget. The General Manager shall submit the proposed Budget to the Members for approval in accordance with Section 4.11 hereof (including approval of the creation, reduction or elimination of any reserves), which approval shall not be unreasonably withheld, conditioned or delayed.

**3.11** **Execution of Contracts**.  Except for those matters which fall within the Special Manager's Jurisdiction, the General Manager may authorize any authorized representative of the Company, acting alone, or with another authorized signatory, to execute any agreement, instrument or other document on behalf of the Company, and such execution will be deemed binding upon the Company without the need for further inquiry by the party relying upon such execution and authorization. Notwithstanding any provisions of this Agreement to the contrary (subject to Section 3.12(f) hereof), during any such period in which the provisions of Sections 3.12 have become operative, neither the General Manager or any Person authorized by the General Manager shall have any right or authority to take any action to bind the Company with respect to those matters within the Special Manager's Jurisdiction unless specifically authorized in writing by the Special Manager.

**3.12** **Special Manager Exclusive Authority, Rights and Remedies**.

19

Confidential **EXHIBIT 1**             DEFENDANTS_016471

(a)     **Extraordinary Actions**.  Notwithstanding anything in this Agreement to the contrary, following the occurrence of a Major Default, the Special Manager may give notice to the Members and the General Manager that it intends to exercise its authority (which notice shall specifically identify or describe the action to be taken) under this Section 3.12, and in such notice may limit the action or actions that the Special Manager intends to take or cause to be taken hereunder; provided, however, that any stated limitation in such notice shall not be deemed or considered to prohibit or restrict the Special Manager from subsequently notifying the Members and the General Manager of the Special Manager electing to take any other action or actions within its authority under this Section 3.12.  Upon giving any notice hereunder, the Special Manager shall possess the exclusive authority (without the consent of any Member, but subject to Section 3.12(c) hereof) to act on behalf of the Company, the General Manager and the Members, and to cause the Company to exercise its direct and indirect governance rights with respect to each of the Company's Subsidiaries, as follows (the exercise of any of which being referred to herein as an "Extraordinary Action"):

(i)     the right to terminate the Management Services Agreement in accordance with the provisions therein, or remove or replace any management company managing the Facilities (or, if no such entity is managing the Facilities, require the Company to so engage a management company to manage the Facilities);

(ii)     the right to remove and replace the General Manager (which replacement manager need not be a Member) immediately upon written notice the Members, upon such terms as the Special Manager deems appropriate in its sole discretion, with the costs for the services of such replacement General Manager being an obligation of the Company;

(iii)     the right to cause the Licenses, Operating Agreements, Participation Agreements, and all other healthcare licenses, permits, provider numbers and provider agreements of the Company and any of the Company's Subsidiaries to be transferred to any other Person;

(iv)     the right to market the Company, any one or more of the Company's Subsidiaries, the Facilities, and/or the Leased Property for sale, whether by sale of assets, merger, transfer of equity or otherwise, and to effect any such sale for and on behalf of the Company, any one or more of the Company's Subsidiaries, and the Members;

(v)     the right to admit new Members to the Company and/or one or more of the Company's Subsidiaries, or to issue additional equity interests, as applicable, to any existing Member or other equity owner of the Company and/or one or more of the Company's Subsidiaries;

(vi)     the right to initiate, or cause the Company to initiate, either in an original proceeding or by way of answer in any state bankruptcy, insolvency or receivership proceeding, an action for liquidation, arrangement, reorganization, dissolution or similar relief for and on behalf of the Company and/or one or more of the Company's Subsidiaries;

20

Confidential**EXHIBIT 1**                                                                 DEFENDANTS_016472

(vii)   the right to dissolve, or cause the dissolution of, the Company in accordance with Section 11 of this Agreement or to otherwise dissolve or cause the dissolution of one or more of the Company's Subsidiaries;

(viii)   the right to cause the Company to exercise any options to purchase Membership Interests of the Members which are permitted or required hereunder; and

(ix)   subject to Section 3.12(d) hereof, if the Special Manager determines in its reasonable discretion that it is necessary in connection with the exercise of any of the foregoing rights, then the right to amend or modify this Agreement and to cause, as applicable, the Company to amend or modify any of the governing documents of any one or more of the Company's Subsidiaries; provided, that, the extent any such amendment or modification would affect the rights of Alecto hereunder, the Special Manager shall make no such amendment or modification (without Alecto prior consent) to Sections 3.2(c), 3.4, 4.2, 7.5, 10.7, 13.1, 13.2, 14.1, 14.2, 14.3, 14.5, 14.11 or 14.12, or that would otherwise materially increase the obligations of Alecto under this Agreement.

The consummation of any of the foregoing Extraordinary Actions shall be subject to all applicable notice, review or approval requirements of any Governmental Entity to the extent taking the same would violate any of such Governmental Entity's applicable laws, rules or regulations.

(b)   **Authority of Special Manager**.   Subject to Section 3.12(c) hereof, the Special Manager shall have sole and absolute discretion with respect to any Extraordinary Action that are specifically identified or described in a notice required under Section 3.12(a), none of which shall require the consent of any Member.   The Special Manager, in its sole discretion, may execute any agreement, instrument or other document on behalf of the Company as manager, and may cause the Company, as the direct and/or indirect owner of the Company's Subsidiaries, to execute any agreement, instrument or other document on behalf of any one or more of the Company's Subsidiaries, and, in each case, such execution will be deemed binding upon the Company, and/or such Company's Subsidiary, as applicable, without the need for further inquiry by the party relying upon such execution and authorization.   Unless expressly authorized in writing by the Special Manager or reflected in a limiting notice pursuant to Section 3.12(a) above, neither the General Manager, the Members, nor any of their agents or representatives shall have the right or authority to take or consent to any such Extraordinary Action.

(c)   **Limitations of Scope of Special Manager's Authority**.   The Company, the General Manager, and the Members acknowledge and agree that, notwithstanding any provision hereof to the contrary, in no event shall the authority granted to the Special Manager with respect to the Extraordinary Actions, or the exercise of any right within the Special Manager's Jurisdiction, be deemed or construed to grant the Special Manager (and the Special Manager shall not possess) any control or authority over the day-to-day operations and management of the Company or the Company's Subsidiaries, including any supervision, control or authority relating to employees, patients or any other day-to-day operational or management matters relating to the Facility (including, without limitation, any limitations imposed thereon or the management thereof by any regulatory authorities or applicable law).   Except for the authority granted to the Special Manager with respect to the Extraordinary Actions, and the exercise of any right by the

21

Special Manager within the Special Manager's Jurisdiction (which does not include any control of day-to-day operations or management), all other control or authority over and with respect to the day-to-day operations and management of the Company and the Company's Subsidiaries shall continue to be vested in the General Manager pursuant to the terms and conditions of this Agreement and nothing herein shall be deemed or construed to usurp such control and authority.

(d)   **Acknowledgement of General Manager and Members**.   Notwithstanding any provisions of this Agreement to the contrary, the General Manager and the Members acknowledge and agree that, with respect to any Extraordinary Action within the Special Manager's Jurisdiction, the Special Manager, in its sole and absolute discretion, (i) may determine the terms and conditions with respect thereto, and (ii) may determine the consideration, if any, to be paid to the Company, the Members, and/or any one or more of the Company's Subsidiaries, as applicable; it being understood and agreed that, without limiting the generality of the foregoing, the Special Manager may cause the Licenses, Participation Agreements and Operating Agreements of any one or more of the Company's Subsidiaries to be transferred without additional consideration; provided, however, that in no event shall the Special Manager treat disparately one Member relative to another Member solely in respect of their membership interests in the Company and provided further, that nothing herein shall limit the rights, privileges and priorities of MPT and its Affiliates pursuant to the MPT Documents.

(e)   **Necessary Action**.   In connection with the Special Manager taking one or more Extraordinary Actions, the General Manager and each Member shall, at the request of and in accordance with the time requirements set by the Special Manager, take such actions and execute such documents as the Special Manager shall determine in its sole discretion are required to effect or consummate such Extraordinary Action.

(f)   **Proxy and Attorney-in-Fact**.

(i)    In addition to the rights granted to the Special Manager hereunder, if the Special Manager desires to take any Extraordinary Actions in name of or through the existing General Manager, the General Manager hereby constitutes and appoints the Special Manager as the General Manager's true and lawful proxy and attorney-in-fact authorized in the General Manager's name, place and stead to take such actions and execute such documents as the Special Manager, in its sole discretion, determines to be desirable or necessary to effect or consummate any Extraordinary Action.    Without limiting the generality of the foregoing, the General Manager agrees that the foregoing proxy and power of attorney shall include, without limitation, the authority (A) to transfer or sell any Member's Membership Interest in connection with the Extraordinary Action set forth in Section 3.12(a)(iv), and (B) to take such actions and execute such documents as the Special Manager determines in its sole discretion are desirable or necessary to consummate the Extraordinary Action.

(ii)    In addition to the foregoing, each Member also hereby constitutes and appoints the Special Manager as the Member's true and lawful proxy and attorney-in-fact authorized in the Member's name, place and stead to take such actions and execute such documents as the Special Manager, in its sole discretion, determines to be desirable or necessary to effect or consummate any Extraordinary Action within the Special

22

Confidential **EXHIBIT 1**                                                                            DEFENDANTS_016474

Manager's Jurisdiction.  Without limiting the generality of the foregoing, each Member agrees that the foregoing proxy and power of attorney shall include, without limitation, the authority (A) to transfer or sell any Member's Membership Interest in connection with Extraordinary Action set forth in Section 3.12(a)(iv), and (B) to take such actions and execute such documents as the Special Manager determines in its sole discretion are desirable or necessary to consummate Extraordinary Action.

(iii)   The proxies and powers of attorney granted under this Section 3.12(f) are irrevocable and are coupled with an interest, and will survive the death or disability of a General Manager or Member, as applicable.  It also will survive any approved Transfer of a Membership Interest.  The Company shall be bound by any agreement, instrument or other document executed by the Special Manager, or any representative or agent authorized by the Special Manager, as to third parties dealing with the Company in connection with an Extraordinary Action within the Special Manager's Jurisdiction, and the Special Manager may authorize any Person as an authorized representative of the Company, acting alone, or with another authorized signatory, to execute any agreement, instrument or other document on behalf of the Company, and such execution will be deemed binding upon the Company without the need for further inquiry by the party relying upon such execution and authorization.  The General Manager and each Member hereby waives any and all defenses which may be available to contest, negate or disaffirm any such action of the Special Manager taken under this proxy and power of attorney; provided that the action is taken in accordance with the terms hereof.  The Company, the General Manager, and the Members acknowledge and agree that, notwithstanding any provision of this Agreement, the approval of the Special Manager shall be all that is necessary under the terms of this Agreement to approve the consummation of any Extraordinary Action within the Special Manager's Jurisdiction and no other consent, waiver of right of first refusal or other consent, approval or waiver shall be required hereunder.

**(g)   Waivers and Acknowledgements.**

(i)   The Company, the General Manager, and the Members hereby, individually and collectively, waive to the fullest extent permitted by applicable law, (A) all fiduciary duties of loyalty, care or any other fiduciary obligation or duty that MPT or the Special Manager might have otherwise owed at law, in equity or otherwise as a Member or manager of the Company (collectively, the "Fiduciary Duties"), and (B) any rights or claims which the Company, any of the Company's Subsidiaries, the General Manager, or the Members may have at any time, now or in the future, against MPT or the Special Manager arising from or related to any actual or perceived breach of any Fiduciary Duties by MPT or the Special Manager in connection with any Extraordinary Action within the Special Manager's Jurisdiction or any other action permitted to be taken by MPT or the Special Manager hereunder (including, without limitation, the withholding of any consent or approval right granted to MPT or the Special Manager hereunder).

(ii)   The Company, the General Manager, and the Members hereby, individually and collectively, (A) acknowledge and consent to the existence of the MPT

23

4820-5232-1862 v4
1038442-430002

any Member utilize the services or otherwise direct patients to the Facility.  Nothing in this Agreement shall be construed as prohibiting such Members from admitting or referring patients to health care facilities other than the Facility.  The parties agree that the benefits under this Agreement do not require, are not payment for, and are not in any way contingent upon, past, current or future direct or indirect admissions, referrals or other arrangements with respect to the Facility or the facility of any other Member or Affiliate thereof for the provision of any items or service reimbursed under Medicare, Medicaid or any other state or federal health care program.

**[REST OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES ON FOLLOWING PAGE]**

46

4820-5232-1862 v4
1038442-430002

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

<u>COMPANY:</u>

**ALECTO HEALTHCARE SERVICES OHIO VALLEY LLC**

By:    Alecto Healthcare Services LLC
Title:    _GENERAL MANAGER_

By: _[signature]_
Name: Roger Krissman
Title:    Chief Financial Officer

<u>MEMBERS:</u>

**ALECTO HEALTHCARE SERVICES LLC**

By: _[signature]_
Name: Roger Krissman
Title:    Chief Financial Officer

Signature Page
Alecto-Ohio Valley Amended and Restated LLC Agreement

Confidential **EXHIBIT 1**

DEFENDANTS_016499

MPT OF WHEELING-ALECTO
HOSPITAL, LLC

By:     MPT Development Services, Inc.
Title:  Sole Member

By: _____
Name: R. Steven Hamner
Title: Executive Vice President and CFO

Signature Page
Alecto-Ohio Valley Amended and Restated LLC Agreement

**EXHIBIT 1**                                    DEFENDANTS_016500

BOOK  9 2 1 PAGE  2 6 8

Prepared by and after recording, return to:
Lynn Reynolds, Esq.
Baker, Donelson, Bearman, Caldwell
& Berkowitz, PC
Suite 1400, Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama 35203

<u>Ohio County, WV</u>

<u>MEMORANDUM OF</u>
<u>MASTER LEASE AGREEMENT</u>

THIS MEMORANDUM OF MASTER LEASE AGREEMENT (this "**Memorandum**")
is dated the _30th_ day of _May_____, 2017, to be effective as of the _1st_ day of
_June____, 2017, by and among **MPT OF WHEELING-ALECTO HOSPITAL, LLC** and
**MPT OF MARTINS FERRY-ALECTO HOSPITAL, LLC,** each a Delaware limited liability
company (collectively, the "**Lessor**"), having their principal office at 1000 Urban Center Drive,
Suite 501, Birmingham, Alabama 35242, and **ALECTO HEALTHCARE SERVICES
WHEELING LLC** and **ALECTO HEALTHCARE SERVICES MARTIN'S FERRY LLC,**
each a Delaware limited liability company (collectively, the "**Lessee**"), having their principal
office c/o Alecto Healthcare Services LLC, 16310 Bake Parkway, Suite 200, Irvine, California
92618, under the following circumstances:

A.    Lessor and Lessee have entered into that certain Master Lease Agreement of even
date herewith (as the same may be amended, modified and/or restated from time to time) (the
"**Lease**"), whereby Lessor has leased to Lessee, and Lessee has leased from Lessor, certain real
property located in Ohio County, West Virginia, which real property is  more particularly
described on *Exhibit A* attached hereto and incorporated herein by reference (the "**Land**"),
together with, without limitation, (i) the improvements located or to be located on the Land as
more particularly described in the Lease (the "**Leased Improvements**"), (ii) the "**Fixtures**" (as
defined in the Lease) and (iii) all easements, rights, appurtenances and other rights relating to the
Land and the Leased Improvements (collectively, the "**Leased Property**").

B.    Lessor and Lessee desire to file this Memorandum of record in the appropriate
real property records of the county in which the Land is located in order to provide record notice
to all third parties of the rights of Lessor and Lessee under the Lease.

NOW THEREFORE, for and in consideration of the covenants and promises of the
parties set forth in the Lease, and for other good and valuable consideration, the receipt,
adequacy and sufficiency of which are expressly acknowledged by the parties hereto, Lessor and

4845-3737-1977 v1
1038442-430002 05/30/2017



EXHIBIT 1                                                                DEFENDANTS_016574

BOOK 921 PAGE 269

Lessee agree and acknowledge for themselves, their respective successors and assigns, as follows:

1.     Upon, subject to and in consideration of the terms and conditions set forth in the Lease, Lessor has leased the Leased Property to Lessee, and Lessee has leased the Leased Property from Lessor.

2.     The Leased Property is leased for an initial term commencing on the date hereof (the **"Commencement Date"**), and ending at midnight on the last day of the one hundred eightieth (180th) full month period after the Commencement Date (the **"Fixed Term"**), unless sooner terminated as provided in the Lease.  Subject to the terms, conditions and provisions as set forth in the Lease, Lessee has the option to extend the Fixed Term for three (3) additional consecutive periods of five (5) years each.

3.     Upon certain terms, conditions and provisions as set forth in the Lease (i) Lessee has an option to purchase the Leased Property, and (ii) Lessor has an option to purchase Lessee's Personal Property (as defined in the Lease).

4.     All of the terms, conditions, provisions and covenants of the Lease are incorporated in this Memorandum by reference as though written out at length herein.  The Lease and this Memorandum shall be deemed to constitute a single instrument; provided, however, that in the event of a conflict between this Memorandum and the Lease, the terms and conditions of the Lease shall control.  This Memorandum contains only selected provisions of the Lease and reference is made to the full text of the Lease for the full terms and conditions.   This Memorandum shall not, in any way, alter, amend, modify or supersede the Lease.

5.     This Memorandum may be executed in counterparts, each of which shall be an original and all of which taken together shall constitute one and the same instrument.

[ Intentionally Left Blank ]

[Signatures and acknowledgements on following pages]

2

4845-3737-1977 v1
1038442-430002 05/30/2017

**EXHIBIT 1**                                                                                    DEFENDANTS_016575

BOOK 921 PAGE 270

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed as of the date and year first above written.

LESSOR:

**MPT OF WHEELING-ALECTO HOSPITAL, LLC**, a Delaware limited liability company
**MPT OF MARTINS FERRY-ALECTO HOSPITAL, LLC**, a Delaware limited liability company

By:    MPT Development Services, Inc.,
          a Delaware corporation
Its:    Sole Member

By:   _Amy McNeer_
Its:   _SENIOR COUNSEL & ASST SEC_

STATE OF ALABAMA      §
JEFFERSON COUNTY     §

    The foregoing instrument was acknowledged before me on this _31st_ day of _May_, 2017, by _Amy B. McNeer_ as the _Assistant Secretary_ of MPT Development Services, Inc., a Delaware corporation, as the Sole Member of **MPT of Wheeling-Alecto Hospital, LLC** and **MPT of Martins Ferry-Alecto Hospital, LLC**, each a Delaware limited liability company, on behalf of said corporation, as the sole member of said limited liability companies.

    GIVEN UNDER MY HAND AND SEAL on this _31st_ day of _May_, 2017.

[AFFIX NOTARY SEAL]



Notary Public in and for the State of Alabama
My Commission Expires: _01/19/2020_

BRANDI DIPIAZZA
My Commission Expires
January 19, 2020

3

4845-3737-1977 v1
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016576

BOOK  9 2 1 PAGE  271

LESSEE:

**ALECTO HEALTHCARE SERVICES WHEELING LLC**, a Delaware limited liability company
**ALECTO HEALTHCARE SERVICES MARTIN'S FERRY LLC**, a Delaware limited liability company

By:   Alecto Healthcare Services Ohio Valley LLC
      a Delaware limited liability company,
Its:  Sole Member

By:   Alecto Healthcare Services, LLC
      a Delaware limited liability company
Its:  Sole Member

By: _____
      Roger Krissman
Its:  Chief Financial Officer

**See California notary acknowledgement attached.**

4

4845-3737-1977 v1
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016577

BOOK **921** PAGE **272**

## CALIFORNIA ACKNOWLEDGEMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Orange_____
  On __May 30, 2017_____ before me, __Mailor Lee – "Notary Public"__ personally
          *(Date)*
appeared_____Roger Allen Krissman_____
                        *Name of Principal(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
MAILOR LEE
Notary Public - California
Orange County
Commission # 2154253
My Comm. Expires May 22, 2020
```

Notary Public Signature

(Notary Public Seal)

---

## ADDITIONAL INFORMATION

**Description of Attached Document**

Title or Type of Document: Memorandum of Master Lease Agreement

Number of Pages: 5 pages, Single-Sided

**Type of Identification**

☑ Satisfactory Evidence – Identification Card

☐ One Credible Witness acknowledging the identity of the principal

☐ Two Credible Witnesses acknowledging the identity of the principal

**EXHIBIT 1**

DEFENDANTS_016578

<u>Exhibit A</u>          BOOK   9 2 1 PAGE ᴗ 273

## THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2000 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE MAIN CAMPUS OF OHIO VALLEY MEDICAL CENTER

### TRACT I

The following parcels of land situate between Eoff Street and Chapline Street and 20th and 22nd Streets, City of Wheeling, Center District, Ohio County, West Virginia, and comprising all of Lots 193, 194, 195, 196, 197, 198, 199, 200, 203, 220, 222 and a part of Lots 223, 225, 227 (Parcel 2) and 230 (Parcel One) and also part of Eoff Street, 20th Street and Lanes 17 and 18 and D, as shown on the Plat of Eoff and Chapline Addition, said plat being recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138 and being more particularly bounded and described as follows:

**Parcel One:** Beginning at a point in the northerly line of the concrete side walk now standing in the southerly portion of 20th Street, said beginning point located from a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, the following three (3) bearings and distances: N. 26' 10' E. 624 and 62/100 feet, measured along said easterly line of Chapline Street, to a point located S. 26° 10' W. 4 and 68/100 feet from a cross cut in a concrete sidewalk; thence with the northerly line of first above mentioned concrete sidewalk, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 97 and 46/100 feet to said beginning point, said nail and ribbon being also located at the most westerly corner of Lot No. 193; thence from said beginning point and with said northerly line of a concrete sidewalk, the following three (3) bearings and distances: S. 46° 47' E. 16 and 24/100 feet to a point; thence S. 45 ° 42' E. 55 and 55/100 feet to a point; thence S. 35° 44' E. 20 and 62/100 feet to a point in the center tine of Eoff Street; thence with said center line of Eoff Street, S. 26° 10' W. 95 and 3/10 feet to a point; thence N. 63° 50' W. 33 feet to a point in the westerly line of Eoff Street, at its intersection with the center line of Lane 17; thence with said center line of Lane 17, N. 46° 48' W. 63 and 96/100 feet to a point in the southerly, extension of the division line between Lots 227 and 230; thence with said extension and then said division line, N. 26° 10' E. 56 and 62/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, the following three (3) bearings and distances: N. 63° 50' W. 5 feet to a point; thence N. 47 ° 12' E. 13 and 92/100 feet to a point; thence N. 37° 20' E. 29 and 46/100 feet to the place of beginning, containing Ten Thousand Forty and Forty-seven Hundredths (10,040 and 47/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 427.**

**Parcel Two:** Beginning at a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, said beginning nail and ribbon being also the most westerly corner of said Lot No. 193; thence from said beginning nail and ribbon and with said easterly line of Chapline Street, N. 26° 10' E. 624 and 62/100 feet to a point; said point

4849-7163-9625 v1
1038442-430002 06/02/2017

EXHIBIT 1

DEFENDANTS_016579

BOOK  921 PAGE 274

being located S. 26° 10' W. 4 and 68/100 feet from a crosscut in a concrete sidewalk; thence leaving the said easterly line of Chapline Street, and with the northerly fine of the concrete sidewalk, now standing in the southerly portion of 20th Street, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 15 and 5/100 feet to a point in the northerly extension of the center line of Lane D; thence with said northerly extension and then said center line, S. 26° 10' W. 200 and 16/100 feet to a point in the westerly extension of the center line of Lot No. 225; thence with said westerly extension and then said center line of Lot No. 225, S. 64° 00' E. 132 and 33/100 feet to a point in the westerly line of Eoff Street; thence with said westerly line, S. 26° 10' W. 33 feet to a point in the division line between Lots 224 and 225; thence with said last mentioned division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 129 and 16/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 88 and 84/100 feet to a point in the division line between Lots 221 and 222; thence with said division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 66 feet to a point in the westerly extension of the division line between Lots 220 and 221; thence with said westerly extension and then said division line of Lots 220 and 221, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 66 feet to a cross cut in a concrete sidewalk in the northerly line of 22nd Street, said cross being also the most southerly corner of said Lot 220; thence leaving Eoff Street and with said northerly line of 22nd Street, N. 64° 00' W. 264 and 65/100 feet to the place of beginning, containing One Hundred Four Thousand Seven Hundred Fifty-two and Sixty-nine Hundredths (104,752 and 69/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 Parcel 214.**

### TRACT II

**Parcel Three:** Lot Numbered Two Hundred and Twenty-seven (227) on the South side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, as the same is shown and designated on the Plat of Chapline and Eoff's Addition to City.

And the following described piece of parcel of land lying and being situated on the south side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, and in the Chapline and Eoff's Addition to said City, described as follows, to-wit:

Commencing at a point where the west line of Lot numbered Two Hundred and Thirty (230) inter-sects the South line of 20th Street (formerly Webster Street); thence running east four and one-fourth (4-¼) feet on the south line of 20th Street (formerly Webster Street); thence south twenty-one (21) feet in a straight line until it intersects the west boundary line of Lot numbered Two Hundred and Thirty (230), which said westerly boundary line of said Lot Numbered Two Hundred and Thirty (230) is a diagonal line. Excepting, however, so much of the above described property as was conveyed by Michael Kirchner and Katherine Kirchner, his wife, to

2

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016580

Conrad Caldebaugh, by deed bearing date December 4, 1907, and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 126, at page 197.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 426.**

**Parcel Four:** All the northern one-half of Lot No. 225 and the entire fractional Lot No. 226 in Chapline and Eoff's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which addition is recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138.

**Parcel Five:** The North one-half of Lot Numbered Two Hundred and Twenty-four (224), situate on the West side of Eoff Street, between Twentieth (formerly Webster) and Twenty-second (formerly Third) Streets, in that part of the said City of Wheeling, called Centre Wheeling.

**Parcel Six:** All that certain property situate in the City of Wheeling, Ohio County, West Virginia, being the south one-half of Lot numbered Two Hundred and twenty-four (224) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which is re-corded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 15, page 138, and more particularly described as follows:

Beginning at a point at the south-east corner of said Lot numbered Two hundred and twenty-four (224), at the junction of Alley No. 18 and Eoff Street; thence in a westerly direction and along the northern boundary line of said Alley No. 18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the eastern boundary line of Alley 'D'; thence in a northerly direction and along the eastern boundary line of said Alley 'D' a distance of Thirty-three (33) feet, more or less; thence in an easterly direction and parallel with the northern boundary line of Alley No. 18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the western boundary line of said Eoff Street; thence in a southerly direction and along the western boundary line of said Eoff Street; a distance of Thirty-three (33) feet, more or less, to the point of beginning, being bounded on the north by the property formerly owned by A. C. Partridge; on the east by Eoff Street; on the south by said Alley No. 18; and on the west by Alley 'D' in the rear of said lot.

**Parcel Seven:** Beginning at a point at the intersection of the westerly line of Eoff Street with the southerly line of Lane 18, said intersecting point being the northeasterly corner of said Lot 223; thence from said beginning point and with the said westerly line of Eoff Street, S. 17 ° 00' W. 25 and 83/100 feet to a point in said westerly line of Eoff Street at its intersection with the easterly extension of the center line of the division wall between dwellings now known as 2111 and 2113 Eoff Street; thence leaving said Eoff Street and with said easterly extension and then with said center line N. 73° 47' W. 33 and 84/100 feet to a point; thence N. 76° 29' W. 14 feet to a point; thence N. 73° 47' W. 38 and 16/100 feet to a point in the easterly line of a walkway, four (4) feet wide, hereinafter mentioned; thence with said easterly line, N. 17° 59' E. 27 and 41/100 W. feet to a point in the said southerly line of Lane 18; thence with the said southerly line of Lane 18, S. 73° 10 ' E. 85 and 48/100 feet to the place of beginning.

3

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016581

BOOK **921** PAGE **276**

Together with a right-of-way, in common with others, as follows: A right-of-way or walkway, four (4) feet wide, extending from the southerly line of Lane 18 in a southwesterly direction to the southerly line of Parcel Seven herein described, the easterly line of said four (4) foot walkway being the line hereinbefore described as 'N. 17° 59' E. 27 and 41/100 feet', said walkway is to be used in common by the owners of dwelling houses Numbered 2111 and 2113 Eoff Street and 2108, 2110 and 2112 Lane D, their heirs and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling house Number 2111 Eoff Street that are constructed on other lands now or formerly owned by the parties of the first part hereto, their heirs and assigns, and there is excepted and reserved from the parcel of land herein described, the right for the owner of dwelling house Number 2113 Eoff Street, 2108, 2110 and 2112 Lane D to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling house Number 2113 Eoff Street and 2108, 2110 and 2112 Lane D that are now constructed on the parcel of land herein described.

**Parcel Eight:** Beginning at a point in the easterly line of Alley D at the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D, said point being located S. 17° 00' W. 16.17 feet from the northwesterly corner of Lot 223 which is at the intersection of the easterly line of Alley D with the southerly line of Alley 18; thence from said beginning point, with the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D and its southeasterly extension, S. 73° 20' E. 36.26 feet to a point in the easterly line of a 4 foot walkway hereinafter mentioned; thence leaving the line of the said partition wall and with the easterly line of said 4 foot walkway, S. 17° 59' W. 13.83 feet to a stake; thence crossing the southerly end of said walkway, N. 76° 12' W. (at 4 feet passing the westerly side of said walkway) 5.28 feet to the center line of the partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence with the center line of the partition wall between dwelling houses 2110 and 2112 Alley D., N. 72° 01' W. 30.60 feet to the easterly line of Alley D; thence leaving last mentioned partition wall and with the easterly line of Alley D, N. 17° 00' E. 13.37 feet to the place of beginning.

**Parcel Nine:** Beginning at the intersection of the easterly line of Alley D with the southerly line of Alley 18, said intersection being the northwesterly corner of said Lot 223; thence from said beginning point, with the southerly line of Alley 18, S. 70° 10' E. 36.52 feet to a stake in easterly line of a walkway, 4 feet wide, hereinafter mentioned; thence leaving Alley 18 and with the easterly line of said 4 foot walkway, S. 17° 59' W. 16.08 feet to a point in the southeasterly extension of the center line of the partition wall between dwelling houses now known as 2108 and 2110 Alley D; thence leaving said walkway and with the said southeasterly extension and then with the center of the said partition wall between dwelling houses 2108 and 2110 Alley D, N. 73° 20' W. 36.26 feet to a point in the easterly line of Alley D; thence leaving said partition wall and with the easterly line of Alley D, N. 17° 00' E. 16.17 feet to the place of beginning.

**Parcel Ten:** Beginning at a point in the westerly line of Eoff Street at its intersection with the southeasterly extension of the south face of the south brick wall of brick dwelling house now known as 2111 Eoff Street, said beginning point being also located S. 17° 00' W. 25.83 feet

4

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016582

measured along the westerly line of Eoff Street from its intersection with the southerly line of Alley 18 at the northeasterly corner of Lot 223; thence from said beginning point, with the westerly line of Eoff Street, S. 17 ° 00' W. 17.33 feet to the southeasterly corner of the parcel of land that was conveyed by William Stoetzer; Executor, to Cora Craft, Earl Stoetzer and William Stoetzer, by deed dated October 24, 1934, and recorded in said County Clerk's office in Deed Book 236, at page 48; thence leaving Eoff Street and with the southerly fine of the said Craft and Stoetzer parcel, N. 73° 10' W. 122.00 feet to a point in the easterly line of Alley D; thence with the easterly line of Alley D, N. 17° 00' E. 13.62 feet to the center line of the frame partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence leaving Alley D with the center line of the frame partition wall between dwelling houses 2110 and 2112 Alley D, S. 72° 01' E. 30.60 feet to a tack on the easterly side of the east wall of said houses 2110 and 2112 Alley D; thence leaving said partition wall and crossing the southerly end of a walkway, 4 feet wide, hereinafter mentioned, S. 76° 12' E. 5.28 feet to a stake in the easterly line of said walkway; thence with the easterly line of said walkway N. 17° 59' E. 2.50 feet to a stake in the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street; thence leaving the easterly line of said walkway and with the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street and then with the center line of said space S. 73° 47' E. 38.16 feet to a stake; thence S. 76° 29' E. 14.00 feet to the southwesterly corner of the brick wall along the southerly side of said dwelling house 2111 Eoff Street; thence with the south face of the south brick wall of said building 2111 Eoff Street and its southeasterly extension S. 73° 47 ' E. 33.84 feet to the place of beginning.

Together with the right to use, renew and repair any supports or bearings for dwelling house 2113 Eoff Street that are now attached or built in the brick wall on the south side of dwelling house 2111 Eoff Street.

Together with the right, in common with others, to use a walkway, 4 feet wide, extending from the southerly line of Alley 18, in a southwesterly direction, to the northerly line of the parcel hereinbefore described, the easterly line of said walkway being described as follows:

Beginning at a stake in the southerly line of Alley 18, said stake being located S. 73° 10' E. 36.52 feet, measured along the southerly line of Alley 18, from its intersection with the easterly line of Alley D which is the northwesterly corner of Lot 223; thence from said beginning stake S. 17° 59' W. 27.41 feet to a stake at a corner to the parcel of land hereinbefore described; thence S. 17° 59' W. 2.50 feet to a stake at another corner to the parcel of land hereinbefore described. Said walkway is to be used in common between the owners of dwelling houses 2111 and 2113 Eoff Street and 2108, 2110, and 2112 Alley D. their tenants, agents, heirs, executors, administrators and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to 2113 Eoff Street and 2112 Alley D that are now constructed on that part of the said Craft and Stoetzer property, lying between the parcel of land hereinbefore described and the southerly line of Alley 18 and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling houses 2108 and 2110 Alley D and 2111 Eoff Street to use, renew, replace and maintain all water and gas

5

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016583

BOOK 921 PAGE 278

pipes, sewers and any other service lines now connected to dwelling houses 2108 and 2110 Alley D and 2111 Eoff Street that are now constructed on the parcel of land hereinbefore described.

Together with the right to use, repair and renew that part of the cornices and eaves now attached to house 2113 Eoff Street that extend over the northerly line of the parcel of land hereinbefore described, as Parcel Ten.

There is excepted and reserved from the parcel of land hereinbefore described as Parcel Ten the right for the owner of dwelling house 2111 Eoff Street to use, repair and renew that part of the cornices and eaves attached to building 2111 Eoff Street that extend over the parcel of land hereinbefore described as Parcel Ten.

Together with the right to use the space between the rear part of dwelling houses 2111 and 2113 Eoff Street for the purpose of repairing and painting said house 2113 Eoff Street and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling house 2111 Eoff Street to use said space between the rear part of dwelling houses 2111 and 2113 Eoff Street to repair and paint said house 2111 Eoff Street."

**Parcel Eleven:** Lot numbered two hundred twenty-one (221) and the buildings thereon, in Chapline and Eoff's Addition to the City of Wheeling, in Ohio County, West Virginia.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W58 Parcel 230.**

## TRACT III

**Parcel Twelve:** A certain parcel of land situated in Centre District, in the City of Wheeling, Ohio County, West Virginia, being Lot No. 283 as shown on the plat of the William Chapline Addition to the City of Wheeling, a copy of which Plat is unofficially recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 297, at page 385.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 456.**

**Parcel Thirteen:** The north half of all that certain lot or parcel of land situated in that part of the City of Wheeling laid out by William Chapline as an addition to South Wheeling, which lot is designated on the plat of said Addition as Lot No. 282."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 457.**

**Parcel Fourteen:** A certain piece or parcel of land situate in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and being the South half of Lot Numbered Two

6

**EXHIBIT 1**

DEFENDANTS_016584

Hundred and Eighty Two (282) in William Chapline's Addition to said City of Wheeling, said property is situate on the east side of Jacob Street between 20th and 22nd Streets."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 458.**

**Parcel Fifteen:** The north half of Lot Numbered Two Hundred and Eighty-one (281), in William Chapline's Addition, which half lot lies at the southeast corner of Jacob Street and Alley Eighteen and is bounded as follows:

"Commencing at the said corner, same being the northwest corner of said lot, and running thence with the south line of said alley in an easterly direction with the north line of said lot, one hundred feet to the northeast corner of said lot; thence running in a southerly direction with the east line of said lot twenty-six feet and four and one-half inches to the middle of said east line of said lot; thence running in a westerly direction parallel with the said north line of said lot one hundred feet to the middle of the west line of said lot on the east line of said Jacob Street and from thence running with the said east line of Jacob Street twenty-six feet and four and one-half inches in a northerly direction the place of beginning."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 459.**

**Parcel Sixteen:** The South half of Lot Numbered Two Hundred Eighty-one (281) situated in the Addition of South Wheeling now called Center Wheeling, laid off by William Chapline, said half of lot being twenty-six feet and four and one-half (26 ft. & 4-1/2 in.) in width, and one hundred (100) feet in depth."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 460.**

**Parcel Seventeen:** The north half of Lot No. 280 situate in the Addition to the City of Wheeling laid off by William Chapline, which said one-half (1/2) lot contains twenty-six (26) feet and four and one-half (4-1/2) inches in width, and one hundred (100) feet in depth."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59 Parcel 461.**

**Parcel Eighteen:** A certain parcel of land situated on the east side of Jacob Street (formerly called German Street) between Twenty-first and Twenty-second Streets, in Centre District, Ohio County, West Virginia, and being the west half of the south half (that is to say, the southwest quarter) of Lot No. 280, as shown on the plat of the William Chapline Addition to the

7

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016585

BOOK 921 PAGE 280

City of Wheeling, a copy of which plat has been unofficially recorded in Deed Book No. 287, at page 385."

There is excepted and reserved from Tract III all of that property previously conveyed from the Ohio County Building Commission to the West Virginia Department of Highways by deed dated January 31, 1981, and recorded in said Clerk's office in Deed Book 611, at page 250.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59 Parcel 462.**

## TRACT IV

**Parcel Nineteen:** A parcel of land situate in the City of Wheeling, Ohio County, West Virginia, being the west one-fourth of Lot No. 262 in the addition to the City of Wheeling laid off by William Chapline, more particularly bounded and described as follows:

"Beginning at the intersection of the north line of Twenty-Second Street and the east line of Alley E, thence eastwardly binding on the north line of Twenty-second Street 25 feet to the southwest corner of the John Koehler property; thence northwardly binding on the west line of the Koehler property 52 feet and 9 inches to the south line of the Mertz property; thence westwardly binding on the last-named south line and parallel to Twenty-second Street 25 feet to the east line of Alley E., thence southwardly binding on the last-named east line 52 feet and 9 inches to the place of beginning."

**Parcel Twenty:** The East one-half (1/2) of the West half of Lot Numbered Two Hundred and Sixty-two (262) situated in the addition to the City of Wheeling laid off by William Chapline in that part of the City of Wheeling called Centre Wheeling.

"This conveyance is subject to the privileges and right of way granted by Wendell Neidert and wife to John Koehler to run a sewer along the north line of the west half of said Lot Two Hundred and sixty-two (262) westwardly to Alley E.

"There is also excepted and reserved from this conveyance an easement and right of way over and across so much of the East half of the West half of Lot numbered Two Hundred and sixty-two (262) in William Chapline Addition as is necessary for the owner of the building known as Sixty-seven (67) Twenty-second (22) Street to maintain and repair his property."

**Parcel Twenty-One:** The following described westerly part of the east half of Lot Numbered Two Hundred Sixty-two (262) situated in the Addition to said City laid out by William Chapline, beginning at the southwest corner of said half lot which corner is the northeast corner of the property owned by John Koehler; thence eastwardly binding on the north line of 22nd Street, nineteen (19) feet to a point; thence northwardly parallel with the west line of said half lot seventeen (17) feet to a point; thence eastwardly parallel with the north line of 22nd Street, two (2) feet to a point; thence northwardly parallel with the west line of said half lot, seventeen (17) feet to a point; thence westwardly parallel with the north line of said 22nd Street,

8

**EXHIBIT 1**

DEFENDANTS_016586

one (1) foot to a point; thence northwardly parallel with the west line of said half lot eighteen (18) feet and nine (9) inches to the north line of said half lot; thence westwardly binding on said last-named north line, twenty (20) feet to the northwest corner of said half lot; thence southwardly binding on the east line of the said John Koehler property, and west line of said half lot fifty-two (52) feet and nine (9) inches to the place of beginning.

"Together with an easement and right-of-way over and across so much of the east half of the west half of Lot Numbered Two Hundred Sixty-two (262), William Chapline Addition, as necessary for the maintenance and repair of the structure upon the hereinbefore described property and known as 67 Twenty-second (22nd) Street."

Parcel Twenty-Two: The following described part of the east half of Lot numbered Two Hundred Sixty Two (262) situated in the addition to the City of Wheeling, aforesaid, laid off by William Chapline, beginning in the southeast corner of said half lot, which said corner is the intersection of the north line of 22nd Street and the west line of Jacob Street in said City of Wheeling, thence westwardly along the north line of said 22nd Street, Thirty-one (31) feet to the southeast corner of the part of said half lot conveyed to Mary J. Koehler by deed dated April 28th, 1904, as of record in the office of the Clerk of the County Court in said Ohio County, in Deed Book No. 115, Page 114, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence eastwardly parallel with 22nd Street two (2) feet, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence westwardly parallel with 22nd Street, One (1) foot, thence northwardly binding in the last named east line Eighteen (18) feet and Nine (9) inches to the north line of said half lot, thence eastwardly binding on last named north line Thirty (30) feet to the northeast corner of said half lot, thence southwardly binding on the east line of said half lot Fifty-two (52) feet and Nine (9) inches to the place of beginning."

Parcel Twenty-Three: Lot numbered Two Hundred and Sixty-three (263) on the West side of Jacob Street, just north of Twenty-second Street, in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, excepting, however, that portion or said Lot Numbered Two Hundred and Sixty-three (263), to-wit:

"The northerly twenty-five (25) feet thereof, which was heretofore conveyed to Charles J. Ochsenkuhn by deed of Gertrude Mertz, et al, dated January 11, 1910 and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 132, at page 459, and deed of Frank C. Nolte, Guardian of Ellen Schad and Robert Schad, dated January 11, 1910 and now of record in said Clerk's office in Deed Book 132, at page 460."

Parcel Twenty-Four: Commencing at the point of intersection of the northerly boundary line of said lot No. 263 with the westerly side of Jacob Street; thence in a southerly direction with the westerly side of Jacob Street a distance of twenty-five (25) feet to a point; thence in a westerly direction and parallel with the northerly boundary line of said Lot No. 263 to the easterly side of the alley in the rear of said lot; thence in a northerly direction and with the easterly side of said alley a distance of twenty-five (25) feet to the northwesterly corner of said Lot No. 263; thence eastwardly with the northerly boundary line of said Lot No. 263 to the place of beginning.

9

EXHIBIT 1

DEFENDANTS_016587

BOOK  9 2 1 PAGE  2 8 2

**Parcel Twenty-Five:** A certain parcel of land known as the south one-half of Lot Numbered Two Hundred Sixty-four (264) in Chapline's Addition to the City of Wheeling, in Center District, Ohio County, West Virginia.

**Parcel Twenty-Six:** Being twenty-six (26) feet off the north part of Lot Numbered Two Hundred Sixty-five (265) fronting on the west side of Jacob (formerly German) Street, bounded as follows: Beginning at the northeast corner of said lot; thence south twenty-six (26) feet; thence west to the alley in the rear of said lot; thence north with the line of said alley twenty-six (26) feet to the north line of said lot; thence east to the place of beginning.

**Parcel Twenty-Seven:** All the south half of Lot No. 265, situated in that part of the said City of Wheeling laid out by William Chapline and now called Center Wheeling.

**Parcel Twenty-Eight:** All that property situated in the City of Wheeling, Ohio County, West Virginia, and known as the north one-half of Lot No. 264 in Chapline's Addition, which half-lot is 26 feet 4-1/2 inches wide and 100 feet deep.

**Parcel Twenty-Nine:** The south twenty-three (23) feet of lot numbered two hundred and sixty-six (266) situate on the west side of Jacob Street, and south of Alley numbered eighteen (18) in that part of the City of Wheeling, West Virginia, called Centre Wheeling, and bounded and described as follows: beginning at the southeast corner of said lot, thence in a northerly direction with the west line of Jacob Street twenty-three (23) feet; thence in a westerly direction in a line parallel with the south line of said lot to the west line of said lot; thence in a southerly direction with the west line of said lot twenty-three (23) feet to the southwest corner of said lot; thence in an easterly direction with the south line of said lot to the place of beginning.

**Parcel Thirty:** All that piece or parcel of real estate situated in Center District, Ohio County, West Virginia, and known as Lot No. 266, situated on the southwest corner of Jacob Street and Alley 18, in that part of said City of Wheeling called 'South Wheeling', excepting therefrom, however, the southerly 23 feet of said lot.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.1.**

**Parcel Thirty-One:** A certain parcel of land situated in the City of Wheeling, Ohio County, West Virginia, being a part of lot number two hundred and fifty (250) in Chapline & Eoff's Addition to said city, the premises hereby conveyed being bounded and described as follows, to-wit: Beginning at the southeast corner of Eoff Street and Alley Eighteen, being the northwest corner of said lot, thence eastwardly with the southern side of said alley sixty-five (65) feet; thence southwardly on a line parallel with Eoff Street twenty-one feet and two inches (21 ft. 2 ins.); thence westwardly on a line parallel with said alley sixty-five (65) feet to said Eoff Street; thence northwardly with the eastern line of Eoff Street twenty-one feet and two inches (21 ft. 2 in.) to the place of beginning; with the dwelling house situated thereon, known as No. 2106 Eoff Street.

10

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016588

**Parcel Thirty-Two:**  Being situate on the east side of Eoff Street, between Twenty-first and Twenty-second Streets, in said City, being part of lot numbered Two Hundred and Fifty (250) in Eoff and Chapline's Addition to said City of Wheeling, bounded and described as follows: Beginning in the east line of said Eoff Street, at a point forty-four (44) feet southwardly from the south line of Alley Eighteen (18) measuring along the east line of said Eoff Street, thence eastwardly sixty-five (65) feet, thence northwardly, parallel with the east line of said Eoff Street, twenty-two feet and ten inches (22 ft. 10 ins.) thence westwardly parallel with the south line of said Alley Eighteen (18), sixty-five (65) feet to the east line of said Eoff Street, thence south and with the said east line twenty-two feet and ten inches (22 ft. 10 ins.) to the place of beginning.

**Parcel Thirty-Three:**  Commencing at the southwest corner of Alley E and Alley 18, thence south on the west side of Alley E, sixty-six (66) feet; thence west thirty (30) feet; thence north on a line parallel with Alley E, sixty-six (66) feet to Alley 18; thence east along the south side of Alley 18, thirty (30) feet to the place of beginning.

**Parcel Thirty-Four:**  Part of Lot No. 250, fronting on the east side of Eoff Street, between Twentieth and Twenty-second Streets, in the City of Wheeling, Ohio County, West Virginia, in Chapline and Eoff's Addition to said city, that is to say: Beginning in the east line of said Eoff Street at a point forty-four (44) feet southwardly from the south line of Alley 18 measuring along said east line, thence eastwardly parallel with the south line of said alley, sixty-five (65) feet, thence southwardly parallel with the east line of said Eoff Street twenty-two (22) feet, thence westwardly parallel with the south line of said alley sixty-five (65) feet to the east line of Eoff Street, thence northwardly binding on last named east line twenty-two (22) feet to the place of beginning.

**Parcel Thirty-Five:** The northern one-half part of lot numbered two hundred and forty-nine (249) situated on the east side of Eoff Street, in the Fifth Ward of the City of Wheeling, County of Ohio, State of West Virginia.

**Parcel Thirty-Six:**  Commencing at the intersection of the division line between lots 248 and 249 with the easterly line of Eoff Street; thence with the easterly line of Eoff Street, north 17° 00' east, 33 feet; thence leaving Eoff Street, south 73° 12' east, 122 feet to a stake in the westerly line of Alley E; thence with the same, south 17° 00' West, 33 and 5/10 feet to a stake; thence with the division line between said lots 248 and 249, north 72° 58' west, 122 feet to the place of beginning.

**Parcel Thirty-Seven:**  The north half of that parcel or lot of land lying and being situated west of a line drawn through Lot No. 247 parallel to Eoff Street in the Chapline and Eoff Addition to the City of Wheeling, which line divides said Lot into two (2) equal parts. Otherwise stated, the property hereby conveyed is the northwesterly quarter of said Lot No. 247.

**Parcel Thirty-Eight:**  A part of Lot Numbered Two Hundred and Forty-seven (247) in Chapline and Eoff's Addition to the said City of Wheeling, situated at the northeast corner of Eoff and Twenty-second Streets, fronting thirty-three and six one-hundredths (33-6/100) feet on

11

**EXHIBIT 1**

DEFENDANTS_016589

BOOK 921 PAGE 284

Eoff Street and extending back with equal width sixty-six and four-tenths (66 4/10) feet to the West line of F. Schlechien property.

**Parcel Thirty-Nine:** Beginning at a stake in the northerly side of 22nd Street, said stake being located S. 73° 02' E. 66 and 89/100 feet from the intersection of the northerly line of said 22nd Street with the easterly line of Eoff Street; thence from said beginning stake and with a line that is parallel to and 1 and 1/10 feet distant, measured at right angles in a westerly direction from the stone foundation of dwelling house now known as 57-22nd Street, N. 16° 50' E. 66 and 17/100 feet to a mark on a brick wall in the division line between said Lot 247 and Lot 248; thence leaving said parallel line and with said division line, S. 73° 02' E. 24 and 66/100 feet to a point; thence leaving said division line, S. 17' 01' W. (passing on the westerly face of the northwesterly corner strip of dwelling house now known as 59-22nd Street) 66 and 17/100 feet to a tack in the southwesterly corner of the southwesterly corner strip of said dwelling house 59-22nd Street in the northerly side of said 22nd Street; thence leaving said corner strip and with the northerly side of said 22nd Street, N. 73' 02' W. 24 and 45/100 feet to the place of beginning.

**Parcel Forty:** All the following described land situated in the City of Wheeling and in Center District, Ohio County, West Virginia, that is to say, the east half of the east half of Lot No. 247 of the Chapline and Eoff Addition to the City of Wheeling, sometimes known as Center Wheeling, the part of said Lot No. 247 hereby conveyed being situated at the corner north of Twenty-second Street and west of Lane E in said City;

**Parcel Forty-Two:** All of the following piece or parcel of ground, being about fifty (50) feet square, more or less, and bounded on the south by the northern boundary of North, or Webster Street, in South Wheeling, extended in a direct line on the north by a line parallel thereto and so drawn as to touch the northeast angle of a projecting ledge of stone on which the letter B was cut and to touch the same at the surface of the road on the west by the east line of division alley extended, and on the east by a line running from said northern line parallel with the line of division alley, so as to touch the east side of a small projection in the rock on which the letter P was cut; and thence following the direction of a seam in the rock which appears at the side of said projection to the said southern line, but reserving all the coal in or under the said piece of land and the right to dig and take the same.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.**

## TRACT V

**Parcel Forty-One:** Seven lots of ground situated in the addition to South Wheeling laid out by William Chapline (which addition is now part of the said City of Wheeling) and described on a plat of the said addition by the numbers two hundred and fifty-one (251), two hundred and fifty-two (252), two hundred and fifty-three (253), two hundred and fifty-six (256), two hundred and sixty-seven (267), two hundred and sixty-eight (268) and two hundred and sixty-nine (269).

**Parcel Forty-Three:** Beginning at a point where the easterly line of Eoff Street intersects the southerly line of 20th Street; thence with the said easterly line of Eoff Street

12

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016590

extended in a northeasterly direction N. 18° 00' E. 23.90 feet to a crows foot cut in the face of a sandstone ledge; thence leaving the said northeasterly extension of the easterly line of Eoff Street S. 61° 16' 50" E. 71.00 feet to a crows foot cut in the face of a sandstone ledge; thence S. 59° 51 ' 40" E. 53.41 feet to a point in the northeasterly extension of the easterly line of Alley E. (formerly Division Alley); thence with the said northeasterly extension of the easterly, line of Alley E., S. 18 ° 00' W. 35.60 feet to a point at the intersection of the said northeasterly extension of the easterly line of Alley E, with the southerly line of 20th Street; thence with the said southerly line of 20th Street N. 55° 30' W. 127.24 feet to the place of beginning.

**Parcel Forty-Four:** Beginning at the point where the easterly extension of the southerly line of Twentieth Street intersects the westerly line of Alley E (formerly called Division Alley), said beginning point being also located S. 55° 30' E. 127.24 feet from the intersection of the southerly line of Twentieth Street with the easterly line of Eoff Street; thence, with the westerly line of the said Alley E extended in a northerly direction N. 18° 00' E. 35.60 feet to a point in the southerly line of Crescent Street; thence with the said southerly line of Crescent Street S. 59 ° 31 40" E. 115.16 feet to the westerly line of a tract of land containing 42 acres, 2 rods and 3 poles that was conveyed to the Whitaker-Glessner Co. by the Whitaker Iron Co. by deed dated January 21, 1904, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 115, page 293, thence with the said westerly line of said tract of land, S. 29° 12' W. 43.07 feet to a point in the above mentioned easterly extension of the southerly line of Twentieth Street; thence with said easterly extension of the southerly line of Twentieth Street, N. 55° 30' W. 108.69 feet to the place of beginning; excepting therefrom, however, that tract of land that was conveyed by George Hardman and wife to Peter P. Beck by deed dated the 6th day of October, 1848, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 31, at page 425, said excepted parcel being described in said deed as 'about 50 feet square, more or less.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 431.**

**Parcel Forty-Eight: EXCHANGE PARCEL - Parts of Parcels formerly designated as 79, 80 & 81**

BEGINNING at a point in the western revised non-controlled access right of way line, said point being in the northern existing right of way line of 22nd Street and 81 feet radially left of Relocated WV Route 2 Centerline Station 163+12, Project FF-2(004), Ohio County, West Virginia;

thence, southwesterly with said existing right of way line 49 feet, more or less, to a point in the eastern existing right of way line of Jacob Street, said point being 118 feet radially left of Centerline Station 162+79;

thence, northeasterly with said existing right of way line 122 feet, more or less, to a point in the division line between The Ohio County Building Commission, and the West Virginia Department of Highways, said point being 131 feet left of and at a right angle to Centerline Station 164+01;

13

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016591

BOOK 921 PAGE 286

thence, southeasterly with said division line 46 feet, more or less, to a point in the western revised non-controlled access right of way line, said point being 84 feet left of and at a right angle to Centerline Station 164+05;

thence, southwesterly in a reverse centerline direction, with said revised non-controlled access right of way line 95 feet, more or less, to the place of beginning and containing 4,618 square feet, more or less.

Said tracts and parcels comprise the main campus of Ohio Valley Medical Center at 2000 Eoff Street, Wheeling, West Virginia, and are part of the property conveyed to Ohio Valley Medical Center, Inc., a West Virginia corporation, by the Ohio County Building Commission by deed dated the 17th day of December, 1985 and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia in Deed Book 628, at page 766.

**Said tracts and parcels contained in Tracts I through Tracts V, are identified by the Ohio County Assessor's office as Tax Map W58 – Parcel Numbers 0214 and 0230; and Tax Map W59 – Parcel Numbers 0426, 0427, 0431, 0432; 0432.1; 456; 457; 458; 459; 460; 461 and 462.**

## TRACT VI

The following parcel of land situate on the southerly side of Twenty-second Street between Jacob Street and Lane E, City of Wheeling, Ritchie Webster Center District (formerly Center District), Ohio County, West Virginia, and comprises the west part of the east one-half of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

BEGINNING at a point in the southerly line of Twenty-second Street at the division line between the east one-half and the west one-half of Lot 261, said beginning point being located S. 64° 00' E. 50 feet from the intersection of the southerly line of Twenty-second Street and the easterly line of Lane E; thence from said beginning point with said southerly line of Twenty-second Street, S. 64° 00' E. 32 and 52/100 feet to a point; thence leaving said southerly line and crossing through said Lot 261, S. 27° 06' W. 52 and 76/100 feet to a point in the division line between Lots 260 and 261; thence with said division line N. 64° 00' W. 31 and 71/100 feet to a point; thence leaving said division line between Lots 260 and 261 and with the division line between the east one-half and the west one-half of Lot 261, N. 26° 13' E. 52 and 75/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Thirty-eight One Thousandths (38/1000) of an acre more or less.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

14

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016592

Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0002.

## TRACT VII

The following parcel of land situate on the southerly side of Twenty-second Street and the westerly side of Jacob Street, City of Wheeling, Ritchie Webster Center District (formerly Center District), Ohio County, West Virginia, and comprising all of Lot 5 and the northerly two (2) feet nine (9) inches of Lot 4, as shown on the Map of Filan, Whyte & Gallagher Addition, said Map being recorded in the office of the Clerk of the County Commission of Ohio County, West Virginia in Deed book 84, at page 617, and the easterly part of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

Beginning at a point in the southerly line of Twenty-second Street at its intersection with the westerly line of Jacob Street, said beginning point also being the most easterly corner of Lot 5, as shown on said map; thence from said beginning point with said westerly line of Jacob Street, S. 26° 25' W. (at 57 and 1/100 feet passing the division line between Lots 4 and 5) 59 and 76/100 feet to a point; thence leaving said Jacob Street and crossing through said Lot 4, N. 64° 00' W. (at 18 feet leaving Lot 4 and with the division line between Lots 260 and 261, William Chapline Addition) 35 and 4/10 feet to a point; thence leaving said division line and crossing through said Lot 261 N. 27° 06' E. 52 and 76/100 feet to a point in said southerly line of Jacob Street; thence with same the following two (2) bearings and distances: S. 64° 00' E. 16 and 77/100 feet to a point at the division line between said Lot 261 and said Lot 5; thence with said Lot 5, S. 85° 11' E. 19 and 36/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Forty-three One Thousandths (43/1000) of an acre, more or less.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0003.

THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2211 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER

(I)

A certain piece or parcel of land situate on the Southwest corner of 22nd and Eoff Streets in the City of Wheeling, Ohio County, West Virginia, being the Northeast part of lot numbered Two

15

EXHIBIT 1

DEFENDANTS_016593

BOOK 921 PAGE 288

Hundred and Nineteen (219) in Chapline and Eoff's Addition to said City of Wheeling and the part hereby conveyed is bounded and described as follows:

Beginning at the Southwest corner of 22nd and Eoff Streets which is the Northeast corner of said lot numbered Two Hundred and Nineteen (219), thence in a Southerly direction with the Easterly line of said lot and the Westerly line of said Eoff Street Thirty (30) feet; thence in a Westerly direction in a line parallel with 22nd Street Sixty-one (61) feet; thence in a Northerly direction in a line parallel with Eoff Street Thirty (30) feet to the Southerly line of 22nd Street; thence in an Easterly direction with the Southerly line of 22nd Street, Sixty-one (61) feet to the place of beginning; together with all buildings and appurtenances situate thereon or belonging thereto.

This deed is made subject to a sewer right granted by Joseph N. Schwarzwalder to Conrad Bachman heirs by an agreement dated November 5, 1906, and recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 123, at page 212.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Emil F. Yeager and Margaret C. Yeager, his wife, by Deed dated the 5th day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 549, at page 311.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0247.**

## (II)

The South 36 feet of the East half of Lot No. 219 in Chapline and Eoff's Addition to the said City of Wheeling, Ohio County, West Virginia, and being also designated by Street address known as 2203 and 2205 Eoff Street, Wheeling, West Virginia.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 9th day of October, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 450.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0248.**

## (III)

The following described real estate situate on the west side of Eoff Street, between Twenty-second and Twenty-third Streets in the City of Wheeling, Ohio County, West Virginia, and more particularly described as the north half of Lot numbered Two hundred and Eighteen (218) on the recorded plat of Chapline and Eoff's Addition to the City of Wheeling. Together with all the improvements thereon and the appurtenances thereunto belonging.

16

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**                                                        DEFENDANTS_016594

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0249.**

(IV)

The following described property situated in the City of Wheeling, Center District, Ohio County, West Virginia, that is to say:

The south half of Lot No. Two Hundred Eighteen (218) as shown and designated on the Plat of the Addition to the Town of Wheeling laid off by William Chapline, Jr., and John Eoff, which Plat is recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Bok No. 15, at page 138, said half lot fronting thirty-three (33) feet on the westerly side of Eoff street and extending back westwardly of even width one hundred twenty-two (122) feet to the alley in the rear.

Together with the buildings and improvements thereon and the hereditaments and appurtenances thereunto belonging.

Being Parcel III of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0250.**

(V)

The north one-half (1/2) of lot numbered two hundred and seventeen (217) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia: said half of lot fronts thirty-three (33) feet on the west side of Eoff Street in said City of Wheeling, and extends back with equal width to the alley in the rear.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 3rd day of April, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 449.

17

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016595

BOOK 9 2 1 PAGE 290

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0251.**

## (VI)

The following described property situate in Ohio County, West Virginia, that is to say:

A certain piece or parcel of real estate situate in the city of Wheeling in Ohio County, West Virginia, being a part of the south half of Lot Number 217 in what is known as the Chapline & Eoff Addition to said city of Wheeling. The parcel hereby conveyed is bounded and described as follows, to-wit: Beginning at the north-east corner of the south half of said Lot Number 217 on the west side of Eoff Street; thence southwardly with the west line of Eoff Street sixteen & one-half (16-1/2) feet, more or less, to the center of the partition wall between the property hereby conveyed and the property adjoining on the south side thereof; thence westwardly through the center of said partition wall, and with the same course continued to the western line of said lot; thence northwardly with the west line of said lot sixteen and one-half (16-1/2) feet to the north-western corner of the south half of said lot; thence eastwardly with the northern line of said south half of said lot to the place of beginning.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, by Wilson Ruckman by Mary Geneva Ruckman, his attorney-in-fact, and Mary Geneva Ruckman, his wife, by Deed dated the 23rd day of March, 1981, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 601, at page 299.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0252.**

## (VII)

The following described parcel of real estate situate in the City of Wheeling, County of Ohio, Center District, West Virginia; said parcel of real estate being more particularly described as follows:

A certain piece or parcel of land fronting on the west side of Eoff Street, between Twenty-second and Twenty-third Streets, in the City of Wheeling, Ohio County, West Virginia, and being the South one-fourth (1/4) of lot numbered Two Hundred and Seventeen (217) in Chapline and Eoff's Addition to the said City of Wheeling; said parcel of ground is more particularly described as follows:

Beginning at the South East corner of said lot numbered Two Hundred and Seventeen (217), thence North along the West line of said Eoff Street, Sixteen and one-half (16-1/2) feet to a point opposite the center of the partition wall of the double house erected on the South half of said lot, thence in a straight line parallel with the Southern line of said lot, One Hundred and Twenty-two (122) feet to an Alley in the rear, thence in a southerly direction along the Eastern line of said Alley, Sixteen and one-half (16-1/2) feet to the Southern line of said lot, thence in an Easterly

18

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016596

BOOK 921 PAGE 291

direction along the South line of said lot numbered Two Hundred and Seventeen, One Hundred and Twenty-two (122) feet to the place of beginning.

Together with all and singular the improvements thereon, the hereditaments and appurtenances thereunto belonging.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0253.**

(VIII)

The South one-fourth of Lot numbered Two Hundred and Sixteen (216) in Chapline and Eoff's Addition to said City of Wheeling, West Virginia, together with the buildings and the appurtenances thereunto belonging, which said South one-fourth of said Lot Numbered Two Hundred and Sixteen (216) is more particularly bounded and described as follows:

Beginning at the northwest corner of Lane 19 (formerly Alley C) and Eoff Streets in said City of Wheeling; thence with the westerly line of Eoff Street and sixteen and one-half (16-1/2) feet, more or less, to the center of the division wall between the building hereby conveyed and the building immediately adjacent to the north of the same; thence with the center of the said division wall and along the division line between said buildings west one hundred and twenty-two (122) feet, more or less, to the eastern line of Lane D (formerly Alley H); thence southwardly with the eastern line of said last mentioned Lane D to the north line of said Lane 19, and thence with the said north line of said Lane 19, eastwardly to the place of beginning.

Being Parcel IV of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0384.**

(IX)

The following described lot or parcel of land situate in Center District, Ohio County, West Virginia, that is to say:

19

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016597

BOOK 9 2 1 PAGE 292

That certain real estate known as the north one half of the south one half of the lot numbered Two Hundred and Sixteen (Lot No. 216) of the Addition to the City of Wheeling in the County of Ohio and State of West Virginia laid out by John Eoff and William Chapline, fronting about sixteen feet and six inches on the west side of Eoff Street in what was once the Fifth Ward of said City of Wheeling, and extending back westwardly of a uniform width with said front one hundred and twenty two feet, more or less, to the Alley on the west of said lot, together with all the buildings, improvements and appurtenances thereon or belonging thereto; excepting, however, from this conveyance the two rights of way heretofore granted to other parties across said property.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Horace W. Shepherd and Freda M. Shepherd, his wife, by Deed dated the 25th day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 549, at page 518.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0385.**

(X)

Part of Lot numbered two hundred and sixteen (216) fronting on the West side of Eoff Street, between Twenty-second (22nd) and Twenty-third (23rd) Streets in the City of Wheeling, West Virginia, in Chapline & Eoff's addition to said city, bounded as follows, to-wit: Beginning at the Southeast corner of the part of said lot conveyed to Francis Henry Moran by James G. Whyte and wife, as of record in the office of the Clerk of the County court of Ohio County, West Virginia, in Deed Book numbered Fifty-three (53), page 314, and thence Westwardly, Southwardly and Westwardly, binding on said Moran line to the East line of Alley "D"; thence Southwardly with the East line of Alley "D" to the South line of the North half of said lot; thence Eastwardly along the South line of the North half of said lot to the West line of Eoff Street; thence Northwardly along the West line of Eoff Street to the place of beginning. Reserving from this conveyance for the benefit of any person who shall be or become the owner of the next tenement South or that on the North part of the South half of said lot, the joint or free use of a certain Alley or passageway from Eoff Street, now there and open, and so to remain unless altered by common consent. Also guaranteeing to party of second part the right of way or passage through an alley three feet in width, and now covered by a tenement, and which is to be kept as it now is so as to leave a passage-way three feet wide and not less than nine feet high from the grade or base of said Alley, this latter right of way or passage is to join the South line of the said North half of said lot, and is to extend from the East line of Alley to a point three feet Eastward of the present tenement on the rear of the said North half of said lot numbered 216.

Being the same property conveyed to Ohio Valley Medical Center Incorporated, a West Virginia corporation, by John F. Baker and Katherine T. Baker, his wife, by Deed dated the 23rd day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 550, at page 131.

20

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016598

Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0386.

### (XI)

The following described real estate, situate in the City of Wheeling, Ohio County, West Virginia, that is to say:

The North one-fourth part of Lot Number Two Hundred and Sixteen (216), being about sixteen feet front on Eoff Street, and running back of equal width to the brick building formerly on the alley and thence with the East wall of said brick building South to the center of the division wall between the two tenements in it the said brick building, and then on a line with said division wall out to the alley, together with the buildings and appurtenances thereon.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0387.

**VACANT LOTS - 2206, 2208, 2210 and 2212 Chapline Streets, Wheeling, West Virginia:**

Parcel I:  The most southerly thirty (30) feet of Lot Numbered 192, as same is shown on the Plat of Eoff and Chapline's Addition to the City of Wheeling, said Plat being of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138; said part of said lot fronting thirty (30) feet on the east side of Chapline Street in said City and extending eastwardly of an even width to an alley in the rear thereof, and upon which is situate the improved premises known as 2204 Chapline Street in said City; together with all and singular the improvements situate thereon and the appurtenances and hereditaments thereunto belonging.  (Note:  The "improved premises" referred to in the foregoing description no longer exists on this property.  No building is located on this property.)

Parcel I is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0211.

Parcel II:   That certain parcel of land situate in the City of Wheeling, Ohio County, West Virginia, and bounded and described as follows:

Beginning in the West line of Lot Numbered One Hundred Ninety-One (191) in Chapline and Eoff's Addition to said City, said line being the East line of Chapline Street, at the northwest corner of the portion of said lot once owned by W. W. Irwin;  thence running eastwardly and

21

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016599

BOOK 921 PAGE 294

parallel to the North line of said lot to the alley in the rear thereof called Alley "D"; thence running northwardly, with the West line of said alley thirty-four (34) feet, more or less, to the northeast corner of a brick washhouse; thence running westwardly and parallel to the South line of said lot to Chapline Street, and from thence, with the East line of Chapline Street to the place of beginning, together with the buildings thereon. (Note: No building is located on this property.)

**Parcel II is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0210.**

Parcel III: A certain lot or piece of ground situated in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and more particularly described as the South One-half (½) of Lot Numbered One Hundred Ninety-one (No. 191) of "Chapline and Eoff's" Addition to the City of Wheeling. Fronting Thirty-three (33) feet on the East side of Chapline Street and running eastwardly of an even width One Hundred Twenty (120) feet to the alley in the rear of said lot. Together with all and singular the improvements thereon and the hereditaments and appurtenances thereunto belonging. Parcel III is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0209.

Parcel IV: The following described tract or parcel of real estate situate on Chapline Street, in the City of Wheeling, Ohio County, West Virginia, in the Addition to said City as laid out by John Eoff and William Chapline, to-wit:

Being the north 31 feet to lot 190 in Chapline and Eoff's Addition to said City; the said 31 feet hereby conveyed measured along the east side of Chapline Street southwardly from the north line of said lot 190 runs to a point which is 5 feet south of the south side of the south wall of the main brick building now on the property hereby conveyed together with the improvements on said part of lot 190 and the appurtenances thereto belonging.

**Parcel IV is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0208.**

**Parcels I – IV being part of the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia not-for-profit corporation, by Ohio Valley Medical Center, Incorporated, a West Virginia not-for-profit corporation, by Deed dated the 28th day of June, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 727, at page 686.**

**PARCEL V IS NO LONGER A VACANT LOT AND IS NOW PART OF THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER, LOCATED AT 2211 EOFF STREET (LOT LOCATED AT CORNER OF THE ALLEY AND 22nd STREET), and is described as follows:**

Parcel V: All of that certain piece or parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, being the westerly one-half (1/2) of Lot number Two Hundred Nineteen (219) as shown and defined on the plat of Eoff and Chapline Addition, a

22

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016600

BOOK  9 2 1 PAGE ⌐ 295

copy of which plat is of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138.  Said westerly one-half (1/2) of Lot Two Hundred Nineteen (219) fronts sixty (60) feet more or less on Twenty-second (22) Street and extends back in a southerly direction and equal width with said frontage a distance of sixty-six (66) feet more or less to the southerly line of said lot, together with all the building and improvements situate thereon.

**Parcel V is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0246.**

**Parcel V being the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia corporation, by Francis D. Brown, by Deed dated the 31st day of May, 1984, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 619, at page 418.**

**Formerly the River Health Enterprises, Inc. Property:**

## Parcel One

The following parcel of land situate on the westerly side of Chapline street, City of Wheeling, Ritchie Webster Center district (formerly Center district) Ohio County, West Virginia, and comprising all of Lots 169, 170, 171 and 172, as shown on the Map of Eoff and Chapline Addition, said map being recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 15, at page 138, and being more particularly bounded and described as follows:

Beginning at a point in the westerly line of Chapline Street, at its intersection with the southerly line of Lane 17, at the most easterly corner of Lot 172, as shown on said map; thence from said beginning point with said westerly line of Chapline Street, S. 16° 51' W. 234 and 01/100 feet to a point in the northerly line of Chapline Street and with said northerly line of Lane 18; thence leaving said westerly line of Chapline Street and with said northerly line of Lane 18, N. 73° 09' W. 121 and 62/100 feet to a point in the easterly line of Lane C; thence leaving said Lane 18 and with said easterly line of said Lane C, N. 16° 48' E. 271 and 57/100 feet to a point in the southerly line of said Lane 17; thence leaving said Lane C. and with said southerly line of Lane 17, S. 56° 02' E. 127 and 5/10 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, seven Hundred Six One Thousandths (706/1000) of an acre, more or less.

Being the same property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by Gus P. Sapon, et al., by Deed dated the 31st day of January, 1983, and recorded in said Clerk's office in Deed Book 611, at page 72.  The said O. V. Enterprises, Inc. changed its

23

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016601

BOOK 921 PAGE 296

name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

Parcel Two

The following parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, and comprising that part of Lane 18, situate between Lane C and Chapline Street, and being more particularly bounded and described as follows:

> Beginning at a point in the westerly line of Chapline Street at the northeasterly corner of Lot 168 as shown on the Plat of Chapline and Eoff Addition, a copy of said plat being recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia in Deed Book 15, at page 138; thence from said beginning point and with the northerly line of said Lot 168 N. 73° 09' W. 121 and 6/10 feet to a point in the easterly line of Lane C; thence crossing Lane 18, N. 16° 48' E. 20 feet to a point at the intersection of said easterly line of Lane C with the southerly line of Lot 169 as shown on said plat; thence with said southerly line S. 73° 09' E. 121 and 62/100 feet to a point in the aforesaid westerly line of Chapline Street; thence crossing Lane 18, S. 16° 51' W. 20 feet to the place of beginning, containing two thousand four hundred thirty-two (2,432) square feet, more or less.

Being all of the property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by the City of Wheeling, by Deed dated the 31st day of January, 1985, and recorded in said Clerk's Office in Deed Book 623, at page 731. The said O. V. Enterprises, Inc. changed its name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

Parts of Parcels I and II (being designated as all of Lot 169, part of Lot 170 and part of Lane 18) were the subject of the Declaration of Condominium dated the 28th day of February, 1986, by O.V. Enterprises, Inc., a West Virginia corporation, establishing the Valley Professional Center Condominium, and recorded in the said Clerk's Office in Deed Book 629, at page 760. By Termination Agreement of Valley Professional Center Condominium, dated the 25th day of September, 1991, and recorded in said Clerk's Office in Deed Book 663, at page 525, River Health Enterprises Inc. formerly known as O.V. Enterprises, Inc., as the owner of all the units in said condominium, terminated the common interest community known as Valley Professional Center Condominium and rendered void the Declaration of Condominium.

Said parcels are identified by the Ohio County Assessor's office as Tax Map W58-Parcel No. 0187 and Tax Map W58-Parcel 0187-0001.

Ohio County
Michael E. Kelly, Clerk
Instrument 19660704
06/05/2017 @ 03:53:32 PM
LEASE
Book 921 @ Page 268
Pages Recorded 29
Recording Cost $        37.00

24

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016602

Wheeling, Ohio County, West Virginia

BOOK 921 PAGE 297

Prepared by and after recording return to:
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, a Professional Corporation
1400 Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama 35203
Attn: Lynn Reynolds

## ASSIGNMENT OF RENTS AND LEASES

STATE OF WEST VIRGINIA

KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF OHIO

**THIS ASSIGNMENT OF RENTS AND LEASES** (this "Assignment") is entered into as of June 1, 2017, by and among **ALECTO HEALTHCARE SERVICES WHEELING LLC,** a Delaware limited liability company (the "Assignor"), having an address at c/o Alecto Healthcare Services LLC, 16310 Bake Parkway, Suite 200, Irvine, California 92618, Attn: Lex Reddy, and **MPT OF LOS ANGELES, L.P.,** a Delaware limited partnership, **MPT OF WHEELING-ALECTO HOSPITAL, LLC, MPT OF MARTINS FERRY-ALECTO HOSPITAL, LLC, MPT OF SHERMAN-ALECTO HOSPITAL, LLC, MPT OF FAIRMONT-ALECTO HOSPITAL, LLC,** and **MPT OF OLYMPIA, LLC,** each a Delaware limited liability company (collectively, the "Assignees"), each having their principal place of business at c/o MPT Operating Partnership, L.P., 1000 Urban Center Drive, Suite 501, Birmingham, Alabama 35242, Attn: Legal Department.

### W I T N E S S E T H :

### ARTICLE I
### Definitions

As used herein, the following capitalized terms used herein shall have the following meanings:

"Affiliate" shall mean, with respect to any Person (i) any Person that, directly or indirectly, controls or is controlled by or is under common control with such Person, or (ii) any other Person that owns, beneficially, directly or indirectly, 25% or more of the outstanding capital stock, shares or Equity Interests of such Person. For the purposes of this definition, "control" (including the correlative meanings of the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or

4831-9619-6425 v1
1038442-430002 134

EXHIBIT 1

DEFENDANTS_016603

BOOK  921 PAGE  298

indirectly, of the power to direct or cause the direction of the management and policies of such Person, through the ownership of voting securities or otherwise.

"Assignor's Personal Property" shall mean, all of Assignor's consumable investor and supplies, machinery, equipment, furniture, furnishings, trailers, movable walls or partitions, computers, trade fixtures, and other tangible or intangible personal property (including all such items not permanently affixed to the applicable Property), currently owned and acquired after the execution of this Assignment, and necessary, used, or useful in the operation of the applicable Facility, but excluding any items included within the definition of Fixtures.

"Bankruptcy Claims" shall mean all of Assignor's claims and rights to the payment of damages arising from any rejection by a Tenant of any Tenant Lease under the Bankruptcy Code.

"Bankruptcy Code" shall mean 11 U.S.C. § 101 et seq. (as the same may be amended from time to time).

"Business Day" shall mean each Monday, Tuesday, Wednesday, Thursday and Friday that is not a day on which commercial banks in the City of New York, New York are authorized or obligated by law or executive order to close.

"Engineering Documents" shall mean all site plans, surveys, soil and substrata studies, architectural drawings, plans and specifications, engineering plans and studies, floor plans, landscape plans, and other plans and studies that relate to all or any portion of the Land, the Improvements or the Personal Property.

"Environmental Indemnification Agreement" shall mean that certain Environmental Indemnification Agreement, dated as of the date hereof, executed by the Assignor and certain of its Affiliates in favor of certain of the Assignees and certain of their Affiliates, as the same may be modified, amended, restated or supplemented from time to time.

"Equity Interests" shall mean, with respect to any Person, the voting power, ownership, or other equitable interests of such Person, including any interest represented by any capital stock, convertible or participating debt instruments, membership interest, partnership interest, or any similar interest therein.

"Event of Default" shall mean any happening or occurrence described in Article VI hereof.

"Facility" shall mean that certain healthcare facility located on the Land.

"Fixtures" shall mean, all equipment, machinery, fixtures, and other items of real property, including all components thereof, now and hereafter located in, on or used in connection with, and that are, in each case, permanently affixed to the Land or affixed or incorporated into the buildings and structure on the Land, Improvements, including, without limitation, all affixed furnaces, boilers, heaters, electrical equipment, heating, plumbing, lighting,

2

4831-9619-6425 v1
1638442-430902

**EXHIBIT 1**

DEFENDANTS_016604

BOOK 9 2 1 PAGE 299

ventilating, refrigerating, incineration, air and water pollution control, waste disposal, air-cooling and air-conditioning systems and apparatus, sprinkler systems and fire and theft protection equipment, and built-in oxygen and similar vacuum systems, all of which, to the greatest extent permitted by law, are hereby deemed by the parties to constitute real estate, together with all replacements, modifications, alterations and additions thereto.

"Improvements" shall mean all buildings, structures, Fixtures and other improvements of every kind, alleyways and connecting tunnels, sidewalks, utility pipes, conduits and lines (on-site and off-site), parking areas and roadways appurtenant to such buildings and structures presently or hereafter situated upon on the Land, including, without limitation, any such items constituting Capital Additions, and all hereditaments, easements, rights of way and other appurtenances related thereto.

"Intangible Property" shall mean all permits, licenses, approvals, entitlements and other governmental and quasi-governmental authorizations, including, without limitation, certificates of occupancy or need required in connection with the ownership, planning, development, construction, use, operation or maintenance of all or any portion of the Property, and other intangible property or any interest therein now or hereafter owned or held by Assignor in connection with the Land or Improvements, or any business or businesses now or hereafter conducted by Assignor or any Tenant thereon or with the use thereof, including all leases, contract rights, agreements, trademarks, trade names, water rights and reservations, zoning rights, business licenses and warranties (including those relating to construction or fabrication) related to the Land or Improvements, or any part thereof; excluding, however, Assignor's general corporate trademarks, service marks, logos or insignia or books and records.

"Land" shall mean all those certain lots, tracts or parcels of land described in *Exhibit A* attached hereto and incorporated herein by reference, any other parcel of land acquired or leased and made subject to this Assignment, for all purposes, together with all covenants, licenses, privileges and benefits thereto belonging, and any easements, rights-of-way, rights of ingress or egress or other interests in, on, or to any land, highway, street, road or avenue, open or proposed, in, on, across, in front of, abutting or adjoining such real property including, without limitation, any strips and gores adjacent to or lying between such real property and any adjacent real property.

"Lease Documents" shall mean the Master Lease, the Environmental Indemnification Agreement and all other "Lease Documents" under and as defined in the Master Lease, in each case, as the same may be modified, amended, or restated from time to time

"License" shall mean the limited license as defined in Section 3.1 hereof.

"Master Lease" shall mean that certain Master Lease Agreement, dated as of the date hereof, among the Assignor and certain of its Affiliates and certain of the Assignees and certain of their Affiliates, as the same may be modified, amended or restated from time to time.

3

4831-9619-6425 v1
1038442-430002

EXHIBIT 1

DEFENDANTS_016605

BOOK **921** PAGE **300**

"Obligations" shall mean any and all of the indebtedness, covenants, conditions, warranties, representations and other obligations made or undertaken by Assignor or any of its Affiliates under or pursuant to the Lease Documents.

"Person" shall mean an individual, a corporation, a limited liability company, a general or limited partnership, an unincorporated association, a joint venture, a governmental entity or another entity or group.

"Personal Property" shall mean all Intangible Property, all furnishings, equipment, tools, machinery, fixtures, appliances and all other tangible personal property now or hereafter located on or about the Land or the Improvements, other than the Fixtures.

"Property" shall mean the Improvements, the Land, the Personal Property and the Rents (hereinafter defined), together with:

    (a)    all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages and appurtenances in anywise appertaining thereof, and all right, title and interest, if any, of Assignor in and to any streets, ways, alleys, strips or gores of land adjoining the Land or any part thereof;

    (b)    all betterments, improvements, additions, alterations, appurtenances, substitutions, replacements and revisions thereof and thereto and all reversions and remainders therein;

    (c)    all of Assignor's right, title and interest in and to any awards, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made by any governmental authority pertaining to the Land, the Improvements, the Fixtures or the Personal Property, including, but not limited to, those for any vacation of, or change in grade in, any streets affecting the Land or the Improvements and those for municipal utility district or other utility costs incurred or deposits made in connection with the Land; and

    (d)    any and all security and collateral of any nature whatsoever, now or hereafter given for the repayment of or the performance and discharge of the Obligations.

As used in this Assignment, the term "Property" shall be expressly defined as meaning all or, where the context permits or requires, any portion of the above and all or, whether the context permits or requires, any interest therein.

"Rents" shall mean, with respect to the Land and the Improvements, the immediate, absolute and continuing right to collect and receive all of the rents, income, receipts, revenues, proceeds, security, guaranties, and other types of deposits, issues and profits now due or which may become due or to which Assignor may now or shall hereafter (whether upon any applicable period of redemption or otherwise) become entitled or may demand or claim, arising or issuing from or out of the Tenant Leases, or any part thereof, including, without limiting the generality

4

4831-9619-6425 v1
\038442-430002

**EXHIBIT 1**

DEFENDANTS_016606

of the foregoing, minimum rents, additional rents, percentage rents, parking maintenance charges or fees, proceeds of sale of electricity, gas, chilled and heated water and other utilities and services, deficiency rents and liquidated damages following default, together with any and all rights and claims of any kind which the Assignor may have against any Tenant under a Tenant Lease or any subtenants or occupants of the Property.

"Tenant" shall mean the lessee, sublessee, tenant or subtenant under a Tenant Lease.

"Tenant Leases" shall mean, with respect to the Land and the Improvements, all written leases, subleases and other rental agreements (now or hereafter in effect), as any of the same may be amended, modified and/or restated from time to time, which grant a possessory interest in and to, or the right to use, occupy and enjoy all or any portion of the Land and the Improvements, including, without limitation, those certain Tenant Leases (if any) described on **_Schedule A_** attached hereto and incorporated herein by reference for all purposes, together with all the right, power and authority of the Assignor to enforce, alter, modify or change the terms of such leases and agreements or to surrender, cancel or terminate such leases and agreements, together with any and all guarantees, letters of credit and other credit support, modifications, extensions and renewals thereof, as the same may be amended, modified and/or restated from time to time (whether before or after the filing by or against the Assignor of any petition of relief under the Bankruptcy Code) and all other related security and other deposits.

"Warranties" shall mean, all warranties, representations and guaranties with respect to the Property, whether express or implied, which Assignor now holds or under which Assignor is the beneficiary, including, without limitation, all of the representations, warranties and guaranties given and/or assigned to the Assignor under the Tenant Leases.

Any terms not defined herein shall have the meaning ascribed to such terms in the Master Lease.

**ARTICLE II**
**Assignment**

Assignor, in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely and unconditionally GRANT, BARGAIN, SELL, CONVEY, ASSIGN, TRANSFER, SET OVER and DELIVER to Assignees the Tenant Leases, the Rents, the Warranties and the Bankruptcy Claims TO HAVE AND TO HOLD UNTO ASSIGNEES forever, and Assignor does hereby bind itself, its successors and assigns to WARRANT and FOREVER DEFEND the title to the Tenant Leases, the Rents, the Warranties and the Bankruptcy Claims unto Assignees against every Person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Assignor but not otherwise. This Assignment is an absolute, unconditional and presently effective assignment to Assignees, subject to Section 3.1 below, to secure the performance of the Obligations.

5

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016607

BOOK  921 PAGE  302

## ARTICLE III
### Limited License, Continuation and
### Termination of Assignment

3.1    **Limited License**.  Provided that there exists no Event of Default, Assignor shall have all rights under Tenant Leases, under a limited license (the "<u>License</u>"), to observe, perform and discharge the obligations, terms, covenants, conditions and warranties of the Tenant Leases, including the right to collect upon, but not prior to accrual, all of the Rents arising from or out of the Tenant Leases, or any renewals or extensions thereof, or from or out of the Property or any part thereof. Assignor may use the Rents in any manner not inconsistent with the Lease Documents. Upon the sale and conveyance by Assignees or their Affiliates, successors or assigns of the fee title to the Land and the Improvements, all right, title, interest and power granted under the License granted herein with respect to such Property shall be automatically continued subject to the terms and conditions of the Lease Documents, including this Assignment. Upon the occurrence of and during the continuation of an Event of Default, without any further action by Assignees, Assignor shall hold all Rents paid to Assignor thereafter in trust for the use and benefit of the Assignees and the Assignees shall have the right, power and authority, whether or not it takes possession of the Property, to demand, collect, receive, sue for and recover in their own name any and all Rents and Bankruptcy Claims and to apply the sum(s) collected, first to the payment, satisfaction and discharge of expenses incident to the collection of the same, and the balance to the payment of the Obligations; provided, however, that Assignees shall not be deemed to have taken possession of such Property and shall not be deemed to have accepted or assumed any duties or obligations under the Tenant Leases except, in any such case, the exercise of their option to do so, evidenced by their written demand and overt act for such purpose in accordance with <u>Article VII</u>. It shall not be necessary for Assignees to institute any type of legal proceedings or take any other action whatsoever to enforce the assignment provisions set forth herein. If such Event of Default is cured or waived in accordance with the applicable Lease Documents, the revocable license shall be reinstated.

3.2    **Continuation and Termination of Assignment**.  Upon final payment in full and discharge in full of the Obligations (other than contingent indemnification obligations for which no claim has been made), this Assignment shall become and be void and of no force or effect; <u>provided</u>, <u>however</u>, that the affidavit, certificate, letter or statement of any officer of any Assignee certifying in writing that any part of the Obligations remain unpaid and undischarged shall be and constitute conclusive evidence of the validity, effectiveness or continuing force of this Assignment, and any Person may, and is hereby authorized to, rely thereon. Written demand by any Assignee delivered to any Tenant for payment of the Rents during the continuation of any Event of Default claimed by Assignees shall, with respect to each such Tenant, be sufficient evidence of each such Tenant's obligation and authority to make all future payments of the Rents to Assignees without the necessity for further consent by Assignor.

6

4831-9619-6425 v1
1038442-430002

EXHIBIT 1

DEFENDANTS_016608

BOOK  921 PAGE 303

## ARTICLE IV
### Representations and Warranties

Assignor hereby unconditionally represents and warrants to Assignees as follows:

4.1     **Ownership of Tenant Leases and the Rents**.  Assignor may lease portions of the Property, which lease(s) shall be subject to and in accordance with the terms and conditions of the Master Lease. Subject to the terms of the Master Lease, Assignor has good title to the applicable Tenant Leases and the Rents and has all requisite right, power and authority to assign the such Tenant Leases and the Rents, and no other person, firm or corporation has any right, title or interest therein.

4.2     **No Default**.  Assignor has duly and punctually performed, all and singular, the terms, covenants, conditions and warranties of the Tenant Leases on Assignor's part to be kept, observed and performed; and, to Assignor's knowledge, the Tenants thereunder are not in default of any of the terms or provisions of the respective Tenant Leases, except for the non-payment of common area maintenance charges by certain Tenants.

4.3     **No Modification of the Tenant Leases or Anticipation or Hypothecation of the Rents**.  (a) The Tenant Leases are valid and unmodified, except as indicated herein, and remain in full force and effect; (b) Assignor has not previously sold, assigned, transferred, or pledged the Tenant Leases or the Rents, or any part thereof, whether now due or hereafter to become due, except for the sales, assignments, transfers, mortgages and pledges for which Assignor has heretofore or contemporaneously herewith obtained a full release the Rents now due, or to become due, for any periods subsequent to the date hereof have not been collected and that payment thereof has not been anticipated, waived or released, discounted, setoff or otherwise discharged or compromised; and (c) Assignor has not received any funds or deposits from any Tenant for which credit has not already been made on account of the accrued Rents.

## ARTICLE V
### Affirmative Covenants

Assignor hereby unconditionally covenants and agrees with Assignees as follows:

5.1     **Performance**.   Assignor shall observe, perform and discharge, duly and punctually, all and singular, the obligations, terms, covenants, conditions and warranties of the Lease Documents and of the Tenant Leases (as applicable) (except upon Assignees' execution of their remedies under Article III by written demand or other overt act, among other things, to perform and discharge such duties or obligations under the Tenant Leases). Assignor shall promptly deliver to Assignees any notices received with respect to the Tenant Leases alleging any material failure on the part of Assignor to observe, perform and discharge the same.

5.2     **Notification to Tenants**.  Upon Assignees' written request, Assignor shall notify and direct, in writing, each and every present or future Tenant or occupant of the Property or any

7

4831-9619-6425 v 1
1038442-430002

EXHIBIT 1

DEFENDANTS_016609

BOOK 921 PAGE 304

part thereof that any security deposit or other deposits heretofore delivered to Assignor has been retained by Assignor or assigned and delivered to Assignees, as the case may be.

5.3 **Enforcement**. Assignor shall enforce the performance of each and every obligation, term, covenant, condition and agreement in the Tenant Leases by any Tenant to be performed, and Assignor shall appear in and defend any action or proceeding arising under, occurring out of or in any manner connected with the Tenant Leases or the obligations, duties or liabilities of Assignor and any Tenant thereunder, and upon written request by Assignees, Assignor will do so in the names and on behalf of Assignees, but at the expense of Assignor, and Assignor shall pay all reasonable costs and expenses of Assignees, including reasonable attorneys' fees and disbursements, in any action or proceeding in which Assignees may appear.

5.4 **Anticipation or Hypothecation of the Rents**. Assignor hereby covenants and agrees (a) to give to Assignees duplicate notice of each notice of material default sent to each Tenant and copies of all material notices and communications received from any Tenant promptly upon delivery or receipt thereof; (b) to obtain and furnish to Assignees, upon request, itemized statements, in such detail as shall be satisfactory to Assignees, of the total rent and other charges paid or payable by each Tenant; (c) to comply in all respects with the terms and provisions of each Tenant Lease; (d) not to assign, transfer, pledge, mortgage or otherwise encumber any Tenant Lease; (e) not to assign, transfer, pledge, mortgage or otherwise encumber any Rents; (f) except as otherwise expressly provided in any Tenant Lease, not to hereafter collect, accept from any Tenant, or permit any Tenant to pay any Rents for more than one (1) month in advance (whether in cash or by evidence of indebtedness); (g) not to waive, excuse, condone, discount, setoff, compromise or in any manner release or discharge any Tenant of and from any obligations, covenants, conditions or agreements to be kept, observed or performed by such Tenant, under and in accordance with the terms of the respective Tenant Lease, except with respect to any obligation under a Tenant Lease prior to the date of this Assignment; and (h) not to enter into any Tenant Lease or terminate, amend, modify, surrender, extend or renew any Tenant Lease for a time period extending beyond the maturity date under the Master Lease, without prior written approval of Assignees.

5.5 **Delivery of the Tenant Leases; Further Acts and Assurance**. Until the Obligations secured hereby have been paid in full and discharged (other than contingent indemnification obligations for which no claim has been made), Assignor shall enter into only leases of the Property that are permitted pursuant to the terms and conditions of the Lease Documents, and shall upon the request of Assignees deliver executed copies of all existing and all other and future Tenant Leases when executed upon all or any part of the Property and will transfer and assign such other and future Tenant Leases upon the same terms and conditions as herein contained, and Assignor hereby covenants and agrees to make, execute and deliver to Assignees, upon demand and at any time or times, any and all assignments and other documents and instruments which Assignees may deem advisable to carry out the true purpose and intent of this Assignment.

8

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016610

BOOK 921 PAGE 305

## ARTICLE VI
### Events of Default

The term "Event of Default," as used herein, shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

6.1  **Event of Default under Master Lease**.  The occurrence of any "Event of Default" under and as defined in the Master Lease.

6.2  **Performance of Obligations**.  In addition to any Event of Default under and as defined in the Master Lease, if Assignor shall fail to observe or perform in any respect:

(a)  any monetary term, covenant or condition of this Assignment, and such failure is not cured by Assignor within a period of ten (10) days after receipt by Assignor of written notice thereof from Assignees; or

(b)  any non-monetary term, covenant or condition of this Assignment, and such failure is not cured by Assignor within a period of thirty (30) days after receipt by Assignor of written notice thereof from the Assignees unless, in Assignees' reasonable determination, such failure cannot with due diligence be cured within a period of thirty (30) days, in which case such failure shall not be deemed to continue if, in Assignees' reasonable determination, Assignor proceeds promptly and with due diligence to cure the failure and diligently complete the curing thereof; provided, however, in no event shall Assignees be required to give more than two (2) notice and cure periods for the Assignor's failure to observe or perform the same (or repetitive) covenant or condition in any consecutive twelve (12) month period.

## ARTICLE VII
### Remedies

7.1  **Remedies**.  Upon and during the continuation of an Event of Default, Assignees, at their option, shall have the complete right, power and authority hereunder, then or thereafter, to exercise and enforce any or all of the following rights and remedies, all of which shall be cumulative, shall be in addition to all other rights and remedies of Assignees and may be exercised concurrently or independently from time to time as Assignees shall elect:

(a)  To revoke the License with respect to the Property and then and thereafter, without taking possession of such Property, to the extent permitted by law, in the Assignee's own names, to demand, collect, receive, sue for, attach and levy the Rents and give proper receipts, releases and acquittances therefor, after deducting all necessary and proper costs and expenses of operation and collection, as determined by Assignees, including reasonable attorneys' fees, and apply the net proceeds thereof, together with any funds of Assignor deposited with Assignees, in reduction or repayment of the Obligations in such order of priority as Assignees may, in their sole discretion, determine;

9

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016611

BOOK 921 PAGE 306

(b)   Without regard to the adequacy of the security or solvency of Assignor, with or without any action or proceeding through any Person or by any agent or by a receiver to be appointed by a court of competent jurisdiction, and irrespective of Assignor's possession, then or thereafter to enter upon, take possession of, manage and operate the Property or any part thereof; make, modify, enforce, cancel or accept surrender of a Tenant Lease now in effect or hereafter in effect on the Property or any part thereof; remove and evict any Tenant (subject to the provisions of any non-disturbance and attornment agreement entered into by and between any Assignee and any Tenant); increase or decrease the Rents under a Tenant Lease; decorate, clean and repair, and otherwise do any act or incur any cost or expense which Assignees may deem reasonably necessary to protect the status and value of the Property as fully and to the same extent as Assignor could do if in possession thereof; and in such event, to apply the Rents so collected to the operation and management of the Property, but in such order or priority as Assignees shall deem proper, and including the payment of reasonable management, brokerage and attorneys' fees and disbursements, and payment of the Obligations and to the establishment and maintenance, without interest, of a reserve for replacements; and

(c)   Without exception for any remedies exercised by or available to Assignees, the immediate right, at Assignees' option, upon written notice to Assignor and without the execution by Assignor of any further instrument, to (i) assume Assignor's rights, duties and obligations under the Tenant Leases and/or (ii) designate a replacement landlord or sub-landlord under any of the Tenant Leases, which replacement landlord or sub-landlord shall be selected in Assignees' sole discretion.

7.2   **Exculpation of Assignees**.   The acceptance by Assignees of this Assignment, with all of the rights, powers, privileges and authority created hereby, shall not, prior to entry upon and taking possession of the Property by Assignees, be deemed or construed to constitute Assignees a "mortgagee in possession," nor thereafter or at any time or in any event obligate Assignees to appear in or defend any action or proceeding relating to the Tenant Leases, the Rents or the Property or to take any action hereunder or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability under a Tenant Lease or to assume any obligation or responsibility for any security deposits or other deposits delivered to Assignor by a Tenant and not assigned and delivered to Assignees, nor shall Assignees be liable in any way for any injury or damage to persons or property sustained by any Person in or about the Property.

7.3   **No Waiver or Election of Remedies**.

(a)   Neither the collection of the Rents and application as provided for in this Assignment, nor the entry upon and taking possession of the Property by Assignees, nor Assignees' right to assume, perform or enforce the Tenant Leases shall be deemed to cure or waive any Event of Default or waive, modify or affect any notice of default under the Master Lease or any Lease Document or invalidate any act done pursuant to any such notice. The enforcement of any such rights or remedies by Assignees, once exercised,

10

4831-9619-6425 v1
1038442-436002

**EXHIBIT 1**

DEFENDANTS_016612

BOOK   921 PAGE 307

shall continue for so long as Assignees shall elect, notwithstanding that the collection and application of the Rents may have cured the original Event of Default. If Assignees shall thereafter elect to discontinue the exercise of any such rights or remedies hereunder, such rights or remedies may be reasserted at any time and from time to time following any subsequent Event of Default.

(b)     The delay, omission or failure of Assignees to assert any of the terms, covenants or conditions of this Assignment for any period of time or at any time or times shall not be construed or deemed to be a waiver of any such right, and nothing herein contained nor anything done or omitted to be done by Assignees pursuant to this Assignment shall be deemed to be an election of remedies or a waiver by Assignees of any of its rights and remedies under any other Lease Document or under the law. The right of the Assignees to collect and enforce the payment and performance of the Obligations and to enforce any security therefor may be exercised by the Assignees either prior to or simultaneously with or subsequent to any action taken hereunder. To the extent permitted by law, Assignees shall not be required to seek the appointment of a receiver or to institute any proceeding of any kind, possessory or otherwise, to secure or enjoy the full benefits of this Assignment.

7.4     **Appointment of Attorney-in-Fact**.

(a)     Subject to the provisions of <u>Section 7.4(c)</u> hereof, Assignor hereby constitutes and appoints each Assignee the true and lawful attorney-in-fact, coupled with an interest, of Assignor and in the name, place and stead of Assignor to demand, sue for, attach, levy, recover and receive any premium or penalty payable upon the exercise by a Tenant under a Tenant Lease of a privilege of cancellation originally provided in such Tenant Lease and to give proper receipts, releases and acquittances therefor and, after deducting expenses of collection, to apply the net proceeds as a credit upon any portion of the Obligations selected by Assignees, notwithstanding the fact that such portion of the Obligations may not then be due and payable or that such portion of the Obligations is otherwise adequately secured; and Assignor does hereby authorize and direct any such Tenant to deliver such payment to Assignees in accordance with this Assignment, and Assignor hereby ratifies and confirms all that Assignees, as attorney-in-fact, shall do or cause to be done by virtue of the powers granted hereby. The foregoing appointment is irrevocable and continuing, and such rights, powers and privileges shall be exclusive in Assignees, their successors and assigns, so long as any part of the Obligations secured hereby remain unpaid and undischarged.

(b)     Subject to the provisions of <u>Section 7.4(c)</u> hereof, Assignor hereby constitutes and appoints each Assignee the true and lawful attorney-in-fact, coupled with an interest, of Assignor and in the name, place and stead of Assignor to subject and subordinate at a time and from time to time a Tenant Lease or any part thereof to the lien and security interest of any mortgage, deed of trust or security agreement on, or to any ground lease of, the Property, or to request or require such subordination, where such reservation, option or authority was reserved to Assignor under a Tenant Lease, or in any

11

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016613

BOOK  921 PAGE  308

case where Assignor otherwise would have the right, power or privilege so to do.  The foregoing appointment is irrevocable and continuing, and such rights, powers and privileges shall be exclusive in Assignees, their successors and assigns, so long as any part of the Obligations secured hereby remain unpaid and undischarged, and Assignor hereby warrants that it has not at any time prior to the date hereof exercised a right, and Assignor hereby covenants not to exercise any such right, to subordinate a Tenant Lease to the lien of any mortgage, deed of trust or security agreement or to any ground lease.

(c)     Assignees will exercise the rights set forth in Sections 7.4(a) and 7.4(b) hereof only during the continuation of an Event of Default.

7.5     **Assignor's Indemnities**.     Assignor hereby agrees to indemnify and hold Assignees free and harmless from and against any and all liability, loss, costs, damage or expense which any Assignee may incur under or by reason of this Assignment, or for any action taken by any Assignee hereunder other than a Assignee's acts of gross negligence or willful misconduct, or by reason or in defense of any and all claims and demands whatsoever which may be asserted against any Assignee arising out of the Tenant Leases, including specifically, but without limitation, any claim by a Tenant of credit for the Rents paid to and received by a Assignor, but not delivered to Assignees.  In the event Assignees incur any such liability, loss, costs, damage or expense, the amount thereof, including reasonable attorneys' fees, with interest thereon at the highest rate of interest permitted by applicable state or federal law, shall be payable by Assignor to Assignees immediately, without demand, and shall be secured hereby and by all other security for the payment and performance of the Obligations.

## ARTICLE VIII
## Miscellaneous

8.1     **Bankruptcy**.

(a)     Upon and during the continuation of an Event of Default hereunder, Assignees shall have the right to proceed in its own name or in the name of Assignor in respect of any claim, suit, action or proceeding relating to the rejection of any Tenant Lease, including, without limitation, the right to file and prosecute, to the exclusion of Assignor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Tenant Lease under the Bankruptcy Code.

(b)     If there shall be filed by or against Assignor a petition under the Bankruptcy Code, and Assignor, as lessor under any Tenant Lease, shall determine to reject such Tenant Lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignor shall give Assignees not less than ten (10) days' prior written notice of the date on which it shall apply to the bankruptcy court for authority to reject the Tenant Lease. Assignees shall have the right, but not the obligation, to serve upon Assignor within such ten (10) day period a notice stating that (i) Assignees demand that Assignor assume and assign the Tenant Lease to Assignees pursuant to Section 365 of the Bankruptcy Code

12

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016614

BOOK  921 PAGE 309

and (ii) Assignees covenant to cure or provide adequate assurance of future performance under the Tenant Lease. If Assignees serve upon Assignor the notice described in the preceding sentence, Assignor shall not seek to reject the Tenant Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Assignees of the covenant provided for in clause (ii) of the preceding sentence.

8.2 **Performance at Assignor's Expense**. The cost and expense of performing or complying with any and all of the Obligations shall be borne solely by Assignor, and no portion of such cost and expense shall be, in any way and to any extent, credited against any installment on or portion of the Obligations.

8.3 **Survival of Obligations**. Each and all of the Obligations shall survive the execution and delivery of the Lease Documents and the consummation of the transaction called for therein, and shall continue in full force and effect until the Obligations shall have been paid, performed and discharged in full (other than contingent indemnification obligations for which no claim has been made).

8.4 **Necessary Action**. Each party shall perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Assignment.

8.5 **Recording and Filing**. Assignor will cause this Assignment and all amendments and supplements thereto and substitutions therefor to be recorded, filed, re-recorded and re-filed in such manner and in such places as Assignees shall reasonably request, and will pay all such recording, filing, re-recording and re-filing taxes, fees and other charges.

8.6 **Notices**. All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed to have been given (a) when personally delivered, (b) when transmitted via telecopy (or other facsimile device) to the number set out below if the sender on the same day sends a confirming copy of such notice by a recognized overnight delivery service (charges prepaid), (c) the day following the day (except if not a Business Day then the next Business Day) on which the same has been delivered prepaid to a reputable national overnight air courier service or (d) the third Business Day following the day on which the same is sent by certified or registered mail, postage prepaid. Notices, demands and communications, in each case to the respective parties, shall be sent to the applicable address set forth below, unless another address has been previously specified in writing:

If to Assignor: c/o Alecto Healthcare Services LLC
16310 Bake Parkway, Suite 200
Irvine, California 92618
Attention: Lex Reddy
Facsimile:    (949) 783-3987

13

4831-9619-6425 v1
1038442-430902

**EXHIBIT 1**

DEFENDANTS_016615

BOOK **921** PAGE **310**

| with a copy to: | Law Offices of Michael J. Sarrao<br>16310 Bake Parkway, Suite 200<br>Irvine, California 92618<br>Attention: Michael J. Sarrao, Esq.<br>Facsimile:    (949) 878-9458 |
| --- | --- |
| If to a Assignee: | c/o MPT Operating Partnership, L.P.<br>1000 Urban Center Drive, Suite 501<br>Birmingham, Alabama 35242<br>Attn:  Legal Department<br>Facsimile:  (205) 969-3756 |
| With a copy to: | Baker, Donelson, Bearman, Caldwell & Berkowitz, PC<br>420 20th Street North<br>1400 Wells Fargo Tower<br>Birmingham, Alabama 35203<br>Attn:  Thomas O. Kolb, Esq.<br>Facsimile:  (205) 488-3721 |

or to such other address as either party may hereafter designate in writing, and shall be effective upon receipt. A notice, demand, consent, approval, request and other communication shall be deemed to be duly received if delivered in person or by a recognized delivery service, when left at the address of the recipient and if sent by facsimile, upon receipt by the sender of an acknowledgment or transmission report generated by the machine from which the facsimile was sent indicating that the facsimile was sent in its entirety to the recipient's facsimile number; provided that if a notice, demand, consent, approval, request or other communication is served by hand or is received by facsimile on a day which is not a Business Day, or after 5:00 p.m. on any Business Day (based upon Birmingham, Alabama time), such notice or communication shall be deemed to be duly received by the recipient at 9:00 a.m. (based upon Birmingham, Alabama time) on the first Business Day thereafter.

8.7    **Assignment.**   This Assignment is not assignable by Assignor without the prior written consent of Assignees.  Any Assignee may at any time and without the consent of any Assignor assign all of its rights and obligations hereunder to any other Person (subject to any limitations on its right to assign the underlying obligations under the Master Lease).

8.8    **Binding Effect**.  This Assignment shall bind and inure to the benefit of the parties and their successors and assigns; provided, however, that this Assignment shall not inure to the benefit of any assignee pursuant to an assignment which violates the terms of this Assignment.

8.9    **No Waiver**.   Any provision of this Assignment or Exhibits hereto may be amended or waived only in a writing signed by the parties hereto.  No waiver of any provision

14

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016616

BOOK  9 2 1 PAGE  311

hereunder or any breach or default thereof shall extend to or affect in any way any other provision or prior or subsequent breach or default.

8.10   **Severability**.  The parties agree that each provision of this Assignment shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Assignment or any application of this Assignment (as to any party or otherwise) is held to be prohibited by or invalid under applicable law, such provision or application shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Assignment or any other applications of this Assignment.

8.11   **Entire Agreement; Modification**.  This Assignment, together with all exhibits, schedules and the other documents referred to herein, embody and constitute the entire understanding between the parties with respect to the subject matter hereof in any way.  The parties have not relied upon, and shall not be entitled to rely upon, any prior or contemporaneous agreements, understandings, representations or statements (oral or written) other than this Assignment in effecting the transactions contemplated herein or otherwise.  Neither this Assignment, any exhibit or schedule attached hereto, nor any provision hereof or thereof may be modified or amended except by an instrument in writing signed by all of the parties hereto.

8.12   **Counterparts**.  This Assignment may be executed in any number of counterparts, each of which shall be an original and all of which taken together shall constitute one and the same instrument.

8.13   **Governing Law**.  THIS ASSIGNMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF OHIO (THE "APPLICABLE LAW") APPLICABLE TO CONTRACTS EXECUTED AND PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT OT CONFLICTS OF LAW PRINCIPLES.

8.14   **Jurisdiction And Venue**.  ASSIGNEES AND ASSIGNOR CONSENT TO PERSONAL JURISDICTION IN THE STATE OF DELAWARE.  ASSIGNEES AND ASSIGNOR AGREE THAT ANY ACTION OR PROCEEDING ARISING FROM OR RELATED TO THIS ASSIGNMENT SHALL BE BROUGHT AND TRIED EXCLUSIVELY IN THE STATE OR FEDERAL COURTS OF THE STATE OF DELAWARE. EACH OF THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT.  ASSIGNEES AND ASSIGNOR EXPRESSLY ACKNOWLEDGE THAT THE FOREGOING CONSENT TO JURISDICTION AND VENUE IS JUST AND REASONABLE AND ASSIGNEES AND ASSIGNOR AGREE NOT TO SEEK REMOVAL OR TRANSFER OF ANY ACTION FILED BY ASSIGNEES OR ASSIGNOR IN SAID COURTS.  FURTHER, ASSIGNEES AND ASSIGNOR IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY CLAIM THAT SUCH SUIT, ACTION OR PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  SERVICE OF

15

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016617

BOOK 9 2 1 PAGE 312

ANY PROCESS, SUMMONS, NOTICE OR DOCUMENT BY CERTIFIED MAIL ADDRESSED TO A PARTY AT THE ADDRESS DESIGNATED PURSUANT TO <u>SECTION 8.6</u> HEREOF SHALL BE EFFECTIVE SERVICE OF PROCESS AGAINST SUCH PARTY FOR ANY ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT. A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT MAY BE ENFORCED IN ANY OTHER COURT TO WHOSE JURISDICTION ANY OF THE PARTIES IS OR MAY BE SUBJECT.

8.15 **Waiver of Jury Trial**. EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT ANY SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS ASSIGNMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY IN CONNECTION WITH THIS ASSIGNMENT OR SUCH AGREEMENTS.

8.16 **Usury**. If the Applicable Law is ever revised, repealed or judicially interpreted so as to render usurious any amount called for under any of the Lease Documents, or if Assignees' exercise of the option to accelerate the maturity of the Obligations or if any prepayment by Assignor results in Assignor having paid any interest in excess of that permitted by law, then it is Assignor's and Assignees' express intent that all excess amounts theretofore collected by Assignees be credited on the principal balance of the Obligations (or, if the Obligations have been paid in full, refunded to Assignor), and the provisions of the Lease Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Assignees for the use, forbearance or detention of the Obligations shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the Obligations until payment in full so that the rate or amount of interest on account of such Obligations does not exceed the usury ceiling from time to time in effect and applicable to the Obligations so long as debt is outstanding thereunder.

8.17 **Headings**. The Article, Section and Subsection entitlements hereof are inserted for convenience of reference only and shall in no way alter, modify or define, or be used in construing, the text of such Articles, Sections or Subsections.

8.18 **Joint Drafting**. The parties hereto and their respective counsel have participated in the drafting and redrafting of this Assignment and the general rules of construction which would construe any provisions of this Assignment in favor of or to the advantage of one party as opposed to the other as a result of one party drafting this Assignment as opposed to the other or in resolving any conflict or ambiguity in favor of one party as opposed to the other on the basis of which party drafted this Assignment are hereby expressly waived by all parties to this Assignment.

16

4831-9619-6425 v1
1038442-430002

EXHIBIT 1

DEFENDANTS_016618

BOOK **921** PAGE **313**

[Intentionally Left Blank]

[Signatures appear on following pages.]

17

4831-9619-6425 v1
1038442-430002

**EXHIBIT 1**

DEFENDANTS_016619

BOOK **921** PAGE **314**

IN WITNESS WHEREOF, the parties hereto have caused this Assignment of Rents and Leases to be executed by the duly authorized persons effective as of the date first above written.

**ASSIGNOR:**

**ALECTO HEALTHCARE SERVICES WHEELING LLC**, a Delaware limited liability company

By:   Alecto Healthcare Services Ohio Valley LLC
Its:  Sole Member

By:   Alecto Healthcare Services LLC
Its:  General Manager

By: _____
Name: _____
Its: _____

STATE OF ___ _____

___ _____ COUNTY

On this _____ day of _____, 2017, before me, _____ _____, Notary Public of said State, personally appeared ___ _____ ___, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which said person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[AFFIX NOTARY SEAL]

_____
NOTARY PUBLIC
Printed Name: _____
My Commission Expires: _____

**EXHIBIT 1**

DEFENDANTS_016620

BOOK 9 2 1 PAGE 315

## CALIFORNIA ACKNOWLEDGEMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____Orange_____

On __May 30, 2017__ before me, __Mailor Lee – "Notary Public"__ personally
(Date)

appeared __Roger Allen Krissman__
Name of Principal(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Public Signature

MAILOR LEE
Notary Public - California
Orange County
Commission # 2154253
My Comm. Expires May 22, 2020

(Notary Public Seal)

## ADDITIONAL INFORMATION

**Description of Attached Document**

Title or Type of Document: __Assignment of Rents and Leases__

Number of Pages: __22 pages, Single-Sided__

**Type of Identification**

☑ Satisfactory Evidence – Identification Card

☐ One Credible Witness acknowledging the identity of the principal

☐ Two Credible Witnesses acknowledging the identity of the principal

**EXHIBIT 1**

DEFENDANTS_016621

BOOK 9 2 1 PAGE 316

**ASSIGNEE**:

**MPT OF LOS ANGELES, L.P.**

By:   MPT of Los Angeles, LLC
Its:   General Partner

By:   MPT Operating Partnership, L.P.
Its:   Sole Member

By: _____
Name:   R. Steven Hamner
Its:   **Executive Vice President and CFO**

STATE OF ALABAMA            §
JEFFERSON COUNTY            §

The foregoing instrument was acknowledged before me on this 30 day of June, 2017, by R. Steven Hamner, as the EVP CFO of MPT Operating Partnership, L.P., a Delaware limited partnership, as the Sole Member of MPT of Los Angeles, LLC, the general partner of **MPT of Los Angeles, L.P.,** a Delaware limited partnership on behalf of MPT Operating Partnership, L.P., as the sole member of said limited liability company.

GIVEN UNDER MY HAND AND SEAL on this 30 day of June, 2017.

[AFFIX NOTARY SEAL]                    _____
                                       Notary Public in and for the State of Alabama
                                       My Commission Expires: 12-1-18



20

**EXHIBIT 1**                                                      DEFENDANTS_016622

BOOK 9 2 I PAGE **317**

**MPT OF WHEELING-ALECTO HOSPITAL, LLC**
**MPT OF MARTINS FERRY-ALECTO HOSPITAL, LLC**
**MPT OF SHERMAN-ALECTO HOSPITAL, LLC**
**MPT OF FAIRMONT-ALECTO HOSPITAL, LLC**
**MPT OF OLYMPIA, LLC**

By:     MPT Development Services, Inc.
Its:     Sole Member

By:
Name: R. Steven Hamner
Its:     **Executive Vice President and CFO**

| STATE OF ALABAMA | § |
| JEFFERSON COUNTY | § |

The foregoing instrument was acknowledged before me on this 30 day of _____, 2017, by _R. Steven Hamner_ as the _EVP CFO_ of MPT Development Services, Inc., a Delaware corporation, as the Sole Member of **MPT of Olympia, LLC, MPT of Fairmont-Alecto Hospital, LLC, MPT of Sherman-Alecto Hospital, LLC MPT of Martins Ferry-Alecto Hospital, LLC** and **MPT of Wheeling-Alecto Hospital, LLC**, each a Delaware limited liability company, on behalf of said corporation, as the sole member of said limited liability companies.

GIVEN   UNDER   MY   HAND   AND   SEAL   on   this   30   day   of _____, 2017.

[AFFIX NOTARY SEAL]

Notary Public in and for the State of Alabama
My Commission Expires: _12-1-18_



21

EXHIBIT 1

DEFENDANTS_016623

BOOK   9 2 1 PAGE   **318**          **Exhibit A**

**THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2000 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE MAIN CAMPUS OF OHIO VALLEY MEDICAL CENTER**

**TRACT I**

The following parcels of land situate between Eoff Street and Chapline Street and 20th and 22nd Streets, City of Wheeling, Center District, Ohio County, West Virginia, and comprising all of Lots 193, 194, 195, 196, 197, 198, 199, 200, 203, 220, 222 and a part of Lots 223, 225, 227 (Parcel 2)  and 230 (Parcel One) and also part of Eoff Street, 20th Street and Lanes 17 and 18 and D, as shown on the Plat of Eoff and Chapline Addition, said plat being recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138 and being more particularly bounded and described as follows:

**Parcel One**:  Beginning at a point in the northerly line of the concrete side walk now standing in the southerly portion of 20th Street, said beginning point located from a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, the following three (3) bearings and distances: N. 26' 10' E. 624 and 62/100 feet, measured along said easterly line of Chapline Street, to a point located S. 26° 10' W. 4 and 68/100 feet from a cross cut in a concrete sidewalk; thence with the northerly line of first above mentioned concrete sidewalk, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 97 and 46/100 feet to said beginning point, said nail and ribbon being also located at the most westerly corner of Lot No. 193; thence from said beginning point and with said northerly line of a concrete sidewalk, the following three (3) bearings and distances: S. 46° 47' E. 16 and 24/100 feet to a point; thence S. 45 ° 42' E. 55 and 55/100 feet to a point; thence S. 35° 44' E. 20 and 62/100 feet to a point in the center tine of Eoff Street; thence with said center line of Eoff Street, S. 26° 10' W. 95 and 3/10 feet to a point; thence N. 63° 50' W. 33 feet to a point in the westerly line of Eoff Street, at its intersection with the center line of Lane 17; thence with said center line of Lane 17, N. 46° 48' W. 63 and 96/100 feet to a point in the southerly, extension of the division line between Lots 227 and 230; thence with said extension and then said division line, N. 26° 10' E. 56 and 62/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, the following three (3) bearings and distances: N. 63° 50' W. 5 feet to a point; thence N. 47 ° 12' E. 13 and 92/100 feet to a point; thence N. 37° 20' E. 29 and 46/100 feet to the place of beginning, containing Ten Thousand Forty and Forty-seven Hundredths (10,040 and 47/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 427.**

**Parcel Two**:  Beginning at a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, said beginning nail and ribbon being also the most westerly corner of said Lot No. 193; thence from said beginning nail and ribbon and with said easterly line of Chapline Street, N. 26° 10' E. 624 and 62/100 feet to a point; said point

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**                                    DEFENDANTS_016624

BOOK  *2 * PAGE **319**

being located S. 26° 10' W. 4 and 68/100 feet from a crosscut in a concrete sidewalk; thence leaving the said easterly line of Chapline Street, and with the northerly fine of the concrete sidewalk, now standing in the southerly portion of 20th Street, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 15 and 5/100 feet to a point in the northerly extension of the center line of Lane D; thence with said northerly extension and then said center line, S. 26° 10' W. 200 and 16/100 feet to a point in the westerly extension of the center line of Lot No. 225; thence with said westerly extension and then said center line of Lot No. 225, S. 64° 00' E. 132 and 33/100 feet to a point in the westerly line of Eoff Street; thence with said westerly line, S. 26° 10' W. 33 feet to a point in the division line between Lots 224 and 225; thence with said last mentioned division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 129 and 16/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 88 and 84/100 feet to a point in the division line between Lots 221 and 222; thence with said division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 66 feet to a point in the westerly extension of the division line between Lots 220 and 221; thence with said westerly extension and then said division line of Lots 220 and 221, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 66 feet to a cross cut in a concrete sidewalk in the northerly line of 22nd Street, said cross being also the most southerly corner of said Lot 220; thence leaving Eoff Street and with said northerly line of 22nd Street, N. 64° 00' W. 264 and 65/100 feet to the place of beginning, containing One Hundred Four Thousand Seven Hundred Fifty-two and Sixty-nine Hundredths (104,752 and 69/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 Parcel 214.**

## TRACT II

**Parcel Three:** Lot Numbered Two Hundred and Twenty-seven (227) on the South side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, as the same is shown and designated on the Plat of Chapline and Eoff's Addition to City.

And the following described piece of parcel of land lying and being situated on the south side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, and in the Chapline and Eoff's Addition to said City, described as follows, to-wit:

Commencing at a point where the west line of Lot numbered Two Hundred and Thirty (230) inter-sects the South line of 20th Street (formerly Webster Street); thence running east four and one-fourth (4-¼) feet on the south line of 20th Street (formerly Webster Street); thence south twenty-one (21) feet in a straight line until it intersects the west boundary line of Lot numbered Two Hundred and Thirty (230), which said westerly boundary line of said Lot Numbered Two Hundred and Thirty (230) is a diagonal line. Excepting, however, so much of the above described property as was conveyed by Michael Kirchner and Katherine Kirchner, his wife, to

2

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016625

BOOK 9 2 1 PAGE 320

Conrad Caldebaugh, by deed bearing date December 4, 1907, and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 126, at page 197.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 426.**

**Parcel Four:** All the northern one-half of Lot No. 225 and the entire fractional Lot No. 226 in Chapline and Eoff's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which addition is recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138.

**Parcel Five:** The North one-half of Lot Numbered Two Hundred and Twenty-four (224), situate on the West side of Eoff Street, between Twentieth (formerly Webster) and Twenty-second (formerly Third) Streets, in that part of the said City of Wheeling, called Centre Wheeling.

**Parcel Six:** All that certain property situate in the City of Wheeling, Ohio County, West Virginia, being the south one-half of Lot numbered Two Hundred and twenty-four (224) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which is re-corded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 15, page 138, and more particularly described as follows:

Beginning at a point at the south-east corner of said Lot numbered Two hundred and twenty-four (224), at the junction of Alley No. 18 and Eoff Street; thence in a westerly direction and along the northern boundary line of said Alley No. 18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the eastern boundary line of Alley 'D'; thence in a northerly direction and along the eastern boundary line of said Alley 'D' a distance of Thirty-three (33) feet, more or less; thence in an easterly direction and parallel with the northern boundary line of Alley No. 18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the western boundary line of said Eoff Street; thence in a southerly direction and along the western boundary line of said Eoff Street; a distance of Thirty-three (33) feet, more or less, to the point of beginning, being bounded on the north by the property formerly owned by A. C. Partridge; on the east by Eoff Street; on the south by said Alley No. 18; and on the west by Alley 'D' in the rear of said lot.

**Parcel Seven:** Beginning at a point at the intersection of the westerly line of Eoff Street with the southerly line of Lane 18, said intersecting point being the northeasterly corner of said Lot 223; thence from said beginning point and with the said westerly line of Eoff Street, S. 17 ° 00' W. 25 and 83/100 feet to a point in said westerly line of Eoff Street at its intersection with the easterly extension of the center line of the division wall between dwellings now known as 2111 and 2113 Eoff Street; thence leaving said Eoff Street and with said easterly extension and then with said center line N. 73° 47' W. 33 and 84/100 feet to a point; thence N. 76° 29' W. 14 feet to a point; thence N. 73' 47' W. 38 and 16/100 feet to a point in the easterly line of a walkway, four (4) feet wide, hereinafter mentioned; thence with said easterly line, N. 17° 59' E. 27 and 41/100 W. feet to a point in the said southerly line of Lane 18; thence with the said southerly line of Lane 18, S. 73° 10 ' E. 85 and 48/100 feet to the place of beginning.

3

**EXHIBIT 1**

DEFENDANTS_016626

BOOK  9 2 1 PAGE  321

Together with a right-of-way, in common with others, as follows: A right-of-way or walkway, four (4) feet wide, extending from the southerly line of Lane 18 in a southwesterly direction to the southerly line of Parcel Seven herein described, the easterly line of said four (4) foot walkway being the line hereinbefore described as 'N. 17° 59' E. 27 and 41/100 feet', said walkway is to be used in common by the owners of dwelling houses Numbered 2111 and 2113 Eoff Street and 2108, 2110 and 2112 Lane D, their heirs and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling house Number 2111 Eoff Street that are constructed on other lands now or formerly owned by the parties of the first part hereto, their heirs and assigns, and there is excepted and reserved from the parcel of land herein described, the right for the owner of dwelling house Number 2113 Eoff Street, 2108, 2110 and 2112 Lane D to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling house Number 2113 Eoff Street and 2108, 2110 and 2112 Lane D that are now constructed on the parcel of land herein described.

**Parcel Eight:** Beginning at a point in the easterly line of Alley D at the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D, said point being located S. 17° 00' W. 16.17 feet from the northwesterly corner of Lot 223 which is at the intersection of the easterly line of Alley D with the southerly line of Alley 18; thence from said beginning point, with the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D and its southeasterly extension, S. 73° 20' E. 36.26 feet to a point in the easterly line of a 4 foot walkway hereinafter mentioned; thence leaving the line of the said partition wall and with the easterly line of said 4 foot walkway, S. 17° 59' W. 13.83 feet to a stake; thence crossing the southerly end of said walkway, N. 76° 12' W. (at 4 feet passing the westerly side of said walkway) 5.28 feet to the center line of the partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence with the center line of the partition wall between dwelling houses 2110 and 2112 Alley D., N. 72° 01' W. 30.60 feet to the easterly line of Alley D; thence leaving last mentioned partition wall and with the easterly line of Alley D, N. 17° 00' E. 13.37 feet to the place of beginning.

**Parcel Nine:** Beginning at the intersection of the easterly line of Alley D with the southerly line of Alley 18, said intersection being the northwesterly corner of said Lot 223; thence from said beginning point, with the southerly line of Alley 18, S. 70° 10' E. 36.52 feet to a stake in easterly line of a walkway, 4 feet wide, hereinafter mentioned; thence leaving Alley 18 and with the easterly line of said 4 foot walkway, S. 17° 59' W. 16.08 feet to a point in the southeasterly extension of the center line of the partition wall between dwelling houses now known as 2108 and 2110 Alley D; thence leaving said walkway and with the said southeasterly extension and then with the center of the said partition wall between dwelling houses 2108 and 2110 Alley D, N. 73° 20' W. 36.26 feet to a point in the easterly line of Alley D; thence leaving said partition wall and with the easterly line of Alley D, N. 17° 00' E. 16.17 feet to the place of beginning.

**Parcel Ten:** Beginning at a point in the westerly line of Eoff Street at its intersection with the southeasterly extension of the south face of the south brick wall of brick dwelling house now known as 2111 Eoff Street, said beginning point being also located S. 17° 00' W. 25.83 feet

4

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016627

BOOK  921 PAGE  322

measured along the westerly line of Eoff Street from its intersection with the southerly line of Alley 18 at the northeasterly corner of Lot 223; thence from said beginning point, with the westerly line of Eoff Street, S. 17 ° 00' W. 17.33 feet to the southeasterly corner of the parcel of land that was conveyed by William Stoetzer; Executor, to Cora Craft, Earl Stoetzer and William Stoetzer, by deed dated October 24, 1934, and recorded in said County Clerk's office in Deed Book 236, at page 48; thence leaving Eoff Street and with the southerly fine of the said Craft and Stoetzer parcel, N. 73° 10' W. 122.00 feet to a point in the easterly line of Alley D; thence with the easterly line of Alley D, N. 17° 00' E. 13.62 feet to the center line of the frame partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence leaving Alley D with the center line of the frame partition wall between dwelling houses 2110 and 2112 Alley D, S. 72° 01' E. 30.60 feet to a tack on the easterly side of the east wall of said houses 2110 and 2112 Alley D; thence leaving said partition wall and crossing the southerly end of a walkway, 4 feet wide, hereinafter mentioned, S. 76° 12' E. 5.28 feet to a stake in the easterly line of said walkway; thence with the easterly line of said walkway N. 17° 59' E. 2.50 feet to a stake in the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street; thence leaving the easterly line of said walkway and with the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street and then with the center line of said space S. 73° 47' E. 38.16 feet to a stake; thence S. 76° 29' E. 14.00 feet to the southwesterly corner of the brick wall along the southerly side of said dwelling house 2111 Eoff Street; thence with the south face of the south brick wall of said building 2111 Eoff Street and its southeasterly extension S. 73° 47 ' E. 33.84 feet to the place of beginning.

Together with the right to use, renew and repair any supports or bearings for dwelling house 2113 Eoff Street that are now attached or built in the brick wall on the south side of dwelling house 2111 Eoff Street.

Together with the right, in common with others, to use a walkway, 4 feet wide, extending from the southerly line of Alley 18, in a southwesterly direction, to the northerly line of the parcel hereinbefore described, the easterly line of said walkway being described as follows:

Beginning at a stake in the southerly line of Alley 18, said stake being located S. 73° 10' E. 36.52 feet, measured along the southerly line of Alley 18, from its intersection with the easterly line of Alley D which is the northwesterly corner of Lot 223; thence from said beginning stake S. 17° 59' W. 27.41 feet to a stake at a corner to the parcel of land hereinbefore described; thence S. 17° 59' W. 2.50 feet to a stake at another corner to the parcel of land hereinbefore described. Said walkway is to be used in common between the owners of dwelling houses 2111 and 2113 Eoff Street and 2108, 2110, and 2112 Alley D. their tenants, agents, heirs, executors, administrators and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to 2113 Eoff Street and 2112 Alley D that are now constructed on that part of the said Craft and Stoetzer property, lying between the parcel of land hereinbefore described and the southerly line of Alley 18 and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling houses 2108 and 2110 Alley D and 2111 Eoff Street to use, renew, replace and maintain all water and gas

5

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016628

BOOK  9 2 1 PAGE  323

pipes, sewers and any other service lines now connected to dwelling houses 2108 and 2110 Alley D and 2111 Eoff Street that are now constructed on the parcel of land hereinbefore described.

Together with the right to use, repair and renew that part of the cornices and eaves now attached to house 2113 Eoff Street that extend over the northerly line of the parcel of land hereinbefore described, as Parcel Ten.

There is excepted and reserved from the parcel of land hereinbefore described as Parcel Ten the right for the owner of dwelling house 2111 Eoff Street to use, repair and renew that part of the cornices and eaves attached to building 2111 Eoff Street that extend over the parcel of land hereinbefore described as Parcel Ten.

Together with the right to use the space between the rear part of dwelling houses 2111 and 2113 Eoff Street for the purpose of repairing and painting said house 2113 Eoff Street and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling house 2111 Eoff Street to use said space between the rear part of dwelling houses 2111 and 2113 Eoff Street to repair and paint said house 2111 Eoff Street."

**Parcel Eleven**:  Lot numbered two hundred twenty-one (221) and the buildings thereon, in Chapline and Eoff's Addition to the City of Wheeling, in Ohio County, West Virginia.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W58 Parcel 230.**

## TRACT III

**Parcel Twelve**: A certain parcel of land situated in Centre District, in the City of Wheeling, Ohio County, West Virginia, being Lot No. 283 as shown on the plat of the William Chapline Addition to the City of Wheeling, a copy of which Plat is unofficially recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 297, at page 385.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 456.**

**Parcel Thirteen**: The north half of all that certain lot or parcel of land situated in that part of the City of Wheeling laid out by William Chapline as an addition to South Wheeling, which lot is designated on the plat of said Addition as Lot No. 282."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 457.**

**Parcel Fourteen**: A certain piece or parcel of land situate in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and being the South half of Lot Numbered Two

6

4849-7163-9625 v1
1038442-43f0002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016629

BOOK 921 PAGE 324

Hundred and Eighty Two (282) in William Chapline's Addition to said City of Wheeling, said property is situate on the east side of Jacob Street between 20th and 22nd Streets."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 458.**

**Parcel Fifteen**: The north half of Lot Numbered Two Hundred and Eighty-one (281), in William Chapline's Addition, which half lot lies at the southeast corner of Jacob Street and Alley Eighteen and is bounded as follows:

"Commencing at the said corner, same being the northwest corner of said lot, and running thence with the south line of said alley in an easterly direction with the north line of said lot, one hundred feet to the northeast corner of said lot; thence running in a southerly direction with the east line of said lot twenty-six feet and four and one-half inches to the middle of said east line of said lot; thence running in a westerly direction parallel with the said north line of said lot one hundred feet to the middle of the west line of said lot on the east line of said Jacob Street and from thence running with the said east line of Jacob Street twenty-six feet and four and one-half inches in a northerly direction the place of beginning."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 459.**

**Parcel Sixteen**: The South half of Lot Numbered Two Hundred Eighty-one (281) situated in the Addition of South Wheeling now called Center Wheeling, laid off by William Chapline, said half of lot being twenty-six feet and four and one-half (26 ft. & 4-1/2 in.) in width, and one hundred (100) feet in depth."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 460.**

**Parcel Seventeen**: The north half of Lot No. 280 situate in the Addition to the City of Wheeling laid off by William Chapline, which said one-half (1/2) lot contains twenty-six (26) feet and four and one-half (4-1/2) inches in width, and one hundred (100) feet in depth."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59 Parcel 461.**

**Parcel Eighteen**: A certain parcel of land situated on the east side of Jacob Street (formerly called German Street) between Twenty-first and Twenty-second Streets, in Centre District, Ohio County, West Virginia, and being the west half of the south half (that is to say, the southwest quarter) of Lot No. 280, as shown on the plat of the William Chapline Addition to the

7

4849-7163-9625 v1
1038442-430002 06/02/2017

EXHIBIT 1

DEFENDANTS_016630

BOOK 9 2 1 PAGE 325

City of Wheeling, a copy of which plat has been unofficially recorded in Deed Book No. 287, at page 385."

There is excepted and reserved from Tract III all of that property previously conveyed from the Ohio County Building Commission to the West Virginia Department of Highways by deed dated January 31, 1981, and recorded in said Clerk's office in Deed Book 611, at page 250.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59 Parcel 462.**

### TRACT IV

**Parcel Nineteen**: A parcel of land situate in the City of Wheeling, Ohio County, West Virginia, being the west one-fourth of Lot No. 262 in the addition to the City of Wheeling laid off by William Chapline, more particularly bounded and described as follows:

"Beginning at the intersection of the north line of Twenty-Second Street and the east line of Alley E, thence eastwardly binding on the north line of Twenty-second Street 25 feet to the southwest corner of the John Koehler property; thence northwardly binding on the west line of the Koehler property 52 feet and 9 inches to the south line of the Mertz property; thence westwardly binding on the last-named south line and parallel to Twenty-second Street 25 feet to the east line of Alley E., thence southwardly binding on the last-named east line 52 feet and 9 inches to the place of beginning."

**Parcel Twenty**: The East one-half (1/2) of the West half of Lot Numbered Two Hundred and Sixty-two (262) situated in the addition to the City of Wheeling laid off by William Chapline in that part of the City of Wheeling called Centre Wheeling.

"This conveyance is subject to the privileges and right of way granted by Wendell Neidert and wife to John Koehler to run a sewer along the north line of the west half of said Lot Two Hundred and sixty-two (262) westwardly to Alley E.

"There is also excepted and reserved from this conveyance an easement and right of way over and across so much of the East half of the West half of Lot numbered Two Hundred and sixty-two (262) in William Chapline Addition as is necessary for the owner of the building known as Sixty-seven (67) Twenty-second (22) Street to maintain and repair his property."

**Parcel Twenty-One**: The following described westerly part of the east half of Lot Numbered Two Hundred Sixty-two (262) situated in the Addition to said City laid out by William Chapline, beginning at the southwest corner of said half lot which corner is the northeast corner of the property owned by John Koehler; thence eastwardly binding on the north line of 22nd Street, nineteen (19) feet to a point; thence northwardly parallel with the west line of said half lot seventeen (17) feet to a point; thence eastwardly parallel with the north line of 22nd Street, two (2) feet to a point; thence northwardly parallel with the west line of said half lot, seventeen (17) feet to a point; thence westwardly parallel with the north line of said 22nd Street,

8

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016631

BOOK  9 2 1 PAGE  326

one (1) foot to a point; thence northwardly parallel with the west line of said half lot eighteen (18) feet and nine (9) inches to the north line of said half lot; thence westwardly binding on said last-named north line, twenty (20) feet to the northwest corner of said half lot; thence southwardly binding on the east line of the said John Koehler property, and west line of said half lot fifty-two (52) feet and nine (9) inches to the place of beginning.

"Together with an easement and right-of-way over and across so much of the east half of the west half of Lot Numbered Two Hundred Sixty-two (262), William Chapline Addition, as necessary for the maintenance and repair of the structure upon the hereinbefore described property and known as 67 Twenty-second (22nd) Street."

Parcel Twenty-Two: The following described part of the east half of Lot numbered Two Hundred Sixty Two (262) situated in the addition to the City of Wheeling, aforesaid, laid off by William Chapline, beginning in the southeast corner of said half lot, which said corner is the intersection of the north line of 22nd Street and the west line of Jacob Street in said City of Wheeling, thence westwardly along the north line of said 22nd Street, Thirty-one (31) feet to the southeast corner of the part of said half lot conveyed to Mary J. Koehler by deed dated April 28th, 1904, as of record in the office of the Clerk of the County Court in said Ohio County, in Deed Book No. 115, Page 114, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence eastwardly parallel with 22nd Street two (2) feet, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence westwardly parallel with 22nd Street, One (1) foot, thence northwardly binding in the last named east line Eighteen (18) feet and Nine (9) inches to the north line of said half lot, thence eastwardly binding on last named north line Thirty (30) feet to the northeast corner of said half lot, thence southwardly binding on the east line of said half lot Fifty-two (52) feet and Nine (9) inches to the place of beginning."

Parcel Twenty-Three: Lot numbered Two Hundred and Sixty-three (263) on the West side of Jacob Street, just north of Twenty-second Street, in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, excepting, however, that portion or said Lot Numbered Two Hundred and Sixty-three (263), to-wit:

"The northerly twenty-five (25) feet thereof, which was heretofore conveyed to Charles J. Ochsenkuhn by deed of Gertrude Mertz, et al, dated January 11, 1910 and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 132, at page 459, and deed of Frank C. Nolte, Guardian of Ellen Schad and Robert Schad, dated January 11, 1910 and now of record in said Clerk's office in Deed Book 132, at page 460."

Parcel Twenty-Four: Commencing at the point of intersection of the northerly boundary line of said lot No. 263 with the westerly side of Jacob Street; thence in a southerly direction with the westerly side of Jacob Street a distance of twenty-five (25) feet to a point; thence in a westerly direction and parallel with the northerly boundary line of said Lot No. 263 to the easterly side of the alley in the rear of said lot; thence in a northerly direction and with the easterly side of said alley a distance of twenty-five (25) feet to the northwesterly corner of said Lot No. 263; thence eastwardly with the northerly boundary line of said Lot No. 263 to the place of beginning.

9

4849-7163-9625 v1
1638442-430002 06/02/2017

EXHIBIT 1

DEFENDANTS_016632

BOOK $\phantom{}$ 2 $\phantom{}$ PAGE 327

**Parcel Twenty-Five**: A certain parcel of land known as the south one-half of Lot Numbered Two Hundred Sixty-four (264) in Chapline's Addition to the City of Wheeling, in Center District, Ohio County, West Virginia.

**Parcel Twenty-Six**: Being twenty-six (26) feet off the north part of Lot Numbered Two Hundred Sixty-five (265) fronting on the west side of Jacob (formerly German) Street, bounded as follows: Beginning at the northeast corner of said lot; thence south twenty-six (26) feet; thence west to the alley in the rear of said lot; thence north with the line of said alley twenty-six (26) feet to the north line of said lot; thence east to the place of beginning.

**Parcel Twenty-Seven**: All the south half of Lot No. 265, situated in that part of the said City of Wheeling laid out by William Chapline and now called Center Wheeling.

**Parcel Twenty-Eight**: All that property situated in the City of Wheeling, Ohio County, West Virginia, and known as the north one-half of Lot No. 264 in Chapline's Addition, which half-lot is 26 feet 4-1/2 inches wide and 100 feet deep.

**Parcel Twenty-Nine**: The south twenty-three (23) feet of lot numbered two hundred and sixty-six (266) situate on the west side of Jacob Street, and south of Alley numbered eighteen (18) in that part of the City of Wheeling, West Virginia, called Centre Wheeling, and bounded and described as follows: beginning at the southeast corner of said lot, thence in a northerly direction with the west line of Jacob Street twenty-three (23) feet; thence in a westerly direction in a line parallel with the south line of said lot to the west line of said lot; thence in a southerly direction with the west line of said lot twenty-three (23) feet to the southwest corner of said lot; thence in an easterly direction with the south line of said lot to the place of beginning.

**Parcel Thirty**: All that piece or parcel of real estate situated in Center District, Ohio County, West Virginia, and known as Lot No. 266, situated on the southwest corner of Jacob Street and Alley 18, in that part of said City of Wheeling called 'South Wheeling', excepting therefrom, however, the southerly 23 feet of said lot.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.1.**

**Parcel Thirty-One**:  A certain parcel of land situated in the City of Wheeling, Ohio County, West Virginia, being a part of lot number two hundred and fifty (250) in Chapline & Eoff's Addition to said city, the premises hereby conveyed being bounded and described as follows, to-wit: Beginning at the southeast corner of Eoff Street and Alley Eighteen, being the northwest corner of said lot, thence eastwardly with the southern side of said alley sixty-five (65) feet; thence southwardly on a line parallel with Eoff Street twenty-one feet and two inches (21 ft. 2 ins.); thence westwardly on a line parallel with said alley sixty-five (65) feet to said Eoff Street; thence northwardly with the eastern line of Eoff Street twenty-one feet and two inches (21 ft. 2 in.) to the place of beginning; with the dwelling house situated thereon, known as No. 2106 Eoff Street.

4849-7163-9625 v1
1038442-438602 06/02/2017

**EXHIBIT 1**                                                                                        DEFENDANTS_016633

BOOK 9 2 1 PAGE 328

**Parcel Thirty-Two**: Being situate on the east side of Eoff Street, between Twenty-first and Twenty-second Streets, in said City, being part of lot numbered Two Hundred and Fifty (250) in Eoff and Chapline's Addition to said City of Wheeling, bounded and described as follows: Beginning in the east line of said Eoff Street, at a point forty-four (44) feet southwardly from the south line of Alley Eighteen (18) measuring along the east line of said Eoff Street, thence eastwardly sixty-five (65) feet, thence northwardly, parallel with the east line of said Eoff Street, twenty-two feet and ten inches (22 ft. 10 ins.) thence westwardly parallel with the south line of said Alley Eighteen (18), sixty-five (65) feet to the east line of said Eoff Street, thence south and with the said east line twenty-two feet and ten inches (22 ft. 10 ins.) to the place of beginning.

**Parcel Thirty-Three**: Commencing at the southwest corner of Alley E and Alley 18, thence south on the west side of Alley E, sixty-six (66) feet; thence west thirty (30) feet; thence north on a line parallel with Alley E, sixty-six (66) feet to Alley 18; thence east along the south side of Alley 18, thirty (30) feet to the place of beginning.

**Parcel Thirty-Four**: Part of Lot No. 250, fronting on the east side of Eoff Street, between Twentieth and Twenty-second Streets, in the City of Wheeling, Ohio County, West Virginia, in Chapline and Eoff's Addition to said city, that is to say: Beginning in the east line of said Eoff Street at a point forty-four (44) feet southwardly from the south line of Alley 18 measuring along said east line, thence eastwardly parallel with the south line of said alley, sixty-five (65) feet, thence southwardly parallel with the east line of said Eoff Street twenty-two (22) feet, thence westwardly parallel with the south line of said alley sixty-five (65) feet to the east line of Eoff Street, thence northwardly binding on last named east line twenty-two (22) feet to the place of beginning.

**Parcel Thirty-Five**: The northern one-half part of lot numbered two hundred and forty-nine (249) situated on the east side of Eoff Street, in the Fifth Ward of the City of Wheeling, County of Ohio, State of West Virginia.

**Parcel Thirty-Six**: Commencing at the intersection of the division line between lots 248 and 249 with the easterly line of Eoff Street; thence with the easterly line of Eoff Street, north 17° 00' east, 33 feet; thence leaving Eoff Street, south 73° 12' east, 122 feet to a stake in the westerly line of Alley E; thence with the same, south 17° 00' West, 33 and 5/10 feet to a stake; thence with the division line between said lots 248 and 249, north 72° 58' west, 122 feet to the place of beginning.

**Parcel Thirty-Seven**: The north half of that parcel or lot of land lying and being situated west of a line drawn through Lot No. 247 parallel to Eoff Street in the Chapline and Eoff Addition to the City of Wheeling, which line divides said Lot into two (2) equal parts. Otherwise stated, the property hereby conveyed is the northwesterly quarter of said Lot No. 247.

**Parcel Thirty-Eight**: A part of Lot Numbered Two Hundred and Forty-seven (247) in Chapline and Eoff's Addition to the said City of Wheeling, situated at the northeast corner of Eoff and Twenty-second Streets, fronting thirty-three and six one-hundredths (33-6/100) feet on

11

4849-7163-9625 v1
1038442-430002 06/02/2017

EXHIBIT 1

DEFENDANTS_016634

BOOK  921  PAGE  **329**

Eoff Street and extending back with equal width sixty-six and four-tenths (66 4/10) feet to the West line of F. Schlechien property.

**Parcel Thirty-Nine:**  Beginning at a stake in the northerly side of 22nd Street, said stake being located S. 73° 02' E. 66 and 89/100 feet from the intersection of the northerly line of said 22nd Street with the easterly line of Eoff Street; thence from said beginning stake and with a line that is parallel to and 1 and 1/10 feet distant, measured at right angles in a westerly direction from the stone foundation of dwelling house now known as 57-22nd Street, N. 16° 50' E. 66 and 17/100 feet to a mark on a brick wall in the division line between said Lot 247 and Lot 248; thence leaving said parallel line and with said division line, S. 73° 02' E. 24 and 66/100 feet to a point; thence leaving said division line, S. 17° 01' W. (passing on the westerly face of the northwesterly corner strip of dwelling house now known as 59-22nd Street) 66 and 17/100 feet to a tack in the southwesterly corner of said dwelling house 59-22nd Street in the northerly side of said 22nd Street; thence leaving said corner strip and with the northerly side of said 22nd Street, N. 73° 02' W. 24 and 45/100 feet to the place of beginning.

**Parcel Forty:**  All the following described land situated in the City of Wheeling and in Center District, Ohio County, West Virginia, that is to say, the east half of the east half of Lot No. 247 of the Chapline and Eoff Addition to the City of Wheeling, sometimes known as Center Wheeling, the part of said Lot No. 247 hereby conveyed being situated at the corner north of Twenty-second Street and west of Lane E in said City;

**Parcel Forty-Two:**  All of the following piece or parcel of ground, being about fifty (50) feet square, more or less, and bounded on the south by the northern boundary of North, or Webster Street, in South Wheeling, extended in a direct line on the north by a line parallel thereto and so drawn as to touch the northeast angle of a projecting ledge of stone on which the letter B was cut and to touch the same at the surface of the road on the west by the east line of division alley extended, and on the east by a line running from said northern line parallel with the line of division alley, so as to touch the east side of a small projection in the rock on which the letter P was cut; and thence following the direction of a seam in the rock which appears at the .side of said projection to the said southern line, but reserving all the coal in or under the said piece of land and the right to dig and take the same.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.**

## TRACT V

**Parcel Forty-One:**  Seven lots of ground situated in the addition to South Wheeling laid out by William Chapline (which addition is now part of the said City of Wheeling) and described on a plat of the said addition by the numbers two hundred and fifty-one (251), two hundred and fifty-two (252), two hundred and fifty-three (253), two hundred and fifty-six (256), two hundred and sixty-seven (267), two hundred and sixty-eight (268) and two hundred and sixty-nine (269).

**Parcel Forty-Three:**  Beginning at a point where the easterly line of Eoff Street intersects the southerly line of 20th Street; thence with the said easterly line of Eoff Street

12

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016635

BOOK 921 PAGE 330

extended in a northeasterly direction N. 18° 00` E. 23.90 feet to a crows foot cut in the face of a sandstone ledge; thence leaving the said northeasterly extension of the easterly line of Eoff Street S. 61° 16' 50" E. 71.00 feet to a crows foot cut in the face of a sandstone ledge; thence S. 59° 51 ` 40" E. 53.41 feet to a point in the northeasterly extension of the easterly line of Alley E. (formerly Division Alley); thence with the said northeasterly extension of the easterly, line of Alley E., S. 18 ° 00` W. 35.60 feet to a point at the intersection of the said northeasterly extension of the easterly line of Alley E, with the southerly line of 20th Street; thence with the said southerly line of 20th Street N. 55° 30' W. 127.24 feet to the place of beginning.

   **Parcel Forty-Four**:  Beginning at the point where the easterly extension of the southerly line of Twentieth Street intersects the westerly line of Alley E (formerly called Division Alley), said beginning point being also located S. 55° 30' E. 127.24 feet from the intersection of the southerly line of Twentieth Street with the easterly line of Eoff Street; thence, with the westerly line of the said Alley E extended in a northerly direction N. 18° 00` E. 35.60 feet to a point in the southerly line of Crescent Street; thence with the said southerly line of Crescent Street S. 59 ° 31 40" E. 115.16 feet to the westerly line of a tract of land containing 42 acres, 2 rods and 3 poles that was conveyed to the Whitaker-Glessner Co. by the Whitaker Iron Co. by deed dated January 21, 1904, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 115, page 293, thence with the said westerly line of said tract of land, S. 29° 12' W. 43.07 feet to a point in the above mentioned easterly extension of the southerly line of Twentieth Street; thence with the said easterly extension of the southerly line of Twentieth Street, N. 55° 30' W. 108.69 feet to the place of beginning; excepting therefrom, however, that tract of land that was conveyed by George Hardman and wife to Peter P. Beck by deed dated the 6th day of October, 1848, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 31, at page 425, said excepted parcel being described in said deed as 'about 50 feet square, more or less.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 431.**

   **Parcel Forty-Eight**: EXCHANGE PARCEL - Parts of Parcels formerly designated as 79, 80 & 81

   BEGINNING at a point in the western revised non-controlled access right of way line, said point being in the northern existing right of way line of 22nd Street and 81 feet radially left of Relocated WV Route 2 Centerline Station 163+12, Project FF-2(004), Ohio County, West Virginia;

   thence, southwesterly with said existing right of way line 49 feet, more or less, to a point in the eastern existing right of way line of Jacob Street, said point being 118 feet radially left of Centerline Station 162+79;

   thence, northeasterly with said existing right of way line 122 feet, more or less, to a point in the division line between The Ohio County Building Commission, and the West Virginia Department of Highways, said point being 131 feet left of and at a right angle to Centerline Station 164+01;

13

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016636

BOOK 𝓨2𝓨 PAGE **331**

thence, southeasterly with said division line 46 feet, more or less, to a point in the western revised non-controlled access right of way line, said point being 84 feet left of and at a right angle to Centerline Station 164+05;

thence, southwesterly in a reverse centerline direction, with said revised non-controlled access right of way line 95 feet, more or less, to the place of beginning and containing 4,618 square feet, more or less.

Said tracts and parcels comprise the main campus of Ohio Valley Medical Center at 2000 Eoff Street, Wheeling, West Virginia, and are part of the property conveyed to Ohio Valley Medical Center, Inc., a West Virginia corporation, by the Ohio County Building Commission by deed dated the 17th day of December, 1985 and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia in Deed Book 628, at page 766.

**Said tracts and parcels contained in Tracts I through Tracts V, are identified by the Ohio County Assessor's office as Tax Map W58 – Parcel Numbers 0214 and 0230; and Tax Map W59 – Parcel Numbers 0426, 0427, 0431, 0432; 0432.1; 456; 457; 458; 459; 460; 461 and 462.**

## TRACT VI

The following parcel of land situate on the southerly side of Twenty-second Street between Jacob Street and Lane E, City of Wheeling, Ritchie Webster Center District (formerly Center District), Ohio County, West Virginia, and comprises the west part of the east one-half of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

BEGINNING at a point in the southerly line of Twenty-second Street at the division line between the east one-half and the west one-half of Lot 261, said beginning point being located S. 64° 00' E. 50 feet from the intersection of the southerly line of Twenty-second Street and the easterly line of Lane E; thence from said beginning point with said southerly line of Twenty-second Street, S. 64° 00' E. 32 and 52/100 feet to a point; thence leaving said southerly line and crossing through said Lot 261, S. 27° 06' W. 52 and 76/100 feet to a point in the division line between Lots 260 and 261; thence with said division line N. 64° 00' W. 31 and 71/100 feet to a point; thence leaving said division line between Lots 260 and 261 and with the division line between the east one-half and the west one-half of Lot 261, N. 26° 13' E. 52 and 75/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Thirty-eight One Thousandths (38/1000) of an acre more or less.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

14

4849-7163-9625 v1
1038442-430902 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016637

BOOK  9 2 1 PAGE  332

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0002.**

## TRACT VII

The following parcel of land situate on the southerly side of Twenty-second Street and the westerly side of Jacob Street, City of Wheeling, Ritchie Webster Center District (formerly Center District), Ohio County, West Virginia, and comprising all of Lot 5 and the northerly two (2) feet nine (9) inches of Lot 4, as shown on the Map of Filan, Whyte & Gallagher Addition, said Map being recorded in the office of the Clerk of the County Commission of Ohio County, West Virginia in Deed book 84, at page 617, and the easterly part of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

Beginning at a point in the southerly line of Twenty-second Street at its intersection with the westerly line of Jacob Street, said beginning point also being the most easterly corner of Lot 5, as shown on said map; thence from said beginning point with said westerly line of Jacob Street, S. 26° 25' W. (at 57 and 1/100 feet passing the division line between Lots 4 and 5) 59 and 76/100 feet to a point; thence leaving said Jacob Street and crossing through said Lot 4, N. 64° 00' W. (at 18 feet leaving Lot 4 and with the division line between Lots 260 and 261, William Chapline Addition) 35 and 4/10 feet to a point; thence leaving said division line and crossing through said Lot 261 N. 27° 06' E. 52 and 76/100 feet to a point in said southerly line of Jacob Street; thence with same the following two (2) bearings and distances: S. 64° 00' E. 16 and 77/100 feet to a point at the division line between said Lot 261 and said Lot 5; thence with said Lot 5, S. 85° 11' E. 19 and 36/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Forty-three One Thousandths (43/1000) of an acre, more or less.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0003.**

**THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2211 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER**

### (I)

A certain piece or parcel of land situate on the Southwest corner of 22nd and Eoff Streets in the City of Wheeling, Ohio County, West Virginia, being the Northeast part of lot numbered Two

15

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016638

BOOK 921 PAGE 333

Hundred and Nineteen (219) in Chapline and Eoff's Addition to said City of Wheeling and the part hereby conveyed is bounded and described as follows:

Beginning at the Southwest corner of 22nd and Eoff Streets which is the Northeast corner of said lot numbered Two Hundred and Nineteen (219), thence in a Southerly direction with the Easterly line of said lot and the Westerly line of said Eoff Street Thirty (30) feet; thence in a Westerly direction in a line parallel with 22nd Street Sixty-one (61) feet; thence in a Northerly direction in a line parallel with Eoff Street Thirty (30) feet to the Southerly line of 22nd Street; thence in an Easterly direction with the Southerly line of 22nd Street, Sixty-one (61) feet to the place of beginning; together with all buildings and appurtenances situate thereon or belonging thereto.

This deed is made subject to a sewer right granted by Joseph N. Schwarzwalder to Conrad Bachman heirs by an agreement dated November 5, 1906, and recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 123, at page 212.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Emil F. Yeager and Margaret C. Yeager, his wife, by Deed dated the 5th day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 549, at page 311.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0247.**

## (II)

The South 36 feet of the East half of Lot No. 219 in Chapline and Eoff's Addition to the said City of Wheeling, Ohio County, West Virginia, and being also designated by Street address known as 2203 and 2205 Eoff Street, Wheeling, West Virginia.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 9th day of October, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 450.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0248.**

## (III)

The following described real estate situate on the west side of Eoff Street, between Twenty-second and Twenty-third Streets in the City of Wheeling, Ohio County, West Virginia, and more particularly described as the north half of Lot numbered Two hundred and Eighteen (218) on the recorded plat of Chapline and Eoff's Addition to the City of Wheeling.  Together with all the improvements thereon and the appurtenances thereunto belonging.

16

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016639

BOOK   921 PAGE   334

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0249.**

### (IV)

The following described property situated in the City of Wheeling, Center District, Ohio County, West Virginia, that is to say:

The south half of Lot No. Two Hundred Eighteen (218) as shown and designated on the Plat of the Addition to the Town of Wheeling laid off by William Chapline, Jr., and John Eoff, which Plat is recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Bok No. 15, at page 138, said half lot fronting thirty-three (33) feet on the westerly side of Eoff street and extending back westwardly of even width one hundred twenty-two (122) feet to the alley in the rear.

Together with the buildings and improvements thereon and the hereditaments and appurtenances thereunto belonging.

Being Parcel III of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0250.**

### (V)

The north one-half (1/2) of lot numbered two hundred and seventeen (217) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia: said half of lot fronts thirty-three (33) feet on the west side of Eoff Street in said City of Wheeling, and extends back with equal width to the alley in the rear.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 3rd day of April, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 449.

17

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016640

BOOK 921 PAGE **335**

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0251.**

### (VI)

The following described property situate in Ohio County, West Virginia, that is to say:

A certain piece or parcel of real estate situate in the city of Wheeling in Ohio County, West Virginia, being a part of the south half of Lot Number 217 in what is known as the Chapline & Eoff Addition to said city of Wheeling. The parcel hereby conveyed is bounded and described as follows, to-wit: Beginning at the north-east corner of the south half of said Lot Number 217 on the west side of Eoff Street; thence southwardly with the west line of Eoff Street sixteen & one-half (16-1/2) feet, more or less, to the center of the partition wall between the property hereby conveyed and the property adjoining on the south side thereof; thence westwardly through the center of said partition wall, and with the same course continued to the western line of said lot; thence northwardly with the west line of said lot sixteen and one-half (16-1/2) feet to the north-western corner of the south half of said lot; thence eastwardly with the northern line of said south half of said lot to the place of beginning.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, by Wilson Ruckman by Mary Geneva Ruckman, his attorney-in-fact, and Mary Geneva Ruckman, his wife, by Deed dated the 23rd day of March, 1981, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 601, at page 299.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0252.**

### (VII)

The following described parcel of real estate situate in the City of Wheeling, County of Ohio, Center District, West Virginia; said parcel of real estate being more particularly described as follows:

A certain piece or parcel of land fronting on the west side of Eoff Street, between Twenty-second and Twenty-third Streets, in the City of Wheeling, Ohio County, West Virginia, and being the South one-fourth (1/4) of lot numbered Two Hundred and Seventeen (217) in Chapline and Eoff's Addition to the said City of Wheeling; said parcel of ground is more particularly described as follows:

Beginning at the South East corner of said lot numbered Two Hundred and Seventeen (217), thence North along the West line of said Eoff Street, Sixteen and one-half (16-1/2) feet to a point opposite the center of the partition wall of the double house erected on the South half of said lot, thence in a straight line parallel with the Southern line of said lot, One Hundred and Twenty-two (122) feet to an Alley in the rear, thence in a southerly direction along the Eastern line of said Alley, Sixteen and one-half (16-1/2) feet to the Southern line of said lot, thence in an Easterly

18

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016641

BOOK 9 2 1 PAGE 336

direction along the South line of said lot numbered Two Hundred and Seventeen, One Hundred and Twenty-two (122) feet to the place of beginning.

Together with all and singular the improvements thereon, the hereditaments and appurtenances thereunto belonging.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0253.**

### (VIII)

The South one-fourth of Lot numbered Two Hundred and Sixteen (216) in Chapline and Eoff's Addition to said City of Wheeling, West Virginia, together with the buildings and the appurtenances thereunto belonging, which said South one-fourth of said Lot Numbered Two Hundred and Sixteen (216) is more particularly bounded and described as follows:

Beginning at the northwest corner of Lane 19 (formerly Alley C) and Eoff Streets in said City of Wheeling; thence with the westerly line of Eoff Street and sixteen and one-half (16-1/2) feet, more or less, to the center of the division wall between the building hereby conveyed and the building immediately adjacent to the north of the same; thence with the center of the said division wall and along the division line between said buildings west one hundred and twenty-two (122) feet, more or less, to the eastern line of Lane D (formerly Alley H); thence southwardly with the eastern line of said last mentioned Lane D to the north line of said Lane 19, and thence with the said north line of said Lane 19, eastwardly to the place of beginning.

Being Parcel IV of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0384.**

### (IX)

The following described lot or parcel of land situate in Center District, Ohio County, West Virginia, that is to say:

19

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016642

BOOK  9 2 7 PAGE  337

That certain real estate known as the north one half of the south one half of the lot numbered Two Hundred and Sixteen (Lot No. 216) of the Addition to the City of Wheeling in the County of Ohio and State of West Virginia laid out by John Eoff and William Chapline, fronting about sixteen feet and six inches on the west side of Eoff Street in what was once the Fifth Ward of said City of Wheeling, and extending back westwardly of a uniform width with said front one hundred and twenty two feet, more or less, to the Alley on the west of said lot, together with all the buildings, improvements and appurtenances thereon or belonging thereto; excepting, however, from this conveyance the two rights of way heretofore granted to other parties across said property.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Horace W. Shepherd and Freda M. Shepherd, his wife, by Deed dated the 25th day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 549, at page 518.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0385.**

(X)

Part of Lot numbered two hundred and sixteen (216) fronting on the West side of Eoff Street, between Twenty-second (22nd) and Twenty-third (23rd) Streets in the City of Wheeling, West Virginia, in Chapline & Eoff's addition to said city, bounded as follows, to-wit: Beginning at the Southeast corner of the part of said lot conveyed to Francis Henry Moran by James G. Whyte and wife, as of record in the office of the Clerk of the County court of Ohio County, West Virginia, in Deed Book numbered Fifty-three (53), page 314, and thence Westwardly, Southwardly and Westwardly, binding on said Moran line to the East line of Alley "D"; thence Southwardly with the East line of Alley "D" to the South line of the North half of said lot; thence Eastwardly along the South line of the North half of said lot to the West line of Eoff Street; thence Northwardly along the West line of Eoff Street to the place of beginning. Reserving from this conveyance for the benefit of any person who shall be or become the owner of the next tenement South or that on the North part of the South half of said lot, the joint or free use of a certain Alley or passageway from Eoff Street, now there and open, and so to remain unless altered by common consent. Also guaranteeing to party of second part the right of way or passage through an alley three feet in width, and now covered by a tenement, and which is to be kept as it now is so as to leave a passage-way three feet wide and not less than nine feet high from the grade or base of said Alley, this latter right of way or passage is to join the South line of the said North half of said lot, and is to extend from the East line of Alley to a point three feet Eastward of the present tenement on the rear of the said North half of said lot numbered 216.

Being the same property conveyed to Ohio Valley Medical Center Incorporated, a West Virginia corporation, by John F. Baker and Katherine T. Baker, his wife, by Deed dated the 23rd day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 550, at page 131.

20

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016643

BOOK **921** PAGE **338**

Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0386.

### (XI)

The following described real estate, situate in the City of Wheeling, Ohio County, West Virginia, that is to say:

The North one-fourth part of Lot Number Two Hundred and Sixteen (216), being about sixteen feet front on Eoff Street, and running back of equal width to the brick building formerly on the alley and thence with the East wall of said brick building South to the center of the division wall between the two tenements in it the said brick building, and then on a line with said division wall out to the alley, together with the buildings and appurtenances thereon.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0387.

**VACANT LOTS - 2206, 2208, 2210 and 2212 Chapline Streets, Wheeling, West Virginia:**

**Parcel I:** The most southerly thirty (30) feet of Lot Numbered 192, as same is shown on the Plat of Eoff and Chapline's Addition to the City of Wheeling, said Plat being of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138; said part of said lot fronting thirty (30) feet on the east side of Chapline Street in said City and extending eastwardly of an even width to an alley in the rear thereof, and upon which is situate the improved premises known as 2204 Chapline Street in said City; together with all and singular the improvements situate thereon and the appurtenances and hereditaments thereunto belonging. (Note: The "improved premises" referred to in the foregoing description no longer exists on this property. No building is located on this property.)

**Parcel I is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0211.**

**Parcel II:** That certain parcel of land situate in the City of Wheeling, Ohio County, West Virginia, and bounded and described as follows:

Beginning in the West line of Lot Numbered One Hundred Ninety-One (191) in Chapline and Eoff's Addition to said City, said line being the East line of Chapline Street, at the northwest corner of the portion of said lot once owned by W. W. Irwin; thence running eastwardly and

21

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016644

BOOK 9 2 1 PAGE **339**

parallel to the North line of said lot to the alley in the rear thereof called Alley "D"; thence running northwardly, with the West line of said alley thirty-four (34) feet, more or less, to the northeast corner of a brick washhouse; thence running westwardly and parallel to the South line of said lot to Chapline Street, and from thence, with the East line of Chapline Street to the place of beginning, together with the buildings thereon.  (Note:  No building is located on this property.)

**Parcel II is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0210.**

**Parcel III**:   A certain lot or piece of ground situated in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and more particularly described as the South One-half (½) of Lot Numbered One Hundred Ninety-one (No. 191) of "Chapline and Eoff's" Addition to the City of Wheeling.  Fronting Thirty-three (33) feet on the East side of Chapline Street and running eastwardly of an even width One Hundred Twenty (120) feet to the alley in the rear of said lot.  Together with all and singular the improvements thereon and the hereditaments and appurtenances thereunto belonging.  Parcel III is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0209.

**Parcel IV**:   The following described tract or parcel of real estate situate on Chapline Street, in the City of Wheeling, Ohio County, West Virginia, in the Addition to said City as laid out by John Eoff and William Chapline, to-wit:

Being the north 31 feet to lot 190 in Chapline and Eoff's Addition to said City; the said 31 feet hereby conveyed measured along the east side of Chapline Street southwardly from the north line of said lot 190 runs to a point which is 5 feet south of the south side of the south wall of the main brick building now on the property hereby conveyed together with the improvements on said part of lot 190 and the appurtenances thereto belonging.

**Parcel IV is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0208.**

**Parcels I – IV being part of the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia not-for-profit corporation, by Ohio Valley Medical Center, Incorporated, a West Virginia not-for-profit corporation, by Deed dated the 28th day of June, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 727, at page 686.**

**PARCEL V IS NO LONGER A VACANT LOT AND IS NOW PART OF THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER, LOCATED AT 2211 EOFF STREET (LOT LOCATED AT CORNER OF THE ALLEY AND  22nd STREET), and is described as follows:**

**Parcel V**:   All of that certain piece or parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, being the westerly one-half (1/2) of Lot number Two Hundred Nineteen (219) as shown and defined on the plat of Eoff and Chapline Addition, a

22

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016645

BOOK **921** PAGE **340**

copy of which plat is of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138. Said westerly one-half (1/2) of Lot Two Hundred Nineteen (219) fronts sixty (60) feet more or less on Twenty-second (22) Street and extends back in a southerly direction and equal width with said frontage a distance of sixty-six (66) feet more or less to the southerly line of said lot, together with all the building and improvements situate thereon.

**Parcel V is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0246.**

**Parcel V being the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia corporation, by Francis D. Brown, by Deed dated the 31st day of May, 1984, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 619, at page 418.**

**Formerly the River Health Enterprises, Inc. Property:**

**Parcel One**

The following parcel of land situate on the westerly side of Chapline street, City of Wheeling, Ritchie Webster Center district (formerly Center district) Ohio County, West Virginia, and comprising all of Lots 169, 170, 171 and 172, as shown on the Map of Eoff and Chapline Addition, said map being recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 15, at page 138, and being more particularly bounded and described as follows:

Beginning at a point in the westerly line of Chapline Street, at its intersection with the southerly line of Lane 17, at the most easterly corner of Lot 172, as shown on said map; thence from said beginning point with said westerly line of Chapline Street, S. 16° 51' W. 234 and 01/100 feet to a point in the northerly line of Chapline Street and with said northerly line of Lane 18; thence leaving said westerly line of Chapline Street and with said northerly line of Lane 18, N. 73° 09' W. 121 and 62/100 feet to a point in the easterly line of Lane C; thence leaving said Lane 18 and with said easterly line of said Lane C, N. 16° 48' E. 271 and 57/100 feet to a point in the southerly line of said Lane 17; thence leaving said Lane C. and with said southerly line of Lane 17, S. 56° 02' E. 127 and 5/10 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, seven Hundred Six One Thousandths (706/1000) of an acre, more or less.

Being the same property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by Gus P. Sapon, et al., by Deed dated the 31st day of January, 1983, and recorded in said Clerk's office in Deed Book 611, at page 72. The said O. V. Enterprises, Inc. changed its

23

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**                                                                    DEFENDANTS_016646

BOOK  9 2 1 PAGE  **341**

name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

### Parcel Two

The following parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, and comprising that part of Lane 18, situate between Lane C and Chapline Street, and being more particularly bounded and described as follows:

Beginning at a point in the westerly line of Chapline Street at the northeasterly corner of Lot 168 as shown on the Plat of Chapline and Eoff Addition, a copy of said plat being recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia in Deed Book 15, at page 138; thence from said beginning point and with the northerly line of said Lot 168 N. 73° 09' W. 121 and 6/10 feet to a point in the easterly line of Lane C; thence crossing Lane 18, N. 16° 48' E. 20 feet to a point at the intersection of said easterly line of Lane C with the southerly line of Lot 169 as shown on said plat; thence with said southerly line S. 73° 09' E. 121 and 62/100 feet to a point in the aforesaid westerly line of Chapline Street; thence crossing Lane 18, S. 16° 51' W. 20 feet to the place of beginning, containing two thousand four hundred thirty-two (2,432) square feet, more or less.

Being all of the property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by the City of Wheeling, by Deed dated the 31st day of January, 1985, and recorded in said Clerk's Office in Deed Book 623, at page 731. The said O. V. Enterprises, Inc. changed its name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

Parts of Parcels I and II (being designated as all of Lot 169, part of Lot 170 and part of Lane 18) were the subject of the Declaration of Condominium dated the 28th day of February, 1986, by O.V. Enterprises, Inc., a West Virginia corporation, establishing the Valley Professional Center Condominium, and recorded in the said Clerk's Office in Deed Book 629, at page 760. By Termination Agreement of Valley Professional Center Condominium, dated the 25th day of September, 1991, and recorded in said Clerk's Office in Deed Book 663, at page 525, River Health Enterprises Inc. formerly known as O.V. Enterprises, Inc., as the owner of all the units in said condominium, terminated the common interest community known as Valley Professional Center Condominium and rendered void the Declaration of Condominium.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W58-Parcel No. 0187 and Tax Map W58-Parcel 0187-0001.**

24

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016647

BOOK **921** PAGE **342**       **Schedule A**

**(Tenant Leases)**

1.      The Lease Agreement, dated November 1, 2011, by and between OVMC and Dante A. Marra, M.D., as amended by the Modification to Lease Agreement, dated August 24, 2011. Premises – 2000 Eoff Street, West Building – Suite 602, Wheeling, WV 26003.

2.      The Lease Agreement for Shared Medical Office Suite (And One Medical Assistant), dated January 2, 2012, by and between OVMC and Daniel E. Buerger, M.D., as amended by the Lease Amendment, dated October 8, 2014, as further amended by the Lease Amendment, dated December 15, 2016.  Premises – 2101 Jacob Street, Suite 402, Wheeling, WV 26003.

3.      The Settlement Agreement, dated February 8, 2006, by and between OVMC and Northwood Health Systems, as renewed by the letter dated December 19, 2015.  Premises – 2121 Eoff Street, Ground Floor and 1st Floor, Wheeling, WV 26003.

4.      The Temporary Storage Agreement Letter, dated February 17, 2012, by and between OVMC and Dante Marra, M.D., as amended by the letter dated January 11, 2013. Premises – 2000 Eoff Street, West Building, Room 6-81, Wheeling, WV 26003.

5.      The Lease Agreement, dated January 20, 2012, by and between OVMC and J.D. Holloway, M.D.  Premises - 2115 Chapline Street, Suite 202, Wheeling, WV 26003.

6.      The Agreement of Lease, dated January 14, 1994, by and between RHE and Sexual Assault Help Center, Inc.  Premises – 2000 Eoff Street, Nurses Residence, NR-209, 210, and 214.

7.      The Agreement of Lease, dated October 1, 2007, by and between OVMC and Harmony House, Inc.  Premises - 2000 Eoff Street, East Building – 2nd Floor, Wheeling, WV 26003.

8.      The Lease Agreement, dated July 16, 2012, by and between OVMC and William E. Noble, M.D., as subleased by: (a) the Sublease Agreement, dated August 22, 2012, by and between William E. Noble, M.D. and Christopher Eskins, M.D.; (b) the Sublease Agreement, dated August 22, 2012, by and between William E. Noble, M.D. and Adel E. Frenn, M.D.; and (c) the Sublease Agreement, dated August 22, 2012, by and between William E. Noble, M.D. and John Wurtzbacher, M.D.  Premises – 2000 Eoff Street, West Building, Suite 601, Wheeling, WV 26003.

9.      The Lease Agreement, dated August 22, 2012, by and between OVMC and Valley Cardiac Diagnostics, LLC, as subleased by: (a) the Sublease Agreement, dated August 22, 2012, by and between Valley Cardiac Diagnostics, LLC and Christopher Eskins, M.D.; (b) the Sublease Agreement, dated August 22, 2012, by and between Valley Cardiac Diagnostics, LLC and Adel E. Frenn, M.D.; and (c) the Sublease Agreement, dated August 22, 2012, by and

**EXHIBIT 1**                                                                                                    DEFENDANTS_016648

BOOK 9 2 1 PAGE 343

between Valley Cardiac Diagnostics, LLC and John Wurtzbacher, M.D.  Premises – 2000 Eoff Street, West Building, Suite 601 Testing Area, Wheeling, WV.

10.     The Lease Agreement, dated October 31, 2012, by and between OVMC and Nellie Zoeckler, as amended by the Lease Agreement Amendment, dated April 28, 2014.  Premises – 2000 Eoff Street, Gift Shop, Wheeling, WV 26003.

11.     The Lease Agreement, dated February 15, 2013, by and between OVMC and DASCO-Ohio Valley Home Medical Equipment, LLC.  Premises – 2000 Eoff Street, East Building, Suite 1, Wheeling, WV 26003.

12.     The Lease Agreement, dated May 22, 2013, by and between OVMC and Attila Lenkey, M.D.  Premises – 2101 Jacob Street, Suite 502, Wheeling, WV 26003.

13.     The Lease Agreement (Part-Time), dated July 22, 2013, by and between OVMC and West Virginia University Medical Corporation dba University Health Associates.  Premises – 2000 Eoff Street, East Building, 3rd Floor, Rooms 3E-27, 3E-28, and 3E-118, Wheeling, WV 26003.

14.     The Lease Agreement (Part-Time), dated April 1, 2016, by and between OVMC and Everett & Hurite Ophthalmic Association, Inc.  Premises – 2101 Jacob Street, Suite 402, Wheeling, WV 26003.

15.     The Lease Agreement, dated May 31, 2016, by and between OVMC and Raymond A. Bannan, M.D., LLC.  Premises – 2101 Jacob Street, Suite 502, Wheeling, WV 26003.

16.     The Lease Agreement, dated August 10, 2016, by and among OVMC, Cavalier Mobile X-Ray, Co. and Mobile Diagnostic Imaging, Limited Liability Company.  Premises – 2000 Eoff Street, West Building, Level B, Wheeling, WV 26003.

17.     The Lease Agreement (Part-Time), dated October 10, 2016, by and between OVMC and Valley Gastroenterology & Endoscopy, LLC.  Premises – 2101 Jacob Street, Suite 402, Wheeling, WV 26003.

18.     The Lease Agreement, dated January 3, 2017, by and between OVMC and Carlos C. Jimenez, M.D., Professional Corporation.  Premises – 2000 Eoff Street, East Building – Suites 404 & 405, Wheeling, WV.

19.     The Lease Agreement, dated January 21, 2014, by and between OVMC and Earl Fritz Braunlich, M.D.  Premises – 2000 Eoff Street, East Building, Suite 604, Wheeling, WV 26003.

20.     The Lease Agreement, dated February 4, 2014, by and between OVMC and Park Health Behavioral Health Care, PLLC.  Premises – 2000 Eoff Street, East Building, Suite 704, Wheeling, WV 26003.

**EXHIBIT 1**

DEFENDANTS_016649

BOOK 921 PAGE 344

21.    The Lease Agreement, dated December 17, 2014, by and between OVMC and West Virginia University Medical Corp dba University Health Associates. Premises – 2000 Eoff Street, East Building, Rooms 3W-89, 3W-92, Wheeling, WV 26003.

22.    The Lease Agreement, dated December 22, 2014, by and between OVMC and Khoury Surgical Group, Inc. Premises – 2101 Jacob Street, Suite 402, Wheeling, WV 26003.

23.    The Lease Agreement, dated April 14, 2015, by and between OVMC and West Virginia Chapter of American College of Emergency Physicians, Inc. Premises – 2000 Eoff Street, Nurses Residence, NR-165, Wheeling, WV 26003.

24.    The Lease Agreement, dated November 11, 2015, by and between OVMC and Leigh A. Massey, M.D. Premises – 2000 Eoff Street, East Building, Suite 502, Wheeling, WV 26003.

25.    The Lease Agreement, dated November 20, 2015, by and between OVMC and Alpha Financials Solutions, Inc. Premises – 2000 Eoff Street, East Building, Suites 4E-10 & 4E-10A, Wheeling, WV 26003.

26.    The Lease Agreement, dated November 27, 2015, by and between OVMC and Ohio Valley Asthma & Allergy Institute, Inc. Premises – 2101 Jacob Street, Suite 601, Wheeling, WV 26003.

27.    The Lease Agreement, dated November 18, 2015, by and between OVMC and West Virginia University Medical Corp dba University Health Associates. Premises – 2101 Jacob Street, Suite 701, Wheeling, WV 26003.

28.    The Lease Agreement, dated January 25, 2017, by and between OVMC and Heather Leonard. Premises – 2101 Jacob Street, Room 6S-57, Wheeling, WV 26003.

Ohio County
Michael E. Kelly, Clerk
Instrument 19660705
06/05/2017 @ 03:53:32 PM
ASSIGNMENT OF LEASE
Book 921 @ Page 297
Pages Recorded 48
Recording Cost $        58.00

**EXHIBIT 1**

DEFENDANTS_016650

BOOK **9 2 1** PAGE **175**

## DEED

THIS DEED, made and entered into on this 30th day of May, 2017 , but is effective as of June 1, 2017, is by and between **OHIO VALLEY HEALTH SERVICES AND EDUCATION CORPORATION,** a West Virginia non-profit corporation, party of the first part ("Grantor"); and **ALECTO HEALTHCARE SERVICES WHEELING LLC**, a Delaware limited liability company, party of the second party ("Grantee").

WITNESSETH:  That for and in consideration of the sum of $10.00, cash in hand paid, and other good and valuable consideration, the receipt of all of which is hereby acknowledged, the party of the first part, **OHIO VALLEY HEALTH SERVICES AND EDUCATION CORPORATION,** a West Virginia non-profit corporation, does hereby bargain, sell, grant and convey with covenants of special warranty unto the party of the second part, **ALECTO HEALTHCARE SERVICES WHEELING LLC,** a Delaware limited liability company, all of the following described real estate, together with the improvements thereon and appurtenances thereunto belonging, lying, being, and situate in the City of Wheeling, Wheeling Tax District, Ohio County, West Virginia, and being more particularly bound and described as follows, to-wit:

**VACANT LOTS - 2206, 2208, 2210 and 2212 Chapline Streets, Wheeling, West Virginia:**

**Parcel I:**  The most southerly thirty (30) feet of Lot Numbered 192, as same is shown on the Plat of Eoff and Chapline's Addition to the City of Wheeling, said Plat being of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138; said part of said lot fronting thirty (30) feet on the east side of Chapline Street in said City and extending eastwardly of an even width to an alley in the rear thereof, and upon which is situate the improved premises known as 2204 Chapline Street in said City; together with all and singular the improvements situate thereon and the appurtenances and hereditaments thereunto belonging. (Note:  The "improved premises" referred to in the foregoing description no longer exists on this property.  No building is located on this property.)

**Parcel I is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0211.**

**Parcel II:**   That certain parcel of land situate in the City of Wheeling, Ohio County, West Virginia, and bounded and described as follows:

Beginning in the West line of Lot Numbered One Hundred Ninety-One (191) in Chapline and Eoff's Addition to said City, said line being the East line of Chapline Street, at the northwest corner of the portion of said lot once owned by W. W. Irwin;  thence running eastwardly and parallel to the North line of said lot to the alley in the rear thereof called Alley "D";  thence running northwardly, with the West line of said alley thirty-four (34) feet, more or less, to the northeast corner of a brick washhouse;  thence running westwardly and parallel to the South



**EXHIBIT 1**

DEFENDANTS_016651

BOOK   9 2 1 PAGE 1 7 6

line of said lot to Chapline Street, and from thence, with the East line of Chapline Street to the place of beginning, together with the buildings thereon. (Note:  No building is located on this property.)

**Parcel II is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0210.**

**Parcel III:**  A certain lot or piece of ground situated in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and more particularly described as the South One-half (½) of Lot Numbered One Hundred Ninety-one (No. 191) of "Chapline and Eoff's" Addition to the City of Wheeling.  Fronting Thirty-three (33) feet on the East side of Chapline Street and running eastwardly of an even width One Hundred Twenty (120) feet to the alley in the rear of said lot. Together with all and singular the improvements thereon and the hereditaments and appurtenances thereunto belonging.  **Parcel III is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0209.**

**Parcel IV:**    The following described tract or parcel of real estate situate on Chapline Street, in the City of Wheeling, Ohio County, West Virginia, in the Addition to said City as laid out by John Eoff and William Chapline, to-wit:

Being the north 31 feet to lot 190 in Chapline and Eoff's Addition to said City; the said 31 feet hereby conveyed measured along the east side of Chapline Street southwardly from the north line of said lot 190 runs to a point which is 5 feet south of the south side of the south wall of the main brick building now on the property hereby conveyed together with the improvements on said part of lot 190 and the appurtenances thereto belonging.

**Parcel IV is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0208.**

Parcels I – IV being part of the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia not-for-profit corporation, by Ohio Valley Medical Center, Incorporated, a West Virginia not-for-profit corporation, by Deed dated the 28th day of June, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 727, at page 686.

PARCEL V IS NO LONGER A VACANT LOT AND IS NOW PART OF THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER, LOCATED AT 2211 EOFF STREET (LOT LOCATED AT CORNER OF THE ALLEY AND  22nd STREET), and is described as follows:

**Parcel V:**    All of that certain piece or parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, being the westerly one-half (1/2) of Lot number Two Hundred Nineteen (219) as shown and defined on

2

**EXHIBIT 1**                                                                                           DEFENDANTS_016652

BOOK **9 2 1** PAGE **177**

the plat of Eoff and Chapline Addition, a copy of which plat is of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138. Said westerly one-half (1/2) of Lot Two Hundred Nineteen (219) fronts sixty (60) feet more or less on Twenty-second (22) Street and extends back in a southerly direction and equal width with said frontage a distance of sixty-six (66) feet more or less to the southerly line of said lot, together with all the building and improvements situate thereon.

**Parcel V is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0246.**

Parcel V being the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia corporation, by Francis D. Brown, by Deed dated the 31st day of May, 1984, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 619, at page 418.

This conveyance is made with covenants of **LIMITED WARRANTY** subject to any conditions, covenants, restrictions, reservations, easements and rights of way of record in the aforesaid Clerk's office or visible on the ground.

### DECLARATION OF RESIDENT STATUS

The undersigned Grantor hereby certifies under penalty of perjury, that it is a resident entity of the State of West Virginia as such term is defined by West Virginia Code Chapter 11, Article 21, Section 71b.

### DECLARATION OF CONSIDERATION OR VALUE

In accordance with and pursuant to the provisions of Chapter 11, Article 22, of the West Virginia Code, the undersigned hereby declare(s) that the total consideration paid for the property transferred by the document to which this declaration is appended is $61,632.

[Intentionally Left Blank]

[SIGNATURE AND ACKNOWLEDGMENT FOLLOW NEXT PAGE]

3

**EXHIBIT 1**

DEFENDANTS_016653

BOOK  921 PAGE 178

[SIGNATURE AND ACKNOWLEDGMENT FOLLOW NEXT PAGE]

4

EXHIBIT 1

DEFENDANTS_016654

BOOK 921 PAGE 179

IN WITNESS WHEREOF, the said Grantor hereto has caused its name to be hereunto subscribed by authority duly given.

OHIO VALLEY HEALTH SERVICES AND EDUCATION CORPORATION, a West Virginia non-profit corporation

By: _Michael J. Caruso_

Michael J. Caruso,
President and Chief Executive Officer

STATE OF WEST VIRGINIA,

COUNTY OF OHIO, to-wit:

The foregoing instrument, bearing date _30_ day of May, 2017, was acknowledged before me this _30_ day of May, 2017, by Michael J. Caruso, the duly authorized President and Chief Executive Officer of Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, to be the deed and act of said non-profit corporation.

_Judith A. Schoolcraft_
Notary Public

My commission expires: _12-6-2020_

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
JUDITH A. SCHOOLCRAFT
Ohio Valley Health Services & Education Corp.
2000 Eoff Street
Wheeling, West Virginia 26003
My Commission Expires Dec. 6, 2020

THIS INSTRUMENT WAS PREPARED, WITHOUT THE BENEFIT OF A TITLE EXAMINATION, TITLE REPORT, TITLE CERTIFICATE, OR TITLE INSURANCE COMMITMENT AND THE PREPARER BY THE PREPARATION OF THIS INSTRUMENT DOES NOT MAKE ANY EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS, OR AFFIRMATIONS OF ANY KIND, NATURE, OR CHARACTER, INCLUDING, WITHOUT LIMITATION, WARRANTIES, REPRESENTATIONS OR AFFIRMATIONS RELATING TO THE QUALITY OF TITLE, THE NATURE OF TITLE, POSSESSION, QUIET ENJOYMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, THE CONDITION OF THE PROPERTY, ACCESS TO THE PROPERTY, OR THE CAPACITY OF THE GRANTOR TO GRANT OR CONVEY TITLE, BY:

Prepared by:
Michael J. Sarrao, Esq.
16310 Bake Parkway, Suite 200
Irvine, California 92618

Ohio County
Michael E. Kelly, Clerk
Instrument 19660699
06/05/2017 @ 03:53:32 PM
DEED
Book 921 @ Page 175
Pages Recorded 5
Recording Cost $        36.00
Transfer Tax  $       272.80

5

EXHIBIT 1

DEFENDANTS_016655

BOOK  9 2 1 PAGE - 1 8 0        **DEED**

THIS DEED, made and entered into on this *30th* day of May, 2017 , but is effective as of June 1, 2017, is by and between **RIVER HEALTH ENTERPRISES, INC.,** a West Virginia for profit corporation, party of the first part ("Grantor"); and **ALECTO HEALTHCARE SERVICES WHEELING LLC,** a Delaware limited liability company, party of the second party ("Grantee").

WITNESSETH:  That for and in consideration of the sum of $10.00, cash in hand paid, and other good and valuable consideration, the receipt of all of which is hereby acknowledged, the party of the first part, **RIVER HEALTH ENTERPRISES, INC.,** a West Virginia for profit corporation, does hereby bargain, sell, grant and convey with covenants of special warranty unto the party of the second part, **ALECTO HEALTHCARE SERVICES WHEELING LLC,** a Delaware limited liability company, all of the following described real estate, together with the improvements thereon and appurtenances thereunto belonging, lying, being, and situate in the City of Wheeling, Wheeling Tax District, Ohio County, West Virginia, and being more particularly bound and described as follows, to-wit:

**PARCEL ONE**

The following parcel of land situate on the westerly side of Chapline street, City of Wheeling, Ritchie-Webster-Center district (formerly Center district) Ohio County, West Virginia, and comprising all of Lots 169, 170, 171 and 172, as shown on the Map of Eoff and Chapline Addition, said map being recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 15, at page 138, and being more particularly bounded and described as follows:

Beginning at a point in the westerly line of Chapline Street, at its intersection with the southerly line of Lane 17, at the most easterly corner of Lot 172, as shown on said map; thence from said beginning point with said westerly line of Chapline Street, S. 16° 51' W. 234 and 01/100 feet to a point in the northerly line of Chapline Street and with said northerly line of Lane 18; thence leaving said westerly line of Chapline Street and with said northerly line of Lane 18, N. 73° 09' W. 121 and 62/100 feet to a point in the easterly line of Lane C; thence leaving said Lane 18 and with said easterly line of said Lane C, N. 16° 48' E, 271 and 57/100 feet to a point in the southerly line of said Lane 17; thence leaving said Lane C. and with said southerly line of Lane 17, S. 56° 02' E. 127 and 5/10 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, seven Hundred Six One Thousandths (706/1000) of an acre, more or less.

The above described 706/1000 of an acre parcel being subject to any and all conditions, exceptions, reservations, stipulations, rights of way, etc., as may be contained in former deeds of conveyance.

**EXHIBIT 1**

DEFENDANTS_016656

BOOK   9 2 1 PAGE ᴗ 1 8 1

Being the same property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by Gus P. Sapon, et al., by Deed dated the 31st day of January, 1983, and recorded in said Clerk's office in Deed Book 611, at page 72. The said O. V. Enterprises, Inc. changed its name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

## PARCEL TWO

The following parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, and comprising that part of Lane 18, situate between Lane C and Chapline Street, and being more particularly bounded and described as follows:

Beginning at a point in the westerly line of Chapline Street at the northeasterly corner of Lot 168 as shown on the Plat of Chapline and Eoff Addition, a copy of said plat being recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia in Deed Book 15, at page 138; thence from said beginning point and with the northerly line of said Lot 168 N. 73° 09' W. 121 and 6/10 feet to a point in the easterly line of Lane C; thence crossing Lane 18, N. 16° 48' E. 20 feet to a point at the intersection of said easterly line of Lane C with the southerly line of Lot 169 as shown on said plat; thence with said southerly line S. 73° 09' E. 121 and 62/100 feet to a point in the aforesaid westerly line of Chapline Street; thence crossing Lane 18, S. 16° 51' W. 20 feet to the place of beginning, containing two thousand four hundred thirty-two (2,432) square feet, more or less.

This property was previously conveyed subject to all rights of utilities in, over, under and across said parcel.

Being all of the property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by the City of Wheeling, by Deed dated the 31st day of January, 1985, and recorded in said Clerk's Office in Deed Book 623, at page 731. The said O. V. Enterprises, Inc. changed its name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

Parts of Parcels I and II (being designated as all of Lot 169, part of Lot 170 and part of Lane 18) were the subject of the Declaration of Condominium dated the 28th day of February, 1986, by O.V. Enterprises, Inc., a West Virginia corporation, establishing the Valley Professional Center Condominium, and recorded in the said Clerk's Office in Deed Book 629, at page 760. By Termination Agreement of Valley Professional Center Condominium, dated the 25th day of September, 1991, and recorded in said Clerk's Office in Deed Book 663, at page 525, River Health Enterprises Inc. formerly known as O.V. Enterprises, Inc., as the owner of all the units in said condominium, terminated the common interest community known as Valley Professional Center Condominium and rendered void the Declaration of Condominium.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W58-Parcel No. 0187 and Tax Map W58-Parcel 0187-0001.**

2

**EXHIBIT 1**

DEFENDANTS_016657

BOOK 921 PAGE 182

This conveyance is made with covenants of **LIMITED WARRANTY** subject to any conditions, covenants, restrictions, reservations, easements and rights of way of record in the aforesaid Clerk's office or visible on the ground.

### DECLARATION OF RESIDENT STATUS

The undersigned Grantor hereby certifies under penalty of perjury, that it is a resident entity of the State of West Virginia as such term is defined by West Virginia Code Chapter 11, Article 21, Section 71b.

### DECLARATION OF CONSIDERATION OR VALUE

In accordance with and pursuant to the provisions of Chapter 11, Article 22, of the West Virginia Code, the undersigned hereby declare(s) that the total consideration paid for the property transferred by the document to which this declaration is appended is $1,399,161.

[Intentionally Left Blank ]

[SIGNATURE AND ACKNOWLEDGMENT FOLLOW NEXT PAGE]

3

EXHIBIT 1

DEFENDANTS_016658

BOOK  921 PAGE 183

IN WITNESS WHEREOF, the said Grantor hereto has caused its name to be hereunto subscribed by authority duly given.

RIVER HEALTH ENTERPRISES, INC., a West Virginia for profit corporation

By: _____
Michael J. Caruso
President and Chief Executive Officer

STATE OF WEST VIRGINIA,

COUNTY OF OHIO, to-wit:

The foregoing instrument, bearing date _30_ day of May, 2017, was acknowledged before me this _30_ day of May, 2017, by Michael J. Caruso, the duly authorized President and Chief Executive Officer of River Health Enterprises, Inc., a West Virginia for profit corporation, to be the deed and act of said for profit corporation.

_____
Notary Public

My commission expires: _12-6-2020_

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
JUDITH A. SCHOOLCRAFT
Ohio Valley Health Services & Education Corp.
2000 Eoff Street
Wheeling, West Virginia 26003
My Commission Expires Dec. 6, 2020

THIS INSTRUMENT WAS PREPARED, WITHOUT THE BENEFIT OF A TITLE EXAMINATION, TITLE REPORT, TITLE CERTIFICATE, OR TITLE INSURANCE COMMITMENT AND THE PREPARER BY THE PREPARATION OF THIS INSTRUMENT DOES NOT MAKE ANY EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS, OR AFFIRMATIONS OF ANY KIND, NATURE, OR CHARACTER, INCLUDING, WITHOUT LIMITATION, WARRANTIES, REPRESENTATIONS OR AFFIRMATIONS RELATING TO THE QUALITY OF TITLE, THE NATURE OF TITLE, POSSESSION, QUIET ENJOYMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, THE CONDITION OF THE PROPERTY, ACCESS TO THE PROPERTY, OR THE CAPACITY OF THE GRANTOR TO GRANT OR CONVEY TITLE, BY:

Prepared by:
Michael J. Sarrao, Esq.
16310 Bake Parkway, Suite 200
Irvine, California 92618

Ohio County
Michael E. Kelly, Clerk
Instrument 19660700
06/05/2017 @ 03:53:32 PM
DEED
Book 921 @ Page 180
Pages Recorded 4
Recording Cost $      36.00
Transfer Tax   $    6157.80

4

**EXHIBIT 1**

DEFENDANTS_016659

BOOK   9 2 1 PAGE ⌐ 1 8 4      **DEED**

      THIS DEED, made and entered into on this 30th day of May, 2017 , but is effective as of June 1, 2017, is by and between **OHIO VALLEY MEDICAL CENTER, INCORPORATED,** a West Virginia non-profit corporation, party of the first part ("Grantor"); and **ALECTO HEALTHCARE SERVICES WHEELING LLC,** a Delaware limited liability company, party of the second party ("Grantee").

      WITNESSETH:  That for and in consideration of the sum of $10.00, cash in hand paid, and other good and valuable consideration, the receipt of all of which is hereby acknowledged, the party of the first part, **OHIO VALLEY MEDICAL CENTER, INCORPORATED,** a West Virginia non-profit corporation, does hereby bargain, sell, grant and convey with covenants of special warranty unto the party of the second part, **ALECTO HEALTHCARE SERVICES WHEELING LLC,** a Delaware limited liability company, all of the following described real estate,  together with the improvements thereon and appurtenances thereunto belonging, lying, being, and situate in Ohio County, West Virginia, and being more particularly bound and described as follows, to-wit:

**THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2211 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER**

(I)

      A certain piece or parcel of land situate on the Southwest corner of 22nd and Eoff Streets in the City of Wheeling, Ohio County, West Virginia, being the Northeast part of lot numbered Two Hundred and Nineteen (219) in Chapline and Eoff's Addition to said City of Wheeling and the part hereby conveyed is bounded and described as follows:

      Beginning at the Southwest corner of 22nd and Eoff Streets which is the Northeast corner of said lot numbered Two Hundred and Nineteen (219), thence in a Southerly direction with the Easterly line of said lot and the Westerly line of said Eoff Street Thirty (30) feet; thence in a Westerly direction in a line parallel with 22nd Street Sixty-one (61) feet; thence in a Northerly direction in a line parallel with Eoff Street Thirty (30) feet to the Southerly line of 22nd Street; thence in an Easterly direction with the Southerly line of 22nd Street, Sixty-one (61) feet to the place of beginning; together with all buildings and appurtenances situate thereon or belonging thereto.

      This deed is made subject to a sewer right granted by Joseph N. Schwarzwalder to Conrad Bachman heirs by an agreement dated November 5, 1906, and recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 123, at page 212.

      Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Emil F. Yeager and Margaret C. Yeager, his wife, by Deed dated the 5th day of April, 1974, and recorded in the Office of the Clerk of the

**EXHIBIT 1**

DEFENDANTS_016660

BOOK  921 PAGE 185

County Commission of Ohio County, West Virginia, in Deed Book 549, at page 311.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0247.**

### (II)

The South 36 feet of the East half of Lot No. 219 in Chapline and Eoff's Addition to the said City of Wheeling, Ohio County, West Virginia, and being also designated by Street address known as 2203 and 2205 Eoff Street, Wheeling, West Virginia.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 9th day of October, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 450.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0248.**

### (III)

The following described real estate situate on the west side of Eoff Street, between Twenty-second and Twenty-third Streets in the City of Wheeling, Ohio County, West Virginia, and more particularly described as the north half of Lot numbered Two hundred and Eighteen (218) on the recorded plat of Chapline and Eoff's Addition to the City of Wheeling.  Together with all the improvements thereon and the appurtenances thereunto belonging.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0249.**

### (IV)

The following described property situated in the City of Wheeling, Center District, Ohio County, West Virginia, that is to say:

The south half of Lot No. Two Hundred Eighteen (218) as shown and designated on the Plat of the Addition to the Town of Wheeling laid off by William Chapline, Jr., and John Eoff, which Plat is recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Bok No. 15, at page 138, said half

2

**EXHIBIT 1**

DEFENDANTS_016661

BOOK 9 2 1 PAGE 1 8 6

lot fronting thirty-three (33) feet on the westerly side of Eoff street and extending back westwardly of even width one hundred twenty-two (122) feet to the alley in the rear.

Together with the buildings and improvements thereon and the hereditaments and appurtenances thereunto belonging.

Being Parcel III of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0250.**

### (V)

The north one-half (1/2) of lot numbered two hundred and seventeen (217) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia: said half of lot fronts thirty-three (33) feet on the west side of Eoff Street in said City of Wheeling, and extends back with equal width to the alley in the rear.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 3rd day of April, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 449.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0251.**

### (VI)

The following described property situate in Ohio County, West Virginia, that is to say:

A certain piece or parcel of real estate situate in the city of Wheeling in Ohio County, West Virginia, being a part of the south half of Lot Number 217 in what is known as the Chapline & Eoff Addition to said city of Wheeling. The parcel hereby conveyed is bounded and described as follows, to-wit: Beginning at the north-east corner of the south half of said Lot Number 217 on the west side of Eoff Street; thence southwardly with the west line of Eoff Street sixteen & one-half (16-1/2) feet, more or less, to the center of the partition wall between the property hereby conveyed and the property adjoining on the south side thereof; thence westwardly through the center of said partition wall, and with the same course continued to the western line of said lot; thence northwardly with the west line of said lot sixteen and one-half (16-1/2) feet to the north-western corner of

3

EXHIBIT 1

DEFENDANTS_016662

the south half of said lot; thence eastwardly with the northern line of said south half of said lot to the place of beginning.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, by Wilson Ruckman by Mary Geneva Ruckman, his attorney-in-fact, and Mary Geneva Ruckman, his wife, by Deed dated the 23rd day of March, 1981, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 601, at page 299.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0252.**

(VII)

The following described parcel of real estate situate in the City of Wheeling, County of Ohio, Center District, West Virginia; said parcel of real estate being more particularly described as follows:

A certain piece or parcel of land fronting on the west side of Eoff Street, between Twenty-second and Twenty-third Streets, in the City of Wheeling, Ohio County, West Virginia, and being the South one-fourth (1/4) of lot numbered Two Hundred and Seventeen (217) in Chapline and Eoff's Addition to the said City of Wheeling; said parcel of ground is more particularly described as follows:

Beginning at the South East corner of said lot numbered Two Hundred and Seventeen (217), thence North along the West line of said Eoff Street, Sixteen and one-half (16-1/2) feet to a point opposite the center of the partition wall of the double house erected on the South half of said lot, thence in a straight line parallel with the Southern line of said lot, One Hundred and Twenty-two (122) feet to an Alley in the rear, thence in a southerly direction along the Eastern line of said Alley, Sixteen and one-half (16-1/2) feet to the Southern line of said lot, thence in an Easterly direction along the South line of said lot numbered Two Hundred and Seventeen, One Hundred and Twenty-two (122) feet to the place of beginning.

Together with all and singular the improvements thereon, the hereditaments and appurtenances thereunto belonging.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0253.**

4

**EXHIBIT 1**                                                                                                    DEFENDANTS_016663

BOOK 921 PAGE 188

(VIII)

The South one-fourth of Lot numbered Two Hundred and Sixteen (216) in Chapline and Eoff's Addition to said City of Wheeling, West Virginia, together with the buildings and the appurtenances thereunto belonging, which said South one-fourth of said Lot Numbered Two Hundred and Sixteen (216) is more particularly bounded and described as follows:

Beginning at the northwest corner of Lane 19 (formerly Alley C) and Eoff Streets in said City of Wheeling; thence with the westerly line of Eoff Street and sixteen and one-half (16-1/2) feet, more or less, to the center of the division wall between the building hereby conveyed and the building immediately adjacent to the north of the same; thence with the center of the said division wall and along the division line between said buildings west one hundred and twenty-two (122) feet, more or less, to the eastern line of Lane D (formerly Alley H); thence southwardly with the eastern line of said last mentioned Lane D to the north line of said Lane 19, and thence with the said north line of said Lane 19, eastwardly to the place of beginning.

Being Parcel IV of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0384.**

(IX)

The following described lot or parcel of land situate in Center District, Ohio County, West Virginia, that is to say:

That certain real estate known as the north one half of the south one half of the lot numbered Two Hundred and Sixteen (Lot No. 216) of the Addition to the City of Wheeling in the County of Ohio and State of West Virginia laid out by John Eoff and William Chapline, fronting about sixteen feet and six inches on the west side of Eoff Street in what was once the Fifth Ward of said City of Wheeling, and extending back westwardly of a uniform width with said front one hundred and twenty two feet, more or less, to the Alley on the west of said lot, together with all the buildings, improvements and appurtenances thereon or belonging thereto; excepting, however, from this conveyance the two rights of way heretofore granted to other parties across said property.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Horace W. Shepherd and Freda M. Shepherd, his wife, by Deed dated the 25th day of April, 1974, and recorded in the Office of the Clerk of the

5

**EXHIBIT 1**

DEFENDANTS_016664

BOOK  921 PAGE 189

County Commission of Ohio County, West Virginia, in Deed Book 549, at page 518.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0385.**

## (X)

Part of Lot numbered two hundred and sixteen (216) fronting on the West side of Eoff Street, between Twenty-second (22nd) and Twenty-third (23rd) Streets in the City of Wheeling, West Virginia, in Chapline & Eoff's addition to said city, bounded as follows, to-wit: Beginning at the Southeast corner of the part of said lot conveyed to Francis Henry Moran by James G. Whyte and wife, as of record in the office of the Clerk of the County court of Ohio County, West Virginia, in Deed Book numbered Fifty-three (53), page 314, and thence Westwardly, Southwardly and Westwardly, binding on said Moran line to the East line of Alley "D"; thence Southwardly with the East line of Alley "D" to the South line of the North half of said lot; thence Eastwardly along the South line of the North half of said lot to the West line of Eoff Street; thence Northwardly along the West line of Eoff Street to the place of beginning. Reserving from this conveyance for the benefit of any person who shall be or become the owner of the next tenement South or that on the North part of the South half of said lot, the joint or free use of a certain Alley or passageway from Eoff Street, now there and open, and so to remain unless altered by common consent. Also guaranteeing to party of second part the right of way or passage through an alley three feet in width, and now covered by a tenement, and which is to be kept as it now is so as to leave a passage-way three feet wide and not less than nine feet high from the grade or base of said Alley, this latter right of way or passage is to join the South line of the said North half of said lot, and is to extend from the East line of Alley to a point three feet Eastward of the present tenement on the rear of the said North half of said lot numbered 216.

Being the same property conveyed to Ohio Valley Medical Center Incorporated, a West Virginia corporation, by John F. Baker and Katherine T. Baker, his wife, by Deed dated the 23rd day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 550, at page 131.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0386.**

6

**EXHIBIT 1**

DEFENDANTS_016665

BOOK **921** PAGE **190**

(XI)

The following described real estate, situate in the City of Wheeling, Ohio County, West Virginia, that is to say:

The North one-fourth part of Lot Number Two Hundred and Sixteen (216), being about sixteen feet front on Eoff Street, and running back of equal width to the brick building formerly on the alley and thence with the East wall of said brick building South to the center of the division wall between the two tenements in it the said brick building, and then on a line with said division wall out to the alley, together with the buildings and appurtenances thereon.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 -- Parcel No. 0387.**

**THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2000 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE MAIN CAMPUS OF OHIO VALLEY MEDICAL CENTER**

## TRACT I

The following parcels of land situate between Eoff Street and Chapline Street and 20th and 22nd Streets, City of Wheeling, Center District, Ohio County, West Virginia, and comprising all of Lots 193, 194, 195, 196, 197, 198, 199, 200, 203, 220, 222 and a part of Lots 223, 225, 227 (Parcel 2)  and 230 (Parcel One) and also part of Eoff Street, 20th Street and Lanes 17 and 18 and D, as shown on the Plat of Eoff and Chapline Addition, said plat being recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138 and being more particularly bounded and described as follows:

**Parcel One:** Beginning at a point in the northerly line of the concrete side walk now standing in the southerly portion of 20th Street, said beginning point located from a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, the following three (3) bearings and distances: N. 26' 10' E. 624 and 62/100 feet, measured along said easterly line of Chapline Street, to a point located S. 26° 10' W. 4 and 68/100 feet from a cross cut in a concrete sidewalk; thence with the northerly line of first above mentioned concrete sidewalk, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 97 and 46/100 feet to said beginning point, said nail and ribbon being also located at the most westerly corner of Lot No. 193; thence from said beginning point and with said northerly line of a concrete sidewalk, the following three (3) bearings and distances: S. 46°

7

**EXHIBIT 1**

DEFENDANTS_016666

47' E. 16 and 24/100 feet to a point; thence S. 45 ° 42' E. 55 and 55/100 feet to a point; thence S. 35° 44' E. 20 and 62/100 feet to a point in the center tine of Eoff Street; thence with said center line of Eoff Street, S. 26° 10' W. 95 and 3/10 feet to a point; thence N. 63° 50' W. 33 feet to a point in the westerly line of Eoff Street, at its intersection with the center line of Lane 17; thence with said center line of Lane 17, N. 46° 48' W. 63 and 96/100 feet to a point in the southerly, extension of the division line between Lots 227 and 230; thence with said extension and then said division line, N. 26° 10' E. 56 and 62/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, the following three (3) bearings and distances: N. 63° 50' W. 5 feet to a point; thence N. 47 ° 12' E. 13 and 92/100 feet to a point; thence N. 37° 20' E. 29 and 46/100 feet to the place of beginning, containing Ten Thousand Forty and Forty-seven Hundredths (10,040 and 47/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 427.**

**Parcel Two:**   Beginning at a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, said beginning nail and ribbon being also the most westerly corner of said Lot No. 193; thence from said beginning nail and ribbon and with said easterly line of Chapline Street, N. 26° 10' E. 624 and 62/100 feet to a point; said point being located S. 26° 10' W. 4 and 68/100 feet from a crosscut in a concrete sidewalk; thence leaving the said easterly line of Chapline Street, and with the northerly fine of the concrete sidewalk, now standing in the southerly portion of 20th Street, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 15 and 5/100 feet to a point in the northerly extension of the center line of Lane D; thence with said northerly extension and then center line, S. 26° 10' W. 200 and 16/100 feet to a point in the westerly extension of the center line of Lot No. 225; thence with said westerly extension and then said center line of Lot No. 225, S. 64° 00' E. 132 and 33/100 feet to a point in the westerly line of Eoff Street; thence with said westerly line, S. 26° 10' W. 33 feet to a point in the division line between Lots 224 and 225; thence with said last mentioned division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 129 and 16/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 88 and 84/100 feet to a point in the division line between Lots 221 and 222; thence with said division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 66 feet to a point in the westerly extension of the division line between Lots 220 and 221; thence with said westerly extension and then said division line of Lots 220 and 221, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 66 feet to a cross cut in a concrete sidewalk in the northerly line of 22nd Street, said cross being also the most southerly corner of said Lot 220; thence leaving Eoff Street and with said northerly line of 22nd Street, N. 64°

8

EXHIBIT 1

DEFENDANTS_016667

BOOK **921** PAGE **192**

00' W. 264 and 65/100 feet to the place of beginning, containing One Hundred Four Thousand Seven Hundred Fifty-two and Sixty-nine Hundredths (104,752 and 69/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 Parcel 214.**

### TRACT II

    **Parcel Three:** Lot Numbered Two Hundred and Twenty-seven (227) on the South side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, as the same is shown and designated on the Plat of Chapline and Eoff's Addition to City.

    And the following described piece of parcel of land lying and being situated on the south side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, and in the Chapline and Eoff's Addition to said City, described as follows, to-wit:

    Commencing at a point where the west line of Lot numbered Two Hundred and Thirty (230) inter-sects the South line of 20th Street (formerly Webster Street); thence running east four and one-fourth (4-¼) feet on the south line of 20th Street (formerly Webster Street); thence south twenty-one (21) feet in a straight line until it intersects the west boundary line of Lot numbered Two Hundred and Thirty (230), which said westerly boundary line of said Lot Numbered Two Hundred and Thirty (230) is a diagonal line. Excepting, however, so much of the above described property as was conveyed by Michael Kirchner and Katherine Kirchner, his wife, to Conrad Caldebaugh, by deed bearing date December 4, 1907, and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 126, at page 197.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 426.**

    **Parcel Four:** All the northern one-half of Lot No. 225 and the entire fractional Lot No. 226 in Chapline and Eoff's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which addition is recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138.

    **Parcel Five:** The North one-half of Lot Numbered Two Hundred and Twenty-four (224), situate on the West side of Eoff Street, between Twentieth (formerly Webster) and Twenty-second (formerly Third) Streets, in that part of the said City of Wheeling, called Centre Wheeling.

    **Parcel Six:** All that certain property situate in the City of Wheeling, Ohio County, West Virginia, being the south one-half of Lot numbered Two Hundred and twenty-four (224) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which is re-corded in the office of the Clerk

**EXHIBIT 1**                                                                 DEFENDANTS_016668

BOOK  021 PAGE 193

of the County Court of Ohio County, West Virginia, in Deed Book No. 15, page 138, and more particularly described as follows:

Beginning at a point at the south-east corner of said Lot numbered Two hundred and twenty-four (224), at the junction of Alley No. 18 and Eoff Street; thence in a westerly direction and along the northern boundary line of said Alley No. 18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the eastern boundary line of Alley 'D'; thence in a northerly direction and along the eastern boundary line of said Alley 'D' a distance of Thirty-three (33) feet, more or less; thence in an easterly direction and parallel with the northern boundary line of Alley No..18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the western boundary line of said Eoff Street; thence in a southerly direction and along the western boundary line of said Eoff Street; a distance of Thirty-three (33) feet, more or less, to the point of beginning, being bounded on the north by the property formerly owned by A. C. Partridge; on the east by Eoff Street; on the south by said Alley No. 18; and on the west by Alley 'D' in the rear of said lot.

**Parcel Seven:**  Beginning at a point at the intersection of the westerly line of Eoff Street with the southerly line of Lane 18, said intersecting point being the northeasterly corner of said Lot 223; thence from said beginning point and with the said westerly line of Eoff Street, S. 17 ° 00' W. 25 and 83/100 feet to a point in said westerly line of Eoff Street at its intersection with the easterly extension of the center line of the division wall between dwellings now known as 2111 and 2113 Eoff Street; thence leaving said Eoff Street and with said easterly extension and then with said center line N. 73° 47' W. 33 and 84/100 feet to a point; thence N. 76° 29' W. 14 feet to a point; thence N. 73° 47' W. 38 and 16/100 feet to a point in the easterly line of a walkway, four (4) feet wide, hereinafter mentioned; thence with said easterly line, N. 17° 59' E. 27 and 41/100 W. feet to a point in the said southerly line of Lane 18; thence with the said southerly line of Lane 18, S. 73° 10 ' E. 85 and 48/100 feet to the place of beginning.

Together with a right-of-way, in common with others, as follows: A right-of-way or walkway, four (4) feet wide, extending from the southerly line of Lane 18 in a southwesterly direction to the southerly line of Parcel Seven herein described, the easterly line of said four (4) foot walkway being the line hereinbefore described as 'N. 17° 59' E. 27 and 41/100 feet', said walkway is to be used in common by the owners of dwelling houses Numbered 2111 and 2113 Eoff Street and 2108, 2110 and 2112 Lane D, their heirs and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling house Number 2111 Eoff Street that are constructed on other lands now or formerly owned by the parties of the first part hereto, their heirs and assigns, and there is excepted and reserved from the parcel of land herein described, the right for the owner of dwelling house Number 2113 Eoff Street, 2108, 2110 and 2112 Lane D to use, renew, replace and maintain all water and gas pipes, sewers and any other

10

**EXHIBIT 1**

DEFENDANTS_016669

BOOK   921 PAGE   194

service lines now connected to dwelling house Number 2113 Eoff Street and 2108, 2110 and 2112 Lane D that are now constructed on the parcel of land herein described.

**Parcel Eight:** Beginning at a point in the easterly line of Alley D at the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D, said point being located S. 17° 00' W. 16.17 feet from the northwesterly corner of Lot 223 which is at the intersection of the easterly line of Alley D with the southerly line of Alley 18; thence from said beginning point, with the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D and its southeasterly extension, S. 73° 20' E. 36.26 feet to a point in the easterly line of a 4 foot walkway hereinafter mentioned; thence leaving the line of the said partition wall and with the easterly line of said 4 foot walkway, S. 17° 59' W. 13.83 feet to a stake; thence crossing the southerly end of said walkway, N. 76° 12' W. (at 4 feet passing the westerly side of said walkway) 5.28 feet to the center line of the partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence with the center line of the partition wall between dwelling houses 2110 and 2112 Alley D., N. 72° 01' W. 30.60 feet to the easterly line of Alley D; thence leaving last mentioned partition wall and with the easterly line of Alley D, N. 17° 00' E. 13.37 feet to the place of beginning.

**Parcel Nine:** Beginning at the intersection of the easterly line of Alley D with the southerly line of Alley 18, said intersection being the northwesterly corner of said Lot 223; thence from said beginning point, with the southerly line of Alley 18, S. 70° 10' E. 36.52 feet to a stake in easterly line of a walkway, 4 feet wide, hereinafter mentioned; thence leaving Alley 18 and with the easterly line of said 4 foot walkway, S. 17° 59' W. 16.08 feet to a point in the southeasterly extension of the center line of the partition wall between dwelling houses now known as 2108 and 2110 Alley D; thence leaving said walkway and with the said southeasterly extension and then with the center of the said partition wall between dwelling houses 2108 and 2110 Alley D, N. 73° 20' W. 36.26 feet to a point in the easterly line of Alley D; thence leaving said partition wall and with the easterly line of Alley D, N. 17° 00' E. 16.17 feet to the place of beginning.

**Parcel Ten:** Beginning at a point in the westerly line of Eoff Street at its intersection with the southeasterly extension of the south face of the south brick wall of brick dwelling house now known as 2111 Eoff Street, said beginning point being also located S. 17° 00' W. 25.83 feet measured along the westerly line of Eoff Street from its intersection with the southerly line of Alley 18 at the northeasterly corner of Lot 223; thence from said beginning point, with the westerly line of Eoff Street, S. 17 ° 00' W. 17.33 feet to the southeasterly corner of the parcel of land that was conveyed by William Stoetzer; Executor, to Cora Craft, Earl Stoetzer and William Stoetzer, by deed dated October 24, 1934, and recorded in said County Clerk's office in Deed Book 236, at page 48; thence leaving Eoff Street and with the southerly fine of the said Craft and Stoetzer

11

**EXHIBIT 1**

DEFENDANTS_016670

parcel, N. 73° 10' W. 122.00 feet to a point in the easterly line of Alley D; thence with the easterly line of Alley D, N. 17° 00' E. 13.62 feet to the center line of the frame partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence leaving Alley D with the center line of the frame partition wall between dwelling houses 2110 and 2112 Alley D, S. 72° 01' E. 30.60 feet to a tack on the easterly side of the east wall of said houses 2110 and 2112 Alley D; thence leaving said partition wall and crossing the southerly end of a walkway, 4 feet wide, hereinafter mentioned, S. 76° 12' E. 5.28 feet to a stake in the easterly line of said walkway; thence with the easterly line of said walkway N. 17° 59' E. 2.50 feet to a stake in the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street; thence leaving the easterly line of said walkway and with the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street and then with the center line of said space S. 73° 47' E. 38.16 feet to a stake; thence S. 76° 29' E. 14.00 feet to the southwesterly corner of the brick wall along the southerly side of said dwelling house 2111 Eoff Street; thence with the south face of the south brick wall of said building 2111 Eoff Street and its southeasterly extension S. 73° 47 ' E. 33.84 feet to the place of beginning.

Together with the right to use, renew and repair any supports or bearings for dwelling house 2113 Eoff Street that are now attached or built in the brick wall on the south side of dwelling house 2111 Eoff Street.

Together with the right, in common with others, to use a walkway, 4 feet wide, extending from the southerly line of Alley 18, in a southwesterly direction, to the northerly line of the parcel hereinbefore described, the easterly line of said walkway being described as follows:

Beginning at a stake in the southerly line of Alley 18, said stake being located S. 73° 10' E. 36.52 feet, measured along the southerly line of Alley 18, from its intersection with the easterly line of Alley D which is the northwesterly corner of Lot 223; thence from said beginning stake S. 17° 59' W. 27.41 feet to a stake at a corner to the parcel of land hereinbefore described; thence S. 17° 59' W. 2.50 feet to a stake at another corner to the parcel of land hereinbefore described. Said walkway is to be used in common between the owners of dwelling houses 2111 and 2113 Eoff Street and 2108, 2110, and 2112 Alley D. their tenants, agents, heirs, executors, administrators and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to 2113 Eoff Street and 2112 Alley D that are now constructed on that part of the said Craft and Stoetzer property, lying between the parcel of land hereinbefore described and the southerly line of Alley 18 and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling houses 2108 and 2110 Alley D and 2111 Eoff Street to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling

12

EXHIBIT 1

DEFENDANTS_016671

BOOK 921 PAGE 196

houses 2108 and 2110 Alley D and 2111 Eoff Street that are now constructed on the parcel of land hereinbefore described.

Together with the right to use, repair and renew that part of the cornices and eaves now attached to house 2113 Eoff Street that extend over the northerly line of the parcel of land hereinbefore described, as Parcel Ten.

There is excepted and reserved from the parcel of land hereinbefore described as Parcel Ten the right for the owner of dwelling house 2111 Eoff Street to use, repair and renew that part of the cornices and eaves attached to building 2111 Eoff Street that extend over the parcel of land hereinbefore described as Parcel Ten.

Together with the right to use the space between the rear part of dwelling houses 2111 and 2113 Eoff Street for the purpose of repairing and painting said house 2113 Eoff Street and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling house 2111 Eoff Street to use said space between the rear part of dwelling houses 2111 and 2113 Eoff Street to repair and paint said house 2111 Eoff Street."

**Parcel Eleven:**  Lot numbered two hundred twenty-one (221) and the buildings thereon, in Chapline and Eoff's Addition to the City of Wheeling, in Ohio County, West Virginia.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W58 Parcel 230.**

### TRACT III

**Parcel Twelve:** A certain parcel of land situated in Centre District, in the City of Wheeling, Ohio County, West Virginia, being Lot No. 283 as shown on the plat of the William Chapline Addition to the City of Wheeling, a copy of which Plat is unofficially recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 297, at page 385.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 456.**

**Parcel Thirteen:** The north half of all that certain lot or parcel of land situated in that part of the City of Wheeling laid out by William Chapline as an addition to South Wheeling, which lot is designated on the plat of said Addition as Lot No. 282."

13

EXHIBIT 1

DEFENDANTS_016672

In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 457.

   **Parcel Fourteen**: A certain piece or parcel of land situate in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and being the South half of Lot Numbered Two Hundred and Eighty Two (282) in William Chapline's Addition to said City of Wheeling, said property is situate on the east side of Jacob Street between 20th and 22nd Streets."

In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 458.

   **Parcel Fifteen**: The north half of Lot Numbered Two Hundred and Eighty-one (281), in William Chapline's Addition, which half lot lies at the southeast corner of Jacob Street and Alley Eighteen and is bounded as follows:

  "Commencing at the said corner, same being the northwest corner of said lot, and running thence with the south line of said alley in an easterly direction with the north line of said lot, one hundred feet to the northeast corner of said lot; thence running in a southerly direction with the east line of said lot twenty-six feet and four and one-half inches to the middle of said east line of said lot; thence running in a westerly direction parallel with the said north line of said lot one hundred feet to the middle of the west line of said lot on the east line of said Jacob Street and from thence running with the said east line of Jacob Street twenty-six feet and four and one-half inches in a northerly direction the place of beginning."

In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 459.

   **Parcel Sixteen**: The South half of Lot Numbered Two Hundred Eighty-one (281) situated in the Addition of South Wheeling now called Center Wheeling, laid off by William Chapline, said half of lot being twenty-six feet and four and one-half (26 ft. & 4-1/2 in.) in width, and one hundred (100) feet in depth."

In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 460.

   **Parcel Seventeen**: The north half of Lot No. 280 situate in the Addition to the City of Wheeling laid off by William Chapline, which said one-half (1/2) lot

**EXHIBIT 1**

DEFENDANTS_016673

BOOK  921 PAGE 198

contains twenty-six (26) feet and four and one-half (4-1/2) inches in width, and
one hundred (100) feet in depth."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel
numbering and description prior to 1998, and it is currently assessed as Tax Map W59
Parcel 461.**

**Parcel Eighteen**: A certain parcel of land situated on the east side of
Jacob Street (formerly called German Street) between Twenty-first and Twenty-
second Streets, in Centre District, Ohio County, West Virginia, and being the west
half of the south half (that is to say, the southwest quarter) of Lot No. 280, as
shown on the plat of the William Chapline Addition to the City of Wheeling, a
copy of which plat has been unofficially recorded in Deed Book No. 287, at page
385."

There is excepted and reserved from Tract III all of that property previously
conveyed from the Ohio County Building Commission to the West Virginia
Department of Highways by deed dated January 31, 1981, and recorded in said
Clerk's office in Deed Book 611, at page 250.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel
numbering and description prior to 1998, and it is currently assessed as Tax Map W59
Parcel 462.**

### TRACT IV

**Parcel Nineteen**: A parcel of land situate in the City of Wheeling, Ohio County,
West Virginia, being the west one-fourth of Lot No. 262 in the addition to the
City of Wheeling laid off by William Chapline, more particularly bounded and
described as follows:

"Beginning at the intersection of the north line of Twenty-Second Street
and the east line of Alley E, thence eastwardly binding on the north line of
Twenty-second Street 25 feet to the southwest corner of the John Koehler
property; thence northwardly binding on the west line of the Koehler property 52
feet and 9 inches to the south line of the Mertz property; thence westwardly
binding on the last-named south line and parallel to Twenty-second Street 25 feet
to the east line of Alley E., thence southwardly binding on the last-named east line
52 feet and 9 inches to the place of beginning."

**Parcel Twenty**: The East one-half (1/2) of the West half of Lot Numbered
Two Hundred and Sixty-two (262) situated in the addition to the City of Wheeling
laid off by William Chapline in that part of the City of Wheeling called Centre
Wheeling.

15

**EXHIBIT 1**

DEFENDANTS_016674

"This conveyance is subject to the privileges and right of way granted by Wendell Neidert and wife to John Koehler to run a sewer along the north line of the west half of said Lot Two Hundred and sixty-two (262) westwardly to Alley E.

"There is also excepted and reserved from this conveyance an easement and right of way over and across so much of the East half of the West half of Lot numbered Two Hundred and sixty-two (262) in William Chapline Addition as is necessary for the owner of the building known as Sixty-seven (67) Twenty-second (22) Street to maintain and repair his property."

**Parcel Twenty-One:** The following described westerly part of the east half of Lot Numbered Two Hundred Sixty-two (262) situated in the Addition to said City laid out by William Chapline, beginning at the southwest corner of said half lot which corner is the northeast corner of the property owned by John Koehler; thence eastwardly binding on the north line of 22nd Street, nineteen (19) feet to a point; thence northwardly parallel with the west line of said half lot seventeen (17) feet to a point; thence eastwardly parallel with the north line of 22nd Street, two (2) feet to a point; thence northwardly parallel with the west line of said half lot, seventeen (17) feet to a point; thence westwardly parallel with the north line of said 22nd Street, one (1) foot to a point; thence northwardly parallel with the west line of said half lot eighteen (18) feet and nine (9) inches to the north line of said half lot; thence westwardly binding on said last-named north line, twenty (20) feet to the northwest corner of said half lot; thence southwardly binding on the east line of the said John Koehler property, and west line of said half lot fifty-two (52) feet and nine (9) inches to the place of beginning.

"Together with an easement and right-of-way over and across so much of the east half of the west half of Lot Numbered Two Hundred Sixty-two (262), William Chapline Addition, as necessary for the maintenance and repair of the structure upon the hereinbefore described property and known as 67 Twenty-second (22nd) Street."

**Parcel Twenty-two:** The following described part of the east half of Lot numbered Two Hundred Sixty Two (262) situated in the addition to the City of Wheeling, aforesaid, laid off by William Chapline, beginning in the southeast corner of said half lot, which said corner is the intersection of the north line of 22nd Street and the west line of Jacob Street in said City of Wheeling, thence westwardly along the north line of said 22nd Street, Thirty-one (31) feet to the southeast corner of the part of said half lot conveyed to Mary J. Koehler by deed dated April 28th, 1904, as of record in the office of the Clerk of the County Court in said Ohio County, in Deed Book No. 115, Page 114, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence eastwardly parallel with 22nd Street two (2) feet, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence westwardly parallel with 22nd Street, One (1) foot, thence northwardly binding in the last named east line Eighteen (18) feet and Nine (9) inches to the north line of said half lot, thence eastwardly binding on last named north line Thirty (30) feet to the

16

EXHIBIT 1

DEFENDANTS_016675

BOOK 921 PAGE 200

northeast corner of said half lot, thence southwardly binding on the east line of said half lot Fifty-two (52) feet and Nine (9) inches to the place of beginning."

**Parcel Twenty-Three:** Lot numbered Two Hundred and Sixty-three (263) on the West side of Jacob Street, just north of Twenty-second Street, in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, excepting, however, that portion or said Lot Numbered Two Hundred and Sixty-three (263), to-wit:

"The northerly twenty-five (25) feet thereof, which was heretofore conveyed to Charles J. Ochsenkuhn by deed of Gertrude Mertz, et al, dated January 11, 1910 and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 132, at page 459, and deed of Frank C. Nolte, Guardian of Ellen Schad and Robert Schad, dated January 11, 1910 and now of record in said Clerk's office in Deed Book 132, at page 460.

**"Parcel Twenty-four:** Commencing at the point of intersection of the northerly boundary line of said lot No. 263 with the westerly side of Jacob Street; thence in a southerly direction with the westerly side of Jacob Street a distance of twenty-five (25) feet to a point; thence in a westerly direction and parallel with the northerly boundary line of said Lot No. 263 to the easterly side of the alley in the rear of said lot; thence in a northerly direction and with the easterly side of said alley a distance of twenty-five (25) feet to the northwesterly corner of said Lot No. 263; thence eastwardly with the northerly boundary line of said Lot No. 263 to the place of beginning.

**"Parcel Twenty-five:** A certain parcel of land known as the south one-half of Lot Numbered Two Hundred Sixty-four (264) in Chapline's Addition to the City of Wheeling, in Center District, Ohio County, West Virginia.

**"Parcel Twenty-six:** Being twenty-six (26) feet off the north part of Lot Numbered Two Hundred Sixty-five (265) fronting on the west side of Jacob (formerly German) Street, bounded as follows: Beginning at the northeast corner of said lot; thence south twenty-six (26) feet; thence west to the alley in the rear of said lot; thence north with the line of said alley twenty-six (26) feet to the north line of said lot; thence east to the place of beginning."

**"Parcel Twenty-seven:** All the south half of Lot No. 265, situated in that part of the said City of Wheeling laid out by William Chapline and now called Center Wheeling."

**"Parcel Twenty-eight:** All that property situated in the City of Wheeling, Ohio County, West Virginia, and known as the north one-half of Lot No. 264 in Chapline's Addition, which half-lot is 26 feet 4-1/2 inches wide and 100 feet deep.

**"Parcel Twenty-nine:** The south twenty-three (23) feet of lot numbered two hundred and sixty-six (266) situate on the west side of Jacob Street, and south

17

**EXHIBIT 1**

DEFENDANTS_016676

BOOK  921 PAGE 201

of Alley numbered eighteen (18) in that part of the City of Wheeling, West Virginia, called Centre Wheeling, and bounded and described as follows: beginning at the southeast corner of said lot, thence in a northerly direction with the west line of Jacob Street twenty-three (23) feet; thence in a westerly direction in a line parallel with the south line of said lot to the west line of said lot; thence in a southerly direction with the west line of said lot twenty-three (23) feet to the southwest corner of said lot; thence in an easterly direction with the south line of said lot to the place of beginning."

"**Parcel Thirty:** All that piece or parcel of real estate situated in Center District, Ohio County, West Virginia, and known as Lot No. 266, situated on the southwest corner of Jacob Street and Alley 18, in that part of said City of Wheeling called 'South Wheeling', excepting therefrom, however, the southerly 23 feet of said lot."

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.1.**

**Parcel Thirty-one:**  A certain parcel of land situated in the City of Wheeling, Ohio County, West Virginia, being a part of lot number two hundred and fifty (250) in Chapline & Eoff's Addition to said city, the premises hereby conveyed being bounded and described as follows, to-wit: Beginning at the southeast corner of Eoff Street and Alley Eighteen, being the northwest corner of said lot, thence eastwardly with the southern side of said alley sixty-five (65) feet; thence southwardly on a line parallel with Eoff Street twenty-one feet and two inches (21 ft. 2 ins.); thence westwardly on a line parallel with said alley sixty-five (65) feet to said Eoff Street; thence northwardly with the eastern line of Eoff Street twenty-one feet and two inches (21 ft. 2 in.) to the place of beginning; with the dwelling house situated thereon, known as No. 2106 Eoff Street.

**Parcel Thirty-two:**  Being situate on the east side of Eoff Street, between Twenty-first and Twenty-second Streets, in said City, being part of lot numbered Two Hundred and Fifty (250) in Eoff and Chapline's Addition to said City of Wheeling, bounded and described as follows: Beginning in the east line of said Eoff Street, at a point forty-four (44) feet southwardly from the south line of Alley Eighteen (18) measuring along the east line of said Eoff Street, thence eastwardly sixty-five (65) feet, thence northwardly, parallel with the east line of said Eoff Street, twenty-two feet and ten inches (22 ft. 10 ins.) thence westwardly parallel with the south line of said Alley Eighteen (18), sixty-five (65) feet to the east line of said Eoff Street, thence south and with the said east line twenty-two feet and ten inches (22 ft. 10 ins.) to the place of beginning.

**Parcel Thirty-three:**  Commencing at the southwest corner of Alley E and Alley 18, thence south on the west side of Alley E, sixty-six (66) feet; thence west thirty (30) feet; thence north on a line parallel with Alley E, sixty-six (66) feet to Alley 18; thence east along the south side of Alley 18, thirty (30) feet to the place of beginning.

18

**EXHIBIT 1**                                                DEFENDANTS_016677

BOOK 9 2 1 PAGE 2 0 2

**Parcel Thirty-four:** Part of Lot No. 250, fronting on the east side of Eoff Street, between Twentieth and Twenty-second Streets, in the City of Wheeling, Ohio County, West Virginia, in Chapline and Eoff's Addition to said city, that is to say: Beginning in the east line of said Eoff Street at a point forty-four (44) feet southwardly from the south line of Alley 18 measuring along said east line, thence eastwardly parallel with the south line of said alley, sixty-five (65) feet, thence southwardly parallel with the east line of said Eoff Street twenty-two (22) feet, thence westwardly parallel with the south line of said alley sixty-five (65) feet to the east line of Eoff Street, thence northwardly binding on last named east line twenty-two (22) feet to the place of beginning.

**Parcel Thirty-five:** The northern one-half part of lot numbered two hundred and forty-nine (249) situated on the east side of Eoff Street, in the Fifth Ward of the City of Wheeling, County of Ohio, State of West Virginia.

**Parcel Thirty-six:** Commencing at the intersection of the division line between lots 248 and 249 with the easterly line of Eoff Street; thence with the easterly line of Eoff Street, north 17° 00' east, 33 feet; thence leaving Eoff Street, south 73° 12' east, 122 feet to a stake in the westerly line of Alley E; thence with the same, south 17° 00' West, 33 and 5/10 feet to a stake; thence with the division line between said lots 248 and 249, north 72° 58' west, 122 feet to the place of beginning.

**Parcel Thirty-seven:** The north half of that parcel or lot of land lying and being situated west of a line drawn through Lot No. 247 parallel to Eoff Street in the Chapline and Eoff Addition to the City of Wheeling, which line divides said Lot into two (2) equal parts. Otherwise stated, the property hereby conveyed is the northwesterly quarter of said Lot No. 247.

**Parcel Thirty-eight:** A part of Lot Numbered Two Hundred and Forty-seven (247) in Chapline and Eoff's Addition to the said City of Wheeling, situated at the northeast corner of Eoff and Twenty-second Streets, fronting thirty-three and six one-hundredths (33-6/100) feet on Eoff Street and extending back with equal width sixty-six and four-tenths (66 4/10) feet to the West line of F. Schlechien property.

**Parcel Thirty-nine:** Beginning at a stake in the northerly side of 22nd Street, said stake being located S. 73° 02' E. 66 and 89/100 feet from the intersection of the northerly line of said 22nd Street with the easterly line of Eoff Street; thence from said beginning stake and with a line that is parallel to and 1 and 1/10 feet distant, measured at right angles in a westerly direction from the stone foundation of dwelling house now known as 57-22nd Street, N. 16° 50' E. 66 and 17/100 feet to a mark on a brick wall in the division line between said Lot 247 and Lot 248; thence leaving said parallel line and with said division line, S. 73° 02' E. 24 and 66/100 feet to a point; thence leaving said division line, S. 17° 01' W. (passing on the westerly face of the northwesterly corner strip of dwelling

19

EXHIBIT 1

DEFENDANTS_016678

BOOK  921 PAGE 203

house now known as 59-22nd Street) 66 and 17/100 feet to a tack in the southwesterly corner of the southwesterly corner strip of said dwelling house 59-22nd Street in the northerly side of said 22nd Street; thence leaving said corner strip and with the northerly side of said 22nd Street, N. 73' 02' W. 24 and 45/100 feet to the place of beginning.

**Parcel Forty**:  All the following described land situated in the City of Wheeling and in Center District, Ohio County, West Virginia, that is to say, the east half of the east half of Lot No. 247 of the Chapline and Eoff Addition to the City of Wheeling, sometimes known as Center Wheeling, the part of said Lot No. 247 hereby conveyed being situated at the corner north of Twenty-second Street and west of Lane E in said City;

**Parcel Forty-two**:  All of the following piece or parcel of ground, being about fifty (50) feet square, more or less, and bounded on the south by the northern boundary of North, or Webster Street, in South Wheeling, extended in a direct line on the north by a line parallel thereto and so drawn as to touch the northeast angle of a projecting ledge of stone on which the letter B was cut and to touch the same at the surface of the road on the west by the east line of division alley extended, and on the east by a line running from said northern line parallel with the line of division alley, so as to touch the east side of a small projection in the rock on which the letter P was cut; and thence following the direction of a seam in the rock which appears at the side of said projection to the said southern line, but reserving all the coal in or under the said piece of land and the right to dig and take the same.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.**

### TRACT V

**Parcel Forty-one**: Seven lots of ground situated in the addition to South Wheeling laid out by William Chapline (which addition is now part of the said City of Wheeling) and described on a plat of the said addition by the numbers two hundred and fifty-one (251), two hundred and fifty-two (252), two hundred and fifty-three (253), two hundred and fifty-six (256), two hundred and sixty-seven (267), two hundred and sixty-eight (268) and two hundred and sixty-nine (269).

**Parcel Forty-three**:  Beginning at a point where the easterly line of Eoff Street intersects the southerly line of 20th Street; thence with the said easterly line of Eoff Street extended in a northeasterly direction N. 18° 00' E. 23.90 feet to a crows foot cut in the face of a sandstone ledge; thence leaving the said northeasterly extension of the easterly line of Eoff Street S. 61° 16' 50" E. 71.00 feet to a crows foot cut in the face of a sandstone ledge; thence S. 59° 51 ' 40" E. 53.41 feet to a point in the northeasterly extension of the easterly line of Alley E. (formerly Division Alley); thence with the said northeasterly extension of the easterly line of Alley E., S. 18 ° 00' W. 35.60 feet to a point at the intersection of the said northeasterly extension of the easterly line of Alley E, with the southerly

20

EXHIBIT 1

DEFENDANTS_016679

BOOK  9 2 1 PAGE  2 U 4

line of 20th Street; thence with the said southerly line of 20th Street N. 55° 30' W. 127.24 feet to the place of beginning.

**Parcel Forty-four:** Beginning at the point where the easterly extension of the southerly line of Twentieth Street intersects the westerly line of Alley E (formerly called Division Alley), said beginning point being also located S. 55° 30' E. 127.24 feet from the intersection of the southerly line of Twentieth Street with the easterly line of Eoff Street; thence, with the westerly line of the said Alley E extended in a northerly direction N. 18° 00' E. 35.60 feet to a point in the southerly line of Crescent Street; thence with the said southerly line of Crescent Street S. 59 ° 31 40" E. 115.16 feet to the westerly line of a tract of land containing 42 acres, 2 rods and 3 poles that was conveyed to the Whitaker-Glessner Co. by the Whitaker Iron Co. by deed dated January 21, 1904, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 115, page 293, thence with the said westerly line of said tract of land, S. 29° 12' W. 43.07 feet to a point in the above mentioned easterly extension of the southerly line of Twentieth Street; thence with the said easterly extension of the southerly line of Twentieth Street, N. 55° 30' W. 108.69 feet to the place of beginning; excepting therefrom, however, that tract of land that was conveyed by George Hardman and wife to Peter P. Beck by deed dated the 6th day of October, 1848, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 31, at page 425, said excepted parcel being described in said deed as 'about 50 feet square, more or less.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 431.**

**Parcel Forty-Eight:** EXCHANGE PARCEL - Parts of Parcels formerly designated as 79, 80 & 81

BEGINNING at a point in the western revised non-controlled access right of way line, said point being in the northern existing right of way line of 22nd Street and 81 feet radially left of Relocated WV Route 2 Centerline Station 163+12, Project FF-2(004), Ohio County, West Virginia;

thence, southwesterly with said existing right of way line 49 feet, more or less, to a point in the eastern existing right of way line of Jacob Street, said point being 118 feet radially left of Centerline Station 162+79;

thence, northeasterly with said existing right of way line 122 feet, more or less, to a point in the division line between The Ohio County Building Commission, and the West Virginia Department of Highways, said point being 131 feet left of and at a right angle to Centerline Station 164+01;

thence, southeasterly with said division line 46 feet, more or less, to a point in the western revised non-controlled access right of way line, said point being 84 feet left of and at a right angle to Centerline Station 164+05;

21

**EXHIBIT 1**

DEFENDANTS_016680

BOOK 9 2 1 PAGE 2 0 5

thence, southwesterly in a reverse centerline direction, with said revised non-controlled access right of way line 95 feet, more or less, to the place of beginning and containing 4,618 square feet, more or less.

Said tracts and parcels comprise the main campus of Ohio Valley Medical Center at 2000 Eoff Street, Wheeling, West Virginia, and are part of the property conveyed to Ohio Valley Medical Center, Inc., a West Virginia corporation, by the Ohio County Building Commission by deed dated the 17th day of December, 1985 and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia in Deed Book 628, at page 766.

Said tracts and parcels contained in Tracts I through Tracts V, are identified by the Ohio County Assessor's office as **Tax Map W58 – Parcel Numbers 0214 and 0230; and Tax Map W59 – Parcel Numbers 0426, 0427, 0431, 0432; 0432.1; 456; 457; 458; 459; 460; 461 and 462.**

## TRACT VI

The following parcel of land situate on the southerly side of Twenty-second Street between Jacob Street and Lane E, City of Wheeling, Ritchie-Webster Center District (formerly Center District), Ohio County, West Virginia, and comprises the west part of the east one-half of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

BEGINNING at a point in the southerly line of Twenty-second Street at the division line between the east one-half and the west one-half of Lot 261, said beginning point being located S. 64° 00' E. 50 feet from the intersection of the southerly line of Twenty-second Street and the easterly line of Lane E; thence from said beginning point with said southerly line of Twenty-second Street, S. 64° 00' E. 32 and 52/100 feet to a point; thence leaving said southerly line and crossing through said Lot 261, S. 27° 06' W. 52 and 76/100 feet to a point in the division line between Lots 260 and 261; thence with said division line N. 64° 00' W. 31 and 71/100 feet to a point; thence leaving said division line between Lots 260 and 261 and with the division line between the east one-half and the west one-half of Lot 261, N. 26° 13' E. 52 and 75/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Thirty-eight One Thousandths (38/1000) of an acre more or less.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0002.**

**EXHIBIT 1**

DEFENDANTS_016681

BOOK 921 PAGE 206

### TRACT VII

The following parcel of land situate on the southerly side of Twenty-second Street and the westerly side of Jacob Street, City of Wheeling, Ritchie Webster-Center District (formerly Center District), Ohio County, West Virginia, and comprising all of Lot 5 and the northerly two (2) feet nine (9) inches of Lot 4, as shown on the Map of Filan, Whyte & Gallagher Addition, said Map being recorded in the office of the Clerk of the County Commission of Ohio County, West Virginia in Deed book 84, at page 617, and the easterly part of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

Beginning at a point in the southerly line of Twenty-second Street at its intersection with the westerly line of Jacob Street, said beginning point also being the most easterly corner of Lot 5, as shown on said map; thence from said beginning point with said westerly line of Jacob Street, S. 26° 25' W. (at 57 and 1/100 feet passing the division line between Lots 4 and 5) 59 and 76/100 feet to a point; thence leaving said Jacob Street and crossing through said Lot 4, N. 64° 00' W. (at 18 feet leaving Lot 4 and with the division line between Lots 260 and 261, William Chapline Addition) 35 and 4/10 feet to a point; thence leaving said division line and crossing through said Lot 261 N. 27° 06' E. 52 and 76/100 feet to a point in said southerly line of Jacob Street; thence with same the following two (2) bearings and distances: S. 64° 00' E. 16 and 77/100 feet to a point at the division line between said Lot 261 and said Lot 5; thence with said Lot 5, S. 85° 11' E. 19 and 36/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Forty-three One Thousandths (43/1000) of an acre, more or less.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0003.**

This conveyance is made with covenants of **LIMITED WARRANTY** subject to any conditions, covenants, restrictions, reservations, easements and rights of way of record in the aforesaid Clerk's office or visible on the ground.

23

**EXHIBIT 1**

DEFENDANTS_016682

BOOK   921 PAGE 207

## DECLARATION OF RESIDENT STATUS

The undersigned Grantor hereby certifies under penalty of perjury, that it is a resident entity of the State of West Virginia as such term is defined by West Virginia Code Chapter 11, Article 21, Section 71b.

## DECLARATION OF CONSIDERATION OR VALUE

In accordance with and pursuant to the provisions of Chapter 11, Article 22, of the West Virginia Code, the undersigned hereby declare(s) that the total consideration paid for the property transferred by the document to which this declaration is appended is $27,539,207.

[Intentionally Left Blank]

[SIGNATURE AND ACKNOWLEDGMENT FOLLOW NEXT PAGE]

24

**EXHIBIT 1**

DEFENDANTS_016683

BOOK 921 PAGE 208

IN WITNESS WHEREOF, the said Grantor hereto has caused its name to be hereunto subscribed by authority duly given.

OHIO VALLEY MEDICAL CENTER, INCORPORATED, a West Virginia non-profit corporation

By: _____
    Michael J. Caruso
    President and Chief Executive Officer

STATE OF WEST VIRGINIA,

COUNTY OF OHIO, to-wit:

The foregoing instrument, bearing date 30 day of May, 2017, was acknowledged before me this 30 day of May, 2017, by Michael J. Caruso, the duly authorized President and Chief Executive Officer of Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, to be the deed and act of said non-profit corporation.

_____
Notary Public

My commission expires: 12-6-2020

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
JUDITH A. SCHOOLCRAFT
Ohio Valley Health Services & Education Corp.
2000 Eoff Street
Wheeling, West Virginia 26003
My Commission Expires Dec. 6, 2020

THIS INSTRUMENT WAS PREPARED, WITHOUT THE BENEFIT OF A TITLE EXAMINATION, TITLE REPORT, TITLE CERTIFICATE, OR TITLE INSURANCE COMMITMENT AND THE PREPARER BY THE PREPARATION OF THIS INSTRUMENT DOES NOT MAKE ANY EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS, OR AFFIRMATIONS OF ANY KIND, NATURE, OR CHARACTER, INCLUDING, WITHOUT LIMITATION, WARRANTIES, REPRESENTATIONS OR AFFIRMATIONS RELATING TO THE QUALITY OF TITLE, THE NATURE OF TITLE, POSSESSION, QUIET ENJOYMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, THE CONDITION OF THE PROPERTY, ACCESS TO THE PROPERTY, OR THE CAPACITY OF THE GRANTOR TO GRANT OR CONVEY TITLE, BY:

Prepared by:  (insert preparer's name and address)
Michael J. Sarrao, Esq.
16310 Bake Parkway, Suite 200
Irvine, California 92618

Ohio County
Michael E. Kelly, Clerk
Instrument 19660701
06/05/2017 @ 03:53:32 PM
DEED
Book 921 @ Page 184
Pages Recorded 25
Recording Cost $        58.00
Transfer Tax   $    121173.80

25

**EXHIBIT 1**

DEFENDANTS_016684

BOOK 921 PAGE 209

THIS DEED, made and entered into on this _30th_ day of _May_____, 2017, but is effective as of _June 1_____, 2017, is by and between **ALECTO HEALTHCARE SERVICES WHEELING LLC**, a Delaware limited liability company, party of the first part ("Grantor"); and **MPT OF WHEELING-ALECTO, LLC**, a Delaware limited liability company, party of the second party ("Grantee").

WITNESSETH: That for and in consideration of the sum of $10.00, cash in hand paid, and other good and valuable consideration, the receipt of all of which is hereby acknowledged, the party of the first part, **ALECTO HEALTHCARE SERVICES WHEELING LLC**, a Delaware limited liability company, does hereby bargain, sell, grant and convey with covenants of GENERAL WARRANTY unto the party of the second part, **MPT OF WHEELING-ALECTO, LLC**, a Delaware limited liability company, all of the following described real estate, together with the improvements thereon and appurtenances thereunto belonging, lying, being, and situate in _Wheeling_____ Districts, Ohio County, West Virginia, and being more particularly bound and described as follows, to-wit:

See **Exhibit A**
attached hereto and made a part hereof by reference and incorporation


Being the same real estate conveyed to Alecto Healthcare Services Wheeling LLC, a Delaware limited liability company, by (i) deed from Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, (ii) deed from River Health Enterprises, Inc., a West Virginia for profit corporation, and (iii) deed from Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, all to Alecto Healthcare Services Wheeling LLC, and all dated of even date herewith.


This conveyance is subject to the matters set forth on **Exhibit B** attached hereto and made a part hereof by reference and incorporation.


### DECLARATION OF RESIDENT STATUS

The undersigned Grantor hereby certifies under penalty of perjury, that it is a resident entity of the State of West Virginia as such term is defined by West Virginia Code Chapter 11, Article 21, Section 71b, and, therefore, is exempt from any state income tax withholding requirements imposed thereby. **GRANTOR IS QUALIFIED IN WEST VIRGINIA.**

4819-1095-1241 v2
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016685

BOOK 921 PAGE 210

## DECLARATION OF CONSIDERATION OR VALUE

In accordance with and pursuant to the provisions of Chapter 11, Article 22, of the West Virginia Code, the undersigned hereby declare(s) that the total consideration paid for the property transferred by the document to which this declaration is appended is $ *29,000,000.00*.

[Intentionally Left Blank ]

[Signatures on Follow Pages]

4819-1095-1241 v2
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016686

BOOK 921 PAGE 211

IN WITNESS WHEREOF, the said Grantor hereto has caused its name to be hereunto subscribed by authority duly given.

**ALECTO HEALTHCARE SERVICES WHEELING LLC**, a Delaware limited liability company

By:   Alecto Healthcare Services Ohio Valley LLC,
      a Delaware limited liability company

Its:   Sole Member

By:   Alecto Healthcare Services, LLC,
      a Delaware limited liability company

Its:   Sole Member

By:   _____
      Roger Krissman
Its:   Chief Financial Officer

**See attached California notary acknowledgment**

Prepared by: (insert preparer's name and address)
Lynn Reynolds, Esq.
Baker, Donelson, Bearman, Caldwell
& Berkowitz, PC
Suite 1400, Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama 35203

4819-1095-1241 v2
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016687

BOOK 921 PAGE 212

## CALIFORNIA ACKNOWLEDGEMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ Orange _____

On _May 30, 2017_ before me, _Mailor Lee – "Notary Public"_ personally
  (Date)

appeared _____ Roger Allen Krissman _____
  *Name of Principal(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature

MAILOR LEE
Notary Public – California
Orange County
Commission # 2154263
My Comm. Expires May 22, 2020

(Notary Public Seal)

---

## ADDITIONAL INFORMATION

### Description of Attached Document

Title or Type of Document: _Deed_

Number of Pages: _5 pages , Single-Sided_

### Type of Identification

☑ Satisfactory Evidence – Identification Card

☐ One Credible Witness acknowledging the identity of the principal

☐ Two Credible Witnesses acknowledging the identity of the principal

**EXHIBIT 1**

DEFENDANTS_016688

BOOK  921 PAGE 213

**Exhibit A**

4819-1095-1241 v2
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016689

**Exhibit A**

BOOK  9 2 1 PAGE  214

## THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2000 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE MAIN CAMPUS OF OHIO VALLEY MEDICAL CENTER

### TRACT I

The following parcels of land situate between Eoff Street and Chapline Street and 20th and 22nd Streets, City of Wheeling, Center District, Ohio County, West Virginia, and comprising all of Lots 193, 194, 195, 196, 197, 198, 199, 200, 203, 220, 222 and a part of Lots 223, 225, 227 (Parcel 2) and 230 (Parcel One) and also part of Eoff Street, 20th Street and Lanes 17 and 18 and D, as shown on the Plat of Eoff and Chapline Addition, said plat being recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138 and being more particularly bounded and described as follows:

**Parcel One:** Beginning at a point in the northerly line of the concrete side walk now standing in the southerly portion of 20th Street, said beginning point located from a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, the following three (3) bearings and distances: N. 26' 10' E. 624 and 62/100 feet, measured along said easterly line of Chapline Street, to a point located S. 26° 10' W. 4 and 68/100 feet from a cross cut in a concrete sidewalk; thence with the northerly line of first above mentioned concrete sidewalk, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 97 and 46/100 feet to said beginning point, said nail and ribbon being also located at the most westerly corner of Lot No. 193; thence from said beginning point and with said northerly line of a concrete sidewalk, the following three (3) bearings and distances: S. 46° 47' E. 16 and 24/100 feet to a point; thence S. 45 ° 42' E. 55 and 55/100 feet to a point; thence S. 35° 44' E. 20 and 62/100 feet to a point in the center tine of Eoff Street; thence with said center line of Eoff Street, S. 26° 10' W. 95 and 3/10 feet to a point; thence N. 63° 50' W. 33 feet to a point in the westerly line of Eoff Street, at its intersection with the center line of Lane 17; thence with said center line of Lane 17, N. 46° 48' W. 63 and 96/100 feet to a point in the southerly, extension of the division line between Lots 227 and 230; thence with said extension and then said division line, N. 26° 10' E. 56 and 62/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, the following three (3) bearings and distances: N. 63° 50' W. 5 feet to a point; thence N. 47 ° 12' E. 13 and 92/100 feet to a point; thence N. 37° 20' E. 29 and 46/100 feet to the place of beginning, containing Ten Thousand Forty and Forty-seven Hundredths (10,040 and 47/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 427.**

**Parcel Two:** Beginning at a nail and ribbon at the intersection of the northerly line of 22nd Street, with the easterly line of Chapline Street, said beginning nail and ribbon being also the most westerly corner of said Lot No. 193; thence from said beginning nail and ribbon and with said easterly line of Chapline Street, N. 26° 10' E. 624 and 62/100 feet to a point; said point

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016690

being located S. 26° 10' W. 4 and 68/100 feet from a crosscut in a concrete sidewalk; thence leaving the said easterly line of Chapline Street, and with the northerly fine of the concrete sidewalk, now standing in the southerly portion of 20th Street, the following two (2) bearings and distances: S. 46° 34' E. 123 and 48/100 feet to a point; thence S. 46° 47' E. 15 and 5/100 feet to a point in the northerly extension of the center line of Lane D; thence with said northerly extension and then said center line, S. 26° 10' W. 200 and 16/100 feet to a point in the westerly extension of the center line of Lot No. 225; thence with said westerly extension and then said center line of Lot No. 225, S. 64° 00' E. 132 and 33/100 feet to a point in the westerly line of Eoff Street; thence with said westerly line, S. 26° 10' W. 33 feet to a point in the division line between Lots 224 and 225; thence with said last mentioned division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 129 and 16/100 feet to a point; thence with other property now owned by Ohio Valley General Hospital Association, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 88 and 84/100 feet to a point in the division line between Lots 221 and 222; thence with said division line and its westerly extension, N. 64° 00' W. 132 and 33/100 feet to a point in said center line of Lane D; thence with same, S. 26° 10' W. 66 feet to a point in the westerly extension of the division line between Lots 220 and 221; thence with said westerly extension and then said division line of Lots 220 and 221, S. 64° 00' E. 132 and 33/100 feet to a point in said westerly line of Eoff Street; thence with same, S. 26° 10' W. 66 feet to a cross cut in a concrete sidewalk in the northerly line of 22nd Street, said cross being also the most southerly corner of said Lot 220; thence leaving Eoff Street and with said northerly line of 22nd Street, N. 64° 00' W. 264 and 65/100 feet to the place of beginning, containing One Hundred Four Thousand Seven Hundred Fifty-two and Sixty-nine Hundredths (104,752 and 69/100) square feet, more or less.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 Parcel 214.**

### TRACT II

**Parcel Three:**  Lot Numbered Two Hundred and Twenty-seven (227) on the South side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, as the same is shown and designated on the Plat of Chapline and Eoff's Addition to City.

And the following described piece of parcel of land lying and being situated on the south side of 20th Street (formerly Webster Street) in the 5th Ward of the City of Wheeling, Ohio County, West Virginia, and in the Chapline and Eoff's Addition to said City, described as follows, to-wit:

Commencing at a point where the west line of Lot numbered Two Hundred and Thirty (230) inter-sects the South line of 20th Street (formerly Webster Street); thence running east four and one-fourth (4-¼) feet on the south line of 20th Street (formerly Webster Street); thence south twenty-one (21) feet in a straight line until it intersects the west boundary line of Lot numbered Two Hundred and Thirty (230), which said westerly boundary line of said Lot Numbered Two Hundred and Thirty (230) is a diagonal line. Excepting, however, so much of the above described property as was conveyed by Michael Kirchner and Katherine Kirchner, his wife, to

2

4849-7163-9625 v1
1038442-430002 06/02/2017

EXHIBIT 1

DEFENDANTS_016691

BOOK 921 PAGE 216

Conrad Caldebaugh, by deed bearing date December 4, 1907, and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 126, at page 197.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W59 Parcel 426.**

**Parcel Four:** All the northern one-half of Lot No. 225 and the entire fractional Lot No. 226 in Chapline and Eoff's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which addition is recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138.

**Parcel Five:** The North one-half of Lot Numbered Two Hundred and Twenty-four (224), situate on the West side of Eoff Street, between Twentieth (formerly Webster) and Twenty-second (formerly Third) Streets, in that part of the said City of Wheeling, called Centre Wheeling.

**Parcel Six:** All that certain property situate in the City of Wheeling, Ohio County, West Virginia, being the south one-half of Lot numbered Two Hundred and twenty-four (224) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia, a plat of which is re-corded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 15, page 138, and more particularly described as follows:

Beginning at a point at the south-east corner of said Lot numbered Two hundred and twenty-four (224), at the junction of Alley No. 18 and Eoff Street; thence in a westerly direction and along the northern boundary line of said Alley No. 18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the eastern boundary line of Alley 'D'; thence in a northerly direction and along the eastern boundary line of said Alley 'D' a distance of Thirty-three (33) feet, more or less; thence in an easterly direction and parallel with the northern boundary line of Alley No. 18, a distance of One Hundred and Twenty-two (122) feet, more or less, to the western boundary line of said Eoff Street; thence in a southerly direction and along the western boundary line of said Eoff Street; a distance of Thirty-three (33) feet, more or less, to the point of beginning, being bounded on the north by the property formerly owned by A. C. Partridge; on the east by Eoff Street; on the south by said Alley No. 18; and on the west by Alley 'D' in the rear of said lot.

**Parcel Seven:** Beginning at a point at the intersection of the westerly line of Eoff Street with the southerly line of Lane 18, said intersecting point being the northeasterly corner of said Lot 223; thence from said beginning point and with the said westerly line of Eoff Street, S. 17 ° 00' W. 25 and 83/100 feet to a point in said westerly line of Eoff Street at its intersection with the easterly extension of the center line of the division wall between dwellings now known as 2111 and 2113 Eoff Street; thence leaving said Eoff Street and with said easterly extension and then with said center line N. 73° 47' W. 33 and 84/100 feet to a point; thence N. 76° 29' W. 14 feet to a point; thence N. 73' 47' W. 38 and 16/100 feet to a point in the easterly line of a walkway, four (4) feet wide, hereinafter mentioned; thence with said easterly line, N. 17° 59' E. 27 and 41/100 W. feet to a point in the said southerly line of Lane 18; thence with the said southerly line of Lane 18, S. 73° 10 ' E. 85 and 48/100 feet to the place of beginning.

3

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016692

BOOK 921 PAGE 217

Together with a right-of-way, in common with others, as follows: A right-of-way or walkway, four (4) feet wide, extending from the southerly line of Lane 18 in a southwesterly direction to the southerly line of Parcel Seven herein described, the easterly line of said four (4) foot walkway being the line hereinbefore described as 'N. 17° 59' E. 27 and 41/100 feet', said walkway is to be used in common by the owners of dwelling houses Numbered 2111 and 2113 Eoff Street and 2108, 2110 and 2112 Lane D, their heirs and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling house Number 2111 Eoff Street that are constructed on other lands now or formerly owned by the parties of the first part hereto, their heirs and assigns, and there is excepted and reserved from the parcel of land herein described, the right for the owner of dwelling house Number 2113 Eoff Street, 2108, 2110 and 2112 Lane D to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to dwelling house Number 2113 Eoff Street and 2108, 2110 and 2112 Lane D that are now constructed on the parcel of land herein described.

**Parcel Eight:** Beginning at a point in the easterly line of Alley D at the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D, said point being located S. 17° 00' W. 16.17 feet from the northwesterly corner of Lot 223 which is at the intersection of the easterly line of Alley D with the southerly line of Alley 18; thence from said beginning point, with the center line of the partition wall between the frame dwelling houses now known as 2108 and 2110 Alley D and its southeasterly extension, S. 73° 20' E. 36.26 feet to a point in the easterly line of a 4 foot walkway hereinafter mentioned; thence leaving the line of the said partition wall and with the easterly line of said 4 foot walkway, S. 17° 59' W. 13.83 feet to a stake; thence crossing the southerly end of said walkway, N. 76° 12' W. (at 4 feet passing the westerly side of said walkway) 5.28 feet to the center line of the partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence with the center line of the partition wall between dwelling houses 2110 and 2112 Alley D., N. 72° 01' W. 30.60 feet to the easterly line of Alley D; thence leaving last mentioned partition wall and with the easterly line of Alley D, N. 17° 00' E. 13.37 feet to the place of beginning.

**Parcel Nine:** Beginning at the intersection of the easterly line of Alley D with the southerly line of Alley 18, said intersection being the northwesterly corner of said Lot 223; thence from said beginning point, with the southerly line of Alley 18, S. 70° 10' E. 36.52 feet to a stake in easterly line of a walkway, 4 feet wide, hereinafter mentioned; thence leaving Alley 18 and with the easterly line of said 4 foot walkway, S. 17° 59' W. 16.08 feet to a point in the southeasterly extension of the center line of the partition wall between dwelling houses now known as 2108 and 2110 Alley D; thence leaving said walkway and with said southeasterly extension and then with the center of the said partition wall between dwelling houses 2108 and 2110 Alley D, N. 73° 20' W. 36.26 feet to a point in the easterly line of Alley D; thence leaving said partition wall and with the easterly line of Alley D, N. 17° 00' E. 16.17 feet to the place of beginning.

**Parcel Ten:** Beginning at a point in the westerly line of Eoff Street at its intersection with the southeasterly extension of the south face of the south brick wall of brick dwelling house now known as 2111 Eoff Street, said beginning point being also located S. 17° 00' W. 25.83 feet

4

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016693

BOOK   9 2 1 PAGE ⌣ 2 1 8

measured along the westerly line of Eoff Street from its intersection with the southerly line of Alley 18 at the northeasterly corner of Lot 223; thence from said beginning point, with the westerly line of Eoff Street, S. 17 ° 00' W. 17.33 feet to the southeasterly corner of the parcel of land that was conveyed by William Stoetzer; Executor, to Cora Craft, Earl Stoetzer and William Stoetzer, by deed dated October 24, 1934, and recorded in said County Clerk's office in Deed Book 236, at page 48; thence leaving Eoff Street and with the southerly fine of the said Craft and Stoetzer parcel, N. 73° 10' W. 122.00 feet to a point in the easterly line of Alley D; thence with the easterly line of Alley D, N. 17° 00' E. 13.62 feet to the center line of the frame partition wall between dwelling houses now known as 2110 and 2112 Alley D; thence leaving Alley D with the center line of the frame partition wall between dwelling houses 2110 and 2112 Alley D, S. 72° 01' E. 30.60 feet to a tack on the easterly side of the east wall of said houses 2110 and 2112 Alley D; thence leaving said partition wall and crossing the southerly end of a walkway, 4 feet wide, hereinafter mentioned, S. 76° 12' E. 5.28 feet to a stake in the easterly line of said walkway; thence with the easterly line of said walkway N. 17° 59' E. 2.50 feet to a stake in the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street; thence leaving the easterly line of said walkway and with the northwesterly extension of the center line of the space between the rear part of houses 2111 and 2113 Eoff Street and then with the center line of said space S. 73° 47' E. 38.16 feet to a stake; thence S. 76° 29' E. 14.00 feet to the southwesterly corner of the brick wall along the southerly side of said dwelling house 2111 Eoff Street; thence with the south face of the south brick wall of said building 2111 Eoff Street and its southeasterly extension S. 73° 47 ' E. 33.84 feet to the place of beginning.

Together with the right to use, renew and repair any supports or bearings for dwelling house 2113 Eoff Street that are now attached or built in the brick wall on the south side of dwelling house 2111 Eoff Street.

Together with the right, in common with others, to use a walkway, 4 feet wide, extending from the southerly line of Alley 18, in a southwesterly direction, to the northerly line of the parcel hereinbefore described, the easterly line of said walkway being described as follows:

Beginning at a stake in the southerly line of Alley 18, said stake being located S. 73° 10' E. 36.52 feet, measured along the southerly line of Alley 18, from its intersection with the easterly line of Alley D which is the northwesterly corner of Lot 223; thence from said beginning stake S. 17° 59' W. 27.41 feet to a stake at a corner to the parcel of land hereinbefore described; thence S. 17° 59' W. 2.50 feet to a stake at another corner to the parcel of land hereinbefore described.  Said walkway is to be used in common between the owners of dwelling houses 2111 and 2113 Eoff Street and 2108, 2110, and 2112 Alley D. their tenants, agents, heirs, executors, administrators and assigns.

Together with the right to use, renew, replace and maintain all water and gas pipes, sewers and any other service lines now connected to 2113 Eoff Street and 2112 Alley D that are now constructed on that part of the said Craft and Stoetzer property, lying between the parcel of land hereinbefore described and the southerly line of Alley 18 and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling houses 2108 and 2110 Alley D and 2111 Eoff Street to use, renew, replace and maintain all water and gas

5

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016694

BOOK 9 2 1 PAGE 219

pipes, sewers and any other service lines now connected to dwelling houses 2108 and 2110 Alley D and 2111 Eoff Street that are now constructed on the parcel of land hereinbefore described.

Together with the right to use, repair and renew that part of the cornices and eaves now attached to house 2113 Eoff Street that extend over the northerly line of the parcel of land hereinbefore described, as Parcel Ten.

There is excepted and reserved from the parcel of land hereinbefore described as Parcel Ten the right for the owner of dwelling house 2111 Eoff Street to use, repair and renew that part of the cornices and eaves attached to building 2111 Eoff Street that extend over the parcel of land hereinbefore described as Parcel Ten.

Together with the right to use the space between the rear part of dwelling houses 2111 and 2113 Eoff Street for the purpose of repairing and painting said house 2113 Eoff Street and there is excepted and reserved from the parcel of land hereinbefore described the right for the owner of dwelling house 2111 Eoff Street to use said space between the rear part of dwelling houses 2111 and 2113 Eoff Street to repair and paint said house 2111 Eoff Street."

**Parcel Eleven:** Lot numbered two hundred twenty-one (221) and the buildings thereon, in Chapline and Eoff's Addition to the City of Wheeling, in Ohio County, West Virginia.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W58 Parcel 230.**

## TRACT III

**Parcel Twelve:** A certain parcel of land situated in Centre District, in the City of Wheeling, Ohio County, West Virginia, being Lot No. 283 as shown on the plat of the William Chapline Addition to the City of Wheeling, a copy of which Plat is unofficially recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 297, at page 385.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 456.**

**Parcel Thirteen:** The north half of all that certain lot or parcel of land situated in that part of the City of Wheeling laid out by William Chapline as an addition to South Wheeling, which lot is designated on the plat of said Addition as Lot No. 282."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 457.**

**Parcel Fourteen:** A certain piece or parcel of land situate in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and being the South half of Lot Numbered Two

6

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016695

921 @ 220

BOOK 921 PAGE 220

Hundred and Eighty Two (282) in William Chapline's Addition to said City of Wheeling, said property is situate on the east side of Jacob Street between 20th and 22nd Streets."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 458.**

**Parcel Fifteen:** The north half of Lot Numbered Two Hundred and Eighty-one (281), in William Chapline's Addition, which half lot lies at the southeast corner of Jacob Street and Alley Eighteen and is bounded as follows:

"Commencing at the said corner, same being the northwest corner of said lot, and running thence with the south line of said alley in an easterly direction with the north line of said lot, one hundred feet to the northeast corner of said lot; thence running in a southerly direction with the east line of said lot twenty-six feet and four and one-half inches to the middle of said east line of said lot; thence running in a westerly direction parallel with the said north line of said lot one hundred feet to the middle of the west line of said lot on the east line of said Jacob Street and from thence running with the said east line of Jacob Street twenty-six feet and four and one-half inches in a northerly direction the place of beginning."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 459.**

**Parcel Sixteen:** The South half of Lot Numbered Two Hundred Eighty-one (281) situated in the Addition of South Wheeling now called Center Wheeling, laid off by William Chapline, said half of lot being twenty-six feet and four and one-half (26 ft. & 4-1/2 in.) in width, and one hundred (100) feet in depth."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59, Parcel 460.**

**Parcel Seventeen:** The north half of Lot No. 280 situate in the Addition to the City of Wheeling laid off by William Chapline, which said one-half (1/2) lot contains twenty-six (26) feet and four and one-half (4-1/2) inches in width, and one hundred (100) feet in depth."

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59 Parcel 461.**

**Parcel Eighteen:** A certain parcel of land situated on the east side of Jacob Street (formerly called German Street) between Twenty-first and Twenty-second Streets, in Centre District, Ohio County, West Virginia, and being the west half of the south half (that is to say, the southwest quarter) of Lot No. 280, as shown on the plat of the William Chapline Addition to the

7

4849-7163-9625 v1
1038442-430002 06/02/2017

EXHIBIT 1

DEFENDANTS_016696

BOOK  921 PAGE 221

City of Wheeling, a copy of which plat has been unofficially recorded in Deed Book No. 287, at page 385."

There is excepted and reserved from Tract III all of that property previously conveyed from the Ohio County Building Commission to the West Virginia Department of Highways by deed dated January 31, 1981, and recorded in said Clerk's office in Deed Book 611, at page 250.

**In February 2017, the parcel identification for this tract was adjusted to reflect the parcel numbering and description prior to 1998, and it is currently assessed as Tax Map W59 Parcel 462.**

## TRACT IV

**Parcel Nineteen:** A parcel of land situate in the City of Wheeling, Ohio County, West Virginia, being the west one-fourth of Lot No. 262 in the addition to the City of Wheeling laid off by William Chapline, more particularly bounded and described as follows:

"Beginning at the intersection of the north line of Twenty-Second Street and the east line of Alley E, thence eastwardly binding on the north line of Twenty-second Street 25 feet to the southwest corner of the John Koehler property; thence northwardly binding on the west line of the Koehler property 52 feet and 9 inches to the south line of the Mertz property; thence westwardly binding on the last-named south line and parallel to Twenty-second Street 25 feet to the east line of Alley E., thence southwardly binding on the last-named east line 52 feet and 9 inches to the place of beginning."

**Parcel Twenty:** The East one-half (1/2) of the West half of Lot Numbered Two Hundred and Sixty-two (262) situated in the addition to the City of Wheeling laid off by William Chapline in that part of the City of Wheeling called Centre Wheeling.

"This conveyance is subject to the privileges and right of way granted by Wendell Neidert and wife to John Koehler to run a sewer along the north line of the west half of said Lot Two Hundred and sixty-two (262) westwardly to Alley E.

"There is also excepted and reserved from this conveyance an easement and right of way over and across so much of the East half of the West half of Lot numbered Two Hundred and sixty-two (262) in William Chapline Addition as is necessary for the owner of the building known as Sixty-seven (67) Twenty-second (22) Street to maintain and repair his property."

**Parcel Twenty-One:** The following described westerly part of the east half of Lot Numbered Two Hundred Sixty-two (262) situated in the Addition to said City laid out by William Chapline, beginning at the southwest corner of said half lot which corner is the northeast corner of the property owned by John Koehler; thence eastwardly binding on the north line of 22nd Street, nineteen (19) feet to a point; thence northwardly parallel with the west line of said half lot seventeen (17) feet to a point; thence eastwardly parallel with the north line of 22nd Street, two (2) feet to a point; thence northwardly parallel with the west line of said half lot, seventeen (17) feet to a point; thence westwardly parallel with the north line of said 22nd Street,

8

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016697

BOOK 9 2 1 PAGE 2 2 2

one (1) foot to a point; thence northwardly parallel with the west line of said half lot eighteen (18) feet and nine (9) inches to the north line of said half lot; thence westwardly binding on said last-named north line, twenty (20) feet to the northwest corner of said half lot; thence southwardly binding on the east line of the said John Koehler property, and west line of said half lot fifty-two (52) feet and nine (9) inches to the place of beginning.

"Together with an easement and right-of-way over and across so much of the east half of the west half of Lot Numbered Two Hundred Sixty-two (262), William Chapline Addition, as necessary for the maintenance and repair of the structure upon the hereinbefore described property and known as 67 Twenty-second (22nd) Street."

**Parcel Twenty-Two:** The following described part of the east half of Lot numbered Two Hundred Sixty Two (262) situated in the addition to the City of Wheeling, aforesaid, laid off by William Chapline, beginning in the southeast corner of said half lot, which said corner is the intersection of the north line of 22nd Street and the west line of Jacob Street in said City of Wheeling, thence westwardly along the north line of said 22nd Street, Thirty-one (31) feet to the southeast corner of the part of said half lot conveyed to Mary J. Koehler by deed dated April 28th, 1904, as of record in the office of the Clerk of the County Court in said Ohio County, in Deed Book No. 115, Page 114, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence eastwardly parallel with 22nd Street two (2) feet, thence northwardly binding on the east line of said Koehler property Seventeen (17) feet, thence westwardly parallel with 22nd Street, One (1) foot, thence northwardly binding in the last named east line Eighteen (18) feet and Nine (9) inches to the north line of said half lot, thence eastwardly binding on last named north line Thirty (30) feet to the northeast corner of said half lot, thence southwardly binding on the east line of said half lot Fifty-two (52) feet and Nine (9) inches to the place of beginning."

**Parcel Twenty-Three:** Lot numbered Two Hundred and Sixty-three (263) on the West side of Jacob Street, just north of Twenty-second Street, in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, excepting, however, that portion or said Lot Numbered Two Hundred and Sixty-three (263), to-wit:

"The northerly twenty-five (25) feet thereof, which was heretofore conveyed to Charles J. Ochsenkuhn by deed of Gertrude Mertz, et al, dated January 11, 1910 and now of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 132, at page 459, and deed of Frank C. Nolte, Guardian of Ellen Schad and Robert Schad, dated January 11, 1910 and now of record in said Clerk's office in Deed Book 132, at page 460."

**Parcel Twenty-Four:** Commencing at the point of intersection of the northerly boundary line of said lot No. 263 with the westerly side of Jacob Street; thence in a southerly direction with the westerly side of Jacob Street a distance of twenty-five (25) feet to a point; thence in a westerly direction and parallel with the northerly boundary line of said Lot No. 263 to the easterly side of the alley in the rear of said lot; thence in a northerly direction and with the easterly side of said alley a distance of twenty-five (25) feet to the northwesterly corner of said Lot No. 263; thence eastwardly with the northerly boundary line of said Lot No. 263 to the place of beginning.

9

4849-7163-9625 v1
1038442-430002 06/02/2017

EXHIBIT 1

DEFENDANTS_016698

BOOK 921 PAGE 223

**Parcel Twenty-Five**: A certain parcel of land known as the south one-half of Lot Numbered Two Hundred Sixty-four (264) in Chapline's Addition to the City of Wheeling, in Center District, Ohio County, West Virginia.

**Parcel Twenty-Six**: Being twenty-six (26) feet off the north part of Lot Numbered Two Hundred Sixty-five (265) fronting on the west side of Jacob (formerly German) Street, bounded as follows: Beginning at the northeast corner of said lot; thence south twenty-six (26) feet; thence west to the alley in the rear of said lot; thence north with the line of said alley twenty-six (26) feet to the north line of said lot; thence east to the place of beginning.

**Parcel Twenty-Seven**: All the south half of Lot No. 265, situated in that part of the said City of Wheeling laid out by William Chapline and now called Center Wheeling.

**Parcel Twenty-Eight**: All that property situated in the City of Wheeling, Ohio County, West Virginia, and known as the north one-half of Lot No. 264 in Chapline's Addition, which half-lot is 26 feet 4-1/2 inches wide and 100 feet deep.

**Parcel Twenty-Nine**: The south twenty-three (23) feet of lot numbered two hundred and sixty-six (266) situate on the west side of Jacob Street, and south of Alley numbered eighteen (18) in that part of the City of Wheeling, West Virginia, called Centre Wheeling, and bounded and described as follows: beginning at the southeast corner of said lot, thence in a northerly direction with the west line of Jacob Street twenty-three (23) feet; thence in a westerly direction in a line parallel with the south line of said lot to the west line of said lot; thence in a southerly direction with the west line of said lot twenty-three (23) feet to the southwest corner of said lot; thence in an easterly direction with the south line of said lot to the place of beginning.

**Parcel Thirty**: All that piece or parcel of real estate situated in Center District, Ohio County, West Virginia, and known as Lot No. 266, situated on the southwest corner of Jacob Street and Alley 18, in that part of said City of Wheeling called 'South Wheeling', excepting therefrom, however, the southerly 23 feet of said lot.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.1.**

**Parcel Thirty-One**: A certain parcel of land situated in the City of Wheeling, Ohio County, West Virginia, being a part of lot number two hundred and fifty (250) in Chapline & Eoff's Addition to said city, the premises hereby conveyed being bounded and described as follows, to-wit: Beginning at the southeast corner of Eoff Street and Alley Eighteen, being the northwest corner of said lot, thence eastwardly with the southern side of said alley sixty-five (65) feet; thence southwardly on a line parallel with Eoff Street twenty-one feet and two inches (21 ft. 2 ins.); thence westwardly on a line parallel with said alley sixty-five (65) feet to said Eoff Street; thence northwardly with the eastern line of Eoff Street twenty-one feet and two inches (21 ft. 2 in.) to the place of beginning; with the dwelling house situated thereon, known as No. 2106 Eoff Street.

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016699

BOOK 921 PAGE 224

**Parcel Thirty-Two:**  Being situate on the east side of Eoff Street, between Twenty-first and Twenty-second Streets, in said City, being part of lot numbered Two Hundred and Fifty (250) in Eoff and Chapline's Addition to said City of Wheeling, bounded and described as follows: Beginning in the east line of said Eoff Street, at a point forty-four (44) feet southwardly from the south line of Alley Eighteen (18) measuring along the east line of said Eoff Street, thence eastwardly sixty-five (65) feet, thence northwardly, parallel with the east line of said Eoff Street, twenty-two feet and ten inches (22 ft. 10 ins.) thence westwardly parallel with the south line of said Alley Eighteen (18), sixty-five (65) feet to the east line of said Eoff Street, thence south and with the said east line twenty-two feet and ten inches (22 ft. 10 ins.) to the place of beginning.

**Parcel Thirty-Three:**  Commencing at the southwest corner of Alley E and Alley 18, thence south on the west side of Alley E, sixty-six (66) feet; thence west thirty (30) feet; thence north on a line parallel with Alley E, sixty-six (66) feet to Alley 18; thence east along the south side of Alley 18, thirty (30) feet to the place of beginning.

**Parcel Thirty-Four:**  Part of Lot No. 250, fronting on the east side of Eoff Street, between Twentieth and Twenty-second Streets, in the City of Wheeling, Ohio County, West Virginia, in Chapline and Eoff's Addition to said city, that is to say: Beginning in the east line of said Eoff Street at a point forty-four (44) feet southwardly from the south line of Alley 18 measuring along said east line, thence eastwardly parallel with the south line of said alley, sixty-five (65) feet, thence southwardly parallel with the east line of said Eoff Street twenty-two (22) feet, thence westwardly parallel with the south line of said alley sixty-five (65) feet to the east line of Eoff Street, thence northwardly binding on last named east line twenty-two (22) feet to the place of beginning.

**Parcel Thirty-Five:** The northern one-half part of lot numbered two hundred and forty-nine (249) situated on the east side of Eoff Street, in the Fifth Ward of the City of Wheeling, County of Ohio, State of West Virginia.

**Parcel Thirty-Six:**  Commencing at the intersection of the division line between lots 248 and 249 with the easterly line of Eoff Street; thence with the easterly line of Eoff Street, north 17° 00' east, 33 feet; thence leaving Eoff Street, south 73° 12' east, 122 feet to a stake in the westerly line of Alley E; thence with the same, south 17° 00' West, 33 and 5/10 feet to a stake; thence with the division line between said lots 248 and 249, north 72° 58' west, 122 feet to the place of beginning.

**Parcel Thirty-Seven:**  The north half of that parcel or lot of land lying and being situated west of a line drawn through Lot No. 247 parallel to Eoff Street in the Chapline and Eoff Addition to the City of Wheeling, which line divides said Lot into two (2) equal parts. Otherwise stated, the property hereby conveyed is the northwesterly quarter of said Lot No. 247.

**Parcel Thirty-Eight:**  A part of Lot Numbered Two Hundred and Forty-seven (247) in Chapline and Eoff's Addition to the said City of Wheeling, situated at the northeast corner of Eoff and Twenty-second Streets, fronting thirty-three and six one-hundredths (33-6/100) feet on

11

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016700

Eoff Street and extending back with equal width sixty-six and four-tenths (66 4/10) feet to the West line of F. Schlechien property.

Parcel Thirty-Nine:  Beginning at a stake in the northerly side of 22nd Street, said stake being located S. 73° 02' E. 66 and 89/100 feet from the intersection of the northerly line of said 22nd Street with the easterly line of Eoff Street; thence from said beginning stake and with a line that is parallel to and 1 and 1/10 feet distant, measured at right angles in a westerly direction from the stone foundation of dwelling house now known as 57-22nd Street, N. 16° 50' E. 66 and 17/100 feet to a mark on a brick wall in the division line between said Lot 247 and Lot 248; thence leaving said parallel line and with said division line, S. 73° 02' E. 24 and 66/100 feet to a point; thence leaving said division line, S. 17° 01' W. (passing on the westerly face of the northwesterly corner strip of dwelling house now known as 59-22nd Street) 66 and 17/100 feet to a tack in the southwesterly corner of the southwesterly corner strip of said dwelling house 59-22nd Street in the northerly side of said 22nd Street; thence leaving said corner strip and with the northerly side of said 22nd Street, N. 73° 02' W. 24 and 45/100 feet to the place of beginning.

Parcel Forty:  All the following described land situated in the City of Wheeling and in Center District, Ohio County, West Virginia, that is to say, the east half of the east half of Lot No. 247 of the Chapline and Eoff Addition to the City of Wheeling, sometimes known as Center Wheeling, the part of said Lot No. 247 hereby conveyed being situated at the corner north of Twenty-second Street and west of Lane E in said City;

Parcel Forty-Two:  All of the following piece or parcel of ground, being about fifty (50) feet square, more or less, and bounded on the south by the northern boundary of North, or Webster Street, in South Wheeling, extended in a direct line on the north by a line parallel thereto and so drawn as to touch the northeast angle of a projecting ledge of stone on which the letter B was cut and to touch the same at the surface of the road on the west by the east line of division alley extended, and on the east by a line running from said northern line parallel with the line of division alley, so as to touch the east side of a small projection in the rock on which the letter P was cut; and thence following the direction of a seam in the rock which appears at the .side of said projection to the said southern line, but reserving all the coal in or under the said piece of land and the right to dig and take the same.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 432.**

## TRACT V

Parcel Forty-One: Seven lots of ground situated in the addition to South Wheeling laid out by William Chapline (which addition is now part of the said City of Wheeling) and described on a plat of the said addition by the numbers two hundred and fifty-one (251), two hundred and fifty-two (252), two hundred and fifty-three (253), two hundred and fifty-six (256), two hundred and sixty-seven (267), two hundred and sixty-eight (268) and two hundred and sixty-nine (269).

Parcel Forty-Three:   Beginning at a point where the easterly line of Eoff Street intersects the southerly line of 20th Street; thence with the said easterly line of Eoff Street

12

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016701

BOOK 921 PAGE 226

extended in a northeasterly direction N. 18° 00' E. 23.90 feet to a crows foot cut in the face of a sandstone ledge; thence leaving the said northeasterly extension of the easterly line of Eoff Street S. 61° 16' 50" E. 71.00 feet to a crows foot cut in the face of a sandstone ledge; thence S. 59° 51 ' 40" E. 53.41 feet to a point in the northeasterly extension of the easterly line of Alley E. (formerly Division Alley); thence with the said northeasterly extension of the easterly, line of Alley E., S. 18 ° 00' W. 35.60 feet to a point at the intersection of the said northeasterly extension of the easterly line of Alley E, with the southerly line of 20th Street; thence with the said southerly line of 20th Street N. 55° 30' W. 127.24 feet to the place of beginning.

**Parcel Forty-Four:** Beginning at the point where the easterly extension of the southerly line of Twentieth Street intersects the westerly line of Alley E (formerly called Division Alley), said beginning point being also located S. 55° 30' E. 127.24 feet from the intersection of the southerly line of Twentieth Street with the easterly line of Eoff Street; thence, with the westerly line of the said Alley E extended in a northerly direction N. 18° 00' E. 35.60 feet to a point in the southerly line of Crescent Street; thence with the said southerly line of Crescent Street S. 59 ° 31 40" E. 115.16 feet to the westerly line of a tract of land containing 42 acres, 2 rods and 3 poles that was conveyed to the Whitaker-Glessner Co. by the Whitaker Iron Co. by deed dated January 21, 1904, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 115, page 293, thence with the said westerly line of said tract of land, S. 29° 12' W. 43.07 feet to a point in the above mentioned easterly extension of the southerly line of Twentieth Street; thence with the said easterly extension of the southerly line of Twentieth Street, N. 55° 30' W. 108.69 feet to the place of beginning; excepting therefrom, however, that tract of land that was conveyed by George Hardman and wife to Peter P. Beck by deed dated the 6th day of October, 1848, and recorded in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book No. 31, at page 425, said excepted parcel being described in said deed as 'about 50 feet square, more or less.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W59 Parcel 431.**

**Parcel Forty-Eight: EXCHANGE PARCEL - Parts of Parcels formerly designated as 79, 80 & 81**

BEGINNING at a point in the western revised non-controlled access right of way line, said point being in the northern existing right of way line of 22nd Street and 81 feet radially left of Relocated WV Route 2 Centerline Station 163+12, Project FF-2(004), Ohio County, West Virginia;

thence, southwesterly with said existing right of way line 49 feet, more or less, to a point in the eastern existing right of way line of Jacob Street, said point being 118 feet radially left of Centerline Station 162+79;

thence, northeasterly with said existing right of way line 122 feet, more or less, to a point in the division line between The Ohio County Building Commission, and the West Virginia Department of Highways, said point being 131 feet left of and at a right angle to Centerline Station 164+01;

13

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016702

BOOK 921 PAGE 227

thence, southeasterly with said division line 46 feet, more or less, to a point in the western revised non-controlled access right of way line, said point being 84 feet left of and at a right angle to Centerline Station 164+05;

thence, southwesterly in a reverse centerline direction, with said revised non-controlled access right of way line 95 feet, more or less, to the place of beginning and containing 4,618 square feet, more or less.

Said tracts and parcels comprise the main campus of Ohio Valley Medical Center at 2000 Eoff Street, Wheeling, West Virginia, and are part of the property conveyed to Ohio Valley Medical Center, Inc., a West Virginia corporation, by the Ohio County Building Commission by deed dated the 17th day of December, 1985 and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia in Deed Book 628, at page 766.

**Said tracts and parcels contained in Tracts I through Tracts V, are identified by the Ohio County Assessor's office as Tax Map W58 – Parcel Numbers 0214 and 0230; and Tax Map W59 – Parcel Numbers 0426, 0427, 0431, 0432; 0432.1; 456; 457; 458; 459; 460; 461 and 462.**

## TRACT VI

The following parcel of land situate on the southerly side of Twenty-second Street between Jacob Street and Lane E, City of Wheeling, Ritchie Webster Center District (formerly Center District), Ohio County, West Virginia, and comprises the west part of the east one-half of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

BEGINNING at a point in the southerly line of Twenty-second Street at the division line between the east one-half and the west one-half of Lot 261, said beginning point being located S. 64° 00' E. 50 feet from the intersection of the southerly line of Twenty-second Street and the easterly line of Lane E; thence from said beginning point with said southerly line of Twenty-second Street, S. 64° 00' E. 32 and 52/100 feet to a point; thence leaving said southerly line and crossing through said Lot 261, S. 27° 06' W. 52 and 76/100 feet to a point in the division line between Lots 260 and 261; thence with said division line N. 64° 00' W. 31 and 71/100 feet to a point; thence leaving said division line between Lots 260 and 261 and with the division line between the east one-half and the west one-half of Lot 261, N. 26° 13' E. 52 and 75/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Thirty-eight One Thousandths (38/1000) of an acre more or less.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

14

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016703

BOOK  9 2 1 PAGE  2 2 8

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0002.**

## TRACT VII

The following parcel of land situate on the southerly side of Twenty-second Street and the westerly side of Jacob Street, City of Wheeling, Ritchie Webster Center District (formerly Center District), Ohio County, West Virginia, and comprising all of Lot 5 and the northerly two (2) feet nine (9) inches of Lot 4, as shown on the Map of Filan, Whyte & Gallagher Addition, said Map being recorded in the office of the Clerk of the County Commission of Ohio County, West Virginia in Deed book 84, at page 617, and the easterly part of Lot 261, William Chapline Addition, and being more particularly bounded and described as follows:

Beginning at a point in the southerly line of Twenty-second Street at its intersection with the westerly line of Jacob Street, said beginning point also being the most easterly corner of Lot 5, as shown on said map; thence from said beginning point with said westerly line of Jacob Street, S. 26° 25' W. (at 57 and 1/100 feet passing the division line between Lots 4 and 5) 59 and 76/100 feet to a point; thence leaving said Jacob Street and crossing through said Lot 4, N. 64° 00' W. (at 18 feet leaving Lot 4 and with the division line between Lots 260 and 261, William Chapline Addition) 35 and 4/10 feet to a point; thence leaving said division line and crossing through said Lot 261 N. 27° 06' E. 52 and 76/100 feet to a point in said southerly line of Jacob Street; thence with same the following two (2) bearings and distances: S. 64° 00' E. 16 and 77/100 feet to a point at the division line between said Lot 261 and said Lot 5; thence with said Lot 5, S. 85° 11' E. 19 and 36/100 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, Forty-three One Thousandths (43/1000) of an acre, more or less.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Beatrice E. Schneider, a widow, by Deed dated the 8th day of March, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 487.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W66 – Parcel No. 0003.**

**THE FOLLOWING PARCELS HAVE A COMBINED STREET ADDRESS OF 2211 EOFF STREET, WHEELING, WEST VIRGINIA, BEING THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER**

**(I)**

A certain piece or parcel of land situate on the Southwest corner of 22nd and Eoff Streets in the City of Wheeling, Ohio County, West Virginia, being the Northeast part of lot numbered Two

15

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016704

BOOK 921 PAGE 229

Hundred and Nineteen (219) in Chapline and Eoff's Addition to said City of Wheeling and the part hereby conveyed is bounded and described as follows:

Beginning at the Southwest corner of 22nd and Eoff Streets which is the Northeast corner of said lot numbered Two Hundred and Nineteen (219), thence in a Southerly direction with the Easterly line of said lot and the Westerly line of said Eoff Street Thirty (30) feet; thence in a Westerly direction in a line parallel with 22nd Street Sixty-one (61) feet; thence in a Northerly direction in a line parallel with Eoff Street Thirty (30) feet to the Southerly line of 22nd Street; thence in an Easterly direction with the Southerly line of 22nd Street, Sixty-one (61) feet to the place of beginning; together with all buildings and appurtenances situate thereon or belonging thereto.

This deed is made subject to a sewer right granted by Joseph N. Schwarzwalder to Conrad Bachman heirs by an agreement dated November 5, 1906, and recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 123, at page 212.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Emil F. Yeager and Margaret C. Yeager, his wife, by Deed dated the 5th day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 549, at page 311.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0247.**

### (II)

The South 36 feet of the East half of Lot No. 219 in Chapline and Eoff's Addition to the said City of Wheeling, Ohio County, West Virginia, and being also designated by Street address known as 2203 and 2205 Eoff Street, Wheeling, West Virginia.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 9th day of October, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 450.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0248.**

### (III)

The following described real estate situate on the west side of Eoff Street, between Twenty-second and Twenty-third Streets in the City of Wheeling, Ohio County, West Virginia, and more particularly described as the north half of Lot numbered Two hundred and Eighteen (218) on the recorded plat of Chapline and Eoff's Addition to the City of Wheeling.  Together with all the improvements thereon and the appurtenances thereunto belonging.

16

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016705

BOOK **921** PAGE **230**

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0249.**

### (IV)

The following described property situated in the City of Wheeling, Center District, Ohio County, West Virginia, that is to say:

The south half of Lot No. Two Hundred Eighteen (218) as shown and designated on the Plat of the Addition to the Town of Wheeling laid off by William Chapline, Jr., and John Eoff, which Plat is recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Bok No. 15, at page 138, said half lot fronting thirty-three (33) feet on the westerly side of Eoff street and extending back westwardly of even width one hundred twenty-two (122) feet to the alley in the rear.

Together with the buildings and improvements thereon and the hereditaments and appurtenances thereunto belonging.

Being Parcel III of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0250.**

### (V)

The north one-half (1/2) of lot numbered two hundred and seventeen (217) in Eoff and Chapline's Addition to the City of Wheeling, Ohio County, West Virginia: said half of lot fronts thirty-three (33) feet on the west side of Eoff Street in said City of Wheeling, and extends back with equal width to the alley in the rear.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Hester B. Byrum, widow, by Deed dated the 3rd day of April, 1973, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 570, at page 449.

17

4849-7163-9625 v1
1038442-430002.06/02/2017

**EXHIBIT 1**

DEFENDANTS_016706

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0251.**

### (VI)

The following described property situate in Ohio County, West Virginia, that is to say:

A certain piece or parcel of real estate situate in the city of Wheeling in Ohio County, West Virginia, being a part of the south half of Lot Number 217 in what is known as the Chapline & Eoff Addition to said city of Wheeling. The parcel hereby conveyed is bounded and described as follows, to-wit: Beginning at the north-east corner of the south half of said Lot Number 217 on the west side of Eoff Street; thence southwardly with the west line of Eoff Street sixteen & one-half (16-1/2) feet, more or less, to the center of the partition wall between the property hereby conveyed and the property adjoining on the south side thereof; thence westwardly through the center of said partition wall, and with the same course continued to the western line of said lot; thence northwardly with the west line of said lot sixteen and one-half (16-1/2) feet to the north-western corner of the south half of said lot; thence eastwardly with the northern line of said south half of said lot to the place of beginning.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, by Wilson Ruckman by Mary Geneva Ruckman, his attorney-in-fact, and Mary Geneva Ruckman, his wife, by Deed dated the 23rd day of March, 1981, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 601, at page 299.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0252.**

### (VII)

The following described parcel of real estate situate in the City of Wheeling, County of Ohio, Center District, West Virginia; said parcel of real estate being more particularly described as follows:

A certain piece or parcel of land fronting on the west side of Eoff Street, between Twenty-second and Twenty-third Streets, in the City of Wheeling, Ohio County, West Virginia, and being the South one-fourth (1/4) of lot numbered Two Hundred and Seventeen (217) in Chapline and Eoff's Addition to the said City of Wheeling; said parcel of ground is more particularly described as follows:

Beginning at the South East corner of said lot numbered Two Hundred and Seventeen (217), thence North along the West line of said Eoff Street, Sixteen and one-half (16-1/2) feet to a point opposite the center of the partition wall of the double house erected on the South half of said lot, thence in a straight line parallel with the Southern line of said lot, One Hundred and Twenty-two (122) feet to an Alley in the rear, thence in a southerly direction along the Eastern line of said Alley, Sixteen and one-half (16-1/2) feet to the Southern line of said lot, thence in an Easterly

18

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016707

BOOK   921 PAGE   232

direction along the South line of said lot numbered Two Hundred and Seventeen, One Hundred and Twenty-two (122) feet to the place of beginning.

Together with all and singular the improvements thereon, the hereditaments and appurtenances thereunto belonging.

Being Parcel I of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0253.**

### (VIII)

The South one-fourth of Lot numbered Two Hundred and Sixteen (216) in Chapline and Eoff's Addition to said City of Wheeling, West Virginia, together with the buildings and the appurtenances thereunto belonging, which said South one-fourth of said Lot Numbered Two Hundred and Sixteen (216) is more particularly bounded and described as follows:

Beginning at the northwest corner of Lane 19 (formerly Alley C) and Eoff Streets in said City of Wheeling; thence with the westerly line of Eoff Street and sixteen and one-half (16-1/2) feet, more or less, to the center of the division wall between the building hereby conveyed and the building immediately adjacent to the north of the same; thence with the center of the said division wall and along the division line between said buildings west one hundred and twenty-two (122) feet, more or less, to the eastern line of Lane D (formerly Alley H); thence southwardly with the eastern line of said last mentioned Lane D to the north line of said Lane 19, and thence with the said north line of said Lane 19, eastwardly to the place of beginning.

Being Parcel IV of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia non-profit corporation, by Ohio Valley Health Services and Education Corporation, a West Virginia non-profit corporation, by Deed dated the 22nd day of February, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 725, at page 53.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0384.**

### (IX)

The following described lot or parcel of land situate in Center District, Ohio County, West Virginia, that is to say:

19

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016708

BOOK  921 PAGE  233

That certain real estate known as the north one half of the south one half of the lot numbered Two Hundred and Sixteen (Lot No. 216) of the Addition to the City of Wheeling in the County of Ohio and State of West Virginia laid out by John Eoff and William Chapline, fronting about sixteen feet and six inches on the west side of Eoff Street in what was once the Fifth Ward of said City of Wheeling, and extending back westwardly of a uniform width with said front one hundred and twenty two feet, more or less, to the Alley on the west of said lot, together with all the buildings, improvements and appurtenances thereon or belonging thereto; excepting, however, from this conveyance the two rights of way heretofore granted to other parties across said property.

Being the same property conveyed to Ohio Valley Medical Center, Incorporated, a corporation, by Horace W. Shepherd and Freda M. Shepherd, his wife, by Deed dated the 25th day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 549, at page 518.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0385.**

(X)

Part of Lot numbered two hundred and sixteen (216) fronting on the West side of Eoff Street, between Twenty-second (22nd) and Twenty-third (23rd) Streets in the City of Wheeling, West Virginia, in Chapline & Eoff's addition to said city, bounded as follows, to-wit: Beginning at the Southeast corner of the part of said lot conveyed to Francis Henry Moran by James G. Whyte and wife, as of record in the office of the Clerk of the County court of Ohio County, West Virginia, in Deed Book numbered Fifty-three (53), page 314, and thence Westwardly, Southwardly and Westwardly, binding on said Moran line to the East line of Alley "D"; thence Southwardly with the East line of Alley "D" to the South line of the North half of said lot; thence Eastwardly along the South line of the North half of said lot to the West line of Eoff Street; thence Northwardly along the West line of Eoff Street to the place of beginning. Reserving from this conveyance for the benefit of any person who shall be or become the owner of the next tenement South or that on the North part of the South half of said lot, the joint or free use of a certain Alley or passageway from Eoff Street, now there and open, and so to remain unless altered by common consent. Also guaranteeing to party of second part the right of way or passage through an alley three feet in width, and now covered by a tenement, and which is to be kept as it now is so as to leave a passage-way three feet wide and not less than nine feet high from the grade or base of said Alley, this latter right of way or passage is to join the South line of the said North half of said lot, and is to extend from the East line of Alley to a point three feet Eastward of the present tenement on the rear of the said North half of said lot numbered 216.

Being the same property conveyed to Ohio Valley Medical Center Incorporated, a West Virginia corporation, by John F. Baker and Katherine T. Baker, his wife, by Deed dated the 23rd day of April, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 550, at page 131.

20

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016709

BOOK  921 PAGE  234

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0386.**

### (XI)

The following described real estate, situate in the City of Wheeling, Ohio County, West Virginia, that is to say:

The North one-fourth part of Lot Number Two Hundred and Sixteen (216), being about sixteen feet front on Eoff Street, and running back of equal width to the brick building formerly on the alley and thence with the East wall of said brick building South to the center of the division wall between the two tenements in it the said brick building, and then on a line with said division wall out to the alley, together with the buildings and appurtenances thereon.

Being Parcel II of the property conveyed to Ohio Valley Medical Center, Incorporated, a West Virginia corporation, by Bert Alexander Phemester, single, John Henry Phemester and Rose Marie Phemester, his wife, by Deed dated the 29th day of June, 1974, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 551, at page 158.

**Said parcel is identified by the Ohio County Assessor's office as Tax Map W65 – Parcel No. 0387.**

**VACANT LOTS - 2206, 2208, 2210 and 2212 Chapline Streets, Wheeling, West Virginia:**

**Parcel I:**  The most southerly thirty (30) feet of Lot Numbered 192, as same is shown on the Plat of Eoff and Chapline's Addition to the City of Wheeling, said Plat being of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138; said part of said lot fronting thirty (30) feet on the east side of Chapline Street in said City and extending eastwardly of an even width to an alley in the rear thereof, and upon which is situate the improved premises known as 2204 Chapline Street in said City; together with all and singular the improvements situate thereon and the appurtenances and hereditaments thereunto belonging. (Note: The "improved premises" referred to in the foregoing description no longer exists on this property. No building is located on this property.)

**Parcel I is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0211.**

**Parcel II:**   That certain parcel of land situate in the City of Wheeling, Ohio County, West Virginia, and bounded and described as follows:

Beginning in the West line of Lot Numbered One Hundred Ninety-One (191) in Chapline and Eoff's Addition to said City, said line being the East line of Chapline Street, at the northwest corner of the portion of said lot once owned by W. W. Irwin;  thence running eastwardly and

21

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**                                                                                                  DEFENDANTS_016710

BOOK 921 PAGE 235

parallel to the North line of said lot to the alley in the rear thereof called Alley "D"; thence running northwardly, with the West line of said alley thirty-four (34) feet, more or less, to the northeast corner of a brick washhouse; thence running westwardly and parallel to the South line of said lot to Chapline Street, and from thence, with the East line of Chapline Street to the place of beginning, together with the buildings thereon. (Note: No building is located on this property.)

**Parcel II is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0210.**

**Parcel III:** A certain lot or piece of ground situated in the Fifth Ward of the City of Wheeling, Ohio County, West Virginia, and more particularly described as the South One-half (½) of Lot Numbered One Hundred Ninety-one (No. 191) of "Chapline and Eoff's" Addition to the City of Wheeling. Fronting Thirty-three (33) feet on the East side of Chapline Street and running eastwardly of an even width One Hundred Twenty (120) feet to the alley in the rear of said lot. Together with all and singular the improvements thereon and the hereditaments and appurtenances thereunto belonging. Parcel III is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0209.

**Parcel IV:** The following described tract or parcel of real estate situate on Chapline Street, in the City of Wheeling, Ohio County, West Virginia, in the Addition to said City as laid out by John Eoff and William Chapline, to-wit:

Being the north 31 feet to lot 190 in Chapline and Eoff's Addition to said City; the said 31 feet hereby conveyed measured along the east side of Chapline Street southwardly from the north line of said lot 190 runs to a point which is 5 feet south of the south side of the south wall of the main brick building now on the property hereby conveyed together with the improvements on said part of lot 190 and the appurtenances thereto belonging.

**Parcel IV is identified by the Ohio County Assessor's office as Tax Map W 58 – Parcel No. 0208.**

**Parcels I – IV being part of the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia not-for-profit corporation, by Ohio Valley Medical Center, Incorporated, a West Virginia not-for-profit corporation, by Deed dated the 28th day of June, 2001, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 727, at page 686.**

**PARCEL V IS NO LONGER A VACANT LOT AND IS NOW PART OF THE ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER, LOCATED AT 2211 EOFF STREET (LOT LOCATED AT CORNER OF THE ALLEY AND 22nd STREET), and is described as follows:**

**Parcel V:** All of that certain piece or parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, being the westerly one-half (1/2) of Lot number Two Hundred Nineteen (219) as shown and defined on the plat of Eoff and Chapline Addition, a

22

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016711

BOOK 9 2 1 PAGE 236

copy of which plat is of record in the office of the Clerk of the County Court of Ohio County, West Virginia, in Deed Book 15, at page 138. Said westerly one-half (1/2) of Lot Two Hundred Nineteen (219) fronts sixty (60) feet more or less on Twenty-second (22) Street and extends back in a southerly direction and equal width with said frontage a distance of sixty-six (66) feet more or less to the southerly line of said lot, together with all the building and improvements situate thereon.

**Parcel V is identified by the Ohio County Assessor's office as Tax Map W58 – Parcel No. 0246.**

**Parcel V being the same property conveyed to Ohio Valley Health Services and Education Corporation, a West Virginia corporation, by Francis D. Brown, by Deed dated the 31st day of May, 1984, and recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 619, at page 418.**

**Formerly the River Health Enterprises, Inc. Property:**

### Parcel One

The following parcel of land situate on the westerly side of Chapline street, City of Wheeling, Ritchie Webster Center district (formerly Center district) Ohio County, West Virginia, and comprising all of Lots 169, 170, 171 and 172, as shown on the Map of Eoff and Chapline Addition, said map being recorded in the Office of the Clerk of the County Commission of Ohio County, West Virginia, in Deed Book 15, at page 138, and being more particularly bounded and described as follows:

Beginning at a point in the westerly line of Chapline Street, at its intersection with the southerly line of Lane 17, at the most easterly corner of Lot 172, as shown on said map; thence from said beginning point with said westerly line of Chapline Street, S. 16° 51' W. 234 and 01/100 feet to a point in the northerly line of Chapline Street and with said northerly line of Lane 18; thence leaving said westerly line of Chapline Street and with said northerly line of Lane 18, N. 73° 09' W. 121 and 62/100 feet to a point in the easterly line of Lane C; thence leaving said Lane 18 and with said easterly line of said Lane C, N. 16° 48' E. 271 and 57/100 feet to a point in the southerly line of said Lane 17; thence leaving said Lane C. and with said southerly line of Lane 17, S. 56° 02' E. 127 and 5/10 feet to the place of beginning, containing by survey made by Stegman & Schellhase, Inc., Civil Engineers and Surveyors, seven Hundred Six One Thousandths (706/1000) of an acre, more or less.

Being the same property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by Gus P. Sapon, et al., by Deed dated the 31st day of January, 1983, and recorded in said Clerk's office in Deed Book 611, at page 72. The said O. V. Enterprises, Inc. changed its

23

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016712

BOOK 921 PAGE 237

name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

### Parcel Two

The following parcel of land situate in the City of Wheeling, Center District, Ohio County, West Virginia, and comprising that part of Lane 18, situate between Lane C and Chapline Street, and being more particularly bounded and described as follows:

> Beginning at a point in the westerly line of Chapline Street at the northeasterly corner of Lot 168 as shown on the Plat of Chapline and Eoff Addition, a copy of said plat being recorded in the Office of the Clerk of the County Court of Ohio County, West Virginia in Deed Book 15, at page 138; thence from said beginning point and with the northerly line of said Lot 168 N. 73° 09' W. 121 and 6/10 feet to a point in the easterly line of Lane C; thence crossing Lane 18, N. 16° 48' E. 20 feet to a point at the intersection of said easterly line of Lane C with the southerly line of Lot 169 as shown on said plat; thence with said southerly line S. 73° 09' E. 121 and 62/100 feet to a point in the aforesaid westerly line of Chapline Street; thence crossing Lane 18, S. 16° 51' W. 20 feet to the place of beginning, containing two thousand four hundred thirty-two (2,432) square feet, more or less.

Being all of the property conveyed to O. V. Enterprises, Inc., a West Virginia Corporation, by the City of Wheeling, by Deed dated the 31st day of January, 1985, and recorded in said Clerk's Office in Deed Book 623, at page 731. The said O. V. Enterprises, Inc. changed its name to River Health Enterprises, Inc., by virtue of Amended Articles of Incorporation under Certificate of the West Virginia Secretary of State dated the 16th day of November, 1989, and recorded in said Clerk's Office in Corporation Book 66, at page 758.

Parts of Parcels I and II (being designated as all of Lot 169, part of Lot 170 and part of Lane 18) were the subject of the Declaration of Condominium dated the 28th day of February, 1986, by O.V. Enterprises, Inc., a West Virginia corporation, establishing the Valley Professional Center Condominium, and recorded in the said Clerk's Office in Deed Book 629, at page 760. By Termination Agreement of Valley Professional Center Condominium, dated the 25th day of September, 1991, and recorded in said Clerk's Office in Deed Book 663, at page 525, River Health Enterprises Inc. formerly known as O.V. Enterprises, Inc., as the owner of all the units in said condominium, terminated the common interest community known as Valley Professional Center Condominium and rendered void the Declaration of Condominium.

**Said parcels are identified by the Ohio County Assessor's office as Tax Map W58-Parcel No. 0187 and Tax Map W58-Parcel 0187-0001.**

24

4849-7163-9625 v1
1038442-430002 06/02/2017

**EXHIBIT 1**

DEFENDANTS_016713

BOOK 921 PAGE 238

## Exhibit B

1.    The lien of taxes for the year 2017 and all subsequent years, which are not yet due and payable.

OHIO VALLEY MEDICAL CENTER-MAIN CAMPUS:

1.    That right of way granted by Ohio Valley Medical Center, Inc. to Wheeling Electric Company by Deed dated August 6, 1979, and recorded in said Clerk's Office in Deed Book 602, Page 774.  The right of way was granted for the purpose of constructing, operating and maintaining an underground electric service facility under the subject property as shown on that certain ALTA/NSPS Land Title Survey dated March 20, 2017 and prepared by Landco, L.P., certified by Kevin David Crowe, President of Crowe-Wheeler & Associates.

2.    That right of way granted by Ohio Valley Medical Center, Inc. to Wheeling Electric Company by Deed dated July 17, 1975, and recorded in said Clerk's Office in Deed Book 559, page 540.  The right of way was granted for the purpose of constructing, operating and maintaining an underground electric distribution system under the property identified as Lot No. 247 of Eoff and Chapline Addition, and as shown on that certain ALTA/NSPS Land Title Survey dated March 20, 2017 and prepared by Landco, L.P., certified by Kevin David Crowe, President of Crowe-Wheeler & Associates.

3.    That MDU Service Agreement between Ohio Valley Medical Center, Inc. and TCI of West Virginia, Inc. dated December 31, 1999, recorded in said Clerk's Office in Deed Book 719, Page 665, for the installation and maintenance of cable service throughout the hospital premises, and as shown on that certain ALTA/NSPS Land Title Survey dated March 20, 2017 and prepared by Landco, L.P., certified by Kevin David Crowe, President of Crowe-Wheeler & Associates.

ROBERT C. BYRD CHILD & ADOLESCENT BEHAVIORAL HEALTH CENTER:

1.    That instrument dated the 22nd day of February, 2010, and recorded in the Clerk's Office in Deed Book 800, Page 275, executed by Brian K. Felici, President and Chief Executive Officer of Ohio Valley Medical Center, Incorporated which sets out the conditions on use of the above mentioned properties in regard to Grant No. C76HF13029-01-00 of the Health Resources and Services Administration awarded to Ohio Valley Medical Center, Incorporated.  This instrument specifically states that the property may not be mortgaged or otherwise used as collateral without the written permission of the Associate Administrator, Office of Federal Assistance Management (OFAM), Health Resources and Services Administration (HRSA).

1

EXHIBIT 1

DEFENDANTS_016714

BOOK 921 PAGE 239

FORMER PROPERTY OWNED BY OHIO VALLEY HEALTH SERVICES AND EDUCATION CORPORATION:

1.      That right of way and easement potentially affecting Parcel III, dated December 8, 1971, and recorded in the Clerk's Office in Deed Book 532, Page 135, from Bachmann Realty Company to The Chesapeake and Potomac Telephone Company of West Virginia, to operate, maintain, replace and remove communications systems upon, over and across property in Ritchie District, Ohio County, West Virginia, and as noted on that certain ALTA/NSPS Land Title Survey, dated March 30, 2017, prepared by Landco, L.P., certified by Kevin David Crowe, President of Crowe-Wheeler & Associates.

2.      That right of way and easement potentially affecting Parcel III, dated November 22, 1955, and recorded in the Clerk's Office in Deed Book 385, Page 78, from Bachmann Realty Company to The Chesapeake and Potomac Telephone Company of West Virginia, to operate and maintain telephone and telegraph lines upon, over and across property in Ritchie District, Ohio County, West Virginia, and as noted on that certain ALTA/NSPS Land Title Survey, dated March 30, 2017, prepared by Landco, L.P., certified by Kevin David Crowe, President of Crowe-Wheeler & Associates.

3.      Parcel V is subject to an easement & right of way dated April 11, 2012, and recorded in the Clerk's Office in Deed Book 840, page 794 (792), from Ohio Valley Health Services and Education Corporation, a West Virginia corporation, to Wheeling Power Company, a West Virginia corporation, for a right of way and easement for electric uses underground in, on, under, through and across the property and as noted on that certain ALTA/NSPS Land Title Survey, dated March 30, 2017, prepared by Landco, L.P., certified by Kevin David Crowe, President of Crowe-Wheeler & Associates.

Ohio County
Michael E. Kelly, Clerk
Instrument 19660702
06/05/2017 @ 03:53:32 PM
DEED
Book 921 @ Page 209
Pages Recorded 31
Recording Cost $        65.00
Transfer Tax   $    127600.00

2

EXHIBIT 1

DEFENDANTS_016715

VOL 0737 PAGE 944

Instrument
201700016362

201700016362
Filed for Record in
BELMONT COUNTY, OHIO
MARY CATHERINE NIXON, RECORDER
12-15-2017 At 08:46 am.
LEASE          144.00
OR Book    737 Page  944 -  957

Prepared by and after recording, return to:
Lynn Reynolds, Esq.
Baker, Donelson, Bearman, Caldwell
& Berkowitz, PC
Suite 1400, Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama  35203

**Belmont County, Ohio**

## MEMORANDUM OF
## MASTER LEASE AGREEMENT

THIS MEMORANDUM OF MASTER LEASE AGREEMENT (this "**Memorandum**") is dated the 30th day of May, 2017, to be effective as of the 1st day of June, 2017, by and among **MPT OF WHEELING-ALECTO HOSPITAL, LLC** and **MPT OF MARTINS FERRY-ALECTO HOSPITAL, LLC,** each a Delaware limited liability company (collectively, the "**Lessor**"), having their principal office at 1000 Urban Center Drive, Suite 501, Birmingham, Alabama 35242, and **ALECTO HEALTHCARE SERVICES WHEELING LLC** and **ALECTO HEALTHCARE SERVICES MARTIN'S FERRY LLC**, each a Delaware limited liability company (collectively, the "**Lessee**"), having their principal office c/o Alecto Healthcare Services LLC, 16310 Bake Parkway, Suite 200, Irvine, California 92618, under the following circumstances:

A.     Lessor and Lessee have entered into that certain Master Lease Agreement of even date herewith (as the same may be amended, modified and/or restated from time to time) (the "**Lease**"), whereby Lessor has leased to Lessee, and Lessee has leased from Lessor, certain real property located in Belmont County, Ohio, which real property is more particularly described on ***Exhibit A*** attached hereto and incorporated herein by reference (the "**Land**"), together with, without limitation, (i) the improvements located or to be located on the Land as more particularly described in the Lease (the "**Leased Improvements**"), (ii) the "Fixtures" (as defined in the Lease) and (iii) all easements, rights, appurtenances and other rights relating to the Land and the Leased Improvements (collectively, the "**Leased Property**").

B.     Lessor and Lessee desire to file this Memorandum of record in the appropriate real property records of the county in which the Land is located in order to provide record notice to all third parties of the rights of Lessor and Lessee under the Lease.

4816-3923-8985 v1
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016716

NOW THEREFORE, for and in consideration of the covenants and promises of the parties set forth in the Lease, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are expressly acknowledged by the parties hereto, Lessor and Lessee agree and acknowledge for themselves, their respective successors and assigns, as follows:

1.     Upon, subject to and in consideration of the terms and conditions set forth in the Lease, Lessor has leased the Leased Property to Lessee, and Lessee has leased the Leased Property from Lessor.

2.     The Leased Property is leased for an initial term commencing on the date hereof (the "**Commencement Date**"), and ending at midnight on the last day of the one hundred eightieth (180th) full month period after the Commencement Date (the "**Fixed Term**"), unless sooner terminated as provided in the Lease.  Subject to the terms, conditions and provisions as set forth in the Lease, Lessee has the option to extend the Fixed Term for three (3) additional consecutive periods of five (5) years each.

3.     Upon certain terms, conditions and provisions as set forth in the Lease (i) Lessee has an option to purchase the Leased Property, and (ii) Lessor has an option to purchase Lessee's Personal Property (as defined in the Lease).

4.     All of the terms, conditions, provisions and covenants of the Lease are incorporated in this Memorandum by reference as though written out at length herein. The Lease and this Memorandum shall be deemed to constitute a single instrument; provided, however, that in the event of a conflict between this Memorandum and the Lease, the terms and conditions of the Lease shall control.  This Memorandum contains only selected provisions of the Lease and reference is made to the full text of the Lease for the full terms and conditions.  This Memorandum shall not, in any way, alter, amend, modify or supersede the Lease.

5.     This Memorandum may be executed in counterparts, each of which shall be an original and all of which taken together shall constitute one and the same instrument.

[ Intentionally Left Blank ]

[Signatures and acknowledgements on following pages]

2

4816-3923-8985 v1
1038442-430002 05/30/2017

**EXHIBIT 1**                                                          DEFENDANTS_016717

VOL 0737 PAGE 946

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed as of the date and year first above written.

**LESSOR**:

**MPT OF WHEELING-ALECTO HOSPITAL, LLC**, a Delaware limited liability company
**MPT OF MARTINS FERRY-ALECTO HOSPITAL, LLC**, a Delaware limited liability company

By:     MPT Development Services, Inc.,
        a Delaware corporation
Its:     Sole Member

By:   _Amy McAleer_
Its:   SENIOR COUNSEL & ASST SEC

STATE OF ALABAMA                §
JEFFERSON COUNTY               §

The foregoing instrument was acknowledged before me on this 31st day of May, 2017, by Amy B. McAleer, as the Assistant Secretary of MPT Development Services, Inc., a Delaware corporation, as the Sole Member of **MPT of Wheeling-Alecto Hospital, LLC** and **MPT of Martins Ferry-Alecto Hospital, LLC,** each a Delaware limited liability company, on behalf of said corporation, as the sole member of said limited liability companies.

GIVEN UNDER MY HAND AND SEAL on this 31st day of May, 2017.

_Brandi DiPiazza_

[AFFIX NOTARY SEAL]            Notary Public in and for the State of Alabama
                              My Commission Expires: 01/19/2020



BRANDI DIPIAZZA
My Commission Expires
January 19, 2020

4816-3923-8985 v1
1038442-430002 05/30/2017

3

**EXHIBIT 1**

DEFENDANTS_016718

VOL 0 7 3 7  PAGE 9 4 7

**LESSEE:**

**ALECTO HEALTHCARE SERVICES WHEELING LLC,** a Delaware limited liability company
**ALECTO HEALTHCARE SERVICES MARTIN'S FERRY LLC,** a Delaware limited liability company

By:     Alecto Healthcare Services Ohio Valley LLC
        a Delaware limited liability company,
Its:    Sole Member

By:     Alecto Healthcare Services, LLC
        a Delaware limited liability company
Its:    Sole Member

By: _____
        Roger Krissman
Its:    Chief Financial Officer

**See California notary acknowledgement attached.**

4

4816-3923-8985 v1
1038442-430002 05/30/2017

**EXHIBIT 1**

DEFENDANTS_016719

VOL 0737 PAGE 948

## CALIFORNIA ACKNOWLEDGEMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____Orange_____

On __May 30, 2017__ before me, __Mailor Lee – "Notary Public"__ personally
         (Date)

appeared _____Roger Allen Krissman_____,
                     Name of Principal(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
MAILOR LEE
Notary Public - California
Orange County
Commission # 2154253
My Comm. Expires May 22, 2020
```

Notary Public Signature

(Notary Public Seal)

## ADDITIONAL INFORMATION

**Description of Attached Document**

Title or Type of Document: _Memorandum of Master Lease Agreement_

Number of Pages: _5 pages, Single-sided_

**Type of Identification**

☑ Satisfactory Evidence – Identification Card

☐ One Credible Witness acknowledging the identity of the principal

☐ Two Credible Witnesses acknowledging the identity of the principal

**EXHIBIT 1**

DEFENDANTS_016720

VOL 0737 PAGE 949

## EXHIBIT A

### BELMONT COUNTY OHIO

**SURVEY PARCEL 1**

Situated in the City of Martins Ferry, County of Belmont and State of Ohio: Known as being all of Lot Nos. 425 and 426 as renumbered in 1885, formerly known as Lot Nos. 137 and 138 in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records.  Also being all of the land now or formerly conveyed to East Ohio Regional Hospital at Martins Ferry as recorded in Volume 687, Page 728 of Belmont County Records and being more particularly described as follows:

Beginning at a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of 4th Street (60' Wide) at the northeast corner of Lot No. 426.

Thence, along the northwest line of 4th Street, South 39°30'00" West, 66.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the southeast corner of Lot No. 425 and the northeast corner of land now or formerly conveyed to Randolph & Kimberly Berisford as recorded in Volume 9090, Page 232 of Belmont County Records;

Thence, along the northeast line of Randolph & Kimberly Berisford land, North 50°30'03" West, 110.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the southeast line of a Public Alley at the northwest corner of Randolph & Kimberly Berisford land and the southwest corner of Lot No. 425;

Thence, along said Public Alley, North 39°30'00" East, 71.97 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the northwest corner of Lot No. 426 and the southwest corner of land now or formerly conveyed to Black Diamond Rentals, LLC as recorded in Volume 9648, Page 345 of Belmont County Records;

Thence, along the southwest line of Black Diamond Rentals, LLC land, South 47°23'30" East, 110.16 feet to the Point of Beginning and containing 0.174 acres (7,588 square feet) of land, more or less.

Auditor's Parcel No. 24-00559.000

**SURVEY PARCEL 2**

Situated in the City of Martins Ferry, County of Belmont and State of Ohio: Known as being all of the land now or formerly conveyed to East Ohio Regional Hospital as recorded in Volume 679, Page 257 and Volume 752, Page 739 of Belmont County Records and being more particularly described as follows:

Commencing at a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of 4th Street (60' Wide) at the northeast corner of Lot No. 426 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records;

**EXHIBIT 1**

DEFENDANTS_016721

VOL 0737 PAGE 950

Thence, along the northwest line of 4th Street, North 39°30'00" East, 200.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the southwest line of Short Street (30' Wide) with the northwest line of 4th Street and the Point of Beginning of the parcel of land herein described;

Thence, along the northwest line of 4th Street, South 39°30'00" West, 100.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the northeast corner of land now or formerly conveyed to Kenneth C. Fogle as recorded in Volume 558, Page 472 of Belmont County Records;

Thence, along the northeast line of Kenneth C. Fogle land, North 47°23'30" West, 110.16 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the southeast line of a Public Alley;

Thence, along the southeast line of a Public Alley, North 39°30'00" East, 100.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of a Public Alley with the southwest line of Short Street;

Thence, along the southwest line of Short Street, South 47°23'30" East, 110.16 feet to the Point of Beginning and containing 0.253 acres (11,000 square feet) of land, more or less.

Auditor's Parcel No. 24-03397.000

**SURVEY PARCEL 3**

Situated in the City of Martins Ferry, County of Belmont and State of Ohio: Known as being all of the land now or formerly conveyed to East Ohio Regional Hospital at Martins Ferry as recorded in Volume 629, Page 745 of Belmont County Records and being more particularly described as follows:

Commencing at a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of 4th Street (60' Wide) at the northeast corner of Lot No. 426 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records;

Thence, along the northwest line of 4th Street, North 39°30'00" East, 230.05 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the northwest line of 4th Street with the northeast line of Short Street (30' Wide) and the Point of Beginning of the parcel of land herein described;

Thence, along the northeast line of Short Street, North 47°14'00" West, 110.18 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the northeast line of Short Street with the southeast line of a 12 foot wide Public Alley;

Thence, a 12 foot wide Public Alley, North 39°30'00" East, 30.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the southwest corner of land now or formerly conveyed to United Dairy, Inc. as recorded in Volume 9118, Page 504 of Belmont County Records;

Thence, along the southwest line of United Dairy, Inc. land, South 47°14'00" East, 110.18 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of 4th Street;

**EXHIBIT 1**

DEFENDANTS_016722

Thence, along the northwest line of 4th Street, South 39°30′00″ West, 30.00 feet to the Point of Beginning and containing 0.076 acres (3,300 square feet) of land, more or less.

Auditor's Parcel No. *24-03076.000*

**SURVEY PARCEL 4**

Situated in the City of Martins Ferry, County of Belmont and State of Ohio: Known as being all of the land now or formerly conveyed to Martins Ferry Hospital Association, Inc. as recorded in Volume 609, Page 788, The Martins Ferry Hospital Association as recorded in Volume 579, Page 536, Volume 527, Page 749, Volume 574, Page 771, Volume 574, Page 772, Volume 574, Page 773, Volume 574, Page 774, Volume 574, Page 775, Volume 609, Page 265 and East Ohio Regional Hospital at Martins Ferry as recorded in Volume 633, Page 384, all of Belmont County Records and being more particularly described as follows:

Commencing at a 5/8″ rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of 4th Street (60′ Wide) at the northeast corner of Lot No. 426 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records;

Thence, along the northwest line of 4th Street, North 39°30′00″ East, 826.12 feet to a 5/8″ rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the northwest line of 4th Street with the southwest line of Ellet Street (25′ Wide) and the Point of Beginning of the parcel of land herein described;

Thence, along the northwest line of 4th Street, South 39°30′00″ West, 307.97 feet to a 5/8″ rebar with a yellow plastic cap stamped "DURR 7788" set at the northeast corner of land now or formerly conveyed to United Dairy, Inc. as recorded in Volume 9118, Page 504 of Belmont County Records;

Thence, along the northeast line of United Dairy, Inc. land, North 48°56′57″ West, 110.04 feet to a 5/8″ rebar with a yellow plastic cap stamped "DURR 7788" set on the southeast line of a 12 foot wide Public Alley at the northwest corner of United Dairy, Inc. land;

Thence, along a 12 foot wide Public Alley, North 39°30′00″ East, 312.49 feet to a 5/8″ rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the southeast line of a 12 foot wide Public Alley with the southwest line of Ellet Street;

Thence, along the southwest line of Ellet Street, South 46°36′00″ East, 110.26 feet to the Point of Beginning and containing 0.783 acres (34,126 square feet) of land, more or less.

Auditor's Parcel No. *24-02491.000*

**SURVEY PARCEL 5**

Situated in the City of Martins Ferry, County of Belmont and State of Ohio: Known as being all of the land now or formerly conveyed to East Ohio Regional Hospital at Martins Ferry as recorded in Volume 717,

**EXHIBIT 1**

DEFENDANTS_016723

Page 321 and East Ohio Regional Hospital as recorded in Volume 791, Page 47 and Volume 712, Page 615, all of Belmont County Records and being more particularly described as follows:

Commencing at a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of 4th Street (60' Wide) at the northeast corner of Lot No. 426 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records;

Thence, along the northwest line of 4th Street, North 39°30'00" East, 851.18 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the northwest line of 4th Street with the northeast line of Ellet Street (25' Wide) and the Point of Beginning of the parcel of land herein described;

Thence, along the northeast line of Ellet Street, North 46°36'00" West, 100.23 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the northeast line of Ellet Street with the southeast line of a 10 foot wide Public Alley;

Thence, along the southeast line of a 10 foot wide Public Alley, North 39°30'00" East, 183.80 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the southerly line of land now or formerly conveyed to Harry L. & Stephanie D. Pugh as recorded in Volume 9570, Page 910 of Belmont County Records;

Thence, along the southerly line of Harry L. & Stephanie D. Pugh land, South 45°15'00" East, 15.82 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the westerly line of the Walnut Grove Cemetery at the southeast corner of Harry L. & Stephanie D. Pugh land;

Thence, along the westerly line of the Walnut Grove Cemetery, South 59°41'30" West, 23.63 feet to a 2 inch iron bar in concrete found at the southwest corner thereof;

Thence, along the southerly line of the Walnut Grove Cemetery, South 45°49'30" East, 92.70 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the termination of the northwest line of 4th Street;

Thence, along the northwest line of 4th Street, South 39°30'00" West, 159.44 feet to the Point of Beginning and containing 0.374 acres (16,280 square feet) of land, more or less.

Auditor's Parcel No. _24-03081.000_

**SURVEY PARCEL 6**

Situated in the City of Martins Ferry, County of Belmont and State of Ohio: Known as being all of the land now or formerly conveyed to The Martins Ferry Hospital Association as recorded in Volume 583, Page 208, Volume 519, Page 395, Volume 432, Page 7, East Ohio Regional Hospital as recorded in Volume 673, Page 676 and East Ohio Regional Hospital at Martins Ferry as recorded in Volume 769, Page 620, all of Belmont County Records and being more particularly described as follows:

**EXHIBIT 1**

DEFENDANTS_016724

Commencing at a 5/8" rebar with an illegible plastic cap found on the southeast line of 4th Street (60' Wide) at the northwest corner of Lot No. 401 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records;

Thence, along the southeast line of 4th Street, North 39°30'00" East, 914.90 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection southeast line of 4th Street with the northeast line of Ellet Street (25' Wide) and the Point of Beginning of the parcel of land herein described;

Thence, along the southeast line of 4th Street, North 39°30'00" East, 177.44 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the southerly line of the Maple Grove Cemetery;

Thence, along the Maple Grove Cemetery, the following four (4) courses and distances:
1) South 87°53'00" East, 221.74 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
2) Thence, North 14°05'00" East, 17.49 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
3) Thence, North 14°05'00" East, 83.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
4) Thence, North 46°05'00" West, 164.69 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the easterly line of land now or formerly conveyed to Larry J. Mamone Association as recorded in Volume 9585, Page 708 of Belmont County Records;

Thence, along the easterly line of Larry J. Mamone Association land, North 70°57'00" East, 36.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the southerly line of land now or formerly conveyed to Benjamin Neiman as recorded in Volume 710, Page 123 of Belmont County Records;

Thence, along the southerly line of Benjamin Neiman land, the following five (5) courses and distances:
1) South 41°32'00" East, 19.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
2) Thence, South 85°47'00" East, 25.42 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
3) Thence, South 57°47'00" East, 54.10 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
4) Thence, North 79°35'10" East, 12.96 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
5) Thence, South 51°47'00" East, 84.02 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of Ohio State Route 7 (Variable Width – Limited Access);

Thence, along the northwest line of Ohio State Route 7, the following four (4) courses and distances:
1) South 27°55'27" West, 1.24 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
2) Thence, South 31°30'57" West, 139.73 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
3) Thence, South 28°04'09" West, 250.05 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;

**EXHIBIT 1**

DEFENDANTS_016725

4)   Thence, South 20°41'03" West, 117.45 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northeast line of Ellet Street;

Thence, along the northeast line of Ellet Street, North 46°34'00" West, 170.66 feet to 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the northeast line of Ellet Street with the southeast line of Hospital Alley (10' Wide);

Thence, along the southeast line of Hospital Alley, North 39°30'00" East, 147.57 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the termination of the southeast line of Hospital Alley;

Thence, along the northeast line of Hospital Alley, North 50°30'00" West, 10.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the termination of the northwest line of Hospital Alley;

Thence, along northwest line of Hospital Alley, South 39°30'00" West, 146.88 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northeast line Ellet Street;

Thence, along the northeast line of Ellet Street, North 46°34'00" West, 100.24 feet to the Point of Beginning and containing 1.749 acres (76,176 square feet) of land, more or less.

**Auditor's Parcel No.** 24-60166.000

**SURVEY PARCEL 7**

Situated in the City of Martin's Ferry, County of Belmont and State of Ohio: Known as being all of the land now or formerly conveyed to East Ohio Regional Hospital as recorded in Volume 750, Page 923, Volume 749, Page 799, Martin's Ferry Hospital Association, Inc. as recorded in Volume 619, Page 844, Volume 603, Page 182, The Martin's Ferry Hospital Association, Inc. as recorded in Volume 618, Page 147, The Martins Ferry Hospital Association as recorded in Volume 580, Page 614, Volume 584, Page 455, Volume 584, Page 332, Volume 584, Page 503, Volume 586, Page 55, Volume 601, Page 711, East Ohio Regional Hospital at Martins Ferry as recorded in Volume 687, Page 863, Volume 97, Page 152, Volume 126, Page 233, Volume 22, Page 381, East Ohio Regional Hospital as recorded in Volume 789, Page 662, all of Belmont County Records and additional land as more particularly described as follows:

Commencing at a 5/8" rebar with an illegible plastic cap found on the southeast line of 4th Street (60' Wide) at the northwest corner of Lot No. 401 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records;

Thence, along the southeast line of 4th Street, North 39°30'00" East, 133.76 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the southeast line of 4th Street with the northeast line of Eor Drive (25' Wide);

Thence, along the southeast line of 4th Street, North 39°30'00" East, 756.09 feet to a MAG nail set at the intersection of the southeast line of 4th Street with the southwest line of Ellet Street (25' Wide);

**EXHIBIT 1**

DEFENDANTS_016726

Thence, along the southwest line of Ellet Street, South 46°33'51" East, 289.69 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the northwest line of Ohio State Route 7 (Variable Width – Limited Access);

Thence, along the northwest line of Ohio State Route 7, the following seven (7) courses and distances:

1) South 20°41'03" West, 2.52 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
2) Thence, South 20°41'03" West, 55.15 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
3) Thence, South 36°20'24" West, 201.56 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
4) Thence, South 26°24'16" West, 177.41 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
5) Thence, South 36°02'03" West, 178.27 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
6) Thence, South 31°36'15" West, 127.29 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set;
7) Thence, South 36°02'04" West, 91.00 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the northeast corner of land now or formerly conveyed to Joann Danehart as recorded in Volume 9351, Page 147 of Belmont County Records;

Thence, along the northeast line of Joann Danehart land, North 49°43'00" West, 90.63 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the southeast line of 3rd Street (60' Wide);

Thence, along the southeast line of 3rd Street, North 39°30'00" East, 169.32 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the termination of the southeast line of 3rd Street;

Thence, along the northeast line of 3rd Street, North 47°30'00" West, 60.08 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the termination of the northwest line of 3rd Street;

Thence, along the northwest line of 3rd Street, South 39°30'00" West, 90.60 feet to a railroad spike found at the intersection of the northwest line of 3rd Street with the northeast line of Eor Drive;

Thence, along the northeast line of Eor Drive, North 49°30'35" West, 242.10 feet to the Point of Beginning and containing 5.916 acres (257,680 square feet) of land, more or less.

Auditor's Parcel No. _24-00788.000_

**SURVEY PARCEL 8**

Beginning at a 5/8" rebar with a cap stamped "6723" found on the northwest line of 3rd Street (60' Wide) at the northeast corner of Lot 399 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records and the northeast corner

EXHIBIT 1

DEFENDANTS_016727

of land now or formerly conveyed to Amy L. & Robert B. McConn as recorded in Volume 797, Page 548 of Belmont County Records;

Thence, along the northeast line of Amy L. & Robert B. McConn land, North 47°27'22" West, 110.24 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set on the southeast line of a 22 foot wide Public Alley;

Thence, along the southeast line of a 22 foot wide Public Alley, North 39°35'47" East, 50.71 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of a 22 foot wide Public Alley with the southwest line of Eor Drive;

Thence, along the southwest line of Eor Drive, South 49°30'35" East, 110.02 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the northwest line of 3rd Street (60' Wide) with the southwest line of Eor Drive (25' Wide);

Thence, along the northwest line of 3rd Street, South 39°30'00" West, 54.69 feet to the Point of Beginning and containing 0.133 acres (5,801 square feet) of land more or less.

**Auditor's Parcel No.** _24-00747.000_

**SURVEY PARCEL 9**

Situated in the City of Martins Ferry, County of Belmont and State of Ohio: Known as being all of the land now or formerly conveyed to East Ohio Regional Hospital as recorded in Volume 743, Page 285, Volume 796, Page 969 and East Ohio Regional Hospital at Martins Ferry as recorded in Volume 696, Page 345 of Belmont County Records and being more particularly described as follows:

Beginning at 5/8" rebar with an illegible cap found on the southeast line of 4th Street (60' Wide) at the northwest corner of Lot 401 as renumbered in 1885, in Wallace's Addition to the Town of Martinsville as recorded in Plat Cabinet B, Slide 52 of Belmont County Records and the northwest corner of land now or formerly conveyed to St. Johns Church as recorded in Volume 513, Page 465 of Belmont County Records;

Thence, along the southeast line of 4th Street, North 39°30'00" East, 108.75 feet to a railroad spike found at the intersection of the southeast line of 4th Street with the southwest line of Eor Drive (25' Wide);

Thence, South 49°30'35" East, 110.02 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the intersection of the southwest line of Eor Drive and the northwest line of a 22 foot wide Public Alley;

Thence, along a 22 foot wide Public Alley, South 39°35'47" West, 106.85 feet to a 5/8" rebar with a yellow plastic cap stamped "DURR 7788" set at the northeast corner of St. Johns Church land;

Thence, along the northeast line of St. Johns Church land, North 50°30'03" West, 109.82 feet to the Point of Beginning and containing 0.272 acres (11,849 square feet) of land, more or less.

**EXHIBIT 1**

DEFENDANTS_016728

VOL 0757 PAGE 957

The basis of bearings for all bearings described herein is the southeast line of North 4th Street, known as being North 39°30'00" East, and is the same bearing recorded in Volume 661, Page 826 of Belmont County Records.

Auditor's Parcel No. _24-03791.000_

**JEFFERSON COUNTY OHIO**

Situated in Section No. 6, Township No. 7, (Mt. Pleasant), Range 3 in the Village of Dillonvale, Jefferson County, Ohio, known as and being Lot No. 17 in the Village of Dillonvale, Jefferson County, Ohio, as laid out by John L. Barkurst, an designated on the recorded plat thereof in Volume 3, Page 44, of the Plat Records in the Office of the Recorder of Jefferson County, Ohio.

**The above-described real property is known for street numbering purposes as 79 2nd Street, Dillonvale, Ohio 43917.**

Auditor's Parcel Number: 21-02149-000

Situated in the Township of Warren, County of Jefferson and State of Ohio, being Lots No. 142, 143 and 144 in Walker's Second Subdivision to the Village of Grover (now Tiltonsville) as designated in Plat Book No. 4, Page 101 of the Records of Jefferson County, Ohio.

EXCEPTING AND RESERVING from and out of the granted premises all the coal underlying said premises with the right to mine and remove the same by means of approaches from other lands.

**The above described real property is known for street numbering purposes as 342 Jefferson Avenue, Tiltonsville, Ohio 43963**

Auditor's Parcel Number: 43-00820, 43-00821 and 43-00822

201700016362
SPILLMAN THOMAS BATTLE PLLC
PO BOX 831
WHEELING WV 26003

**EXHIBIT 1**

DEFENDANTS_016729

**To:** Lex Reddy[lexreddy@ovrh.org]; Mike Sarrao[msarrao@sarraolaw.com]; Mark Bradshaw[mbradshaw@alectohealthcare.com]; Jeremy Redin[jredin@alectohealthcare.com]; Sylvia Ventura contact[sventura@alectohealthcare.com]
**From:**     Daniel Dunmyer
**Sent:**     Mon 8/19/2019 12:05:37 PM
**Subject:**  MRI shut down
**Received:**  Mon 8/19/2019 12:06:55 PM

We have received notification from the MRI company they are going to remove the MRI truck today. We have failed to pay them a few times under our agreement and they have elected to remove it.

I will let the ED at both hospitals know that we will not have their services. This will effect the number of ED visits but our numbers are on the decline now and the expense of the MRI warrants not continuing on.

 Let me know if you disagree as soon as you can but I don't see any way we can continue it given the situation

--
Daniel C. Dunmyer
President and Chief Executive Officer
OVMC / EORH
2000 Eoff St
Wheeling, WV 26003
304.234.8383 (o)
304.312.0142 (m)


Confidentiality Notice: This message, including any attachments, is for the sole use of the individual or entity to which it is addressed. This message may contain confidential health and/or legally privileged information. If you are not the named recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance of the contents of this message is strictly prohibited. If you have received this message in error, please notify sender immediately and destroy all copies of the original message.

**EXHIBIT 1**

DEFENDANTS017589

**Closure Timeline for OVMC**

Medicare - Publish Notice 15 Days Before Closure; WV - Publish Notice 21 Days Before Closure
Target Closure 9/8/19
All Dates Assume Physician Coverage and Staffing
**Ohio Valley Medical Center**

| | | Action Item | Owner | Deadline |
|---|---|---|---|---|
| 1.0 | | **Notification to Federal and State Agencies & Accreditation Bodies** | Sarrao | |
| | 1.1 | Center for Medicare and Medicaid Services (CMS) | | 8/9/2019 |
| | | 1.1.1    Publish Notice in Newspaper 15 Days Before Closure per 42 CFR 489.52(c) | | 8/12/2019 |
| | 1.2 | Nuclear Regualtory Commission | | 8/9/2019 |
| | 1.3 | Drug Enforcement Administration | | 8/9/2019 |
| | 1.4 | FTC (Radio Channels) | | 8/9/2019 |
| | 1.5 | WV Department of Health & Human Resources | | 8/9/2019 |
| | 1.6 | Bureau for Behavioral Health & Health Facilities | | 8/9/2019 |
| | 1.7 | Office for Emergency Medical Services | | 8/9/2019 |
| | 1.8 | Health Care Authority | | 8/9/2019 |
| | 1.9 | Office of Health Facility Licensure & Certification | | 8/9/2019 |
| | | 1.9.1    Publish Notice in Newspaper 21 Days Before Closure per WV Code 16-5B-16 | | 8/12/2019 |
| | 1.10 | Bureau for Medical Services (WV Medicaid) | | 8/9/2019 |
| | 1.11 | Board of Medicine | | 8/9/2019 |
| | 1.12 | Division of Labor/Workforce WV | | 8/9/2019 |
| | 1.13 | City of Wheeling | | 8/9/2019 |
| | 1.14 | Joint Commission | | 8/9/2019 |
| | 1.15 | HFAP | | 8/9/2019 |
| | 1.16 | College of American Pathologists | | 8/9/2019 |
| | 1.17 | ACGME (Residency Program) | | 8/9/2019 |
| 2.0 | | **Suspension/Closure of Outpatient Services** | | |
| | 2.1 | **Stop Accepting New Patients for Outpatient Services** | | |
| | | 2.1.1    Sleep Lab | | 8/16/2019 |
| | | 2.1.2    Cardiac Testing | | 8/16/2019 |
| | | 2.1.3    Physical Therapy | | 8/16/2019 |
| | | 2.1.4    Occupational Therapy | | 8/16/2019 |
| | | 2.1.5    Speech Therapy | | 8/16/2019 |
| | | 2.1.6    Medical Oncology | | 8/16/2019 |
| | | 2.1.7    Radiation Oncology | | 8/16/2019 |
| | | 2.1.8    Laboratory Services | | 8/16/2019 |
| | | 2.1.9    Radiology | | 8/16/2019 |
| | | 2.1.10  Outpatient Behavioral Health | | 8/19/2019 |
| | 2.2 | **Notice to Existing Patients Utilizing Outpatient Services Re: Suspension** | | |
| | | 2.2.1    Sleep Lab | | 8/12/2019 |
| | | 2.2.2    Cardiac Testing | | 8/12/2019 |
| | | 2.2.3    Physical Therapy | | 8/12/2019 |
| | | 2.2.4    Occupational Therapy | | 8/12/2019 |
| | | 2.2.5    Speech Therapy | | 8/12/2019 |
| | | 2.2.6    Medical Oncology | | 8/12/2019 |
| | | 2.2.7    Radiation Oncology | | 8/12/2019 |
| | | 2.2.8    Laboratory Services | | 8/12/2019 |
| | | 2.2.9    Radiology | | 8/12/2019 |
| | | 2.2.10  The Prescription Center (Outpatient Pharmacy) | | 8/12/2019 |
| | | 2.2.10  Outpatient Behavioral Health | | 8/12/2019 |
| | 2.3 | **Stop Providing Outpatient Services to Existing Patients/Suspend Services** | | |
| | | 2.3.1    Sleep Lab | | 8/31/2019 |
| | | 2.3.2    Cardiac Testing | | 8/31/2019 |
| | | 2.3.3    Physical Therapy | | 8/31/2019 |
| | | 2.3.4    Occupational Therapy | | 8/31/2019 |
| | | 2.3.5    Speech Therapy | | 8/31/2019 |
| | | 2.3.6    Medical Oncology | | 8/31/2019 |
| | | 2.3.7    Radiation Oncology | | 8/31/2019 |
| | | 2.3.8    Laboratory Services | | 8/31/2019 |
| | | 2.3.9    Radiology | | 8/31/2019 |
| | | 2.3.10  The Prescription Center (Outpatient Pharmacy) | | 8/31/2019 |
| | | 2.3.10  Outpatient Behavioral Health | | 9/8/2019 |
| 3.0 | | **Suspension/Closure of Surgical Services** | | |

**EXHIBIT 1**

DEFENDANTS031922
(produced natively)

| | | Action Item | Owner | Deadline |
|---|---|---|---|---|
| | 3.1 | **Stop Accepting New Patients for Elective Surgeries** | | |
| | 3.1.1 | Outpatient Surgery | | 8/16/2019 |
| | 3.1.2 | Surgeries Requiring Inpatient Admission | | 8/16/2019 |
| | 3.2 | **Notify Existing Patients with Scheduled Surgeries** | | |
| | 3.2.1 | Outpatient Surgery | | 8/12/2019 |
| | 3.2.2 | Surgeries Requiring Inpatient Admission | | 8/12/2019 |
| | 3.3 | **Stop Performing Elective Surgeries** | | |
| | 3.3.1 | Outpatient Surgery | | 9/6/2019 |
| | 3.3.2 | Surgeries Requiring Inpatient Admission | | 9/3/2019 |
| 4.0 | | **Obstretrical Services** | | |
| | 4.1 | Stop Scheduling Planned Deliveries | | 8/16/2019 |
| | 4.2 | Notify Patients of No New Planned Deliveries | | 8/16/2019 |
| | 4.3 | Notify EMS Re: No Obstetrical Coverage for Emergency Department | | 8/9/2019 |
| | 4.4 | Stop Planned/Scheduled Deliveries | | 8/31/2019 |
| | 4.5 | Stop Emergency Deliveries | | 8/31/2019 |
| | 4.6 | Suspend All Obstetrical Services | | 9/8/2019 |
| 5.0 | | **Inpatient Services (Excluding Behavioral Health)** | | |
| | 5.1 | Notify Medical Staff of No Direct Admissions as of 8/16/19 | | 8/9/2019 |
| | 5.2 | Stop Direct Admissions | | 8/16/2019 |
| | 5.3 | Stop Admissions from Emergency Department (See Item 6.0 Below) | | 9/3/2019 |
| | 5.4 | Transfer Remaining Inpatients (Excluding  Behavioral Health) | | 9/7/2019 |
| | 5.5 | Suspend All Inpatient Services (Excluding Behavioral  Health) | | 9/8/2019 |
| 6.0 | | **Emergency Services** | | |
| | 6.1 | Notify EMS of Planned Suspension of Services and Limitations | | 8/8/2019 |
| | 6.2 | Notify Public of Planned Suspension of Services | | 8/12/2019 |
| | 6.2 | Stop Accepting EMS Runs | | 9/3/2019 |
| | 6.3 | Stop Accepting Walk-Ins | | 9/7/2019 |
| | 6.4 | Suspend Emergency Services | | 9/8/2019 |
| 7.0 | | **Inpatient Behavioral Health Services** | Sarrao | |
| | 7.1 | Notify Referral Sources of Planned Suspension of Services | | 8/9/2019 |
| | 7.2 | Notify Existing Patients/Families of Planned Suspension of Services | | 8/9/2019 |
| | 7.3 | Idenitfy Alternative Facilities | | 8/9/2019 |
| | 7.4 | Notify Public of Planned Suspension of Services | | 8/9/2019 |
| | 7.5 | Stop Admitting New Patients - Adult Unit | | 8/23/2019 |
| | 7.6 | Stop Admitting Existing Patients - Adult Unit | | 8/28/2019 |
| | 7.7 | Stop Admitting New Patients - Adolescent Unit | | 8/23/2019 |
| | 7.8 | Stop Admitting Existing Patients - Adolescent Unit | | 8/28/2019 |
| | 7.9 | Transfer Remaing Patients | | 9/7/2019 |
| | 7.10 | Suspend all Inparient Behavioral Health Services | | 9/8/2019 |
| 8.0 | | **Medical Records** | | |
| | 8.1 | Secure Medical Records | | 8/9/2019 |
| | 8.2 | Notice to Public Regarding Availability of Medical Records | | 8/15/2019 |
| | 8.3 | Make Arrangements for Continued Storage of Medical Records | | 9/3/2019 |

DEFENDANTS031922
(produced natively)

EXHIBIT 1



*An Alecto Healthcare Hospital*

**THE PRESCRIPTION CENTER AT OVMC**
**2000 EOFF STREET**
**WHEELING, WV 26003**
**TELEPHONE: 304-219-2822**
**FAX: 304-219-2823**

8/15/19

To our valued patients,

After five and a half years in business, we regret to inform you that we will be closing The Prescription Center at OVMC on or before October 7, 2019. We have appreciated your business and being able to take care of your prescription needs. Over the years we have gotten to know many of you personally and wish everyone good luck in their future endeavors.

Please take a moment to examine the quantity of all of your prescription medications and let us know as soon as possible any prescriptions you would like us to refill. As we begin reducing our inventory, we will continue to fill prescriptions on a first come, first serve basis. If there is any medication that you need a refill and we cannot order the medication for you, we will offer to transfer the prescription to the pharmacy of your choice. In addition, please determine the pharmacy you wish to use after The Prescription Center closes so we can begin to transfer any remaining refills to that pharmacy for you.

In addition, please be timely and considerate in picking up your requested refills. Since we cannot determine the exact date of closure at this time, it may be anytime before October 7th.

As always, we wish you good health and wellness.

The Prescription Center staff

**EXHIBIT 1**          CONFIDENTIAL          DEFENDANTS_033025