# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KEITH REED, ELIZABETH SCHENKEL,**
**EMILY WINES, MARK GARAN and**
**AUGUST ULLUM, individually and on**
**behalf of others similarly situated,**

    **Plaintiffs,**

v.                                                              Civil Action No.: 5:19-cv-263
                                                                 Judge Bailey

**ALECTO HEALTHCARE SERVICES LLC,**
**and ALECTO HEALTHCARE SERVICES**
**WHEELING, LLC d/b/a OHIO VALLEY**
**MEDICAL GROUP and d/b/a OVMC**
**PHYSICIANS,**

    **Defendants.**

## DEFENDANTS' RESPONSE TO PLAINTIFFS' ITEMIZED DAMAGES REPORT

Defendants Alecto Healthcare Services LLC and Alecto Healthcare Services Wheeling LLC ("AHSW") (collectively, "Defendants") oppose "Plaintiffs Itemized Damages Report" [CM/ECF Doc. No. 195] (the "Report"). Though elements of the damages calculated by Plaintiffs Keith Reed, Elizabeth Schenkel, Emily Wines, Mark Garan, an August Ullum (collectively, "Plaintiffs") in the Report are correct, there are serious errors. Three elements of Plaintiffs' alleged damages contradict the facts and the damages provisions of the Worker Adjustment and Retraining Notification ("WARN") Act:

1. Plaintiffs calculated their back pay by multiplying their "Pay Per Day" by the maximum of 60 calendar days. This is wrong for two reasons. First, the violation period is not 60 days because the Court's order recognized Plaintiffs received some notice, which reduces the violation period under the WARN Act. Second, this Court and the majority

1

of Circuit Courts of Appeals have held that back pay is calculated based on the number of "working" days in a violation period, not calendar days.

2. Plaintiffs did not offset their alleged damages with the amount of wages paid to them by AHSW for work performed within the violation period, as required by statute.

3. Plaintiffs included damages for "one month's health plan premium" based on the cost of health coverage depending on the plan, but AHSW paid these amounts through the end of October 2019.

Plaintiffs' math improperly inflates their damages, which, according to Plaintiffs, total $90,153.69 excluding interest. Using the violation period in the Court's order granting summary judgment, calculating back pay based on the number of "working" days instead of calendar days, properly excluding the health insurance premium that was already paid, and offsetting Plaintiff's back pay with amounts paid by AHSW results in **$22,896.70** in total damages for Plaintiffs excluding interest.

In the Report, Plaintiffs' calculations also include damages for potential class members (even though no notice has been sent) and attorneys' fees and costs (even though no motion for these costs was filed). Because it is premature to determine damages for potential class members and attorneys' fees and costs, Defendants propose the Court set a briefing schedule on potential class damages and attorneys' fees and costs tied to notice to potential class members.

**A.      Several Components of Plaintiffs' Damages Model Contradict the Facts and Law.**

The WARN Act provides that Plaintiffs' may recover two kinds of compensatory damages – "back pay" and "benefits under an employee benefit plan." These are calculated as follows:

> (A) back pay for each day of violation at a rate of compensation not less than the higher of—

> (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or
>
> (ii) the final regular rate received by such employee; and
>
> (B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.
>
> Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C. § 2104(a)(1).

These compensatory remedies are the "exclusive remedies" available under the WARN Act. 29 U.S.C. § 2104(b). The WARN Act also specifically states that the Court must reduce these compensatory damages by the amount of certain payments made by the employer. An employer's liability for any back pay or benefits "shall be reduced by":

> (A) any wages paid by the employer to the employee for the period of the violation;
>
> (B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation; and
>
> (C) any payment by the employer to a third party or trustee (such as premiums for health benefits or payments to a defined contribution pension plan) on behalf of and attributable to the employee for the period of the violation.
>
> In addition, any liability incurred under paragraph (1) with respect to a defined benefit pension plan may be reduced by crediting the employee with service for all purposes under such a plan for the period of the violation.

