# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| KEITH REED, ELIZABETH SCHENKEL, EMILY WINES, MARK GARAN, and AUGUST ULLUM, individually and on behalf of others similarly situated, | Case No. 5:19-cv-00263-JPB |
| | Judge John Preston Bailey |
| Plaintiffs, | CLASS ACTION |
| v. | |
| ALECTO HEALTHCARE SERVICES LLC, and ALECTO HEALTHCARE SERVICES WHEELING, LLC d/b/a OHIO VALLEY MEDICAL GROUP and d/b/a OVMC PHYSICIANS, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT

Timothy F. Cogan, Esq. (WVSB # 764)
**Cassidy, Cogan, Shapell & Voegelin, LC**
The First State Capitol Building
1413 Eoff Street
Wheeling, WV 26003
T.: (304) 232-8100

F. Alex Risovich, Esq. (WVSB # 10866)
**Risovich Law Offices, PLLC**
3023 Pennsylvania Avenue
Weirton, WV 26062
T.: (304)723-2588

Bren Pomponio, Esq. (WVSB # 7774)
Laura Davidson, Esq. (WVSB # 13832)
**Mountain State Justice, Inc.**
1217 Quarrier Street
Charleston, WV 25301
T.: (304) 344-3144

Maureen Davidson-Welling, Esq. (*pro hac vice*)
John Stember, Esq. (*pro hac vice*)
**Stember Cohn & Davidson-Welling, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445

Dated: _____, 2022

*Attorneys for Plaintiffs*

# I. INTRODUCTION

At the August 25, 2022 hearing held on Plaintiffs' Itemized Damages, the Court ruled as a matter of law that Defendants' Notice to the employees of the Ohio Valley Medical Center ("OVMC"), while untimely, otherwise complied with the requirements of the Worker Adjustment Retraining and Notification Act of 1988 (the "WARN Act"), 29 U.S.C. § 2101, *et seq*. The Court's ruling on the Notice– which determined the length of the violation period for which the Class is entitled to back pay –significantly impacts the Class and results in the reduction of Class damages from over $4,600,000 to approximately $2,600,000.00, excluding interest, based on a workday calculation. Given the record evidence establishing that Defendants' Notice was defective, and based on the severe impact on the Class, Plaintiffs' duty to the Class requires them to seek clarification of the Court's summary judgment ruling and request that the Court alter or amend its Order entered on August 25, 2022.

As more fully developed below, there is no genuine issue of material fact, and the Class is entitled to judgment as a matter of law that Defendants' so-called Notice failed to include the expected closure date and was not, as a matter of fact and law, based on the best information available to Defendants. Accordingly, the Court should alter or amend its Order and find that the violations period was forty-three (43) workdays.

# II. DISCUSSION

**A.     Standard of Review**

Rule 59(e) or the *Federal Rules of Civil Procedure* provides twenty-eight (28) days to seek to amend or alter a judgment.

> There are three circumstances in which the district court can grant a Rule 59(e) motion: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d

2

396, 403 (4th Cir.1998). . . . "[M]ere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir.1993).

*U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). The Court's Order on summary judgment was entered on August 2, 2022. (Order Resolving Motions (hereinafter "Summary Judgment Order") [ECF Doc. # 193].) Plaintiffs seek clarification of the Court's Summary Judgment Order and also to alter or amend the Court's August 25, 2022, Order to the extent the Court entered judgment as a matter of law on the calculation of the appropriate violation period for determining the damages available to the Class.

**B.       Amending the Calculation of the Violation Period is Necessary to Correct Clear Error of Law and to Prevent a Manifest Injustice.**

In its briefing attendant to the cross Motions for Summary Judgment, Plaintiffs repeatedly presented argument and supporting evidence that Defendants' August 8, 2019, letter failed to comply with the WARN Act. Notice is to be in writing, "specific," and based on "the best information available…at the time notice is served." 20 C.F.R. § 639.7(a). Notice to affected employees must tell them the "expected date when the plant closing or mass layoff will commence;" the "expected date when the individual employee will be separated;" and certain other information. 20 C.F.R. § 639.7(d). As the DOL stated in promulgating the WARN regulations, "[t]he date of the layoff or schedule of layoff dates is **essential** to enable all recipients of notice to understand when employment losses actually will occur." 54 Fed. Reg. 16042-01 at 16060 (emphasis added). There is no genuine issue of material fact that Defendants' August 8, 2019, letter failed to notify the Class of the expected date when the plant closing would occur, and that the expected date of the closure of the hospital was not based on the best information available to Defendants.

