1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF WEST VIRGINIA

3    Keith Reed, et al.,

4          Plaintiffs,

5              VS.                    CIVIL ACTION NO.

6                                     5:19-cv-263

7    Alecto Healthcare Services
     Wheeling, LLC,
8          Defendant.

9                          - - -

10        Proceedings had in the status conference of the
     above-styled action on August 25, 2022, before Honorable John
11   Preston Bailey, District Judge, at Wheeling, West Virginia.

12                         - - -

13        APPEARANCES:

14        On behalf of the Plaintiffs:

15        Maureen Davidson-Welling
          Stember, Cohn & Davidson-Welling, LLC
16        425 First Avenue, 7th Floor
          Pittsburgh, PA  15219
17        412.338.1445

18        Bren J. Pomponio
          Mountain State Justice, Inc.
19        1217 Quarrier Street
          Charleston, WV  25301
20        304.344.3144

21        Timothy F. Cogan
          Cassidy, Cogan, Shapell & Voegelin, LC
22        1413 Eoff Street
          Wheeling, WV  26003
23        304.232.8100

24        APPEARANCES CONTINUED ON NEXT PAGE

25

1          On behalf of the Plaintiffs, continued:

2          Frederick A. Risovich
           Risovich Law Offices
3          3023 Pennsylvania Avenue
           Weirton, WV  26062
4          304.723.2588

5          On behalf of the Defendant:

6          Mitchell J. Rhein
           Chelsea E. Thompson
7          Spilman, Thomas & Battle, PLLC
           300 Kanawha Boulevard E.
8          PO Box 273
           Charleston, WV  25321-0273
9          304.340.3800

10

11         Proceedings recorded utilizing realtime translation.
           Transcript produced by computer-aided transcription.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    Thursday Afternoon Session,

2                                    August 25, 2022, 2:00 p.m.

3                          - - -

4          THE CLERK:  This is the case of Reed, et al., versus

5  Alecto Healthcare Services, LLC, et al., Civil Action Number

6  5:19-CR-263.

7          Will the parties please note their appearance for the

8  record.

9          MR. POMPONIO:  Good afternoon.  Bren Pomponio and

10  Molly Davidson-Welling, Tim Cogan and Alex Risovich on behalf

11  of the plaintiffs.

12          MR. RHEIN:  Mitchell Rhein and Chelsea Thomas of

13  Spilman, Thomas & Battle on behalf of defendant.

14          THE COURT:  All right.  We are here for a number of

15  issues, probably more than you had bargained on.

16          Where are we on notice to the class?

17          MR. POMPONIO:  We're waiting for approval from the

18  Court.  We have obtained an administrator that is willing to

19  get the notice out quickly, as soon as it's approved.

20          THE COURT:  Have you all agreed on a notice?

21          MR. POMPONIO:  We've filed it with the Court and we

22  didn't hear anything from defendants about any objections they

23  had to it.

24          MR. RHEIN:  We have no objections to the notice

25  insofar as we're going to -- insofar as class damages are

1   decided after notice.  We have more of an objection to the

2   timing of things --

3              THE COURT:  I understand that.

4              MR. RHEIN:  -- than the content of the notice.

5              THE COURT:  So I'll approve the notice.

6              MR. POMPONIO:  Your Honor, there's a couple dates

7   that we need from the Court.

8              THE COURT:  That's why I'm having him get that for

9   me.  That really wasn't on the docket for today, so they didn't

10  give it to me.

11             Assuming I give you dates today, how soon can you get

12  notice out?

13             MR. POMPONIO:  The administrator says they need ten

14  business days to get the notice out.

15             THE COURT:  All right.  So that's -- let's say we use

16  September 12th, which is -- so the opt-out deadline would be

17  October 17.

18             MR. RHEIN:  Yes, I think that's right, based on 35

19  days.

20             THE COURT:  And then we have to set a class damages

21  hearing.  Why can't I set the ground rules for class damages

22  today?

23             MR. RHEIN:  Why can you not set the ground rules, are

24  you talking about the general framework of what they may

25  recover or --

1           THE COURT:  Yes.

2           MR. RHEIN:  -- the individuals' damages?  I think as

3   part of the law of the case, that's going to be the natural

4   result.  Some of the plaintiffs will have very similar or

5   identical components of their damages that the class would.  My

6   objection is more to deciding, class member number one, your

7   damages are X., class member number two, your damages are X.