29 U.S.C. § 2104(a)(2).

In the Report, Plaintiffs correctly state their hourly rates, and their assumptions of the hours they worked each day are reasonable, with minor exceptions. Plaintiffs' calculation of damages is,

however, inconsistent with the facts and the WARN Act because they use a full 60-days violation period, calculate back pay using calendar days, do not reduce back pay for wages paid during the violation period, and improperly include the cost of insurance premiums paid by AHSW.

### 1. According to the Court's Order, the Period of the Violation is 33 Days Because Defendants Provided Notice to Plaintiffs on August 8, 2019.

Liability under the WARN Act is "calculated for the period of the violation, *up to a maximum* of 60 days . . . ." 29 U.S.C. § 2104(a)(1) (emphasis added). The WARN Act's legislative history clarifies this language means the violation period "could be less depending upon the amount of notice given by the employer." *See* H.R. Rep. No. 100-576, at 1052 (1988) (Conf. Rep.). "For example, if the employer provides 20 days notice, then the maximum violation period for purposes of calculating back pay awards or civil fines would be 40 days." *Id.* The Court found that, even if Defendants' August 8, 2019 letter met all the statutory requirements, it is not timely because "[t]he letter was sent on August 8, 2019, just 27 days before defendants shut down OVMC on September 4, 2019." Order 31, ECF No. 193. Because the Court found that Defendants provided 27 days of notice, the maximum violation period based on the Court's order is 33 days.[1] 29 U.S.C. § 2104(a)(1); H.R. Rep. No. 100-576, at 1052 (1988) (Conf. Rep.). Plaintiffs' damages calculation based on a 60 day violation period is incorrect because it ignores the notice given.

### 2. Plaintiffs May Recover Back Pay for Each "Working" Day Within the Violation Period.

The WARN Act requires an employer to pay "back pay for each day of violation" within the "period of the violation." 29 U.S.C. § 2104(a)(1). This Court has held that back pay under the WARN Act is paid for each "working" day within the violation period, not for each "calendar"

---

[1] Plaintiffs also adopt a violation period based on the August 8, 2019 notice because their chart excludes employees who stopped working after October 8, 2019 [i.e. 60 days after August 8, 2019]. Pl.'s Damages Summary 20, ECF No. 195-3. However, Plaintiffs incorrectly calculate their damages for a full 60-day violation period.

4

day. *United Mine Workers of Am. Int'l Union v. Martinka Coal Co.*, 45 F. Supp. 2d 521, 523 (N.D.W. Va. 1999), *aff'd sub nom. United Mine Workers of Am. v. Martinka Coal Co.*, 202 F.3d 717 (4th Cir. 2000) (Keeley, J.); *see also Messer v. Bristol Compressors Int'l, LLC*, No. 1:18CV00040, 2021 WL 4705183, at *3 (W.D. Va. Oct. 8, 2021) ("While the statutory language of § 2104(a)(1) is ambiguous, I find that paying workers for the number of days they would have worked during the 60-day violation period best achieves these purposes."). The Court should adopt Judge Keeley's reasoning and find that Plaintiffs may recover back pay each "working" day within the violation period for three reasons.

### a. A Majority of Federal Courts Have Held "Working" Days is the Appropriate Approach for Calculating Back Pay.

First, the majority of the United States Circuit Courts of Appeals that have considered the issue held that wages should be paid for "working" days within a violation period, not calendar days. *See Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1283-84 (5th Cir. 1994); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 561 (6th Cir. 1996); *Breedlove v. Earthgrains Baking Co.*, 140 F.3d 797, 801 (8th Cir. 1998); *Burns v. Stone Forest Indus.*, 147 F.3d 1182, 1183 (9th Cir. 1998); *Frymire v. Ampex Corp.*, 61 F.3d 757, 771-72 (10th Cir. 1995). The Third Circuit is the only circuit court to decide back pay must be paid for each calendar day. *United Steelworkers of America v. North Star Steel Co.*, 5 F.3d 39, 43 (3rd Cir. 1993). The Third Circuit's opinion in *North Star* has been criticized and rejected by other courts. *See Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 150 n.11 (3d Cir. 1998) (recognizing other courts criticized the *North Star* opinion and "rejected its analysis"). The United States District Court for the District of South Carolina explained:

> Essentially, the Third Circuit rejected a "lost earnings" approach because it believed that it would render [29 U.S.C. § 2104(a)(2)] which provides for a set-off for wages performed during the violation period superfluous. This argument is

5

> based upon a flawed reading of the statute and misunderstands the distinction between the termination of an employee and reduction of an employee's work hours. In particular, [29 U.S.C. § 2104(a)(2)] is inapplicable whenever an employee is terminated because he cannot earn any wages during the violation period. The Third Circuit also concluded that a "lost earnings" approach was inconsistent with the statutory scheme because it is remedial and would allow an employee to offset earnings from a subsequent employer during the violation period. This argument makes no sense since the statute includes no such provision.

*Washington v. Aircap Indus., Inc.*, 860 F. Supp. 307, 311 n.2 (D.S.C. 1994).

Importantly, Judge Keeley's decision in *United Mine Workers of Am. Int'l Union v. Martinka Coal Co.* occurred in 1999, which was after the Third Court's *North Star* decision in 1993. Judge Keeley had the full benefit of that opinion when reaching her own and—like many other federal courts—found it unpersuasive. In line with this Court's prior case law and the majority rule, only Plaintiffs' "working" days in the violation period may be used in damages calculation.

### b. The "Working" Days Approach is Consistent with the Fourth Circuit's Recognition of the WARN Act as Remedial Legislation.

While the Fourth Circuit has not considered whether back pay is paid for "working" days or calendar days, it has recognized that "the WARN Act is remedial legislation." *Loc. Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997). Calculating back pay using working days accords with the Fourth Circuit's statement that the WARN Act is remedial to because it compensates employees for the income and benefits they would have received had the employer not prematurely terminated their employment in violation of the WARN Act. *See Saxion*, 86 F.3d at 560-61 (citing *Dillard Dep't Stores*, 15 F.3d at 1283-86); *Local 1239, Int'l Bhd. of Boilermakers*, 9 F. Supp. 2d at 904 ("[T]he ordinary and natural meaning of the term 'back pay' is compensation for earnings that would not have been lost if the violation had not occurred."). The Fourth Circuit's

remedial approach to WARN Act supports calculation of damages based upon working days, not calendar days, in a violation period.

### c. Legislative History Supports the "Working" Days Approach.

If there is any ambiguity whether the value of "back pay for each day of violation" in 29 U.S.C. § 2104(a)(1)(A) means "working" days or "calendar" days, it is resolved by looking at the legislative history. *Sheehan v. Ash*, 574 B.R. 585, 591 (N.D.W. Va. 2017), *aff'd*, 889 F.3d 171 (4th Cir. 2018) (holding it is appropriate to resolve statutory ambiguity with "reference to legislative history, and always with the goal of ascertaining congressional intent"). The Senate Labor Committee stated in 1987 that damages for violating the WARN Act "are to be measured by the wages . . . the employee would have received had the plant remained open or the layoff been deferred until the conclusion of the notice period." S. Rep. No. 100-62, at 24 (1987); *see also Breedlove*., 140 F.3d at 801 (quoting S. Rep. No. 100-62, at 24 (1987)); *Saxion*, 86 F.3d at 559 (quoting S. Rep. No. 100-62, at 24 (1987)). Because damages are measured by "the wages the employee would have received," the working days method is the appropriate basis for calculating damages. *See Breedlove*, 140 F.3d at 801 (quoting S. Rep. No. 100-62, at 24 (1987)).

This Court and the majority of federal courts agree that back pay damages under the WARN Act are limited to the "working" days in a violation period. Here, Plaintiffs' argued, and the Court found, that AHSW ordered a plant closing on September 4, 2019, which was 27 days after August 8, 2019. Order 31, ECF No. 193. In the remaining 33 calendar days between September 4 and October 7, 2019, there are 23 working days excluding weekends.[2] Plaintiffs may

---

[2] Not all potential members of the class certified by the Court would have had 23 working days within the violation period. For example, liability for compensatory damages under the WARN Act is limited to no "more than one-half the number of days the employee was employed by the employer." 29 U.S.C. § 2104(a)(1). There are approximately, 30 employees hired in 2019 to which this limitation may apply.