The Court entered summary judgment that Defendants ordered a plant closing when they closed OVMC on September 4, 2019. *See* Summary Judgment Order at 24. Additionally, the Court concluded Defendants had sufficient information upon which it knew the hospital would be closing in early September, but failed to provide timely notice consistent with the WARN Act:

> Had defendants taken MPT's denial and started to send out notices any day in June, defendants would have effectively given employees 60-days notice pursuant to the WARN Act. However, defendants waited an additional two months before sending Notice that OVMC was permanently closing.

(*Id.* at 34-35).

Plaintiffs also produced abundant evidence that Defendants' August 8, 2019, letter did not specifically communicate an accurate closure date considering the best information available to Defendants. For example, in March 2019, Defendant Alecto Healthcare Services, LLC ("AHS") decided to divest specified hospitals, including OVMC, which were cross-collateralized with certain of AHS' other, more lucrative businesses. PX 12[1] at 33042; PX 52. OVMC and EORH had significant operating losses in 2018, PX 12 at 33053, and AHS contemplated keeping these two hospitals open for another six months while it tried to sell them. AHS was interested only in selling OVMC or shutting it down. AHS was unwilling to spend further capital to operate or improve OVMC—as evidenced by Defendants' decision to forego and not use funds available under the lease agreement with MPT.

The timeline AHS circulated internally on August 6, 2019—just two days before AHS sent the final version to regulators—identified September 8, 2019, as OVMC's target closure date. PX 28 at 31922 ("Target Closure 9/8/19"). AHS revised its timeline to October 1, 2019, before submitting it to West Virginia state officials, but then shut OVMC down on September 4, around

---

[1] References to PX __ refer to Plaintiff's exhibits attached to their Motion to Certify Class. [ECF Doc. # 124.]

4

the time originally planned. Instead of waiting 60 days, Defendants began the "closure process" immediately. More particularly, OVMC stopped accepting new patients after August 21, PX 21 at 9; cut offered services (*e.g.*, MRIs by August 19), PX 24 at 17589; terminated medical office leases by August 30, PX 25 at 15138; reduced inventory and told patients in mid-August 15 that OVMC could close ***anytime before*** October 7, PX 26 at 33025. As they cut services, Defendants reduced employee hours to save themselves money. *See, e.g.*, PX 27 at 2730 (discussing calling employees off).

Under these circumstances, the official termination dates and schedule offered in the Notices were a sham, a record-keeping fiction, wholly unrelated to the dates Defendants' expected plant closure to occur. [*See, e.g.*, ECF No. 124-32 at REED1 (notes of 9/3/19 managers meeting where CEO Dunmyer told managers, "Employees will not be laid off at this time, but most will have their hours reduced to zero…Employees cannot be laid off during [W]arn notice period, which ends Oct. 7th.").] There was no genuine issue of fact that Defendants' so-called Notice was not based on the best information available nor provided the expected closure date as the WARN Act requires.

The Court's Summary Judgment Order appears to have reserved judgment on whether the Defendants' so-called Notice conformed to the requirements of the WARN Act. *See* Summary Judgment Order at 31 ("Even if the August 8, 2019 letter met all statutory requirements, the letter was not sent timely and did not provide affected employees with 60 days' notice as required by law."). Earlier in the Order, the Court did observe, "The letter sufficiently states whether the closing is permanent or temporary, provides the expected date when OVMC was closing, and a name and telephone number of a company official to contact for further information." *Id.* at 30. At the hearing held on August 25, the Court acknowledged the Court's Summary Judgment Order

5

was "ambiguous" on the issue of whether the August 8 letter complied with the substance requirements of the WARN Act. Indeed, the Court made no findings that the August 8, 2019, letter was based on the best information available. And to the extent the Court concluded that the letter provided "the expected date when OVMC was closing," such a conclusion is in conflict with the undisputed evidence presented and the Court's findings with respect to the faltering business defense. *Id.* at 34-35. At a minimum, such a conclusion would be at best a genuine issue of fact, although Defendants presented no evidence they genuinely expected the hospital to close on October 7. To the contrary, the evidence presented was consistent that Defendants expected to close the hospital in early September, and Defendants attempted to keep employees "on the books" until October 7 in order to evade liability under the WARN Act.