8           THE COURT:  What's wrong with making the calculation

9   even if I don't award anything based on that calculation until

10  we see whether they opt out?

11          MR. RHEIN:  What's wrong with making the calculation

12  before -- I think there's a couple things.  Logistically, I

13  don't think -- the math that would have to go into deciding

14  class members' damages hasn't been done yet.  Plaintiffs, the

15  way they've calculated plaintiffs' damages, don't account for

16  individuals who have earned backpay after -- within the

17  violation period.  There are things that would have to be

18  calculated to decide that.  That's a pragmatic aspect to it,

19  but there --

20          THE COURT:  We could complete that calculation before

21  October 17th.

22          MR. RHEIN:  Yeah, I think we could complete that

23  calculation before October 17th.  I mean, there's 6 --

24  plaintiffs' calculation is 696 plaintiffs.  I think that could

25  be done before October 17th, but that's the pragmatic aspect to

1   it, but I think there's a due process aspect to it as well,

2   which can I sit back and wait and see what my damages are and

3   then decide whether or not I'm going to opt out or not.

4           THE COURT:  That's assuming that they would know.

5           MR. RHEIN:  Yeah.  Correct.  I guess I'm not

6   understanding how this situation would unfold?  Are we going to

7   decide today that class member one is going to get --

8           THE COURT:  I'm not going to decide that today.  What

9   I'm going to decide today is I'm going to rule on your

10  objections to what they have so far.  And I'm going to tell

11  them to go recalculate the damages in accordance with those

12  rulings, and then I will have them turn their new calculations

13  over to you by a certain date to see if there are any

14  additional objections.

15          MR. RHEIN:  Okay.

16          THE COURT:  Anything wrong with that?

17          MR. RHEIN:  I don't think there's anything wrong with

18  that.

19          THE COURT:  Okay.

20          MR. RHEIN:  We would be fine with that.

21          THE COURT:  All right.

22          We have a number of objections raised.  The first

23  objection is that the period of the violation is 33 days.  I

24  think that's correct.  You have anything to the contrary?

25          MR. POMPONIO:  Yes, Your Honor.  There's a number of

1    problems, legally speaking, with the defendant's objections.

2    We'll start first with the assumption that the Court ruled that

3    good notice was provided on August 8th.  The Court's order

4    states even if the August 8th, 2019 letter met all the

5    statutory requirements, the letter was not sent timely, so we

6    don't believe that the Court has made that finding that that

7    notice that went out then was good notice.  And there are

8    several reasons why it wasn't.

9            The WARN Act requires that the notice be specific and

10   based on information -- best information available at the time

11   it's served.  And that's at 20 CFR Section 639.7(a).  That

12   notice is supposed to provide effected employees, provide them

13   whether or not the planned action is expected to be permanent

14   or temporary, the expected date when the plant closing or mass

15   layoff will commence, and the expected date when an individual

16   employee will be separated.  And that's in the same CFR

17   section, but it's in paren (d).

18           And the -- in promulgating these regulations, the

19   U.S. Department of Labor said that, quote, the date of the

20   layoff or schedule of layoff dates is essential to enable all

21   recipients of notice to understand when the employment losses

22   actually will occur.  And that's at the 54 Federal Register

23   16042-01.  That's a cite.  The page that it's on is 16060.

24           Let's talk about what the Court seems to have

25   actually concluded in its order.  The Court concluded that the

1    plant closing occurred on September 4th, 2019.  That's at the

2    Court's order at page 23.  The notices state that the closing

3    is -- would be on October 7th.  So that essential aspect to the

4    notice is missing in this case.

5             The other requirement, that it be based on the best

6    information available at the time the notice was sent out, is

7    also missing in this case as a matter of law.  The Court --

8    another holding of the Court in its order was that the

9    defendants didn't qualify for the faltering business defense,

10   and that discussion is at the Court's order, pages 33 to 34.

11            And in that discussion, the Court correctly noted the

12   defendants were aware no later than June 30th, 2019, that it

13   lacked the capital to continue running the hospital, yet it

14   didn't send out the notice at that time.  And the Court goes on

15   to indicate, had they sent the notice out at that time, 60 days

16   would have passed before the hospital shut down.  And so the

17   Court has already, on the record that is before it, observed

18   that this notice did not contain -- did not contain the date of

19   the plant closing and did not -- was not based on the best

20   information available to the defendants at the time it was

21   served.