7

recover back pay for a maximum of 23 working days within the violation period. *See, e.g.*, *Martinka Coal Co.*, 45 F. Supp. 2d at 523.

### 3. Plaintiffs' Damages Must Be Offset by Any Wages Paid to Them by AHSW for Work Performed in the Violation Period.

An employer's liability for back pay under the WARN Act must be reduced by "any wages paid by the employer to the employee for the period of the violation." 29 U.S.C. 2104(a)(2)(A). Payroll records confirm that Plaintiffs worked (and were paid for said work) within the violation period. Thus, the potential liability must be reduced by the amount of wages paid to Plaintiffs by AHSW. *See, e.g., Washington*, 860 F. Supp. at 313 ("Sixteen employees (who were stipulated to be class members) worked during the 60 days following [announcement of a plant closing]; therefore, Aircap may set off its liability to these Plaintiffs . . . ."). Plaintiffs' calculations do not reduce their back pay to account for the wages they were paid during the violation period.

### 4. Plaintiffs Have No Damages for "One Month's Health Plan Premium."

Several Plaintiffs include damages for "one month's health plan premium" based on the employee's premium cost of health coverage, depending on the plan. However, Plaintiffs provide no authority or factual basis for how they suffered these damages, or explain how an employee's portion of a health plan premium is a type of damage authorized by 29 U.S.C. § 2104(a). AHSW paid its share of Plaintiffs' health insurance premiums through the end of October 2019, and Plaintiffs have admitted in written discovery and deposition that they had health insurance coverage through October 31, 2019. It is undisputable that the October 31, 2019 coverage end date is *outside* the violations period. Accordingly, Plaintiffs had health insurance coverage (including having AHSW pay its share of premiums) throughout the violation period and have not suffered damages for the cost of any health insurance.

B.   **Defendants' Position on Individual Plaintiffs' Damages**

Correcting for the issues identified above, Defendants have calculated Plaintiffs' alleged damages as follows:

1.   **August Ullum**

Mr. Ullum was paid a salary equal to an hourly rate of $48.08 based on a five-day workweek with eight hours each day. Ullum Dep. 79:3-21, Ex. 1. His payroll records include pay for hours worked through the pay period ending on October 5, 2019. Ex. 1 Mr. Ullum received the following compensation after September 4, 2019:

|  | 9/13/19 (9/5/19 – 9/7/19) | 9/27/19 (9/8/19 – 9/21/19) | 10/11/19 (9/22/19 – 10/5/19) | 10/25/19 (10/6/19 – 10/19/19) | Wages Paid (9/5/19 – 10/8/19) |
|---|---|---|---|---|---|
| **Regular Hours** | $697.16[3] | $192.32 | $0.00 | $0.00 | $889.48 |

As a result, Mr. Ullum's back pay may be calculated as follows:

| Name | Hourly Rate | Day Rate | Day Rate*23 Working Days | Less Wages Paid (9/5/19 – 10/8/19) | Back Pay |
|---|---|---|---|---|---|
| Ullum, August | $48.08 | $384.64 | $8,846.72 | $889.48 | $7,957.24 |

Mr. Ullum did not elect to receive health insurance under AHSW's plan for employees. Ullum Dep. 21:17-20, Ex 1. Plaintiffs correctly assign no damages to Mr. Ullum for the value of any benefits.

2.   **Keith Reed**

Mr. Reed was paid a salary equal to an hourly rate of $58.94 based on a five-day workweek with eight hours each day. Reed Dep. 20:19-23, Ex. 2. His payroll records include pay for hours

---

[3] According to timekeeping records produced at Bates No. 16769, Mr. Ullum worked 10 regular hours on 9/5/19 and 4 ½ regular hours on 9/6/19. Given his hourly rate of $48.08, AHSW paid him $697.16.