At the hearing held on August 25, 2022, the Court first agreed that the August 8, 2019, letter did not comply with the WARN Act, but later reversed its decision and announced the violation period should be calculated as if the August 8, 2019, letter was good Notice, consistent with the WARN Act's requirements. The Court's oral ruling was referenced in the Order entered later in the afternoon, after the hearing. [ECF Doc. # 198.] However, the Court previously held these Plaintiffs "**are entitled to receive their full wages and benefits** during a 'congressionally guaranteed "transition time to adjust to the prospective loss of employment."'" Summary Judgment Order at 29.

The decision to abbreviate the violation period in this case comes at a significant cost to the Class: approximately $2,000,000.00. (*Compare* Exs. A (itemization of class damages for 27 workdays) & B (itemization of class damages for 43 workdays).) As the Court already observed,

> The purpose of the WARN Act, as articulated by regulation, is to provide protection to workers, their families, and communities in advance of plant closings to provide notification 60 calendar days in advance of plant closings and mass layoffs . . . provid[ing] worker sand their families some transition time to adjust to the

6

>   prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

Summary Judgment Order at 23-24 (quoting 20 C.F.R. § 639.1(a)). The employees of OVMC, their families and the Wheeling community are entitled to their full wages and benefits. To be sure, the Class and the City of Wheeling were hit hard by the abrupt closure of OVMC. Moreover, Defendants should not be able to evade nearly $2,000.000.00 in wages and benefits due to the Class by engaging in a record-keeping fiction, and disseminating, knowingly, a misleading Notice that does not provide the date Defendants truly expected to close the hospital.

### III. CONCLUSION

The Court's August 25, 2022, Order calculating the violation period as 26 workdays is in direct conflict with the Court's findings in its Summary Judgment Order and the undisputed evidence. Accordingly, the Court's August 25, 2022, Order contains clear error. Moreover, the calculation of the abbreviated violations period would result in manifest injustice to the Plaintiffs and the Class they represent, depriving them of $2,000,000.00 in wages and benefits to which they are entitled. Plaintiffs therefore respectfully request the Court alter or amend its August 25, 2022, Order to provide Plaintiffs and the Class with back pay and benefits for the 43 workdays between September 4, 2019, and November 3, 2019.

Respectfully submitted,

/s/ Bren J. Pomponio

| | |
|---|---|
| Timothy F. Cogan, Esq. (WVSB # 764) | Bren Pomponio, Esq. (WVSB # 7774) |
| tfc@walslaw.com | bren@msjlaw.org |
| **Cassidy, Cogan, Shapell & Voegelin, LC** | **Mountain State Justice, Inc.** |
| The First State Capitol Building | 1217 Quarrier Street |
| 1413 Eoff Street | Charleston, WV 25301 |
| Wheeling, WV 26003 | T.: (304) 344-3144 |
| T.: (304) 232-8100 | |
| | Maureen Davidson-Welling, Esq. (*pro hac vice*) |
| F. Alex Risovich, Esq. (WVSB # 10866) | mdw@stembercohn.com |
| alex.risovich@risovichlaw.com | John Stember, Esq. (*pro hac vice*) |
| **Risovich Law Offices, PLLC** | jstember@stembercohn.com |
| 3023 Pennsylvania Avenue | **Stember Cohn & Davidson-Welling, LLC** |
| Weirton, WV 26062 | The Hartley Rose Building |
| T.: (304)723-2588 | 425 First Avenue, 7th Floor |
| F.: (304)723-2504 | Pittsburgh, PA  15219 |
| | T.: (412) 338-1445 |
| Dated: _____ | *Attorneys for Plaintiffs* |