22            In fact, the facts which do not appear to be in

23   dispute were that AHS was circulating internal documents on

24   August 6th, 2019, two days before they sent out the notice, the

25   so-called notice in this case, that identified -- that was

1   going to identify to the regulators a September 8th, 2019, as

2   OVMC's target closure date.  And that time line, that target

3   closure time line, is at Exhibit 28 to plaintiffs' motion for

4   class certification.  And I have a copy of that, if the Court

5   would like me to tender that.

6           AHS revised that time line, before submitting it to

7   the regulators, to October 1st, but then, as we know, they shut

8   down the hospital on September 4th, very close in time to the

9   original target closure date.

10          Once that August 8th correspondence, the so-called

11  notice, was sent out, the defendants began closing the

12  hospital.  In particular, they stopped accepting new patients

13  after August 21st, and -- 2019, and that's located -- the

14  evidence of that is located at Exhibit 21 at page 9 of

15  plaintiffs' motion for class certification.  They cut off

16  several offered services, including MRIs, by August 19th.

17  That's located at Exhibit 24 to the motion for class

18  certification.  They terminated medical office leases by August

19  30th.  And that's Exhibit 25 to the motion for class

20  certification.  And they reduced inventory and told patients in

21  mid-August, on August 15th, that OVMC could close any time

22  before October 7th.  And that's at Exhibit 26 to the motion for

23  class certification.

24          As they cut these services all through August, they

25  continued to reduce and lay off employees, class members, to

1  save themselves money, and to avoid what the WARN Act requires,

2  and that is 60 days' either notice or wages and benefits.

3              So under the circumstances and the facts that don't

4  appear to be subject to any dispute, the October 7th date was a

5  sham.  And the defendants here used a clever recordkeeping

6  accounting trick.

7              THE COURT:  I know what they did.

8              MR. POMPONIO:  And so that notice is not recognized

9  notice under the WARN Act.  It doesn't have the essential

10 elements in which to inform the class and the employees of the

11 impending closure, and so therefore the defendants should not

12 be -- should not receive any credit for the time between August

13 8th and September 4th in which they're trying to claim credit

14 for now.

15             Additionally, the WARN Act provides specifically when

16 the notice period may be reduced.  And that's at 29 U.S.C.

17 Section 2102.  And none of -- the defendants don't meet any of

18 those conditions in which they can effectively reduce the

19 notice period or the violation period in this case.

20             THE COURT:  You'll agree, though, that if I find the

21 August 8 letter to be sufficient, that then you're only

22 entitled to 33 days?

23             MR. POMPONIO:  No.  Because we also have a dispute

24 about this -- about the calculations the defendants do in which

25 they propose to eliminate weekends in the calculation of this

 1   violation period.  There's -- of course, the Court is probably

 2   aware of the circuit split between whether or not there's a

 3   calendar day or workday model used for the calculation of the

 4   backpay.

 5              THE COURT:  And the Fourth Circuit says?

 6              MR. POMPONIO:  The Fourth Circuit has not passed on

 7   that, but --

 8              THE COURT:  They affirmed Judge Keeley.

 9              MR. POMPONIO:  They did affirm Judge Keeley, but they

10   didn't take up that issue at all.  And the reason that they

11   didn't take up that issue at all is because Judge Keeley did

12   not omit weekends from her backpay calculations.  I mean, Judge

13   Keeley specifically, on page 527 of the *UMWA v. Martinka Coal*

14   *Company* case, and the citation is 45 F.Supp. 2d 521 and the

15   pinpoint is at 527, she acknowledged that the workers -- the

16   class members worked on Saturdays and Sunday.  And, some of

17   them were even regularly scheduled.

18              And that's what you have here.  You have a hospital

19   that is open 24 hours a day, seven days a week.  People are

20   working all through the weekends.

21              THE COURT:  Seven days?

22              MR. POMPONIO:  Right.

23              THE COURT:  I mean, one employee is working seven

24   days?

25              MR. POMPONIO:  I'm certain that there's examples of

 1   people that have worked seven-day shifts, and they would get

 2   overtime for that, but we're at a disadvantage in this case, to

 3   no fault of the plaintiffs, because the only payroll records

 4   that were produced by the defendants were starting August 2019,

 5   after the shutdown started to begin.  So we don't have payroll

 6   records going back in time to show where everybody else has --

 7   what the class worked, what exactly were their regular --

 8   regularly scheduled hours.