9

worked through October 5, 2019. Ex. 2. Mr. Reed received the following compensation after September 4, 2019:

|  | 9/13/19 (9/5/19 – 9/7/19) | 9/27/19 (9/8/19 – 9/21/19) | 10/11/19 (9/22/19 – 10/5/19) | 10/25/19 (10/6/19 – 10/19/19) | Wages Paid (9/5/19 – 10/8/19) |
|---|---|---|---|---|---|
| Regular Hours | $471.52[4] | $4,184.74 | $471.52 | $0.00 | $5,127.78 |

As a result, Mr. Reed's back pay may be calculated as follows:

| Name | Hourly Rate | Day Rate | Day Rate*23 Working Days | Less Wages Paid (9/5/19 – 10/8/19) | Back Pay |
|---|---|---|---|---|---|
| Reed, Keith | $58.94 | $471.52 | $10,844.96 | $5,127.78 | $5,717.18 |

Mr. Reed did not elect to receive health insurance under AHSW's plan for employees. Reed Dep. 27:7-20, Ex. 2. Plaintiffs assign no damages to Mr. Reed for the value of any benefits.

### 3. Mark Garan

Mr. Garan's hourly rate was $24.73. He worked thirty-six hours each week.[5] Garan Dep. 10:6-12, Ex. 3. His payroll records include pay for hours worked through the pay period ending on September 21, 2019. Ex. 3. Mr. Garan received the following compensation after September 4, 2019:

|  | 9/13/19 (9/5/19 – 9/7/19) | 9/27/19 (9/8/19 – 9/21/19) | 10/11/19 (9/22/19 – 10/5/19) | 10/25/19 (10/6/19 – 10/19/19) | Wages Paid (9/5/19 – 10/8/19) |
|---|---|---|---|---|---|
| Regular Hours | $197.84[6] | $598.47 | $0.00 | $0.00 | $796.31 |

As a result, Mr. Garan's back pay may be calculated as follows:

---

[4] According to timekeeping records produced at Bates No. 16769, Mr. Reed worked 8 regular hours on 9/5/19 and 0 regular hours on 9/6/19. Given his hourly rate of $58.94, AHSW paid him $471.52.

[5] Plaintiffs' calculated Mr. Garan's back pay based on a 40-hour workweek. Damages Report 10, ECF No. 195-3. Defendants have calculated Mr. Garan's back pay based on a 36-hour workweek, which is consistent with his testimony. Garan Dep. 10:6-12, Ex. 3.

[6] According to timekeeping records produced at Bates No. 16769, Mr. Garan worked 8 regular hours on 9/5/19 and 0 regular hours on 9/6/19. Given his hourly rate of $24.73, AHSW paid him $197.84.

| Name | Hourly Rate | Day Rate | Day Rate*23 Working Days | Less Wages Paid (9/5/19 – 10/8/19) | Back Pay |
|---|---|---|---|---|---|
| Garan, Mark | $24.73 | $178.06 | $4,095.29 | $796.31 | $3,298.98 |

Mr. Garan had no damages for "one month's health plan premium." Mr. Garan left employment with AHSW to begin employment elsewhere on or about September 13, 2019. Had he remained employed with AHSW, his health insurance coverage would have been maintained through the end of October 2019, consistent with his fellow Plaintiffs.

**4. Elizabeth Schenkel**

Ms. Schenkel's hourly rate was $32.45. She worked thirty-six hours each week. Schenkel Dep. 13:17-22, Ex. 4. Her payroll records include pay for hours worked through October 5, 2019. Ex. 4. Ms. Schenkel worked no hours for the week of September 1, 2019 because she was on vacation. Ex. 4. She did work between September 8, 2019 and October 5, 2019. Ex. 4. Ms. Schenkel received the following compensation after September 4, 2019:

|  | 9/13/19 (9/5/19 – 9/7/19) | 9/27/19 (9/8/19 – 9/21/19) | 10/11/19 (9/22/19 – 10/5/19) | 10/25/19 (10/6/19 – 10/19/19) | Wages Paid (9/5/19 – 10/8/19) |
|---|---|---|---|---|---|
| **Regular Hours** | $0.00[7] | $1,061.12 | $486.75 | $0.00 | $1,547.87 |

As a result, Ms. Schenkel's back pay may be calculated as follows:

| Name | Hourly Rate | Day Rate | Day Rate*23 Working Days | Less Wages Paid (9/5/19 – 10/8/19) | Back Pay |
|---|---|---|---|---|---|
| Schenkel, Elizabeth | $32.45 | $233.64 | $5,373.72 | $1,547.87 | $3,825.85 |

Ms. Schenkel had no damages for "one month's health plan premium." AHSW maintained her health insurance coverage through the end of October 2019. Schenkel Dep. 18:2-7, Ex. 4.