 9          Presumably, the defendants didn't pay their vendor

10   and they were unable to obtain those, but they said in

11   discovery they don't have them and they couldn't turn them

12   over, so all we've got is August 2019 and September 2019 going

13   into the October 7th date.  And so there -- the defendants

14   can't produce any evidence and say, no, this plaintiff's

15   calculation is not consistent with the workday method, where

16   you have a situation where people are working seven days a

17   week, different employees.  And to just arbitrarily say, let's

18   not put down any backpay, any wages for weekends, wouldn't be

19   consistent with how people were paid and how people worked at

20   the hospital.

21          THE COURT:  Didn't you calculate on the basis of five

22   days?

23          MR. POMPONIO:  We have done those calculations, and

24   when Your Honor was asking opposing counsel about doing all the

25   calculations consistent with whatever your rulings are, we have

1    done that.  And we have the charts prepared here today.

2              THE COURT:  Same charts you've already given me?

3              MR. POMPONIO:  No.  We have done other ones,

4    contingent ones, based on how the Court would rule today.  And,

5    in fact, the charts that we gave you need to -- we concede that

6    any wages paid by these defendants for work done at OV -- at

7    this hospital would be a credit to them.  But we have not given

8    them the credit of wages paid for work done at EOVH, at the

9    East Ohio Valley Hospital, which is owned by a separate entity,

10   a nonparty to this case, and the WARN Act says specifically

11   when wages paid -- when the defendants get credit for that and

12   there's no authority that third party nonparty defendants --

13   nonparties, that wages paid by nonparties could be credited to

14   these defendants.

15             So we've prepared 60 days -- 60 individual days of

16   backpay that also provide the credit for the wages actually

17   paid to the class and the plaintiffs based on their work at

18   OVMC.  And we've also included the damages for those class

19   members who were flexed earlier than the plant closure in

20   advance -- the facts being that they knew that they were going

21   to close this back in June, when MPT told them that they

22   weren't going to provide any more capital, and so there's --

23   those individuals that had less than 33 days, they're included

24   in our calculations as well.

25             MR. RHEIN:  For the last point, I don't understand

1   why we're changing the plaintiffs' claim for damages at this

2   point.  My understanding was based on the calculations that I

3   saw from plaintiffs.  If you talk about the violation period,

4   they cut off the class at October 8th, which assumes that 60

5   days between August 8th, when the notice went out, and October

6   7th, and that anyone after that is outside the class.  That's

7   why we went with the August 8th, because that's what the

8   Court's order said, and that's what plaintiffs' damage

9   calculations assumes implicitly.

10          On top of that, we did not arbitrarily cut out

11  weekends.  We cut out days that were not working days within

12  plaintiffs' assumptions.  Plaintiffs' assumptions are based on

13  five workdays a week for each plaintiff.  If you had a

14  plaintiff who worked 36 hours in a week, they have expanded

15  that over five days by assuming each employee works 7.2 hours

16  in a five-day workweek.  That's all we did, and all we did was

17  cut out any days that would not have been working days based on

18  an assumed five-day workweek for each plaintiff and each member

19  of the potential class, which is consistent with this Court's

20  order which was affirmed by the Fourth Circuit.

21          But I do think -- sorry to -- I do think one thing

22  that we can do, if what we're going to do today is we're going

23  to make some findings that we can apply to class-wide damages,

24  one of the things that fundamentally I think is easy to do here

25  today is what is the violation period.  And then within that

1    violation period, what are the days that are the defendants

2    required to pay backpay, so work days or calendar days.

3              Our position is that there's a 33-day violation

4    period, and within that violation period there are 23 working

5    days.  If we have that information, it should not be hard for

6    the two parties to get together at that point, look at the

7    hours worked or the wage rates, figure out a daily rate, and

8    multiply it by the number of days they're owed for backpay.

9    That issue should be pretty easy to decide today, and I think

10   would be appropriate.

11             THE COURT:  All right.  The violation period is

12   August 8th to October 7th.  I'm going to find that the August 8

13   letter was insufficient, and so it will be based on a 60-day

14   period.  However, it would be working days, not calendar days.

15   There must be an offset -- I think everybody's realized that --

16   for wages that were paid.

17             There will be no damages for one month's health plan

18   premium, and we will take up the issue of attorney's fees

19   after, in accordance, actually, with the brief schedule saying

20   fee request, 14 days after the class damages hearing and

21   additional 14 days for you all to respond.