---

[7] According to timekeeping records produced at Bates No. 16769, Ms. Schenkel did not work any regular hours on 9/5/19 or 9/6/19.

11

### 5. Emily Wines

Ms. Wine's hourly rate was $23.70. She worked thirty-six hours each week. Wines Dep. 10:24 – 11:12, Ex. 5. Her payroll records include pay for hours worked through October 5, 2019. Ex. 5. Ms. Wines received the following compensation after September 4, 2019:

|  | 9/13/19 (9/5/19 – 9/7/19) | 9/27/19 (9/8/19 – 9/21/19) | 10/11/19 (9/22/19 – 10/5/19) | 10/25/19 (10/6/19 – 10/19/19) | Wages Paid (9/5/19 – 10/8/19) |
|---|---|---|---|---|---|
| Regular Hours | $284.40[8] | $1,206.33 | $336.54 | $0.00 | $1,827.27 |

As a result, Ms. Wines's back pay may be calculated as follows:

| Name | Hourly Rate | Day Rate | Day Rate*23 Working Days | Wages Paid (9/5/19 – 10/8/19) | Back Pay |
|---|---|---|---|---|---|
| Wines, Emily | $23.70 | $170.64 | $3,924.72 | $1,827.27 | $2,097.45 |

Ms. Wines had no damages for "one month's health plan premium." AHSW maintained her health insurance coverage through the end of October 2019. Wines Dep. 34:2-8, Ex. 5.

### 6. Summary of Plaintiffs' Damages

Applying a 33-day violation period, calculating back pay based on working days, reducing back pay by "wages paid by [AHSW] for the period of the violation," and excluding the cost of insurance premiums paid by AHSW results in the following damages for Plaintiffs:

| Name | Hourly Rate | Day Rate | Day Rate*23 Working Days | Less Wages Paid (9/5/19 – 10/8/19) | Back Pay | Benefits | Total |
|---|---|---|---|---|---|---|---|
| Ullum, August | $48.08 | $384.64 | $8,846.72 | $889.48 | $7,957.24 | $0.00 | $7,957.24 |
| Reed, Keith | $58.94 | $471.52 | $10,844.96 | $5,127.78 | $5,717.18 | $0.00 | $5,717.18 |
| Garan, Mark | $24.73 | $178.06 | $4,095.29 | $796.31 | $3,298.98 | $0.00 | $3,298.98 |

---

[8] According to timekeeping records produced at Bates No. 16769, Ms. Wines worked 5 regular hours on 9/5/19 and 7 regular hours on 9/6/19. Given her hourly rate of $23.70, AHSW paid her $284.40.

12

| | | | | | | |
|---|---|---|---|---|---|---|
| **Schenkel, Elizabeth** | $32.45 | $233.64 | $5,373.72 | $1,547.87 | $3,825.85 | $0.00 | $3,825.85 |
| **Wines, Emily** | $23.70 | $170.64 | $3,924.72 | $1,827.27 | $2,097.45 | $0.00 | $2,097.45 |
| | | | | | | | $22,896.70 |

Although the WARN Act contains no mention of prejudgment interest, several courts have found a court may award prejudgment interest for a claim under the WARN Act. *See, e.g.*, *Messer*, 2021 WL 4705183, at *1; *Martinka Coal Co.*, 45 F. Supp. 2d at 523; *Frymire*, 61 F.3d at 772-75; *Dillard Dep't Stores, Inc.*, 15 F.3d at 1288-89. Defendants will work with Plaintiffs to calculate prejudgment interest based on the Court's determination of Plaintiffs' damages.