22             How soon can you get your damages, in accordance with

23   that, to the defendant?

24             MR. POMPONIO:  I just have one question.  If the

25   Court -- I'm confused about the violation period.  If the Court

1   finds that the notice was inadequate, then shouldn't the notice

2   period run from the date of the shutdown, because no notice was

3   provided, September 4th to November 4th.  And that would be 60

4   days.

5            And then -- if that is the correct violation period,

6   then I'd like to make just very quick argument about the one

7   month of health care benefits, because there's no evidence that

8   individuals -- the class received their health care benefits

9   after October 7th.  So that would be another element of the

10   damages that would be undisputably owed to the class.  And but

11   to answer your --

12            THE COURT:  You think you can do that?

13            MR. POMPONIO:  What's that?

14            THE COURT:  Do you think you can do that?

15            MR. POMPONIO:  Absolutely, Your Honor.  There's no

16   notice --

17            THE COURT:  I'm talking about make a brief argument.

18            MR. POMPONIO:  Yeah, I think I can.  But to answer

19   your argument -- I mean, your question directly, Your Honor, we

20   have calculated the proposed damages for the class and the

21   individual plaintiffs consistent with a 60-day violation period

22   and a five-day workweek.

23            THE COURT:  Have you provided those to defense?

24            MR. POMPONIO:  No.  We just brought them here today

25   and -- but we'll be happy to --

 1              THE COURT:  How long do you all need to look at them?

 2              MR. RHEIN:  For the class-wide damages?

 3              THE COURT:  Yeah.

 4              MR. RHEIN:  Thirty days.

 5              THE COURT:  Let's have a hearing on September 26 at

 6    3:00 on the damage issues.  Obviously, if you all can agree on

 7    numbers, we won't have it.  I don't need to be in here.  And

 8    that's probably all I need to say right now, isn't it?  Do you

 9    want another hearing?

10              MR. RHEIN:  Not really, but I love being up here.  I

11    love Wheeling.  So I love coming up, any opportunity to come up

12    to Wheeling, of course.

13              I just want to clarify, September 26 we're deciding

14    the issues related to class-wide damages.

15              THE COURT:  Yes.

16              MR. RHEIN:  Consistent with whatever ruling -- your

17    rulings today.

18              THE COURT:  Consistent with my rulings today and

19    consistent with what you guys work out.

20              MR. RHEIN:  Right.

21              THE COURT:  Now, I will take back what I said about

22    the insurance premiums.  You're correct.  Without the letter,

23    then it's September 4th to November 3rd.

24              MR. POMPONIO:  Through November 3rd, I believe.

25              THE COURT:  Yeah.

1           MR. RHEIN:  If that's the case, then is our class

2    definition correct at this point?  I want to make sure we get

3    this straightened out to the extent we can today so that we're

4    able to -- if we are able to have a discussion with plaintiffs'

5    counsel about numbers, I want to make sure it's as accurate as

6    possible that we're talking about one class.

7           THE COURT:  The class, as I understand it, as I

8    remember, is all employees employed at Ohio Valley Medical

9    Center who suffered an employment loss as a result of OVMC's

10   plant closing in 2019 without receiving 60 days' advance notice

11   as required by the Worker Adjustment and Retraining

12   Notification Act.

13          MR. RHEIN:  Okay.  And based on plaintiffs'

14   calculations, they had 696 employees, and that's based on

15   employees who were no longer working prior to October 8th,

16   2019.  And if we're changing that, that's obviously going to

17   change plaintiffs' idea of who is defined within the Court's

18   class, which then changes who gets the notice, providing

19   addresses for who the notice is, and changes the scope of the

20   damages in this case, obviously.

21          MR. POMPONIO:  It doesn't cause any difficulties at

22   all.  All the people that are entitled to damages under the

23   class definition will get notice.  It will change some, but

24   it's not anything that creates any type of due process problem

25   or any administrative problem or anything like that.

1          MR. RHEIN:  I'm assuming plaintiffs' damage

2    calculation does not include -- their damage calculations you

3    brought today, we have 30 days to respond to, does not include

4    employees who were paid after October 8th, 2019, correct?

5          THE COURT:  Anyone get paid after October?

6          MR. RHEIN:  Yes.  I just want to make sure that we

7    have -- that's what I want to decide today.  I don't want to

8    relitigate things either today, but my reading of the Court's

9    summary judgment order was that notice provided on August 8th

10   was sufficient, right?