**C.  It is Premature to Decide Potential Class Members' Damages.**

The Court's August 2, 2022 order directed Plaintiffs to "submit an itemized damages report for each plaintiff . . . ." Order 37, ECF No. 193. But Plaintiffs' damages report also includes their calculations of the potential class members' damages. Plaintiffs' submission of damages on behalf of potential class members contradicts the Court's order, the law, and judicial economy.

First, Fed. R. Civ. P. 23(c)(2) requires notice for a Fed. R. Civ. P. 23(b)(3) class like this action. That requirement is "not . . . discretionary"; it "is designed to fulfill requirements of due process to which the class action procedure is of course subject." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974) (quotation marks omitted); *see also* 7AA Wright & Miller § 1786, at 492-95 ("Without [Rule 23(c)(2)'s] notice requirement it would be constitutionally impermissible to give the judgment binding effect against the absent class members . . . . In light of [*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and other cases] it seems clear that effective notice must be provided in a Rule 23(b)(3) action as a prerequisite to binding the absent members of the class."). Until receiving adequate notice, class members merely constitute "passive beneficiaries with no notice to take note of the suit." *Bedel v. Thompson*, No. 91-3448, 1992 WL

13

44883, at *4 (6th Cir. 1992). This is true even after a court certifies the class. *Id.* Following this logic, class members cannot be bound by any judgment until they have received notice and an opportunity to opt out of the class. *Richards v. Jefferson Cnty.*, 517 U.S. 793, 797 n.4 (1996); *see also Messer*, 2020 WL 1472217, at *1 ("Because notice to the class has not been provided, my rulings bind only the named plaintiffs and not the non-plaintiff class members . . . ."). Because notice has not been provided to potential class members, it is inappropriate under the principles of Due Process to determine their damages.

Second, Fed. R. Civ. P. 23's language contemplates that certification notice is notice of an ongoing class action subject to judgment in the future. Fed. R. Civ. P. 23(c)(2) ("In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member of the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel."); *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995) ("The language of Rule 23(c)(2) supports the view that notice must be sent before a judgment has been granted. First, it applies only to a class action 'maintained' before the district court. Second, the rule states that the notice must advise the member that 'the judgment, whether favorable or not, will include all members who do not request exclusion.' The rule thus clearly contemplates that the notice requirement will be met before the parties are aware of the district court's judgment on the merits."). Sending notice after the Court has determined potential class members' damages is inconsistent with Fed. R. Civ. P. 23.

Third, while unlikely, it is possible potential members of the class may opt out. Because the assessment of damages requires analyzing employees' working hours and wages earned in the violation period, it makes no sense to determine these individuals' damages, if any, until the class is identified and members have an opportunity to opt out. The Court should postpone any determination of the potential class members' damages until after they have received notice of this action and been provided an opportunity to opt out. Defendants propose the schedule below to allow notice and an opportunity for class members to opt out before the Court determines potential class members' damages.[9]

### D. It is Premature to Decide Attorneys' Fees and Costs.

The WARN Act provides, "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 29 U.S.C. § 2104(a)(6). When a court exercise its discretion to award attorney's fees and costs, Federal Rules of Civil Procedure 23(h) and 54 govern the procedure for doing so. Fed. R. Civ. P. 23(h). A claim for an award of attorneys' fees and costs "must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets." Fed. R. Civ. P. 23(h)(1). Class counsel *must* direct any motion for attorneys' fees and costs to "class members in a reasonable manner." *Id.* Here, there is no class, and no class members have been notified they are potential members of a class. Plaintiffs have not moved for attorneys' fees and costs or directed the motion to potential class members. According to counsel for Plaintiffs and the Class, "Plaintiffs' intend to file a Motion for Attorney's Fees and Costs to support the attached fees and expenses incurred to date." Because Plaintiffs have not moved for attorneys' fees and costs under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54 or directed the motion

---

[9] Unlike defendants in *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2016 WL 10490288, at *7 (N.D.W. Va. Aug. 25, 2016), Defendants are not seeking reconsideration of the Court's orders on summary judgment or class certification. Instead, Defendants merely seek to postpone the Court's determination of the potential class members' damages until they have received notice and an opportunity to opt out.

to class members, it is premature to decide any issues related to Plaintiffs' claim for attorneys' fees and costs. Defendants will respond to Plaintiffs' calculation of attorneys' fees and costs when they file an appropriate motion.