11         THE COURT:  No, I don't think I did, did I?

12         MR. POMPONIO:  No.

13         THE COURT:  No.  I said assuming it was good, it was

14   still --

15         MR. RHEIN:  The order says, on page 30, the letter

16   sufficiently states whether the closing is permanent or

17   temporary, provides the expected date when OVMC was closing,

18   and the name and telephone number of a company official to

19   contact for further information.  The letter does not indicate

20   whether or not bumping rights exist.  However, failing to

21   include -- failing to include mention of bumping rights is not

22   fatal to the notice's effectiveness.

23         MR. POMPONIO:  The Court made no findings as to

24   the -- whether or not the correct date was -- of the closure

25   was included in the notices and whether it was based on best

1  information available, and the Court went on to say, after that

2  discussion, that even if the August 8, 2019 letter met all

3  requirements, it was not sent timely.

4        MR. RHEIN:  I'm just reading what it says.

5  Obviously, you know better than I do.

6        THE COURT:  He's getting me a copy of what I said.

7        MR. RHEIN:  Okay.

8        MR. POMPONIO:  Your Honor, I have a copy, if you'd

9  like me to provide --

10        THE COURT:  Then he'd feel rejected by having run out

11  of here.

12        MR. RHEIN:  Usurped.

13        THE COURT:  For naught.

14        MR. POMPONIO:  While we're waiting, Your Honor, this

15  idea that more individuals will be included in the class

16  because they worked some between October 7th and November 3rd,

17  4th, however you want to say it, there will be a handful of

18  people, not many --

19        THE COURT:  We're jumping the gun.  Let's see what I

20  say first.  I may have to retract this and go back to what the

21  defendants want.

22        Okay.  I'll admit I'm a little ambiguous, but here's

23  what it's going to be.  We're going to use the 33 days.  We're

24  going to use working days.  There will be no insurance.  There

25  will be an offset based on wages paid.  Assuming we don't have

```
 1   the damages worked out, we'll have a hearing on September 26th.
 2   We probably need a fairness hearing, too.  And by then we'll
 3   know who's in and out.  Let's have a fairness hearing November
 4   7 at 2:00.
 5          MR. POMPONIO:  Your Honor, can I clarify something?
 6   I took it as when the Court was saying that we're going to use
 7   the 33 days, that you intended that we are going to use the
 8   time -- calculate the violation period as if a notice --
 9   untimely but adequate notice was sent out.
10          The mailbox rule plays into this.  So the date in
11   which the class members would have received that August 8th
12   letter extends the class by another -- the violation period, I
13   beg your pardon, by another three days.  Is that your
14   intention, or --
15          THE COURT:  It wasn't, but it's a good issue.
16          MR. RHEIN:  He's not wrong.  I think if the mail went
17   out on August 8th, three days from that would be a Sunday.
18   Given extra days, that would be -- assume they get it on the
19   12th, 60 days from that is it October 11th, so the violation
20   period would be September 5th to October 11, and that includes
21   26 workdays.  Just add three days, basically.  So went from 23
22   workdays to 26 workdays.  That's what I have.  And I agree,
23   that is accurate.
24          MR. POMPONIO:  It might be 27, but we can work that
25   out, I'm sure.
```

1          MR. RHEIN:  Agree with plaintiffs' counsel.

2          THE COURT:  A weekend, too, so -- anything else I can

3     help you with?

4          MR. RHEIN:  No, Your Honor.

5          THE COURT:  All right.  Thank you.

6          (Proceedings concluded at 2:44 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2        I, Cindy L. Knecht, Registered Professional Reporter and

 3   Official Reporter of the United States District Court for the

 4   Northern District of West Virginia, do hereby certify that the

 5   foregoing is a true and correct transcript of the proceedings

 6   had in the above-styled action on August 25, 2022, as reported

 7   by me in stenotypy.

 8        I certify that the transcript fees and format comply with

 9   those prescribed by the Court and the Judicial Conference of

10   the United States.

11        Given under my hand this 12th day of September 2022.

12                    /s/Cindy L. Knecht
                      _____
13                    Cindy L. Knecht, RMR/CRR
                      Official reporter, United States
14                    District Court for the Northern
                      District of West Virginia
15

16

17

18

19

20

21

22

23

24

25
```