### E. Defendants Propose the Court Set the Following Scheduling Order to Determine Class Damages and Whether to Award Attorneys' Fees and Costs.

Defendants propose the Court set the following scheduling order to determine class member damages and whether to award attorneys' fees and costs to Class Counsel:

| Event | Deadline |
| --- | --- |
| Class Counsel may submit itemized damages for class members who did not opt out. | 15 days after expiration time period for class members to opt out of class. |
| Defendants may submit itemized damages for class members who did not opt out. | 30 days after Plaintiffs' submission of itemized damages for class members. |
| Class Counsel Motion for Attorneys' Fees and Costs. | 15 days after Court order on class member damages. |
| Defendants' Response to Class Counsel Motion for Attorneys' Fees and Costs | 14 days after Class Counsel's Motion for Attorneys Fees and Costs. |

In conclusion, Defendants oppose "Plaintiffs' Itemized Damages Report" because the calculation proposed therein (a) uses a maximum 60 day violation period when notice was given to reduce that period; (b) improperly seeks back pay for all calendar days instead of "working" days in violation period consistent with the law of this Court and the majority; (c) fails to reduce back pay damages by wages paid during the violation period, as required by statute; and (d) include a month's health insurance premium damage without factual or legal support. Additionally, Defendants oppose the Report to the extent it prematurely seeks class-wide damages and attorneys' fees and costs.

<u>/s/ Mitchell J. Rhein</u>
Kevin L. Carr (WV Bar # 6872)
Chelsea E. Thompson (WV Bar #12565)
Mitchell J. Rhein (WV Bar # 12804)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East
Charleston, WV  25301
Telephone: 304.340.3800
Fax: 304.340.3801
E-mail: kcarr@spilmanlaw.com
E-mail: cthompson@spilmanlaw.com
E-mail: mrhein@spilmanlaw.com

Michael S. Garrison (WV Bar # 7161)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800 (Zip: 26501)
P. O. Box 615
Morgantown, WV 06507-0615
Telephone: 304.291.7920
Fax: 304.291.7979
E-mail: mgarrison@spilmanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**KEITH REED, ELIZABETH SCHENKEL,
EMILY WINES, MARK GARAN,
and AUGUST ULLUM, individually and on
behalf of others similarly situated,**

    **Plaintiffs,**

v.                                                  Civil Action No.: 5:19-cv-263
                                                       Judge Bailey

**ALECTO HEALTHCARE SERVICES LLC,
and ALECTO HEALTHCARE SERVICES
WHEELING, LLC d/b/a OHIO VALLEY
MEDICAL GROUP and d/b/a OVMC
PHYSICIANS,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    I certify that on August 22, 2022 I electronically filed the **Defendants' Response to Plaintiffs' Itemized Damages Report** with the Clerk of the Court using the CM/ECF system, which will send electronic notice to all counsel of record as follows:

Timothy F. Cogan, Esquire
tfc@walslaw.com
Cassidy, Cogan, Shapell & Voegelin, L.C.
The First State Capitol Building
1413 Eoff Street
Wheeling, WV  26003

Laura Davidson, Esquire
laura@ourfuturewv.org
Bren Pomponio, Esquire
bren@msjlaw.org
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV  25301

Vincent J. Mersich, Esquire
vmersich@stembercohn.com
Maureen Davidson-Welling, Esquire
mdw@stembercohn.com
John Stember, Esquire
jstember@stembercohn.com
Stember Cohn & Davidson-Welling, LLC
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219

F. Alex Risovich, Esquire
alex.risovich@risovichlaw.com
Risovich Law Offices, PLLC
3023 Pennsylvania Avenue
Weirton, WV  26062

                                              /s/ Mitchell J. Rhein
                                              Mitchell J. Rhein (WVSB # 12804)